FILED

MAR 20 2018

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

1  JUSTIN T. BERGER (SBN 250346)
   jberger@cpmlegal.com
2  ADAM SHAPIRO (SBN 267429)
   ashapiro@cpmlegal.com
3  COTCHETT, PITRE & McCARTHY, LLP
   San Francisco Airport Office Center
4  840 Malcolm Road
   Burlingame, CA 94010
5  Telephone: (650) 697-6000
   Facsimile: (650) 697-0577
6
   *Attorneys for Relator*
7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA *ex rel.*        CASE NO. 17-cv-01757 LJO SAB
    [UNDER SEAL]
12                                            FIRST AMENDED COMPLAINT FOR
             Plaintiffs,                      VIOLATIONS OF THE FEDERAL FALSE
13                                            CLAIMS ACT AND CALIFORNIA FALSE
        v.                                    CLAIMS ACT
14
    [UNDER SEAL]
15                                            DEMAND FOR JURY TRIAL
             Defendants.
16

17

18            [FILED IN CAMERA AND UNDER SEAL

19           PURSUANT TO 31 U.S.C. § 3730(b)(2)]

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT

COPY

## TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................... 1

II.   JURISDICTION AND VENUE .............................................................................. 1

III.  PARTIES ................................................................................................................. 2

IV.  OVERVIEW OF THE SCHEME............................................................................. 3

     A.    Medi-Cal, Medicaid, and the Federal Anti-Kickback Law ............................ 3

     B.    SNF Reimbursement.......................................................................................... 4

     C.    Defendants' Fraudulent Scheme........................................................................ 6

     D.    Defendants' Discriminatory Billing Practices Violate Federal and California Law ...... 8

     E.    Defendants' Scheme Violated Medi-Cal's Low Price Rules. ......................... 8

     F.    Defendants' Kickbacks Induced the Referral of Medicare Business ............................. 9

     G.    Further Evidence of the Scheme ........................................................................ 9

V.   CAUSES OF ACTION........................................................................................... 10

    FIRST CAUSE OF ACTION
    Violations of the Federal False Claims Act
    Presenting False Claims
    (31 U.S.C. § 3729(a)(1)(A))
    On Behalf of the United States Against All Defendants ............................... 10

    SECOND CAUSE OF ACTION
    Violations of the Federal False Claims Act
    Making or Using False Records or Statements
    Material to Payment or Approval of False Claims
    (31 U.S.C. § 3729(a)(1)(B))
    On Behalf of the United States Against All Defendants ............................... 11

    THIRD CAUSE OF ACTION
    Violations of the Federal False Claims Act
    Retention Of Proceeds To Which Not Entitled
    (31 U.S.C. 3729(A)(1)(G))
    On Behalf Of The United States Against All Defendants ............................. 12

    FOURTH CAUSE OF ACTION
    Violations of the Federal False Claims Act
    Conspiracy to Commit Violations of the False Claims Act
    (31 U.S.C. § 3729(a)(1)(C))
    On Behalf of the United States Against All Defendants ............................... 13

FIFTH CAUSE OF ACTION
    Violations of the California False Claims Act
    Presenting False Claims
    (Cal. Gov. Code § 12651, subd. (a)(1))
    On Behalf of the State of California Against All Defendants .......................................13

SIXTH CAUSE OF ACTION
    Violations of the California False Claims Act
    Making or Using False Records or Statements to
    Obtain Payment or Approval of False Claims
    (Cal. Gov. Code § 12651, subd. (a)(2))
    On Behalf of the State of California Against All Defendants .......................................14

SEVENTH CAUSE OF ACTION (In the Alternative)
    Violations of the California False Claims Act
    Inadvertent Submission of False Claims
    (Cal. Gov. Code § 12651, subd. (a)(8))
    On Behalf of the State of California Against All Defendants .......................................14

EIGHTH CAUSE OF ACTION
    Violations of the California False Claims Act
    Conspiracy
    (Cal. Gov. Code § 12651, subd. (a)(3))
    On Behalf of the State of California Against All Defendants .......................................15

VI.    PRAYER FOR RELIEF ............................................................................................16

VII.    JURY DEMAND.....................................................................................................17

Plaintiffs the United States of America ("United States") and the State of California, by and through Relator Thomas Turner ("Relator"), allege as follows.

