SCOTT J. KIEPEN (State Bar No. 175504)
KATRINA A. PAGONIS (State Bar No. 262890)
STEPHANIE A. GROSS (State Bar No. 307728)
**HOOPER, LUNDY & BOOKMAN, P.C.**
101 Montgomery Street, 11th Floor
San Francisco, CA 94104
Telephone: (415) 875-8500
Facsimile: (415) 986-2157
E-Mail:     skiepen@health-law.com

ANDREW H. STRUVE (State Bar No. 200803)
JOSEPH R. LAMAGNA (State Bar No. 246850)
**HOOPER, LUNDY & BOOKMAN, P.C.**
101 W. Broadway, Suite 1200
San Diego, CA 92101-3890
Telephone: (619) 744-7300
Facsimile: (619) 230-0987
E-Mail:     astruve@health-law.com

BRIDGET A. GORDON (State Bar No. CA 287098)
**HOOPER LUNDY & BOOKMAN, P.C.**
1875 Century Park East, Suite 1600
Los Angeles, CA 90067
Telephone: (310) 551-8111
Facsimile: (310) 551-8181
Email: BGordon@health-law.com

Attorneys for Defendant Covenant Care
California, LLC and Defendant Mariner Health
Care Management Company

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., | Case No. 1:17-CV-01757-LJO-SAB |
| Plaintiff, | |
| vs. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS MARINER AND COVENANT CARE'S JOINT MOTION TO DISMISS** |
| DYNAMIC MEDICAL SYSTEMS, LLC, et al., | |
| Defendants. | Date: March 18, 2020<br>Time: 8:30 a.m.<br>Crtrm: 4<br>Judge: Lawrence J. O'Neill |
| | Complaint Filed:     December 28, 2017 |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................. 6

II. STATUTORY CONTEXT ..................................................................................... 8

III. RELATOR'S ALLEGATIONS ............................................................................. 9

IV. RELATOR'S FCA CLAIMS FAIL UNDER RULES 9(B) AND 12(B)(6). .......... 11

    A. The Pleading Standard Under the False Claims Act ............................... 11

    B. Relator Fails to Plead That Defendants Have Submitted Any False Claims (First, Second, Fifth & Sixth Causes of Action) ....................................... 12

        1. Relator's Scant and Conclusory Allegations Concerning Mariner and Covenant Care Fail to State a Claim under Rule 9(b) and 12(b)(6)............ 13

        2. Relator Fails to Identify Any Conduct by Mariner or Covenant Care That Would Give Rise to a False Claim for Medicare Services. ................ 14

        3. Relator Fails to Allege a Fraudulent Medi-Cal Billing Scheme. ................ 16

        4. Relator Has Not Identified Any False Claims............................................. 20

    C. Relator Fails to Plead Sufficient Facts to Support Defendants' Knowledge .......... 20

    D. Relator Fails to Plead Any Facts to Support a Reverse FCA Claim or a Claim Under Government Code Section 12651(a)(8). (Third & Seventh Causes of Action)........................................................................................... 21

    E. Relator Fails to Plead Any Facts to Support a Conspiracy Claim (Fourth & Eighth Causes of Action). ..................................................................... 22

V. PUBLIC DISCLOSURE BAR .............................................................................. 23

VI. CONCLUSION...................................................................................................... 24

# **TABLE OF AUTHORITIES**

**Cases**                                                                                              **Page(s)**

*U.S. ex rel. Aflatooni v. Kitsap Physician Serv.*,
  314 F.3d 995 (9th Cir. 2002) ....................................................................................... 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................................... 11, 18, 21

*Bailey v. Gatan, Inc.*,
  783 Fed. Appx. 692 (9th Cir. 2019) ........................................................................ 12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................... 11, 18

*United States ex rel. Campie v. Gilead Scis., Inc.*,
  862 F.3d 890 (9th Cir. 2017) ................................................................................... 12

*San Francisco Unified Sch. Dist. ex rel. Contreras v. First Student, Inc.*,
  224 Cal. App. 4th 627 (2014) .................................................................................. 12

*Durcholz v. FKW Inc.*,
  189 F.3d 542 (7th Cir. 1999) ................................................................................... 22

*Hooper v. Lockheed Martin Corp.*,
  688 F.3d 1037 (9th Cir. 2012) ................................................................................. 20

*United States ex rel. Integra Med Analytics LLC v. Providence Health & Servs.*,
  No. CV 17-1694 PSG, 2019 U.S. Dist. LEXIS 125352 (C.D. Cal. July 16,
  2019) .................................................................................................................. 22, 23

*Johnson v. Rank*,
  No. C-84-5979-SC, 1984 U.S. Dist. LEXIS 25134 (N.D. Cal. Dec. 7, 1984) .................... 9, 20

*United States ex rel. Johnson v. Shell Oil*,
  183 F.R.D. 204 (E.D. Tex. 1998) ............................................................................. 23

*United States ex rel. Kelly v. Serco, Inc.*,
  846 F.3d 325 (9th Cir. 2017) ................................................................................... 20

*United States ex rel. Lee v. Corinthian Colleges*,
  655 F.3d 984 (9th Cir. 2011) ................................................................................... 13

*United States ex rel. Modglin v. DJO Glob. Inc.*,
  114 F. Supp. 3d 993 (C.D. Cal. 2015), *aff'd*, 678 F. App'x 594 (9th Cir. 2017) ........ 12, 13, 21

*United States ex rel. Petratos v. Genentech Inc.*,
  855 F.3d 481 (3d Cir. 2017) .............................................................................. 13, 20

MEM. P.&A. SUPP. DEFS. COVENANT CARE'S & MARINER'S JOINT MOT. DISMISS
5925961.8

*United States ex rel. Rizzo v. Horizon Lines*,
No. CV 10-7409 PA, 2013 WL 12131171 (C.D. Cal. Oct. 28, 2013) ................................. 23

*United States ex rel. Silingo v. Mobile Med. Examination Servs.*,
No. SA CV 13-1348 FMO, 2015 U.S. Dist. LEXIS 186860 (C.D. Cal. Sep. 29,
2015), *rev'd on other grounds, United States ex rel. Silingo v. Wellpoint, Inc.*,
895 F.3d 619 (9th Cir. 2018)................................................................................................. 22

*In re Stac Elecs. Sec. Litig.*,
89 F.3d 1399 (9th Cir. 1996) ................................................................................................. 11

*State v. Altus Fin.*,
116 P.3d 1175 (Cal. 2005) ...................................................................................................... 12