## I.   INTRODUCTION

1.   Relator brings this action on behalf of the United States and the State of California to recover losses sustained by the Medicare and Medi-Cal programs, as a result of Defendants' differential billing practices, as well as kickbacks paid by Dynamic Medical Systems LLC ("Dynamic") and Joerns Healthcare LLC. ("Joerns") to various Skilled Nursing Facilities ("SNFs"), including the other Defendants in this action.

2.   This is a classic "swapping" scheme in which Dynamic and Joerns' kickbacks took the form of deep discounts to certain patient populations on the daily rental rates for certain specialty beds and mattresses.  Dynamic used these discounts to induce SNFs to refer to them higher paying business.  These discounts padded the profits of various SNFs, including Covenant Care California, LLC, Plum Healthcare Group LLC, and Cambridge Healthcare Services.

3.   At the same time, Dynamic and Joerns overcharged other patients who were responsible for a Share of Cost (SOC) of their SNF care.  These overcharges were ultimately borne by the patients, as well as the Medicare and Medi-Cal programs.

4.   Defendants' practices violated the Anti-Kickback statute (42 U.S.C. § 1320a-7b) and Medi-Cal's low price rules, and resulted in violations of both the Federal False Claims Act and the California False Claims Act.

## II.   JURISDICTION AND VENUE

5.   This Court has jurisdiction over the False Claims Act ("FCA") causes of action raised in this complaint under 28 U.S.C. § 1331, as they arise under Federal law.  This Court also has jurisdiction over the FCA claims pursuant to 31 U.S.C. § 3732, which confers jurisdiction for claims brought under the FCA on the District Courts of the United States.

6.   Additionally, this Court has supplemental jurisdiction over the other claims in this action pursuant to 31 U.S. Code § 3732(b), as they arise from the same transaction or occurrence as the federal claims.  The Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, as

they are so related to the FCA claims in the action that they form part of the same case or controversy.

     7.     Venue is proper pursuant to 31 U.S.C. § 3732(a), as Defendants transact business in this district.

## III.    PARTIES

     8.     Plaintiff in this action the United States of America and the State of California, by and through Relator Tom Turner.

     9.     Relator Tom Turner is a resident of Huntington Beach, California. He was hired by Dynamic Medical Systems LLC in February 2006, after Dynamic acquired Relator's company. Relator currently serves as Dynamics' Director of Key Accounts, and Director of Key Accounts for Joerns Healthcare LLC.

     10.     Dynamic Medical Systems LLC ("Dynamic") is a Nevada limited liability corporation headquartered in Rancho Dominguez, California. Dynamic is in the business of leasing specialty mattresses and bed frames to SNFs. Among other things, these mattresses prevent and treat wounds and ulcers, reduce soft tissue distortion, and promote blood flow. Dynamic's specialty mattress products include: Airdyne, Dynamax, MA 65, and MA 85. Dynamic became a subsidiary of Invacare in 2011.

     11.     Joerns Healthcare LLC ("Joerns") is a Delaware corporation headquartered in Stevens Point, Wisconsin. Like Dynamic, Joerns is in the business of leasing mattresses to SNFs. Joerns specialty mattress products include: DermaFloat, ProMatt, Dynamax. Joerns acquired Dynamic from Invacare in or around July 2015.

     12.     Invacare Corporation is an Ohio Corporation based in Elyria, Ohio. Invacare acquired Dynamic in 2011, and later sold the company, along with the rest of its medical device rentals businesses for long-term care facilities to Joerns in or around July 2015.

     13.     Covenant Care California, LLC ("Covenant"), is a California limited liability corporation headquartered in Aliso Viejo, California. Covenant manages about 30 SNFs in California and entered into discriminatory billing agreements with Joerns.

---

**FIRST AMENDED COMPLAINT**           2

1      14.    Mariner Health Care Management Company ("Mariner") is a Delaware corporation.
2 Mariner operates 19 SNFs in Northern and Southern California and entered into discriminatory
3 billing agreements with Joerns.

4      15.    Plum Healthcare Group LLC ("Plum") is a California limited liability company based
5 in San Marcos, California which manages 64 SNFs.  Plum entered into discriminatory billing
6 agreements with Dynamic.

7      16.    Cambridge Healthcare Services is a California limited liability company based in Los
8 Angeles, California.  Cambridge manages 37 SNFs and entered into discriminatory billing
9 agreements with Dynamic.