*United States v. Kinetic Concepts, Inc.*,
No. CV 08-01885-BRO, 2017 U.S. Dist. LEXIS 221777 (C.D. Cal. Mar. 6,
2017)......................................................................................................................................... 21

*Ebeid ex rel. United States v. Lungwitz*,
616 F.3d 993 (9th Cir. 2010)................................................................................... 11, 12, 14

*United States v. Somnia, Inc.*,
339 F. Supp. 3d 947 (E.D. Cal. 2018) .................................................................................. 12

*United States v. United Healthcare Ins. Co.*,
848 F.3d 1161 (9th Cir. 2016) ............................................................................................... 13

*United States v. Vandewater Int'l*,
No. 2:17-cv-04393-RGK-KS, 2019 U.S. Dist. LEXIS 222655 (C.D. Cal. Sep. 3,
2019)................................................................................................................................... 22, 23

*Universal Health Servs., Inc. v. United States ex rel. Escobar*,
136 S. Ct. 1989 (2016) ........................................................................................................... 20

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003)............................................................................................... 12

*W. Mining Council v. Watt*,
643 F.2d 618 (9th Cir. 1981)................................................................................................. 11

**Statutes**

31 U.S.C.
§ 3729(a) ..................................................................................................... 6, 12, 20, 21

41 U.S.C.
§ 1320a-7b(b) ................................................................................................ 14, 16, 20

5925961.8

42 U.S.C.
   §§ 1395 *et seq.* ................................................................................................. 8
   §§ 1396 *et seq.* ................................................................................................. 8

Cal. Gov't Code
   § 12651(a) ............................................................................................... 21, 22
   § 12652(d)(3)(A) ............................................................................................ 23

Cal. Welf. & Inst. Code
   §§ 14000 *et seq.* ............................................................................................. 8
   § 14005.7(b) .................................................................................................... 8
   § 14126.02(b) .................................................................................................. 8

**Other Authorities**

42 C.F.R.
   § 435.832(c)(4)(ii) ......................................................................................... 9

Fed. R. Civ. P.
   Rule 9(b)............................................................................................... *passim*
   Rule 12(b)(6) ....................................................................................... *passim*

Cal. Code Regs., tit. 22
   § 51480(a) ................................................................................... 11, 16, 19
   § 51501 ........................................................................................... 11, 16

Case No. 1:17-CV-01757-LJO-SAB

MEM. P.&A. SUPP. DEFS. COVENANT CARE'S & MARINER'S JOINT MOT. DISMISS

5925961.8

Defendants Covenant Care California, LLC ("Covenant Care") and Mariner Health Care Management Company ("Mariner") contend that Relator Thomas Turner's First Amended Complaint ("FAC") (ECF No. 7) fails to plead fraud with particularity, fails to state any cognizable claim for relief under the Federal False Claims Act ("FCA"), 31 U.S.C. § 3729(a)(1)(A) – (C) & (G), and the California False Claims Act ("CFCA"), Cal. Gov't Code § 12651(a)(1) – (3) & (8), and presents claims that are barred under the public disclosure bar.

# I.    **INTRODUCTION**

After the federal and California state governments declined to intervene in this qui tam action following an investigation that spanned more than a year and a half, Relator has opted to press on with his FAC. To call Relator Thomas's allegations concerning Covenant Care and Mariner scant is generous—across the 90 paragraphs of his FAC, Relator only names Covenant Care and Mariner in three paragraphs, and each allegation is either unremarkable or conclusory. For each, Relator alleges their corporate form, management or operation of skilled nursing facilities ("SNFs") in California, and makes a conclusory allegation of discriminatory billing agreements:

> 13. Covenant Care . . . is a California limited liability corporation headquartered in Aliso Viejo, California. Covenant [Care] manages about 30 SNFs in California and entered into discriminatory billing agreements with Joerns.

> 14. Mariner . . . is a Delaware corporation. Mariner operates 19 SNFs in Northern and Southern California and entered into discriminatory billing agreements with Joerns.

There are simply no other allegations naming Mariner. Covenant Care is only mentioned one other time, in the "Introduction" section of the FAC:

> 2. This is a classic 'swapping' scheme in which Dynamic and Joerns' kickbacks took the form of deep discounts to certain patient populations . . . . to induce SNFs to refer to them higher paying business. These discounts padded the profits of various SNFs, including Covenant Care . . . , Plum Healthcare Group, LLC, and Cambridge Healthcare Services.

Beyond this, the FAC makes allegations concerning SNFs generally, and vague allegations concerning "Defendants" writ large. Defendants, however, include four competitors that allegedly manage or operate SNFs in California, and Relator makes no allegations of concerted conduct among these competitors.

5925961.8

Based on the foregoing allegations, Relator purports to state eight causes of action against Covenant Care and Mariner. Moreover, each of these causes of action sounds in fraud and is thus subject to the heightened pleading requirements under Rule 9(b) of the Federal Rules of Civil Procedure. Simply stated, all allegations are about other defendants or a nebulous, generalized purported scheme where (all or some) Defendants were working together to defraud the Medicaid program in California and perhaps Medicare. The complete dearth of specific allegations results in a wholly inadequate pleading.

Leave to amend is inappropriate, because the FAC's legal theories are fundamentally flawed and cannot be salvaged regardless of what facts Relator adds. First, the anti-kickback statute is a criminal statute, which the Relator has no jurisdiction to pursue. Second, despite alleging that there were kickbacks in the form of discounts between either (or both?) Dynamic and Joerns on one side and a SNF (all SNFs?) Just some?) on the other side that induced Medicare business, Relator has not gone the further step of alleging that any SNF, much less Mariner and Covenant Care, submitted any false claim to the government due to the taint of a purported kickback from Joerns or Dynamic. In fact, Relator makes no allegations at all concerning any Defendant's Medicare claims that could be infected by any purported kickback. Third, Relator's argument that "steep discounts" from Dynamic and Joerns "induced the referral of . . . Medicare business" is in direct contradiction to Relator's allegation that the "discounted price of between $3 and $6 per day" was in fact extended to Medicare business. *Compare* FAC ¶ 33 *with* ¶ 47. It defies logic that a discount could induce business on a line that receives the same discount.

The other major theory of the complaint – that Medi-Cal's low-price rules were violated – does not implicate Covenant Care, Mariner, or any of the other SNF Defendants. SNFs do not submits claims to Medi-Cal for mattresses. As a result, Relator does not make any serious attempt to allege the SNFs would be liable for Joerns and Dynamic allegedly billing Medi-Cal more than they charge other payors.