10 **IV.    OVERVIEW OF THE SCHEME**

11     **A.    Medi-Cal, Medicaid, and the Federal Anti-Kickback Law**

12      17.    Medicaid is a joint Federal-State program which provides, among other things, long-
13 term care for seniors.  Medicaid provides a means for nursing facility residents to pay for skilled-
14 nursing care, as well as room and board in a nursing facility certified by the federal government to
15 provide services to Medicaid beneficiaries.

16      18.    Medi-Cal is California's Medicaid program.  This is a public health insurance program
17 which provides needed healthcare services for low-income individuals including families with
18 children, seniors, persons with disabilities, foster care, pregnant women, and low income people with
19 specific diseases such as tuberculosis, breast cancer or HIV/AIDS.  Medi-Cal is financed equally by
20 the State of California and the federal government.

21      19.    Medicare also provides reimbursements to SNFs depending on several factors,
22 including the character of the facility, the beneficiary's circumstances, and the types of items and
23 services provided.  SNFs are typically reimbursed under Medicare Part A for the costs of most items
24 and services, including room, board, ancillary items, and services.  In some circumstances, SNFs may
25 receive payments under Medicare Part B.

26      20.    The Federal Anti-Kickback Law, codified at 42 U.S.C. § 1320a-7b, has been on the
27 books since 1972.  Its main purpose is to protect patients and federal healthcare programs, including
28 Medicaid and Medicare, from fraud and abuse by curtailing the corrupting influence of money on

**FIRST AMENDED COMPLAINT**                                               3

1  healthcare decisions. The law establishes civil and criminal penalties for persons who knowingly and
2  willfully receive or pay anything of value to influence the referral of federal health care program
3  business, including Medicare and Medicaid.

4    21.    To comply with the Anti-Kickback Law, SNFs must ensure that all discounts they
5  receive are properly disclosed and accurately reflected on their cost reports. SNFs must also be
6  careful that there is no link or connection between discounts offered or solicited for business that the
7  nursing facility pays for and the nursing facility's referral of business billable by the supplier or
8  provider directly under any federal health care program. For example, nursing facilities may not
9  engage in swapping arrangements by accepting a low price from a supplier or provider on an item or
10  service covered by the SNF's per diem payment in exchange for the SNF referring to the supplier
11  other federal health care program business. Such swapping arrangements implicate the anti-kickback
12  statute and are not protected by the discount safe harbor.

13    **B.    SNF Reimbursement**

14    22.    A Skilled Nursing Facility ("SNF") is a health-care institution that meets federal
15  criteria for Medicaid and Medicare reimbursement for nursing care including especially the
16  supervision of the care of every patient by a physician, the employment full-time of at least one
17  registered nurse, the maintenance of records concerning the care and condition of every patient, the
18  availability of nursing care 24 hours a day, the presence of facilities for storing and dispensing drugs,
19  the implementation of a utilization review plan, and overall financial planning including an annual
20  operating budget and a 3-year capital expenditures program.

21    23.    Medicare pays SNFs under a prospective payment system ("PPS") for beneficiaries
22  covered by the Part A extended care benefit. Covered beneficiaries are those who require skilled-
23  nursing or rehabilitation services and received the services from a Medicare certified SNF after a
24  qualifying hospital stay of at least three days. The PPS rate is a fixed, per diem rate. The maximum
25  benefit is 100 days per "spell of illness."

26    24.    Medi-Cal reimburses SNFs for the costs associated with caring for eligible patients.
27  For some of these eligible patients, Medi-Cal reimburses SNFs for the full cost of the patients' care at
28  a capitated rate.

25.    Other Medi-Cal recipients must pay, or agree to pay, a monthly dollar amount toward their medical expenses before they qualify for Medi-Cal benefits.  This dollar amount is called Share of Cost ("SOC").  A Medi-Cal subscriber's SOC is similar to a private insurance plan's out-of-pocket deductible.

26.    Generally, a beneficiary's SOC is determined by the county welfare department and is based on the amount of income a subscriber receives in excess of "maintenance need" levels.  Medi-Cal rules require that subscribers pay income in excess of their "maintenance need" level toward their own medical bills before Medi-Cal begins to pay.  Both earned income and unearned income — including from sources such as Social Security retirement, survivors or disability benefits, pensions, and interest from bank accounts, and State Disability Insurance — can count towards income for the purposes of calculating SOC.

27.    Under *Johnson v. Rank*, No. C-84-5979-SC, 1984 WL 48801 (N.D. Cal. Dec. 7, 1984), Medi-Cal recipients can elect to use their SOC funds to pay for necessary, non-covered, medical or remedial-care services, supplies, equipment and drugs that are prescribed by a physician and part of the "plan of care" authorized by the recipient's attending physician.