Relator has not pleaded a cause of action against Covenant Care and Mariner. This motion

5925961.8

should be granted without leave for Relator to amend as to Covenant Care and Mariner.[1]

## II.     STATUTORY CONTEXT

The two government programs at issue here are Medicare, the federal health insurance program for the elderly and the disabled, 42 U.S.C. §§ 1395 *et seq.*, and Medicaid, the joint federal and state health insurance program for the medically indigent, 42 U.S.C. §§ 1396 *et seq.* California's Medicaid Program is called "Medi-Cal." Cal. Welf. & Inst. Code §§ 14000 *et seq.*

SNFs are reimbursed by Medicare Part A for post-hospitalization skilled nursing and rehabilitation services for up to 100 days per "spell of illness." 42 U.S.C. § 1395d(a)(2)(A). Rehabilitation services are paid a per-diem rate, which is case-mix adjusted to reflect the relative resource intensity that would typically be associated with a given patient's clinical condition, as identified through the resident assessment process. RJN Ex. A, §§ 10.1, 30. Durable medical equipment ("DME"), which includes items such as specialty beds and mattresses, rendered to Part A residents of a SNF is not separately payable. *Id.*

SNFs are reimbursed by Medi-Cal for skilled nursing and rehabilitation services using a cost-based reimbursement methodology. Cal. Welf. & Inst. Code § 14126.02(b). Generally, Medi-Cal reimburses SNFs for the full cost of eligible beneficiaries' care at a capitated rate. FAC ¶ 23. However, some individuals are only eligible for Medi-Cal benefits during months in which they meet their "share of costs" ("SOC"). Cal. Welf. & Inst. Code § 14005.7(b).

The SOC is determined based on the amount of monthly income that is "in excess of the amount required for maintenance" after exempt income is excluded and amounts paid for any premiums are excluded. *Id.* at § 14005.7(b).[2] Under Federal Medicaid regulations, the income that must be disregarded in determining an individual's SOC includes "Necessary medical or

---

[1] Covenant Care and Mariner also join the arguments of Defendants Dynamic Medical Solutions ("Dynamic"), Joerns Healthcare LLC ("Joerns") and Plum Healthcare Group LLC ("Plum"), to the extent applicable to the allegations against Covenant Care and Mariner.

[2] The "amount required for maintenance" is established by the California Department of Health Care Services ("DHCS") and represents "the lowest levels [of income] that reasonably permit medically needy persons to meet their basic needs for food, clothing, and shelter." *Id.* at § 14005.12(a).

MEM. P.&A. SUPP. DEFS. COVENANT CARE'S & MARINER'S JOINT MOT. DISMISS

5925961.8

remedial care recognized under State law but not covered under the State's Medicaid plan, subject to reasonable limits the agency may establish on amounts of these expenses."  42 C.F.R. § 435.832(c)(4)(ii); *see also id.* at § 435.725(c)(4) (corresponding regulation for individuals eligible for Medicaid and receiving specified cash assistance).  In *Johnson v. Rank*, Medi-Cal beneficiaries obtained a preliminary injunction ordering Medi-Cal to comply with these regulations "by providing a mechanism by which patients may deduct from their monthly income all expenditures incurred for medical or remedial care, recognized under state law, but not paid for by Medi-Cal." *Johnson v. Rank*, No. C-84-5979-SC, 1984 U.S. Dist. LEXIS 25134, at *12-13 (N.D. Cal. Dec. 7, 1984).  In the aftermath of *Johnson v. Rank*, DHCS issued guidance on what are commonly known as "*Johnson v. Rank* SOC transactions."  Per DHCS guidance, "Medi-Cal recipients, *not their providers*, can elect to use their . . . SOC funds to pay for necessary, non-covered, medical or remedial-care services, supplies, equipment and drugs (medical services) that are prescribed by a physician and part of the 'plan of care' authorized by the recipient's attending physician."  RJN, Ex. B, p. 3 (emphasis added).

A medical service is considered to be a non-covered benefit if either of the following is true: (1) the medical service is rendered by a non-Medi-Cal provider; or (2) the medical service falls into the category of services for which a Treatment Authorization Request ("TAR") must be submitted and approved before Medi-Cal will pay and either (a) a TAR is not submitted or (b) a TAR is submitted but is denied by Medi-Cal because the service is not considered medically necessary. RJN, Ex. B.  In the event a Medi-Cal beneficiary residing in a SNF spends part of his or her SOC on non-covered medical or medical-care services, the amount spent is subtracted from the beneficiary's SOC amount.  The beneficiary is then responsible for the remaining SOC, after such non-covered amounts are subtracted.  *Id.*

## III.    RELATOR'S ALLEGATIONS

Relator Tom Turner served as the Director of Key Accounts for two of the defendants, Dynamic Medical Systems LLC ("Dynamic") and Joerns Healthcare LLC ("Joerns"), and worked

for Dynamic since 2006.[3]  FAC ¶ 9.  He does not allege that either Mariner or Covenant Care were "Key Accounts" for which he was responsible.  Relator brought the instant case against Dynamic, Joerns, and several competing companies that allegedly manage and/or operate SNFs in California, alleging that they participated in a "swapping" scheme.  While the allegations in the FAC do not clearly describe the scheme and each defendant's purported role in such scheme, Relator appears to allege that Dynamic and Joerns provided kickbacks, in the form of discounted daily rental rates for certain specialty beds and mattresses for certain patient populations "to induce[] the referral of [certain] Medicare business."[4]  FAC ¶ 47.  In other words, Relator alleges that Dynamic and Joerns "swap" discounted prices for the SNFs to grant access for the companies to be able to bill Medicare for other services.  Relator, however, also alleges that Dynamic and Joerns extended these same discounts to Medicare lines of business, *id.*, ¶ 33, and makes no allegations concerning the submission of Medicare claims.  Relator also alleges that, at the same time, Dynamic and Joerns overcharged other patients who were responsible for a SOC for their SNF care, and that "[t]hese overcharges were ultimately borne by the patients, as well as the Medicare and Medi-Cal programs."  *Id.*, ¶ 3.

Relator alleges that Dynamic and Joerns charge three different mattress rental rates: (1) Medi-Cal patients with qualifying wounds: $18.76/day (although, as noted below, it is not entirely clear from Relator's allegation that $18.76 is the rate billed); (2) the "Facility" segment

---

[3] Invacare Corporation ("Invacare") acquired Dynamic in 2011, and later sold the company, along with the rest of Invacare's medical device rental businesses for long-term care facilities to Joerns in or around July 2015.  FAC ¶¶ 10-12.