28.    A medical service is considered a non-covered benefit if either: (1) the medical services is rendered by a non-Medi-Cal provider, or (2) the medical service falls into the category of services for which a Treatment Authorization Request ("TAR") must be submitted and approved.

29.    In the event a Medi-Cal recipient spends part of his or her SOC on "non-covered" medical or remedial services, the SNF must subtract those amounts from the recipient's SOC and bill the recipient in an amount equal to the remaining SOC.  The SNF then bills Medi-Cal in an amount equal to the difference between the typical Medi-Cal funding per patient and this particular patient's remaining SOC.

30.    For example, a patient who pays $600 per month on non-covered medical expenses and has a $1000 SOC will only need to pay $400 out of her SOC for covered services before qualifying for Medi-Cal benefits.  The facility would then deduct $400 from the amount billed to Medi-Cal.  Medi-Cal thus pays $400 less per month than it pays for a typical Medi-Cal patient without an SOC.

FIRST AMENDED COMPLAINT                                                                5

**C. Defendants' Fraudulent Scheme**

31. Defendants engaged in a swapping arrangement to defraud Medicare and Medi-Cal. Under the scheme, Dynamic and Joerns offered deep discounts on specialty mattress rental rates to certain patient segments in order to induce SNFs to use their products. At the same time, Dynamic and Joerns overcharged patients who were responsible for an SOC. The overcharges were borne by the patients and government payers, as opposed to the SNFs.

32. In return for the discounts offered by Dynamic and Joerns, SNFs would refer 90 to 100 percent of their patients to Dynamic and Joerns.

33. Dynamic and Joerns charge three different mattress rental rates. First, the stated and published rate billed directly to Medi-Cal is $18.76 per day. Dynamic and Joerns only bill Medi-Cal directly for a small portion of patients with qualifying wounds that require specialty mattresses and equipment. Second, patients with private insurance, Medicare, and patients with Medi-Cal and no SOC are charged a discounted price of between $3 and $6 per day. These patients are known in the industry as the"facility" segment. These fees are not billed directly to Medi-Cal. Third, patients in the SOC segment are charged a "retail" price of up to $23 per day.

34. Because SNFs are paid a capitated rate for Medi-Cal patients in the facility segment, the SNFs can pocket the savings from the discounted prices offered by Dynamic and Joerns.

35. On the other hand, patients and the government bear the cost of the overcharges to SOC patients.

36. Consider, for example, a patient, who lives in a SNF that is reimbursed $5,000 per month by Medi-Cal. If that patient is in the facility segment, and is not responsible for any SOC, Dynamic and Joerns may charge $3 per day. Medi-Cal pays a capitated rate of $5,000 per month for the patient's care. The SNF pays $90 ($3 per day times 30 days) of the $5,000 for the specialty mattress rental, and has $4,910 left over for the remainder of the patient's care. Ultimately, the government pays the SNF $5,000 per month for this patient's care.

37. If the patient has an SOC of $1,000 and is charged the same amount as the facility segment for the specialty mattress, the patient pays $90 out of her SOC for the specialty mattress and, assuming there are no other uncovered costs, the remainder of the SOC ($910) goes to the SNF for

1  the rest of her covered care. Medi-Cal is then responsible for the remaining $4,090 of the SNF's

2  $5,000 monthly charges.

3       38.    But under Defendants' scheme, SOC patients are charged an inflated rate of up to $23

4  per day. Thus, the same patient would pay about $690 of her monthly SOC for the specialty mattress,

5  and have only $310 left over to satisfy her SOC obligation. Medi-Cal is responsible for the

6  remaining $4,690 of the SNF's $5,000 monthly charges.

7       39.    In the example above, **Medi-Cal thus pays an additional $600 per patient per**

8  **month due to Defendants' differential billing**. Moreover, each SOC patient must pay an additional

9  $600 out of their SOC for a specialty mattress, meaning they have $600 less to spend on other

10  uncovered, but necessary medical costs.