[4] Although Relator makes the conclusory allegation that "Defendants knowingly submitted false claims for Medicare and Medicaid business that was obtained by means of, and as a result of, illegal kickbacks" in paragraph 57 (*see also* paragraph 61), the only allegation concerning inducement is found in Part IV.F of the FAC (entitled "Defendants' Kickbacks Induced the Referral of Medicare Business"), which consists of paragraph 47.  Paragraph 47 reads in full as follows: "Many SNF patients receive financial assistance from Medicare.  Dynamic and Joerns induced the referral of this Medicare business, in violation of the Anti-Kickback Law, by offering steep discounts to certain SNF patients."  Other references to referrals in the FAC do not reference Medi-Cal business.  *See* FAC ¶ 2 (referencing referrals of "higher paying business"); *id.* ¶ 49 (stating the purpose of the scheme "was to induce SNFs to refer more business").  Relator makes no such allegation concerning any Medi-Cal items or services.

(private insurance, Medicare, and "patients with Medi-Cal and no SOC"): $3-$6/day; and (3) Medi-Cal patients with a SOC: $23/day. FAC ¶ 33. It is not alleged that the different mattress rates are for the same rental terms or for identical or even comparable mattresses.

Based on the price differentials, Relator attempts to allege a scheme by which "the SNFs can pocket the savings from the discounted prices offered by Dynamic and Joerns," FAC ¶ 34, while "patients and the government bear the cost of the overcharges to SOC patients," *id.*, ¶ 35. In particular, Relator alleges that these differential mattress rates constitute discriminatory billing in violation of Medi-Cal's "low-price" rules under 22 California Code of Regulations ("CCR") sections 51480(a) and 51501. FAC ¶ 44-46. And, while Relator has not pleaded a direct cause of action based on Medi-Cal's low-price rules, or sought direct relief based on these allegations, he appears to contend that these violations result in false claims in violation of the Federal and California False Claims Acts. *See* FAC ¶ 44.

## IV.  RELATOR'S FCA CLAIMS FAIL UNDER RULES 9(b) AND 12(b)(6).

### A.  The Pleading Standard Under the False Claims Act

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When deciding a Rule 12(b)(6) motion, the Court must accept the facts pleaded in the complaint as true. The Court, however, is not required to accept "legal conclusions . . . cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *see also Iqbal*, 556 U.S. at 678 (pleadings that "are no more than conclusions . . . are not entitled to the assumption of truth."); *Twombly*, 550 U.S. at 555.

The heightened pleading standard of Rule 9(b) applies to FCA and CFCA actions because they sound in fraud. "Rule 9(b) serves to give defendants adequate notice to allow them to defend against the charge and to deter the filing of complaints as a pretext for the discovery of unknown wrongs . . ." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996) (citations omitted). To satisfy Rule 9(b), Relator must "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." *Ebeid ex*

*rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (citations omitted); *United States ex rel. Modglin v. DJO Glob. Inc.*, 114 F. Supp. 3d 993, 1011 (C.D. Cal. 2015), *aff'd*, 678 F. App'x 594, 595 (9th Cir. 2017) (a relator must "specify the content of the fraudulent representation, the person who made it, when and where the representation was made, and the manner in which it was untrue and misleading, or the circumstances indicating that it was false.") Relator must allege "particular details of a scheme to submit false claims . . . ." *Ebeid*, 616 F.3d at 998–99. "When an entire complaint, or an entire claim within a complaint, is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint or claim" because "insufficiently pled averments of fraud are disregarded." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003); *see also United States v. Somnia, Inc.*, 339 F. Supp. 3d 947, 953 (E.D. Cal. 2018) (same). Thus, a motion to dismiss a claim "grounded in fraud" under Rule 9(b) for failure to plead with particularity is the "functional equivalent" of a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Vess*, 317 F.3d 1107.

### B. Relator Fails to Plead That Defendants Have Submitted Any False Claims (First, Second, Fifth & Sixth Causes of Action).

An entity violates the FCA when it "knowingly presents . . . a false or fraudulent claim for payment." 31 U.S.C. § 3729(a)(1). The "essential elements of [FCA] liability are: (1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 902 (9th Cir. 2017).[5] Relator fails to allege that *any* of these elements are established as to Defendant's conduct.

_____

[5] California courts generally interpret the CFCA by reference to case law interpreting the FCA, given the "very close similarity" between the two. *San Francisco Unified Sch. Dist. ex rel. Contreras v. First Student, Inc.*, 224 Cal. App. 4th 627, 638, (2014); *see also State v. Altus Fin.*, 116 P.3d 1175, 1184 (Cal. 2005) ("[T]he CFCA is patterned on similar federal legislation and it is appropriate to look to precedent construing the equivalent federal act.) (internal quotations and citation omitted); *Bailey v. Gatan, Inc.*, 783 Fed. Appx. 692, 693-94 (9th Cir. 2019) (same). Therefore, the arguments presented herein concerning the FCA apply with equal force to Relator's CFCA claims.

"The False Claims Act . . . focuses on the submission of a claim, and does not concern itself with whether or to what extent there exists a menacing underlying scheme." *U.S. ex rel. Aflatooni v. Kitsap Physician Serv.*, 314 F.3d 995, 1002 (9th Cir. 2002). The FCA only punishes fraud on the government. Thus, to state an FCA claim, Relator must allege the conduct caused "the government to pay out money or forfeit moneys due." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1173 (9th Cir. 2016); *United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 992 (9th Cir. 2011); *United States ex rel. Modglin v. DJO Global*, 114 F. Supp. 3d 993 (C.D. Cal. 2015). To establish any cause of action under the FCA, Relator must establish that Defendant's conduct caused the government to pay money it would not have otherwise paid. A claim, absent falsity that was material to the government's payment decision, is not actionable. *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 492 (3d Cir. 2017).

1. <u>Relator's Scant and Conclusory Allegations Concerning Mariner and Covenant Care Fail to State a Claim under Rule 9(b) and 12(b)(6).</u>

The FAC contains just a smattering of allegations that involve Mariner or Covenant Care. Relator alleges each of the two entities operates skilled nursing facilities ("SNFs") in California and "entered into discriminatory billing agreements with Joerns." FAC ¶¶ 13, 14. In full these allegations read as follows:

> 13. Covenant Care California, LLC ("Covenant") is a California limited liability corporation headquartered in Aliso Viejo, California. Covenant manages about 30 SNFs in California and entered into discriminatory billing agreements with Joerns.