11       40.    The following chart summarizes this example:

| Patient Type | Patient Funds from SOC | Specialty Mattress Rental Daily Cost | Specialty Mattress Rental Monthly Cost | Monthly SOC payment prior to Medi-Cal Reimbursement | Medi-Cal Funding to SNF Per Month |
|---|---|---|---|---|---|
| Medi-Cal Patient with no SOC (Facility-pay) | $0 | $3 | $90 | N/A | $5000 |
| Medi-Cal covered Patient with $1000 SOC (Legal way to bill) | $1000 | $3 | $90 | $910 | Approximately $4090 |
| Medi-Cal covered Patient with $1000 SOC (Dynamic billing scheme) | $1000 | $23 | $690 | $310 | Approximately $4690 |

26       41.    Every month, SNFs participating in the scheme provide Dynamic and Joerns with a

27  list of their patients, and the payors that are responsible for those patients. This information is

28  conveyed in a form known as the "Share of Cost Acknowledgement letter." Using this list, Dynamic

**FIRST AMENDED COMPLAINT**                              7

1  and Joerns differentiate between patients who are responsible for a SOC and those that are not, and
2  charge those patient populations different prices.

3      42.    Dynamic has carried out this scheme since at least 2006, when it acquired Relator's
4  company. Dynamic continued the scheme after it was acquired by Invacare in 2011, as well as after
5  Joerns acquired Dynamic from Invacare. Joerns perpetrated an identical scheme before it acquired
6  Dynamic.

7      43.    Defendants and their agents have been aware for years of the aforementioned false
8  billing practice and knowingly permitted such wrongful practices to continue.

9      **D.    Defendants' Discriminatory Billing Practices Violate Federal and California Law**

10     44.    Defendants' actions violate the Anti-Kickback statute, which forbids persons from
11 receiving any remuneration, including any kickback, bribe, or rebate in return for referring an
12 individual to a person for the furnishing of any item or service, or in return for leasing any good for
13 which payment may be made in whole or in part under a federal health care program. 42 U.S.C. §
14 1320a-7b(b).

15     45.    Defendants' actions also violate Medi-Cal's low price rules, which prohibit
16 discriminatory billing. Specifically, 22 California Code of Regulations ("CCR") § 51480(a) states
17 "No provider shall bill or submit a claim for reimbursement for the rendering of health care services
18 to a Medi-Cal beneficiary in any amount greater or higher than the usual fee charged by the provider
19 to the general public for the same service." Likewise, 22 CCR § 51501 states that, under the Medi-
20 Cal program, "no provider shall charge for any service or any article more than would have been
21 charged for the same service or article to other purchasers of comparable services or articles under
22 comparable circumstances."

23     **E.    Defendants' Scheme Violated Medi-Cal's Low Price Rules.**

24     46.    Dynamic, Joerns, and Invacare billed Medi-Cal directly for patients with qualifying
25 wounds that require specialty mattresses and equipment. The rates for these patients was $18.76 per
26 day, far higher than the rates charged to other patients in the facility segment. Dynamic, Joerns, and
27 Invacare's billing practices violated the Medi-Cal low price rules set forth in 22 CCR §§ 51480 and
28 51501.

**FIRST AMENDED COMPLAINT**                                                                8

1

**F.**   **Defendants' Kickbacks Induced the Referral of Medicare Business**

2    47.   Many SNF patients receive financial assistance from Medicare. Dynamic and Joerns

3  induced the referral of this Medicare business, in violation of the Anti-Kickback Law, by offering

4  steep discounts to certain SNF patients.

5    **G.**   **Further Evidence of the Scheme**

6    48.   Joerns, Dynamic, and Invacare entered into provider agreements with several SNFs

7  through which they agreed to provide mattresses at discounted daily rates, even though they bill

8  Medi-Cal a daily rate for such products of $18.76.

9    a.   For example, Dynamic's August 1, 2015 Provider Agreement with Queen Ann's Lace

10  Holdings, LLC dba Whitney Oaks Care Center, which is owned by Plum, sets forth a daily rental rate

11  for AirDyne Mattresses of $2.50 to $6.00.

12    b.   Dynamic's October 1, 2016 Preferred Provider Agreement with LAC Verdugo

13  Operations LLC dba Glendale Post Acute Center sets forth daily rental rates of $6.00 to $8.50 for

14  various alternating Pressure Mattresses.

15    c.   Dynamic's Preferred Provider Agreement with Breeze Health Care, Inc. dba

16  Beachside Nursing Center, dated June 1, 2016, sets forth a daily rental rate of $6.00 for Airdyne

17  pump with a standard size Dynamax Mattress.