> 14. Mariner Health Care Management Company ("Mariner") is a Delaware corporation. Mariner operates 19 SNFs in Northern and Southern California and entered into discriminatory billing agreements with Joerns.

Finally, the FAC alleges that Dynamic and Joerns provided certain discounts which "padded the profits of various SNFs, including Covenant Care, California, LLC." FAC ¶ 2. (The FAC makes no similar allegation with respect to Mariner.) The FAC contains *no other* allegations specific to Mariner or Covenant Care.

Relator does not allege the substance of a single contract between Mariner, Covenant Care, or any of their respective affiliated SNFs, on the one hand, and Joerns or Dynamic, on the other. FAC ¶ 48. There are no allegations as to the price any Mariner or Covenant Care facility agreed

to or actually charged for any mattress, or any specific factual allegations that would indicate that any Mariner or Covenant Care facility was "participating in the scheme" alleged by Relator. *See* FAC ¶ 41. Rather, it appears that Relator is alleging that SNFs writ large (perhaps including both SNFs operated or managed by Defendants as well as unrelated SNFs) participated in the purported scheme and that Mariner and Covenant Care are therefore liable because they allegedly managed or operated SNFs in California.[6] These conclusory allegations simply fail to pass muster under Rule 12(b)(6) or Rule 9(b). At a minimum, the FAC does not "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." *Ebeid ex rel. United States*, 616 F.3d at 998 (citations omitted). The absence of particularized allegations alone warrant dismissal of all claims against Mariner and Covenant Care.

> ### 2. Relator Fails to Identify Any Conduct by Mariner or Covenant Care That Would Give Rise to a False Claim for Medicare Services.

Even looking past the deficiencies in the FAC's allegations against Mariner and Covenant Care, the FAC makes clear that Relator cannot allege any false claims for Medicare services. It appears that Relator's theory with respect to Medicare claims is that (unidentified) Medicare claims were rendered false because Defendants violated the Anti-Kickback Statute ("AKS"), 41 U.S.C. § 1320a-7b(b). FAC ¶ 47. Relator cannot pursue a direct cause of action under the criminal AKS, but generally alleges that "Defendants' actions violate the Anti-Kickback statute," implying that any such violations rendered Medicare claims submitted by Defendants to be false. FAC ¶ 44; *see also* ¶ 47 (specifying that discounts "induced the referral of . . . Medicare business, in violation of the Anti-Kickback Law"). Therefore, Relator must prove two sets of elements – (1) the elements of the AKS, 42 U.S.C. § 1320a-7b(b), and (2) the elements of the FCA.

The AKS prohibits the knowing and willful solicitation or receipt of remuneration "in

---

[6] The FAC relies heavily on generalized allegations, suggesting that the conduct at issue was a universal practice among all SNFs. *See, e.g.*, FAC ¶¶ 34 ("Because SNFs are paid a capitated rate for Medi-Cal patients in the facility segment, *the SNFs* can pocket the savings from the discounted prices . . . .") (emphasis added); ¶ 41 ("Every month, *SNFs participating in the scheme* . . . .") (emphasis added). Thus, Relator's allegations potentially apply to <u>all</u> SNFs in California, or even across the United States. *See* FAC ¶¶ 31-43.

return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program.". *Id.* at § 1320a-7b(b)(1)(A). It likewise prohibits such remuneration "in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program."[7] *Id.* at § 1320a-7b(b)(1)(B).

Relator does not allege any facts to satisfy the elements of an AKS violation. His kickback allegations center on the notion that some "SNF patients receive financial assistance from Medicare" and that Dynamic and Joerns "induced the referral of this Medicare business" through "steep discounts to certain SNF patients."[8] FAC ¶ 47. But, Relator never alleges that any Defendant submitted any Medicare claims for any mattress or which Medicare claims would or could have been rendered "false" by virtue of this arrangement. The allegations in the FAC concerning Medicare claims and payments are so scant as to preclude Defendants from understanding which Medicare claims could have resulted from any unlawful referrals. The entirety of Relator's allegations concerning Medicare reimbursement are contained in paragraphs 19 and 23, which only address Medicare reimbursement for SNF stays. Relator does not allege that any Defendant referred any Medicare beneficiary to any SNF (let alone a SNF affiliated with Mariner or Covenant Care) for any SNF service (and it defies credulity to suggest that a DME supplier would be in a position refer SNF residents to a SNF), so it seems that these allegations are immaterial. In short, no Medicare claim for a SNF stay could have been rendered "false" by any of the alleged conduct. And Relator simply fails to make any allegations concerning any Medicare claims or payment for any beds. Moreover, Defendant alleges that Dynamic and Joerns extended the same "discounted price of between $3 and $6 per day" for Medicare patients. FAC ¶ 33. The

---

[7] Corresponding provisions address the offering or payment of any such remuneration to induce referrals, *id.* at § 1320a-7b(b)(2), but we do not address those provisions here because the FAC does not allege that any SNF offered or paid any remuneration.

[8] Relator makes no corresponding allegations concerning Medi-Cal referrals and does not appear to advance a theory that any Medi-Cal claim was rendered false by virtue of any purported AKS violation. If advanced, such a theory of liability would fail, as described in footnote 11, *below*.

extension of these supposed "steep discounts" to Medicare patients is directly inconsistent with Relator's apparent theory that Dynamic and Joern's provided discounts on other lines of business to induce Medicare referrals.[9]  In short, Relator does not allege any Medicare claim that was supposedly induced by the alleged conduct of Defendants, let alone that Mariner or Covenant Care "knowingly and willfully" received remuneration from Dynamic and Joerns "in return for" referring any Medicare business.  *See* 42 U.S.C. § 1320a-7b(b).

To the extent there is any attempt to use kickbacks as the basis for purported false Medicare claims, the basic elements of an AKS violation have not been sufficiently pleaded.