18    d.   Dynamic's August 1, 2012 requirements contract with Jeffrey Pine Holdings, LLC dba

19  Villa Las Palmas Healthcare Center, which is owned by Plum, sets forth a daily rental rate for

20  AirDyne Mattresses of $5 to $6.

21    e.   Dynamics's November 30, 2011 provider agreement with Redlands Healthcare Center

22  sets forth a daily rental rate for AirDyne Mattresses of $5.25 to $8.00.

23    49.   Dynamic emails demonstrate the entire purpose of the scheme was to induce SNFs to

24  refer more business. For example, on March 16, 2017, Robert Husband, an account executive at

25  Joerns, sent an email to Laura Bailey, the Director of Sales at Joerns, stating he wanted to convert one

26  of his accounts, Fairfield Post Acute, from Dynamic to Joerns. Husband explained: "If we switch

27  equipment to DMS [Dynamic] we can easily double our current revenue with this account by getting

28  rid of the competition and **pushing the share of cost program**." Bailey responded "I see no issue,

**FIRST AMENDED COMPLAINT**                                                                                                  9

1  we have a contract through DMS, we stand to gain business plus SOC and DMS has product they can

2  provide."

3       50.     Recently, several of Dynamic and Joerns' SNF customers have become more risk

4  averse and expressed concerns about the differential billing practices described above.

5       51.     For example, Dynamic received complaints about differential billing in August and

6  September 2017 from Dycora Transitional Health, which operates 19 SNFs in California.

7  Specifically, Vicki Keyser, Dycora's Director of Business Office Operations, expressed concerns that

8  SOC patients were being charged higher fees for mattresses than other types of patients.  Keyser

9  demanded that "all of July's SOC invoices adjusted to the facility rates."

10       52.     Likewise, Cambridge Healthcare Services LLC also contacted Dynamic and Joerns in

11  2017 requesting that their SOC rates be set so that they were equal to their facility rates.  Cambridge

12  operates Nursing Home facilities in Northern and Southern California.

13       53.     Plum Healthcare Group, which operates 64 SNFs in the State of California, also

14  expressed concerns about Dynamic's discriminatory billing.

15       54.     In September 2017, New Vista Health Services, which operates SNFs in Sunland,

16  California, requested that Dynamic "fix the differential billing issues for SOC patients."  Dynamic

17  had been renting mattresses to New Vista's non-SOC patients for $2.50 to $4.50 per day, well below

18  the rate effectively billed to Medi-Cal.

19  **V.     CAUSES OF ACTION**

20  <div align="center">

**FIRST CAUSE OF ACTION**

</div>

21  <div align="center">

**Violations of the Federal False Claims Act**

</div>

22  <div align="center">

**Presenting False Claims**

</div>

23  <div align="center">

**(31 U.S.C. § 3729(a)(1)(A))**

</div>

24  <div align="center">

**On Behalf of the United States**

</div>

25  <div align="center">

**Against All Defendants**

</div>

26       55.     Relator incorporates herein by reference and realleges the allegations stated in this

27  Complaint.

28

**FIRST AMENDED COMPLAINT**                                      10

1   56.    Defendants knowingly caused to be presented false claims for payment or approval to
2   an officer or employee of the United States.

3   57.    Defendants knowingly (as defined in 31 U.S.C. § 3729(b)(1)) presented false records
4   and statements, including but not limited to claims, bills, invoices, requests for reimbursement, and
5   records of services, in order to obtain payment or approval of charges by the Medicare and Medicaid
6   program that were higher than they were permitted to claim or charge by applicable law.  Among
7   other things, Defendants knowingly submitted false claims for Medicare and Medicaid business that
8   was obtained by means of, and as a result of illegal kickbacks.

9   58.    Defendants knowingly made, used, and caused to be made and used false certifications
10  that their claims, and all documents and data upon which those claims were based, were accurate, and
11  were supplied in full compliance with all applicable statutes and regulations.

12  59.    The conduct of Defendants violated 31 U.S.C. § 3729(a)(1)(A) and was a substantial
13  factor in causing the United States to sustain damages in an amount according to proof.

14                          **SECOND CAUSE OF ACTION**
15                    **Violations of the Federal False Claims Act**
16                    **Making or Using False Records or Statements**
17                    **Material to Payment or Approval of False Claims**
18                          **(31 U.S.C. § 3729(a)(1)(B))**
19                          **On Behalf of the United States**
20                          **Against All Defendants**

21  60.    Relator incorporates herein by reference and realleges the allegations stated in this
22  Complaint.