### 3.  Relator Fails to Allege a Fraudulent Medi-Cal Billing Scheme.

With respect to Medi-Cal, Relator appears to contend that Medi-Cal claims for mattresses constituted actionable false claims because they failed to comply with Medi-Cal's so-called "low price rules."  FAC ¶ 46 – 47; *see, e.g.* FAC ¶ 57 (alleging charges for beds "that were higher than they were permitted to claim or charge by applicable law").  Although Relator makes generalized allegations concerning all "Defendants' conduct" with respect to Medi-Cal's low-price rules, his specific allegations are expressly confined to Dynamic, Joerns, and Invacare's billing practices. FAC ¶ 46.  Because Mariner and Covenant Care do not submit any claims to Medi-Cal for beds and Relator does not even allege that either Mariner or Covenant Care had any knowledge of Dynamic, Joerns, and Invacare's alleged Medi-Cal billing practices, the allegations concerning section 51480(a) and 51501 of title 22 of the California Code of Regulations expressly do not implicate Mariner or Covenant Care.  Nor does Relator plead anything more than conclusory statements that Defendants conspired to violate the law.  FAC ¶ 70-71; *see supra*, Par IV.F.

Moreover, Defendants Mariner and Covenant Care are unable to discern from the allegations in the FAC any plausible, alternative theory under which any Medi-Claim could be rendered false.  Relator uses the passive voice and imprecise language to give the appearance of alleging fraud while failing to actually state any claim with the requisite particularity.  Indeed, it is

---

[9] Notably, Relator also does not allege that either Mariner or Covenant Care were aware of the prices allegedly charged by Dynamic and Joerns for Medicare claims or the amount Medicare paid Dynamic and Joerns for any such claims.

impossible to tell from a review of the FAC *who* is responsible for *what*, and who *knew* what, let alone how these allegations could plausibly support Mariner or Covenant Care's (or any Defendant's) liability under the FCA or CFCA. These deficiencies in the pleading are particularly acute with respect to Mariner and Covenant Care because the FAC fails to make all but the most general and conclusory allegations concerning these Defendants. *See* discussion, Part IV.B.1, *supra*.

In describing the allegations related to differential billing, for example, Relator's FAC is vague and imprecise, and is internally inconsistent. In particular:

- Relator alleges that "[P]atients with private insurance, Medicare, and patients with Medi-Cal and no SOC *are charged* a discounted price," FAC ¶ 33 (emphasis added), but does not allege which defendant, if any, charged these patients the "discounted price". In fact, Relator seems to contradict the allegation that any of these patients are charged anything when he suggests in the following paragraph that there is no separate payment for patients with Medi-Cal and no SOC because the SNF is "paid a capitated rate." *id.*, ¶ 34.

- Relator alleges that "patients with Medi-Cal and no SOC" are charged a discounted price and "[t]hese fees are not billed directly to Medi-Cal," *id.* ¶ 33, but does not include any further explanation of who these patients are and what "fees" are not being billed. Relator does not reconcile his contradictory allegation that these patients are "charged" a particular price with the allegation that no fees are billed to Medi-Cal.

- Relator alleges that "patients in the SOC segment are charged a 'retail' price," *id.*, but does not allege which defendant, if any, charged these patients the "retail" price.

- Relator alleges that "Dynamic and Joerns may charge $3 per day," *id.* at ¶ 36, but, does not allege *to whom* Dynamic and Joerns is charging the $3 per day.

- Relator alleges that "SOC patients are charged," *id.* at ¶ 38, but, again, fails to allege which defendant, if any, is charging the SOC patients.

- Relator alleges that "Dynamic and Joerns charge three different mattress rental rates," *id.* ¶ 33, but never alleges whether there are different types of mattresses or which types of mattresses are provided to which patients.

- Relator alleges that "Defendants' differential billing," results in Medi-Cal paying an additional amount per patient per month, *id.*, ¶ 39, but does not specify to which defendants he is referring.

- Relator alleges that provider agreements exist between Joerns, Dynamic, and Invacare, on the one hand, and "several SNFs," on the other, "through which they agreed to provide mattresses at discounted daily rates," *id.*, ¶ 48, but does not explain who pays for the mattresses at the "discounted" rates, and under what circumstances. Relator never specifically alleges the terms of any provider agreement between Mariner or Covenant Care and Joerns, Dynamic, or Invacare.

17

While Relator proclaims that "Defendants engaged in a swapping arrangement," without any factual allegations as to who charged what to whom, it is simply impossible to evaluate any such swapping theory, let alone to understand how the conduct complained of could have rendered any Medi-Cal claim false. FAC ¶ 31. First, Defendants only attempt to allege violations of the Anti-Kickback Statute with respect to Medicare claims, FAC ¶ 47, and there is no discernable alternative theory of liability for any Medi-Cal business aside from the flawed argument under Medi-Cal's low-price rules. Second, the factual allegations confuse charges, contractually negotiated rates, and government payment amounts and assume each mattress is identical, making it impossible to discern the relevant facts concerning these claims. Who, for example, pays each of the rates "charged" as set forth in paragraph 33 of the FAC? What amount is *actually* paid? Who is involved in each of these transactions? And, what Medi-Cal claim, if any, is rendered false by this conduct? The FAC is simply too vague to allow a reader to identify a false claim or its source.

The only conduct Relator alleges that comes close to implying a role for a SNF in the purported scheme is Relator's allegations that "SNFs participating in the scheme provide Dynamic and Joerns with a list of their patients, and the payors that are responsible for those patients," on a monthly basis in the "'Share of Cost acknowledgment letter.'" FAC ¶ 41. Relator goes on to allege that Dynamic and Joerns use this information to "differentiate between patients who are responsible for a SOC and those that are not, and charge those patient populations different prices." *Id.* However, Relator fails to describe how this information is anything but benign, or how a SNF should ensure that Dynamic and Joerns properly distinguish between those specialty beds or mattresses that are billable to the SNF versus those that billable to the resident without transmitting such information to Dynamic or Joerns.[10]

---

[10] To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "'entitlement to relief."'" *Id.* at 678; *see also Bell Atl. Corp.*, 550 U.S. at 567-69 (holding that where there is an "obvious alternative explanation" (footnote continued)

MEM. P.&A. SUPP. DEFS. COVENANT CARE'S & MARINER'S JOINT MOT. DISMISS
5925961.8

Indeed, a SNF plays *no role at all* in establishing the amounts charged towards a Medi-Cal recipient's SOC. Rather, a SNF simply serves as an intermediary, tracking the portions of his or her SOC that a resident has paid for non-covered services. *See* RJN, Ex. C, p. 3 (explaining an LTC facility's obligation to track and deduct resident spending on non-covered services for SOC purposes and recognizing that "Medi-Cal recipients, *not their providers*, can elect to use their Share of Cost (SOC) funds to pay for necessary, non-covered, medical or remedial-care services, supplies, equipment and drugs (medical services) . . .") (emphasis added). In describing other SNFs' reactions to the alleged scheme, Relator concedes that SNFs do not set the prices charged to SOC residents for these services and supplies. See FAC ¶¶ 51-52, 54.