23  61.    Defendants knowingly (as defined in 31 U.S.C. § 3729(b)(1)) made, used, or caused to
24  be made or used false records or statements material to false or fraudulent claims.

25  62.    Defendants knowingly made, used, and/or caused to be made and used false records
26  and statements, including but not limited to claims, bills, invoices, requests for reimbursement, and
27  records of services, in order to obtain payment or approval of charges by the Medicare program that
28  were higher than they were permitted to claim or charge by applicable law.  Among other things,

1  Defendants knowingly submitted false claims for Medicare and Medicaid business that was obtained
2  by means of, and as a result of illegal kickbacks.

3      63.    Defendants knowingly made, used, and caused to be made and used false certifications
4  that their claims, and all documents and data upon which those claims were based, were accurate, and
5  were supplied in full compliance with all applicable statutes and regulations.

6      64.    The conduct of Defendants violated 31 U.S.C. § 3729(a)(1)(B) and was a substantial
7  factor in causing the United States to sustain damages in an amount according to proof.

8                          **THIRD CAUSE OF ACTION**

9               **Violations of the Federal False Claims Act**

10              **Retention Of Proceeds To Which Not Entitled**

11                     **(31 U.S.C. 3729(A)(1)(G))**

12                    **On Behalf Of The United States**

13                      **Against All Defendants**

14     65.    Relator incorporates herein by reference and realleges the allegations stated in this
15  Complaint.

16     66.    Defendants knowingly made, used, or caused to be made or used a false record or
17  statement material to an obligation to pay or transmit money property to the United States, or
18  knowingly concealed or knowingly improperly avoided or decreased an obligation to pay or transmit
19  money or property to the United States.

20     67.    Defendants received far more money from the Medicaid and Medicare programs than
21  they were entitled.  Defendants knew that they had received more money than they were entitled to,
22  and avoided their obligation to return the excess money to the United States.

23     68.    The conduct of Defendants violated 31 U.S.C. § 3729(a)(1)(G) and was a substantial
24  factor in causing the United States to sustain damages in an amount according to proof.

25  / / /

26  / / /

27  / / /

28  / / /

FIRST AMENDED COMPLAINT                                                    12

1

### FOURTH CAUSE OF ACTION

**Violations of the Federal False Claims Act**

**Conspiracy to Commit Violations of the False Claims Act**

**(31 U.S.C. § 3729(a)(1)(C))**

**On Behalf of the United States**

**Against All Defendants**

69.    Relator incorporates herein by reference and realleges the allegations stated in this Complaint.

70.    Defendants conspired with each other and various other SNFs to commit the violations alleged in this complaint, including causes of action one, two, and three inclusive.

71.    Defendants performed acts, including agreeing to discounted prices to effect the object of the conspiracy.

72.    The conduct of Defendants violated 31 U.S.C. § 3729(a)(1)(C) and was a substantial factor in causing the United States to sustain damages in an amount according to proof.

### FIFTH CAUSE OF ACTION

**Violations of the California False Claims Act**

**Presenting False Claims**

**(Cal. Gov. Code § 12651, subd. (a)(1))**

**On Behalf of the State of California**

**Against All Defendants**

73.    Relator incorporates herein by reference and realleges the allegations stated in this Complaint.

74.    Defendants knowingly presented or caused to be presented false or fraudulent claims for payment or approval to an officer or employee of the State of California.

75.    Defendants' false or fraudulent claims had the natural tendency to influence agency action or were capable of influencing agency action.

76.    The State of California sustained damages because of Defendants' acts, in amounts to be proved at trial.

**FIRST AMENDED COMPLAINT**                                                               13

## SIXTH CAUSE OF ACTION

### Violations of the California False Claims Act

### Making or Using False Records or Statements to Obtain Payment or Approval of False Claims

### (Cal. Gov. Code § 12651, subd. (a)(2))

### On Behalf of the State of California

### Against All Defendants

77.     Relator incorporates herein by reference and realleges the allegations stated in this Complaint.

78.     Defendants knowingly made, used, or caused to be made or used false records or statements to get false or fraudulent claims approved by the State of California, in violation of the California False Claims Act.

79.     Defendants knowingly made, used, or caused to be made or used false records or statements material to false or fraudulent claims involving State funds, in violation of the California False Claims Act.

80.     Defendants' false records or statements had the natural tendency to influence, or capable of influencing, the payment or receipt of money, property, or services.