Moreover, Relator fails to allege that any SNF Medi-Cal claim could be rendered false based on the conduct alleged. Relator does not allege that any SNF maintains or uses inaccurate SOC records. For example, he does not allege that any SNF records an SOC payment that did not occur or that the records of SOC transactions do not accurately reflect the price paid by the resident. Moreover, he does not (and cannot) allege that the SNFs fail to adhere to Medi-Cal's low-price rules by submitting Medi-Cal claims for SNF services in "in any amount greater or higher than the usual fee charged by the provider to the general public for the same service." Cal. Code Regs., tit. 22, § 51480(a); *see also id.* § 51501. In fact, he makes no material allegations concerning the charges shown on SNF claims to Medi-Cal or the usual fee charged by any SNF to the general public. Nor does he allege that the SNF provides Joerns, Dynamic, or Invacare with inaccurate data or documentation that might be material to any claim these DME providers might submit to Medi-Cal or any other payer.[11] Simply put, Relator fails to plead anything more than

_____

that is legal, the complaint fails to state a claim for relief). The plausible explanation for differentiating the patients is to facilitate proper billing, not perpetrate any purported fraud.

[11] Relator also cannot allege that any discounts rendered any Medi-Cal claim false. Notably, he only states in a conclusory fashion (*see* Part IV.B.1, *supra*) that the alleged "steep discounts" induced referrals of "Medicare business." Even if he had included similar allegations with respect to Medi-Cal business, however, Relator would be unable to allege liability on the part of Mariner or Covenant Care under a kickback theory. The AKS only applies to kickbacks "in return for" or "to induce" referrals for "any item or service for which payment may be made in whole or in part
(footnote continued)

5925961.8

conclusory statements that Defendants conspired to violate the law.  FAC ¶ 70-71; *see supra*, Par IV.F.

4.  Relator Has Not Identified Any False Claims.

For all Relator's efforts to describe a fraudulent billing scheme, Relator fails to allege that Mariner or Covenant Care bear responsibility for the submission of a single false claim.  A false or fraudulent claim is "an essential element" of the FCA and CFCA claims Relator advances.  *United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 335 (9th Cir. 2017) (as to 31 U.S.C. § 3729(a)(1)(A)); *Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037, 1047-48 (9th Cir. 2012) (as to 31 U.S.C. § 3729(a)(1)(B)).  But nowhere does Relator identify a single false claim.  In fact, he does not even allege who submitted any false claim to Medicare or Medi-Cal, if and how that false claim was paid by Medicare or Medi-Cal, what material facts rendered that claim false,[12] and how the various Defendants knew of the falsity of that claim.  Without identifying a single false claim, Relator cannot allege any FCA or CFCA violation.

**C.  Relator Fails to Plead Sufficient Facts to Support Defendants' Knowledge**

Dismissal is also warranted in light of the FAC's conclusory pleading with respect to the knowledge element of the FCA and CFCA.  Relator makes the conclusory allegation that "Defendants and their agents have been aware for years of the aforementioned false billing practice and knowingly permitted such wrongful practices to continue."  FAC ¶ 43.  The FAC,

_____

under a Federal health care program."  42 U.S.C. § 1320a-7b(b).  The *Johnson v. Rank* SOC transactions at issue here, however, involve "medical or remedial care, recognized under state law, but not paid for by Medi-Cal," RJN, Ex. C, p. 3.  Thus, because any mattresses rented by a resident in an SOC transaction is not "an item or service for which payment may be made" under Medi-Cal, Relator cannot allege an actionable kickback concerning any referrals for SOC transactions.  Because Relator cannot allege any referrals for items or services that are payable under Medi-Cal, he cannot amend to allege any Medi-Cal claims that could have been rendered false under the scheme alleged.

[12] To state a claim under the FCA, the Relator must meet a "demanding" materiality standard. *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2003 (2016) ("The materiality standard is demanding.  The False Claims Act is not 'an all-purpose antifraud statute,' . . . or a vehicle for punishing garden-variety breaches of contract or regulatory violations.").  A claim, absent falsity that was material to the Government's payment decision, is not actionable. *United States ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 492 (3d Cir. 2017).

however, contains no factual allegations to support this conclusory statement, particularly with respect to Mariner and Covenant Care (which are only mentioned in three paragraphs of the FAC). Relator's only other references to the FCA's and CFCA's scienter requirements consist solely of restatements of the statutory language in his recitation of the causes of action. FAC ¶¶ 56 – 58, 61 – 63, 66, 74, 78 – 79. Under Rule 12(b)(6), "threadbare recitals of a cause of action's elements, supported by mere conclusory statements" do not have to be accepted as true by a court in ruling on a motion to dismiss. *Iqbal*, 556 U.S. at 663. Relator's allegations consist only of these threadbare recitals and conclusory statements, and thus the FAC does not plausibly allege a knowing violation of the FCA or CFCA. *See also United States ex rel. Modglin v. DJO Glob. Inc.*, 114 F. Supp. 3d 993, 1024 (C.D. Cal. 2015); *aff'd United States v. DJO Glob., Inc.*, 678 F. App'x 594, 595 (9th Cir. 2017) ("No facts alleged by relator[] give rise to a reasonable inference that defendants were on notice they were filing false claims.")

> **D.  Relator Fails to Plead Any Facts to Support a Reverse FCA Claim or a Claim Under Government Code Section 12651(a)(8). (Third & Seventh Causes of Action)**

Relator also failed to include <u>any</u> allegations to support his causes of action for reverse false claims beyond a summary recitation of the respective elements of such a claim. *See* FAC ¶¶ 66 – 68, 83 – 86. In cases, such as this one, in which a relator "alleges a reverse false claim by claiming that the defendant fraudulently overcharged the government and then failed to repay the government, courts have consistently dismissed the claim as redundant of false statement and presentment claims." *United States v. Kinetic Concepts, Inc.*, No. CV 08-01885-BRO (AGRx), 2017 U.S. Dist. LEXIS 221777, at *40 (C.D. Cal. Mar. 6, 2017) (citations omitted). Otherwise, "whenever there is a violation under § 3729(a)(1)(A) . . . there would also be a violation of § (a)(1)(G) . . . which is not the intent of the statute." *Id.* at 40–41. Here, Relator has alleged no facts that would support a theory that Covenant Care and Mariner failed to repay the government, and this cause of action should be dismissed.