81.     The State of California sustained damages because of Defendants' acts, in amounts to be proven at trial.

## SEVENTH CAUSE OF ACTION

### (In the Alternative)

### Violations of the California False Claims Act

### Inadvertent Submission of False Claims

### (Cal. Gov. Code § 12651, subd. (a)(8))

### On Behalf of the State of California

### Against All Defendants

82.     Relator incorporates herein by reference and realleges the allegations stated in this Complaint.

FIRST AMENDED COMPLAINT                                                                                           14

1    83.    In the alternative, Defendants were the beneficiaries of inadvertent submissions of
2  false claims, subsequently discovered the falsity of the claims, and failed to disclose the false claims
3  to the State of California within a reasonable time after discovery of the false claims.

4    84.    To the extent any of Defendants' complained of acts were inadvertent at the time
5  committed, Defendants subsequently discovered they had engaged in discriminatory billing practices
6  and failed to disclose the facts to the State of California within a reasonable time of such discovery.

7    85.    Defendants' false or fraudulent claims had the natural tendency to influence agency
8  action or were capable of influencing agency action.

9    86.    The State of California sustained damages because of Defendants' acts, in amounts to
10  be proved at trial.

11                              **EIGHTH CAUSE OF ACTION**
12                        **Violations of the California False Claims Act**
13                                      **Conspiracy**
14                          **(Cal. Gov. Code § 12651, subd. (a)(3))**
15                          **On Behalf of the State of California**
16                              **Against All Defendants**

17    87.    Relator incorporates herein by reference and realleges the allegations stated in this
18  Complaint.

19    88.    Defendants conspired with each other and various other SNFs to commit the violations
20  alleged in this complaint, including causes of action five, six, and seven, inclusive.

21    89.    Defendants performed acts, including agreeing to discounted prices for SOC patients
22  to effect the object of the conspiracy.

23    90.    The conduct of Defendants violated California Government Code section 12651,
24  subdivision (a)(3) and was a substantial factor in causing the State of California to sustain damages in
25  an amount according to proof.

26  ///
27  ///
28  ///

**FIRST AMENDED COMPLAINT**                                                                  15

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff the United States of America, by and through Relator, prays for relief against all Defendants as follows:

1. Pursuant to 31 U.S.C. § 3729(a)(1), three times the amount of damages the United States has sustained because of Defendants' acts in violation of the Federal False Claims Act, in an amount to be determined at trial.

2. Pursuant to 31 U.S.C. § 3729(a)(1), the maximum allowed civil penalty for each violation of the Federal False Claims Act, in an amount to be determined at trial.

3. Pursuant to 31 U.S.C. § 3729(a)(3), and all other applicable provisions of law, the costs of this action;

4. Prejudgment and postjudgment interest

5. Such further additional relief as the Court deems proper.

Plaintiff the State of California, by and through the Relator, prays for relief against all Defendants as follows:

1. Pursuant to California Government Code § 12651 (a), three times the amount of damages the State of California has sustained because of Defendants' acts in violation of the California False Claims Act, in an amount to be determined at trial.

2. Pursuant to California Government Code § 12651(a), the maximum allowed civil penalty for each violation of the False Claims Act, in an amount to be determined at trial.

3. Pursuant to California Government Code § 12651 (a), and all other applicable provisions of law, the costs of this action;

4. Prejudgment and postjudgment interest

5. Such further additional relief as the Court deems proper.

Further, Relator, on his own behalf, requests that he receive the maximum amount as permitted by law of the proceeds of this action or settlement of this action collected by the United States and/or the State of California, plus an amount for reasonable expenses incurred, plus reasonable attorneys' fees and costs of this action. Relator requests that his percentage be based upon

**FIRST AMENDED COMPLAINT**                                                                 16

1  the total value recovered, including any amounts received from individuals or entities not parties to

2  this action.

3

4  Dated: March 20, 2018                    COTCHETT, PITRE & McCARTHY LLP

5

6                                           By: _____

7                                               JUSTIN T. BERGER
                                                 ADAM M. SHAPIRO
8                                                *Attorneys for Relators*

9

10

11  VII.    **JURY DEMAND**

12          Plaintiff demands a jury trial on all issues so triable.

13

14  Dated: March 20, 2018                    COTCHETT, PITRE & McCARTHY LLP

15

16                                           By: _____

17                                               JUSTIN T. BERGER
                                                 ADAM M. SHAPIRO
18                                               *Attorneys for Relators*

19

20

21

22

23

24

25

26

27

28

**FIRST AMENDED COMPLAINT**                                                    17