In particular, the FAC includes no allegations as to the existence of an obligation to pay or transmit money or property to the government, let alone the knowing use of a false record or statement material to such an obligation or the knowing and improper avoidance of such an

obligation. Rather, Relator simply summarizes the elements of a reverse false claim in paragraph 66 followed by the conclusory allegations that "Defendants knew that they received more money than they were entitled to, and avoided their obligation to return the excess money to the United States." Similarly, Relator simply recites the elements of the equivalent CFCA claim, Cal. Gov't Code § 12651(a)(8), and fails to allege any facts establishing that Mariner or Covenant Care were the "beneficiary of an inadvertent submission of a false claim, subsequently discovered the falsity of the claims, and failed to disclose the false claims to the State of California within a reasonable time after discovery" thereof. *See* FAC ¶ 83.

E. **Relator Fails to Plead Any Facts to Support a Conspiracy Claim (Fourth & Eighth Causes of Action).**

Finally, the FAC contains no allegations whatsoever that could support Relator's conspiracy claim, except for a bare recitation of the elements of conspiracy. FAC ¶ 70 ("Defendants conspired with each other and various other SNFs to commit the violations alleged in this complaint . . ."); *see also* FAC ¶¶ 71, 88 – 89. These bare-bones allegations lack the particularity required to allege conspiracy under the FCA.

"Conspiracy claims under the FCA must satisfy the requirements of Rule 9(b)." *United States v. Vandewater Int'l*, No. 2:17-cv-04393-RGK-KS, 2019 U.S. Dist. LEXIS 222655, at *12 (C.D. Cal. Sep. 3, 2019); *see also United States ex rel. Silingo v. Mobile Med. Examination Servs.*, No. SA CV 13-1348 FMO (SHx), 2015 U.S. Dist. LEXIS 186860, at *28 (C.D. Cal. Sep. 29, 2015), *rev'd on other grounds, United States ex rel. Silingo v. Wellpoint, Inc.*, 895 F.3d 619 (9th Cir. 2018) (concluding that the relator's conspiracy allegations "lack the particularity required by Rule 9(b)"). Under the general civil conspiracy principles that apply to the conspiracy provision of the FCA, "Relator 'must show that the conspiring parties reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful agreement.'" *United States ex rel. Integra Med Analytics LLC v. Providence Health & Servs.*, No. CV 17-1694 PSG (SSx), 2019 U.S. Dist. LEXIS 125352, at *66 (C.D. Cal. July 16, 2019) ("*Integra*") (quoting *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999)); *see also Durcholz v. FKW Inc.*, 189 F.3d 542, 545 n.3 (7th Cir. 1999) (holding "the FCA provides for conspiracy claims . . .

and general civil conspiracy principles apply"); *United States ex rel. Rizzo v. Horizon Lines*, No. CV 10-7409 PA (AJWX), 2013 WL 12131171, at *4 (C.D. Cal. Oct. 28, 2013) ("General civil conspiracy principles apply to FCA conspiracy claims."). Moreover, specific intent is required to establish a conspiracy claim under the FCA. *United States ex rel. Johnson v. Shell Oil*, 183 F.R.D. 204, 208 (E.D. Tex. 1998); *see also Integra*, 2019 U.S. Dist. LEXIS 125352, at *66 ("For conspiracy, reckless disregard is not enough.").

Relator does not allege the existence of any agreement between Mariner or Covenant Care and any other Defendant, let alone an agreement to unlawfully submit false claims to Medicare or Medi-Cal. Rather, the FAC wholly fails to set forth any factual allegations which would support a plausible inference that Mariner and/or Covenant Care agreed with Dynamic or Joerns to any discriminatory pricing scheme and jointly intended to submit false claims to Medicare or Medi-Cal. *See, e.g.*, *Vandewater Int'l*, No. 2:17-cv-04393-RGK-KS, 2019 U.S. Dist. LEXIS 222655, at *15 (C.D. Cal. Sept. 3, 2019) (dismissing the FAC where it failed to "set forth any factual allegations which would support a plausible inference that [Defendants] agreed with Chinese manufacturers to evade antidumping duties"); *Integra*, 2019 U.S. Dist. LEXIS 125352, at *66 ("As the alleged object of this conspiracy was to submit false claims to Medicare, Relator must show that Defendants jointly intended to do so."). Without any particular allegations concerning the joint intent to submit false claims or a specific intent to conspire, the FAC fails to state a conspiracy claim with particularity under the FCA or CFCA.

## V.     PUBLIC DISCLOSURE BAR

Mariner and Covenant Care hereby join those portions of Defendants Dynamic, Joerns, and Plum's Memoranda of Points and Authorities concerning the public disclosure bar. Although neither Mariner nor Covenant Care was party to the audit appeals that are the basis on which the CFCA's public disclosure bar applies in this case, the doctrine nonetheless operates to bar Relator's claims against these Defendants. Under the plain text of the CFCA, a defendant need not have been a party to a hearing or audit in order for the public disclosure bar to apply. Rather, the relevant question is whether "substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed." Cal. Gov't Code § 12652(d)(3)(A). The entirety of

5925961.8

1   Relator's swapping allegations were disclosed in prior audit appeals, and the absence of Relator's

2   independent knowledge of any relevant facts is laid bare by the Relator's wholesale failure to

3   allege any particularized conduct on the part of Mariner and Covenant Care.

4   **VI.     CONCLUSION**

5          Based on the foregoing, Defendants Mariner and Covenant Care respectfully asks this

6   Court to dismiss Relator's claims against Mariner and Covenant Care with prejudice.

7   Dated:  January 29, 2020                    HOOPER, LUNDY & BOOKMAN, P.C.

8

9                                                    By:     _____/s/ Scott J. Kiepen_____

10                                                          SCOTT J. KIEPEN
                                                          ANDREW H. STRUVE

11                                                          BRIDGET A. GORDON
                                                 Attorneys for Defendant Covenant Care California, LLC

12

13  Dated:  January 29, 2020                    HOOPER, LUNDY & BOOKMAN, P.C.

14                                                    _____/s/ Katrina A. Pagonis_ (as authorized on January
                                                 By:  29, 2020)

15                                                          JOSEPH R. LAMAGNA

16                                                          KATRINA A. PAGONIS
                                                          STEPHANIE A. GROSS

17                                                 Attorneys for Defendant Mariner Health Care
                                                 Management Company

18

19

20

21

22

23

24

25

26

27

28