**MORGAN, LEWIS & BOCKIUS LLP**
Scott A. Memmott, *pro hac vice*
scott.memmott@morganlewis.com
Howard J. Young, *pro hac vice*
howard.young@morganlewis.com
Kayla Stachniak Kaplan, *pro hac vice*
kayla.kaplan@morganlewis.com
Jonelle Saunders, *pro hac vice*
jonelle.saunders@morganlewis.com
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
Tel:    +1.202.739.3000
Fax:    +1.202.739.3001

**MORGAN, LEWIS & BOCKIUS LLP**
Brian M. Jazaeri, Bar No. 221144
brian.jazaeri@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA  90071-3132
Tel:    +1.213.612.2500
Fax:    +1.213.612.2501

*Attorneys for Defendants*
*Dynamic Medical Systems, LLC and*
*Joerns Healthcare, LLC*

## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES EX REL. TURNER,** *et al.*, | Case No. 1:17-CV-01757-LJO-SAB |
| Plaintiffs, | **BRIEF IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT BY DEFENDANTS DYNAMIC MEDICAL SYSTEMS, LLC AND JOERNS HEALTHCARE, LLC** |
| v. | |
| **DYNAMIC MEDICAL SYSTEMS, LLC,** *et al.*, | Date:      March 18, 2020 |
| Defendants. | Time:      8:30 AM |
| | Ctrm.:     4 (7th Floor) |
| | Judge:     Lawrence J. O'Neill |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS DMS' & JOERNS' MOTION
TO DISMISS BRIEF 1:17-CV-01757-LJO-SAB

# TABLE OF CONTENTS

Page

Table of Authorities ........................................................................................................ ii

Introduction ..................................................................................................................... 1

Background ....................................................................................................................... 2

Argument .......................................................................................................................... 5

    A.    The Complaint Does Not Plead Fraud with Particularity Under Rule 9(b) .................... 5

    B.    The Complaint Fails to State a Claim Under Rule 12(b)(6) ............................................ 9

          1.    No Claims and No Involvement of Government Funds Are Plausibly Alleged ................................................................................ 10

          2.    The Ambiguity of the Medi-Cal "Low Price Rules" Undermines Scienter ......................................................................................... 13

          3.    Discounts Alone Are Not Illegal Kickbacks ........................................ 16

          4.    The Complaint Does Not Allege Materiality ........................................ 18

          5.    The Reverse False Claim Allegations Are Redundant ......................... 19

          6.    No Elements of Conspiracy Have Been Alleged ................................. 19

    C.    The CFCA Claims Are Impermissibly Based on Public Disclosures ............................. 20

          1.    The Complaint Allegations Are Substantially the Same as Those Dislcosed in Medi-Cal Audits and Administrative Hearings ................................ 21

          2.    Relator Is Not an "Original Source" ................................................ 24

Conclusion ...................................................................................................................... 25

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

i

DEFENDANTS DMS' & JOERNS' MOTION
TO DISMISS BRIEF 1:17-CV-01757-LJO-SAB

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*A-1 Ambulance Serv., Inc. v. California,*
202 F.3d 1238 (9th Cir. 2000) ........................................................................21

*Amphastar Pharms. Inc. v. Aventis Pharma SA,*
856 F.3d 696 (9th Cir. 2017) ..........................................................................24

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)...........................................................................................9

*Balistreri v. Pacifica Police Dep't,*
901 F.2d 696 (9th Cir. 1990) .............................................................................9

*Chavez v. United States,*
683 F.3d 1102 (9th Cir. 2012) ...........................................................................9

*Ebeid ex rel. United States v. Lungwitz,*
616 F.3d 993 (9th Cir. 2010) .............................................................................6

*Glen Holly Entm't, Inc. v. Tektronix, Inc.,*
100 F. Supp. 2d 1086 (C.D. Cal. 1999) .............................................................9

*Godecke v. Kinetic Concepts, Inc.,*
937 F.3d 1201 (9th Cir. 2019) ....................................................................5, 6, 9

*Gonzalez v. Planned Parenthood of Los Angeles,*
759 F.3d 1112 (9th Cir. 2014) .........................................................................16

*Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson,*
559 U.S. 280 (2010)..........................................................................................25

*Hagood v. Sonoma Cnty. Water Agency,*
81 F.3d 1465 (9th Cir. 1996) ......................................................................22-23

*Katzir's Floor & Home Design, Inc. v. M–MLS.com,*
394 F.3d 1143 (9th Cir. 2004) ...........................................................................8

*Kearns v. Ford Motor Co.,*
567 F.3d 1120 (9th Cir. 2009))..........................................................................5

*Kisor v. Wilkie,*
139 S. Ct. 2400 (2019)......................................................................................14

*Knudsen v. Sprint Commc'ns Co.,*
No. C13-04476 CRB, 2016 WL 4548924 (N.D. Cal. Sept. 1, 2016) ...............19

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

ii

DEFENDANTS DMS' & JOERNS' MOTION
TO DISMISS BRIEF 1:17-CV-01757-LJO-SAB

*People v. Duz-Mor Diagnostic Lab., Inc.*,
    80 Cal. Rptr. 2d 419 (Cal. Ct. App. 1998)...................................................................15

*Physicians and Surgeons Labs., Inc. v. Dep't of Health Servs.*,
    8 Cal. Rptr. 2d 565 (Cal. Ct. App. 1992)...................................................................15

*Prather v. AT&T, Inc.*,
    847 F.3d 1097 (9th Cir. 2017)...................................................................................21

*Rainwater v. United States*,
    356 U.S. 590 (1958)...................................................................................................10

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
    442 F.3d 741 (9th Cir. 2006).....................................................................................22

*Ryan v. Microsoft Corp.*,
    147 F. Supp. 3d 868 (N.D. Cal. 2015).........................................................................9

*Safeco Ins. Co. of Am. v. Burr*,
    551 U.S. 47 (2007)..............................................................................................14, 16

*Satellite Broad. Co. v. F.C.C.*,
    824 F.2d 1 (D.C. Cir. 1987).......................................................................................14

*Sharp Coronado Hosp. v. Bonta*,
    No. C045021, 2004 WL 1880132 (Cal. Ct. App. Aug. 24, 2004).......................14, 15

*State ex rel. Standard Elevator Co. v. W. Bay Builders, Inc.*,
    130 Cal. Rptr. 3d 99 (Cal. Ct. App. 2011)................................................................23

*State v. Pac. Bell Tel. Co.*,
    48 Cal. Rptr. 3d 427 (Cal. Ct. App. 2006)................................................................21

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007).......................................................................................8

*United States ex rel. Aflatooni v. Kitsap Physicians Serv.*,
    314 F.3d 995 (9th Cir. 2002).....................................................................................10

*United States ex rel. Bly-Magee v. Premo*,
    470 F.3d 914 (9th Cir. 2006).....................................................................................22

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011).....................................................................................5

*United States ex rel. Calva v. Impac Secured Assets Corp.*,
    No. SACV161983JVSJCGX, 2018 WL 6016152 (C.D. Cal. June 12, 2018)............23

*United States ex rel. Dan Abrams Co. v. Medtronic, Inc.*,
    No. LACV1501212JAKASX, 2018 WL 5266863 (C.D. Cal. June 7, 2018)............17

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

*United States ex rel. Devlin v. California*,
  84 F.3d 358 (9th Cir. 1996) ............................................................................................25

*United States ex rel. Galmines v. Novartis Pharm. Corp.*,
  88 F. Supp. 3d 447 (E.D. Pa. 2015) ................................................................................24

*United States ex rel. Gough v. Eastwestproto, Inc.*,
  No. CV 14-465 DMG (SHX), 2018 WL 6929332 (C.D. Cal. Oct. 24, 2018) ............ 7, 8, 17, 19

*United States ex rel. Greenfield v. Medco Health Sols., Inc.*,
  880 F.3d 89 (3d Cir. 2018) ..............................................................................................17

*United States ex rel. Grubbs v. Kanneganti*,
  565 F.3d 180 (5th Cir. 2009)) ...........................................................................................6

*United States ex rel. Hagood v. Sonoma Cnty. Water Agency*,
  929 F.2d 1416 (9th Cir. 1991) ..........................................................................................16

*United States ex rel. Hartpence v. Kinetic Concepts, Inc.*,
  No. CV081885GHKAGRX, 2016 WL 8919455 (C.D. Cal. Nov. 16, 2016) .........................22

*United States ex rel. Hendow v. Univ. of Phoenix*,
  461 F.3d 1166 (9th Cir. 2006) .....................................................................................10, 14

*United States ex rel. Karp v. Ahaddian*,
  No. CV 16-500 PSG, 2018 WL 6333669 (C.D. Cal. May 23, 2018) ..................................7

*United States ex rel. Kraft v. CalPortland Constr.*,
  No. CV1604479JFWSSX, 2018 WL 6262877 (C.D. Cal. Mar. 9, 2018) .........................18-19

*United States ex rel. Krawitt v. Infosys Techs. Ltd., Inc.*,
  372 F. Supp. 3d 1078 (N.D. Cal. 2019) ............................................................................14

*United States ex rel. Marion v. Heald Coll., LLC*,
  No. 5:12-CV-02067-PSG, 2015 WL 4512843 (N.D. Cal. July 24, 2015) ..........................20

*United States ex rel. Mateski v. Raytheon Co.*,
  745 F. App'x 49 (9th Cir. 2018) ........................................................................................6

*United States ex rel. McGrath v. Microsemi Corp.*,
  690 F. App'x 551 (9th Cir. 2017) ......................................................................................16

*United States ex rel. Modglin v. DJO Glob. Inc.*,
  114 F. Supp. 3d 993 (C.D. Cal. 2015) ...............................................................................7

*United States ex rel. Oliver v. Parsons Co.*,
  195 F.3d 457 (9th Cir. 1999) ............................................................................................13

*United States ex rel. Purcell v. MWI Corp.*,
  807 F.3d 281 (D.C. Cir. 2015) ..........................................................................................14

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

iv

*United States ex rel. Solis v. Millennium Pharm., Inc.*,
  885 F.3d 623 (9th Cir. 2018) ................................................................. 6, 17

*United States v. Ctr. for Diagnostic Imaging, Inc.*,
  787 F. Supp. 2d 1213 (W.D. Wash. 2011) ................................................ 18

*United States v. Kinetic Concepts, Inc.*,
  No. CV0801885BROAGRX, 2017 WL 2713730 (C.D. Cal. Mar. 6, 2017)........ 19

*United States v. Neifert-White Co.*,
  390 U.S. 228 (1968)............................................................................ 10

*United States v. Safran Grp.*,
  No. 15-CV-00746-LHK, 2017 WL 235197 (N.D. Cal. Jan. 19, 2017) ............ 8, 9

*United States v. Spencer*,
  667 F. App'x 980 (9th Cir. 2016) ............................................................. 7

*United States v. Vista Hospice Care, Inc.*,
  No. 3:07-cv-00604-M, 2016 WL 3449833 (N.D. Tex. June 20, 2016) .......... 10

*United States v. Zatica*,
  244 F. App'x 799 (9th Cir. 2007) ........................................................... 16

*Universal Health Servs. v. United States ex rel. Escobar*,
  136 S. Ct. 1989 (2016).........................................................12-13, 16, 18

**STATUTES**

31 U.S.C. § 3729(a) .............................................................................. 12

31 U.S.C. § 3729(b) .............................................................................. 11

31 U.S.C. § 3730(e) .............................................................................. 21

31 U.S.C. § 3731(b) ................................................................................ 8

42 U.S.C. § 1301 *et seq.* ........................................................................ 2

42 U.S.C. § 1320a-7b(b) ..................................................................... 11, 17

42 U.S.C. § 1320a-7b(g) ........................................................................ 10

42 U.S.C. § 1396 *et seq.* ........................................................................ 2

2012 Cal. Stat., Ch. 647, Sec. 3 ............................................................. 21

Cal. Gov't Code § 12650(b) .................................................................... 11

Cal. Gov't Code § 12652(d) ........................................................20-21, 22, 24

Cal. Gov't Code § 12654(a).......................................................................8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

v

DEFENDANTS DMS' & JOERNS' MOTION
TO DISMISS BRIEF 1:17-CV-01757-LJO-SAB

Cal. Welf. & Inst. Code § 14063 ..................................................... 3

**REGULATIONS**

42 C.F.R. § 435.832 ............................................................... 12

Cal. Code Regs. tit. 22, § 50000 *et seq.* ...................................... 3

Cal. Code Regs. tit. 22, § 51321 .................................................. 3

Cal. Code Regs. tit. 22, § 51480 ...................................... 13, 15, 22

Cal. Code Regs. tit. 22, § 51501 ...................................... 13, 15, 22

Cal. Code Regs. tit. 22, § 51521 .................................................. 3

**RULES**

Fed. R. Civ. P. 8(a) ................................................................ 5

Fed. R. Civ. P. 9(b) ........................................................... *passim*

Fed. R. Civ. P. 12(b)(6) ...................................................... *passim*

**OTHER AUTHORITIES**

59 Fed. Reg. 1662 (Jan. 12, 1994) ............................................ 12

73 Fed. Reg. 56,832 (Sept. 30, 2008) ........................................ 17

HHS OIG, Advisory Opinion No. 99-3 ......................................... 17

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

vi

DEFENDANTS DMS' & JOERNS' MOTION
TO DISMISS BRIEF 1:17-CV-01757-LJO-SAB

Defendants Dynamic Medical Systems, LLC ("DMS") and Joerns Healthcare, LLC ("Joerns"), by and through their attorneys, respectfully submit this brief in support of their Motion to Dismiss the First Amended Complaint (Dkt. 7, "Complaint") of Relator Thomas Turner. The Complaint should be dismissed, with prejudice, in its entirety pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) because it fails to plead fraud with particularity, fails to state any cognizable claim for relief, and presents allegations that are barred under the California False Claims Act as public disclosures.

## INTRODUCTION

Having spent over twelve years at the helm of the specialty mattress rental business of DMS and Joerns as the Director of Key Accounts, responsible for setting prices and negotiating provider agreements with skilled nursing facilities ("SNFs"), Relator has now alleged that these very same prices and provider agreements amount to fraud on the United States and California. Relator's allegations fail to state any violation of either the federal False Claims Act ("FCA") or the California False Claims Act ("CFCA") and certainly fail to do so with any of the particularity demanded by the Federal Rules of Civil Procedure. Indeed, Relator's allegations fail to identify a single claim or payment request to Medi-Cal (the applicable government program).

This high-level-executive-turned-relator alleges two different, but related, "schemes" supposedly perpetrated by DMS, Joerns, and a handful of SNF operators: (1) a "differential billing practices" scheme, in which different patients were charged different amounts for mattress rentals, in supposed violation of Medi-Cal "low price rules," and (2) a "swapping" scheme, in which Defendants provided discounts to certain SNF patients in order to induce referrals of higher paying patients, in supposed violation of the Anti-Kickback Statute ("AKS"). These allegations lack specificity and are devoid of any details as to the individuals who allegedly perpetrated these schemes, precisely when they were carried out, or even how the claims were billed. But the fundamental and fatal flaw for both schemes is Relator's failure to allege that any claim was actually submitted to Medicare or Medi-Cal as part of these schemes or any reliable indicia that such claims were submitted. Without a claim, there can be no false claim.

This failure to allege a claim cannot be overcome by re-pleading. Relator's allegations

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

center around higher prices being charged to Share of Cost ("SOC") patients – those individuals who must pay a certain amount of their personal funds out-of-pocket before they qualify to have Medi-Cal pay for medical items or services that they receive. As provided for under California law, these patients can use their SOC funds to pay for non-covered but still medically necessary devices and services, including the specialty mattress rentals raised at issue here. Because the alleged higher prices involve *patient* self-pay funds, not Medi-Cal or Medicare funds, they can never support an allegation of a false claim for *government* money under the FCA or CFCA.

Relator's allegations also fail to state a claim for a host of other reasons – including that the Medi-Cal "low price rules" supposedly violated are too ambiguous and open to other reasonable interpretations to support the necessary scienter and that no link can be shown between the discounts offered and the alleged referrals. Moreover, the very pricing issues on which Relator builds his allegations already were discovered by and known to the State of California as the result of routine Medi-Cal audits, years before the Complaint was filed. A relator who is not the original source cannot bring a CFCA action based on publicly disclosed allegations. The Complaint should be dismissed with prejudice.

## BACKGROUND

DMS and Joerns are durable medical equipment suppliers, providing, among other things, therapeutic support surfaces and specialty mattresses for patients receiving care in SNFs. ¶¶ 10-11.[1] DMS' and Joerns' specialty mattresses are used to treat and prevent pressure sores and wounds in patients, including those covered by Medicare and state-sponsored Medicaid plans. *Id.*

Medicare is a federal health insurance program that covers, *inter alia*, individuals older than 65, including certain care in SNFs. 42 U.S.C. § 1301 *et seq.* Medicaid is a healthcare assistance program, including for certain groups of individuals receiving care in SNFs, that is jointly funded by the states and the federal government and administered by the states according to federal guidelines. *See* 42 U.S.C. § 1396 *et seq.* Each state enters into a state plan with the federal government describing how it will administer its Medicaid program in accordance with those

---

[1] All ¶ references are to paragraphs of the Complaint, unless otherwise specified. The Complaint is attached as Exhibit A to the January 29, 2020 Declaration of Scott A. Memmott.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2

DEFENDANTS DMS' & JOERNS' MOTION
TO DISMISS BRIEF 1:17-CV-01757-LJO-SAB

federal guidelines. California's Medicaid program is called Medi-Cal. *See* Cal. Welf. & Inst. Code § 14063; Cal. Code Regs. tit. 22, § 50000 *et seq*. The California Department of Health Care Services ("DHCS") administers the Medi-Cal program.

Under Medi-Cal, "therapeutic anti-decubitus support mattresses and bed products" rentals are covered for patients with "severe pressure sores (decubitus ulcers) or a documented history of recurrent pressure sores." Exh. B[2] (Medi-Cal Provider Manual, Part 2 – Durable Medical Equipment (DME): Therapeutic Anti-Decubitus Mattresses and Bed Products (Oct. 2019)), at 2 (citing Cal. Code Regs. tit. 22, §§ 51321, 51521). Pressure ulcers are classified in "stages" from I to IV based on the depth of soft tissue damage, with Stage I being the least severe and stage IV being the most severe. *Id.* at 6.

Medi-Cal and Medicare categorize "pressure sore products" – *i.e.*, therapeutic support surfaces and specialty mattresses – into three groups, with different criteria of medical necessity in order to be covered and billed to Medi-Cal or Medicare. Under Medi-Cal:

- Group I (for static overlays, static mattresses, and alternating pressure pads with pump) requires documentation of current Stage I or Stage II pressure sores on the patient's trunk, a history of Stage III or Stage IV pressure sores on the patient's trunk, or that the patient is bed bound and requires pressure sore prevention.

- Group II (for, *inter alia,* powered air overlays and powered pressure-reducing air mattresses) generally requires documentation of at least one large (greater than 2x2 cm) Stage III or Stage IV pressure sore on the patient's trunk or at least one large (greater than 3x3 cm) Stage III or Stage IV pressure sore on the patient's trunk.

- Group III (for air fluidized beds) requires that the patient be within sixty days of post-myocutaneous flap or skin graft surgery.

*See id.* at 12-14. *See also* Exhs. C-1, C-2, C-3 (Medicare, Local Coverage Decisions L33830, L33642, L33692). Medi-Cal and Medicare do not provide coverage or payment for specialty mattresses for patients with pressure sores that do not meet the stated criteria, even if medically

---

[2] All "Exh" references are to the Exhibits to the January 29, 2020 Declaration of Scott A. Memmott.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

3

DEFENDANTS DMS' & JOERNS' MOTION
TO DISMISS BRIEF 1:17-CV-01757-LJO-SAB

necessary.

Under Medi-Cal, medically needy patients who qualify for assistance according to program asset-level requirements but still have monthly income in excess of their "maintenance need" level are required to pay a monthly dollar amount toward their medical expenses – known as their Share of Cost ("SOC") – before they can qualify for Medi-Cal benefits. *See* Exh. D (Medi-Cal Provider Manual, Part 1 – Share of Cost (Jan. 2019)). Although this SOC amount can be paid toward SNF costs, it also can be paid toward costs for medically necessary items or services that would not otherwise be covered by Medi-Cal. Under the *Johnson v. Rank* settlement, "Medi-Cal beneficiaries must have the opportunity to use their share of cost to purchase medically necessary medical or remedial care, supplies and/or equipment not paid for by the Medi-Cal program and which are consistent with the plan of care ordered by their physician." Exh. E (California Dep't of Health Servs., *Johnson v. Rank* Final Settlement, Letter No. 89-54 (July 24, 1989)). In addition to the plan of care ordered by a physician, "a physician's prescription order … is necessary" to apply a non-covered drug or service against the SOC. *Id. See also* Exh. F (Medi-Cal Provider Manual, Part 2 – Long Term Care, Share of Cost (SOC): 25-1 for Long Term Care (Jan. 2019)), at 3 ("Medi-Cal recipients, not their providers, can elect to use their Share of Cost (SOC) funds to pay for necessary, non-covered, medical or remedial-care services that are prescribed by a physician and part of the 'plan of care' authorized by the recipient's attending physician."). In other words, SOC patients can use their individual SOC funds toward non-covered specialty mattress rentals.

Relator filed an original complaint on December 28, 2017, Dkt. 1, and filed an amended complaint on March 20, 2018, Dkt. 7. The Complaint alleges that DMS and Joerns engaged in "differential billing practices" that charged SOC patients more for specialty mattress rentals than was charged to SNF purchasers of the specialty mattresses or Medi-Cal, in violation of Medi-Cal "low price rules." ¶¶ 33, 41, 45. The Complaint also alleges that DMS and Joerns violated the Anti-Kickback Statute by "offer[ing] deep discounts" on rates to "certain patient segments" so that SNFs "would refer 90 to 100 percent of their patients" to DMS and Joerns. ¶¶ 31-32. After over a year and a half in which to investigate the claims alleged in the Complaint, the federal and California state governments declined to intervene in the action at that time. Dkt. 16. Relator

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

4

DEFENDANTS DMS' & JOERNS' MOTION
TO DISMISS BRIEF 1:17-CV-01757-LJO-SAB

continues to pursue the action under the FCA's and CFCA's *qui tam* provisions.

## ARGUMENT

The Complaint is subject to dismissal on three separate bases. First, it fails to satisfy the heightened pleading standard of Rule 9(b). Second, it fails to state a claim for relief under Rule 12(b)(6). Finally, the CFCA claims cannot be maintained because the Complaint is based on publicly disclosed information for which Relator is not the original source.[3]

### A. The Complaint Does Not Plead Fraud with Particularity Under Rule 9(b)

"A claim under the FCA must not only be plausible, Fed. R. Civ. P. 8(a), but pled with particularity under Rule 9(b)." *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (citing *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054-55 (9th Cir. 2011)). In other words, under Rule 9(b), "the circumstances alleged to constitute fraud must be specific enough to give the defendant notice of the particular misconduct so that it can defend against the charge." *Id.* (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)). An FCA complaint "must identify the 'who, what, when, where, and how' of the misconduct." *Id.* The false claim itself, which is the *sine qua non* of an FCA violation, *Cafasso*, 637 F.3d at 1055, also must be alleged with this requisite particularity. Relator's scant, seventeen-page Complaint provides none of the requisite specificity for either alleged "scheme" and leaves Defendants to guess at exactly what they are defending against. Relator identifies no claims submitted to a government-funded program, no patients who were charged more for specialty mattress rentals, no patients who received specialty mattress rentals from DMS or Joerns as a result of kickbacks, no individuals who offered kickbacks, no individuals who received kickbacks, and no evidence beyond an alleged pricing policy. This falls far short of Rule 9(b) pleading requirements.

***No Claims Alleged:*** Nowhere in the Complaint does Relator allege a single false claim or false statement in support of a claim that was actually submitted to Medicare or Medi-Cal. Instead,

---

[3] DMS and Joerns also join the arguments of Defendants Plum Healthcare Group LLC, Covenant Care California LLC, and Mariner Health Care Management Company, to the extent applicable to the allegations against DMS and Joerns.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

5

DEFENDANTS DMS' & JOERNS' MOTION
TO DISMISS BRIEF 1:17-CV-01757-LJO-SAB

the Complaint simply makes the conclusory assertions, devoid of details, that "Dynamic, Joerns, and Invacare billed Medi-Cal directly for patients," ¶ 46, and that "[m]any SNF patients receive financial assistance from Medicare." ¶ 47.

In the Ninth Circuit, in the absence of identifying actual examples of submitted false claims, a relator can allege "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998-99 (9th Cir. 2010) (quoting *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)). Relator provides no such particular details or reliable indicia here. Instead, Relator asserts generally that "patients and the government bear the cost of the overcharges to SOC patients," ¶ 35, but, as described in detail below, the alleged "scheme" has no details of what, how, who, when, or where. This is not enough. *See United States ex rel. Solis v. Millennium Pharm., Inc.*, 885 F.3d 623, 629 (9th Cir. 2018) (finding claims not pled with particularity where allegations "failed to identify a single claim submitted pursuant to the scheme" and efforts to make drug *available* to be used or prescribed, without more, did not provide "reliable indicia supporting a strong inference that such claims were submitted"). *Contrast Godecke*, 937 F.3d at 1209-10 (reliable indicia included detailed allegations from a former colleague who personally reviewed claims submitted). Moreover, as addressed in Section B.1 below, Relator cannot allege a claim for purposes of FCA liability with respect to SOC patients because SOC patients use their own individual funds to pay for non-covered specialty mattress rentals, and thus no claims for federal or state funds are implicated in the scheme to the extent one is alleged.

*__No What & How Alleged__*: The Complaint's supposed scheme is about the prices for specialty mattresses, but nowhere does it specify which particular type of mattresses were allegedly involved or even the group of pressure sore products (I through III) to which those mattresses belonged. And, while the Complaint baldly asserts that the scheme "induced the referral" of Medicare business, ¶ 47, it does not specify what particular business was induced or referred, which patients, how many patients, at which facilities, and how exactly that business was referred. *See, e.g., United States ex rel. Mateski v. Raytheon Co.*, 745 F. App'x 49, 50 (9th Cir. 2018) (finding

particularity requirement not satisfied as to "what," "when," and "how" when relator alleged for an eight-year period that defendants failed to perform tests but failed to identify which specific tests, which specific component parts, and how tests were not performed); *United States ex rel. Karp v. Ahaddian*, No. CV 16-500 PSG (JPRX), 2018 WL 6333669, at *3 (C.D. Cal. May 23, 2018) ("scant" allegations that "pattern of fraudulent conduct" with respect to private insurers "extended to Medicare patients" did not satisfy Rule 9(b)).

Relator, who worked in a high-level executive position for Defendants for years, has no excuse for failing to provide the required specificity should it exist. Relator pleads that he is the Director of Key Accounts for both DMS and Joerns and has been employed by DMS since February 2006. ¶ 9. When the relator has "personal knowledge of Defendants' practices because Relator was part of Defendants' operation," he cannot generally allege a practice was fraudulent. *United States v. Spencer*, 667 F. App'x 980, 981 (9th Cir. 2016). *See also United States ex rel. Gough v. Eastwestproto, Inc.*, No. CV 14-465 DMG (SHX), 2018 WL 6929332, at *6 (C.D. Cal. Oct. 24, 2018) ("Although identification of specific false claims is not required to state a claim under the FCA, Relators' failure to provide anything more specific than their current conclusory allegations is peculiar given their former executive and management positions with the defendant company."). It is not surprising here that Relator has not and cannot provide the requisite particulars because his claims of swapping and "low price" violations are not plausible and do not state claims under Rule 12(b)(6), as described further below.

***No Who Alleged*:** "Where fraud has allegedly been perpetrated by a corporation, a plaintiff must allege the names of the employees or agents who purportedly made the statements or omissions that give rise to the claim, or at a minimum identify them by title and/or job responsibility." *United States ex rel. Modglin v. DJO Glob. Inc.*, 114 F. Supp. 3d 993, 1016 (C.D. Cal. 2015). But Relator fails to allege who at Defendants made any false statements or omissions, or acted with scienter. Instead, the Complaint merely alleges that "Defendants and their agents have been aware for years of the aforementioned false billing practice and knowingly permitted such wrongful practices to continue." ¶ 43. This allegation provides no specificity as to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

individuals, and is insufficient.[4]

Moreover, the Complaint impermissibly lumps the "Defendants" together. Rule 9(b), however, "require[s] plaintiffs to differentiate their allegations when suing more than one defendant ... and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (citation and internal quotation marks omitted). For example, the "scheme" allegations refer to "Dynamic and Joerns" together,[5] ¶¶ 31-33, without separating out which entity allegedly engaged in which conduct. *See United States v. Safran Grp.*, No. 15-CV-00746-LHK, 2017 WL 235197, at *8 (N.D. Cal. Jan. 19, 2017) ("[G]eneralized allegations made against the three 'Defendants' … make it impossible to discern[ ] which entity ... is [making the false representations and certifications] and which is selling the products." (internal quotations and citations omitted; second and third alterations in original)).

**_No When Alleged_:** The Complaint also fails to identify when the alleged false claims were submitted or paid with any particularity. While an allegation is made that "Dynamic carried out this scheme since at least 2006" and that "Joerns perpetrated an identical scheme before it acquired Dynamic [in July 2015],"[6] ¶ 42, no information is alleged as to when any rentals of mattresses

---

[4] Although the Complaint does reference one email (and the individual author and recipient), ¶ 49, the email does not demonstrate any false statement or scienter and nowhere comes close to demonstrating a scheme. Instead, the email simply discusses switching an account internally from DMS to Joerns, which had acquired DMS, and nowhere mentions kickbacks, inducements, swapping, or even pricing. *See United States ex rel. Gough*, 2018 WL 6929332, at *6 (email exchange did "not plausibly demonstrate remuneration received in exchange for referrals" where email mentioned desire for office supplies and defendant employee responded "I'll handle"). In particular, there is no allegation that the subject of the email, Fairfield Post Acute, had a purchase agreement with DMS or Joerns that contained discounted daily rates, that different rates would be charged to SOC patients, or that any discount was going to be used to induce referrals.

[5] Though Relator alleges that Joerns acquired Dynamic in July 2015, ¶ 11, "[t]he mere fact of sole ownership and control does not eviscerate the separate corporate identity that is the foundation of corporate law." *Katzir's Floor & Home Design, Inc. v. M–MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004). "FCA claims cannot be imputed from one party to the other based purely on a parent-subsidiary relationship." *Safran Grp.*, 2017 WL 235197, at *8.

[6] Even if some specificity had been provided as to these years, any claims made before December 28, 2011 would be barred by the FCA's six-year statute of limitations. 31 U.S.C. § 3731(b)(1). No allegation has been made as to when the official with responsibility to act became aware of the facts material to the alleged claims, but even the FCA's statute of repose could not reach back earlier than December 28, 2007. 31 U.S.C. § 3731(b)(2). *See also* Cal. Gov't Code § 12654(a) (identical limitations period to federal FCA).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

8

DEFENDANTS DMS' & JOERNS' MOTION
TO DISMISS BRIEF 1:17-CV-01757-LJO-SAB

actually occurred or as to when any claims for mattresses were made.  Allegations of vague spans of years are not enough to satisfy Rule 9(b)'s requirements.  *See Safran Grp.*, 2017 WL 235197, at *10-11 (finding insufficient allegation that alleged fraudulent sales were made "[o]ver the last eight years," without any supporting information as to when misrepresentations as opposed to sales occurred or specifics as to when sales were made to which entities); *Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 888 (N.D. Cal. 2015) (allegations that fraudulent misrepresentations occurred "in 2011 and 2012" and "in approximately 2008" are insufficient under Rule 9(b)); *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1094 (C.D. Cal. 1999) ("[A]llegations such as '[d]uring the course of discussions in 1986 and 1987,' and 'in or about May through December 1987' do not make the grade under Rule 9(b)").

**No Where Alleged**:  Although the Complaint refers broadly to "SNFs participating in the scheme," ¶ 41, it does not identify those SNFs with any specificity.  Instead, the Complaint gives only five examples of SNFs allegedly involved, ¶ 48, even though the SNF operator defendants run 150 different facilities and some of the example SNFs are not even within this set.  ¶¶ 13-16.  Under Rule 9(b), Defendants cannot be made to guess what facilities are at issue or where the alleged conduct occurred.

**B.**      **The Complaint Fails to State a Claim Under Rule 12(b)(6)**

In addition to its particularity shortcomings under Rule 9(b), the Complaint is subject to dismissal under Rule 12(b)(6) "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Godecke*, 937 F.3d at 1208 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).  Although a court ordinarily must accept complaint allegations as true for purposes of a motion to dismiss, "a court discounts conclusory statements, which are not entitled to the presumption of truth, before determining whether a claim is plausible."  *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Here, Relator has not and cannot plead a false claim to either the federal Medicare program or the state Medi-Cal program because no such funds are used to pay for the SOC program on which the allegations center.  Second, Relator's allegations about violations of the Medi-Cal "low

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

9

DEFENDANTS DMS' & JOERNS' MOTION
TO DISMISS BRIEF 1:17-CV-01757-LJO-SAB

price rules" cannot support an FCA claim because the regulations at issue are ambiguous and the alleged conduct falls squarely into a reasonable interpretation. Next, Relator fails to plead the "linking" between discount and referral necessary to support an AKS claim. Relator also wholly fails to plead the necessary element of materiality under either theory. Relators' reverse false claim allegations are nothing more than a recasting of the insufficient affirmative false claim allegations. Finally, Relator does not plead the requisite facts to support an FCA conspiracy claim.

### 1. No Claims and No Involvement of Government Funds Are Plausibly Alleged

First and foremost, as noted above, the Complaint does not (because it cannot) allege the presentment of a single false claim for payment through the SOC program to the federal or state governments or any entities administering government funds. This is fatal to the entire Complaint.[7] *See United States ex rel. Aflatooni v. Kitsap Physicians Serv.*, 314 F.3d 995, 997 (9th Cir. 2002) ("It seems to be a fairly obvious notion that a False Claims Act suit ought to require a false claim.").

Moreover, this pleading deficiency cannot be overcome as to the alleged differential SOC billing and swapping schemes, even if Relator put forth an allegation about a particular invoice, because the SOC program does not implicate government money. The FCA is not a generalized all-purpose fraud statute. Instead, its reach extends only to the limited class of cases where federal government money or property is at issue. *See United States v. Neifert-White Co.*, 390 U.S. 228, 233 (1968); *Rainwater v. United States*, 356 U.S. 590, 592 (1958) ("It seems quite clear that the objective of Congress was broadly to protect the funds and property of the Government from fraudulent claims."). In other words, "[f]or a false statement or course of action to be actionable ..., it is necessary that it involve an actual *claim*, which is to say, a call on the government fisc." *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1173 (9th Cir. 2006) (emphasis in original). Thus, the FCA expressly defines and limits what can qualify as an actionable FCA "claim":

---

[7] "An FCA claim dependent on the AKS needs to meet all of the other elements of an FCA claim. In other words, Relator must show not only that Defendants paid, or offered to pay, remuneration in exchange for referrals, but also that payments led to false certifications or claims." *United States v. Vista Hospice Care, Inc.*, No. 3:07-cv-00604-M, 2016 WL 3449833, at *24 (N.D. Tex. June 20, 2016). *See also* 42 U.S.C. § 1320a-7b(g) (requiring "a claim").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

10

DEFENDANTS DMS' & JOERNS' MOTION
TO DISMISS BRIEF 1:17-CV-01757-LJO-SAB

For purposes of this section— (2) the term "claim"— (A) means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that— (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government— (I) provides or has provided any portion of the money or property requested or demanded; or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded ....

31 U.S.C. § 3729(b)(2)(A).[8] The CFCA defines a "claim" almost identically, but with reference to "the state or a political subdivision" rather than to the United States. Cal. Gov't Code § 12650(b)(1).

No federal funds or California state funds are implicated in Relator's SOC allegations. The Complaint alleges that Defendants overcharged SOC patients in violation of Medi-Cal "low price rules" and that the supposed AKS scheme was an attempt to get more SOC patient business. ¶¶ 41, 44-45. Beyond referencing the spend-down necessary to become eligible for Medi-Cal, however, the SOC program is not part of or referenced in the California Medicaid State Plan approved by the U.S. Centers for Medicare and Medicaid Services (the division of the U. S. Department of Health and Human Services responsible for such approvals), meaning California is not receiving any federal financial participation funds pursuant to the SOC program. *See* Exh. G (California, State Plan Under Title XIX of the Social Security Act Medical Assistance Program).

Nor, by definition, are state Medi-Cal dollars at issue. SOC funds are used by patients to procure medical items and services *not covered* or paid for by Medi-Cal. For individuals in long-term care facilities, SOC money is paid directly to facilities (and then to providers) from private patient trust accounts, not Medi-Cal. *See* Exh. F (Medi-Cal Provider Manual, Part 2 – Long Term Care, Share of Cost (SOC): 25-1 for Long Term Care (Jan. 2019)), at 2-3 ("If a *recipient has spent* part of the SOC .... Medi-Cal *recipients, not their providers* can elect to use their Share of Cost

---

[8]    Likewise, the AKS only applies to an inducement to refer a person "for the furnishing or arranging for the furnishing of any item or service for which *payment may be made in whole or in part under a Federal health care program*." 42 U.S.C. § 1320a-7b(b)(2)(A) (emphasis added). Relator is forced to admit as much in the Complaint. ¶ 21.

(SOC) funds to pay …." (emphases added)); *id.* at 7 (instructing entry on form of "[a]mount ***patient paid*** for services" (emphasis added)).  *See also* 42 C.F.R. § 435.832(c) (implemented for SOC through *Johnson v. Rank* settlement) ("The agency must deduct … from the individual's total income … [a]mounts for incurred expenses for medical or remedial care that are not subject to payment by a third party, including … [n]ecessary medical or remedial care recognized under State law but not covered under the State's Medicaid plan, subject to reasonable limits the agency may establish on the amounts of these expenses.").[9]

The Complaint itself admits that SOC payment for non-covered services comes from the patient.  *See* ¶ 29 ("In the event a Medi-Cal recipient spends part of his or her SOC on 'non-covered' medical or remedial services, the SNF must subtract those amounts from the recipient's SOC and bill the recipient in an amount equal to the remaining SOC.  The SNF ***then*** bills Medi-Cal …." (emphasis added)); ¶ 35 (alleging "overcharges to SOC patients").  Without federal or state money at issue in the SOC transaction, there can be no cognizable false claim.[10]

To the extent the Complaint in its lack of particularity attempts to plead that Defendants also "billed Medi-Cal directly" in violation of the "low price rules," ¶ 46, it fails to include any allegation that Defendants certified compliance with the "low price rules" in these unspecified "bills."  Moreover, the Complaint does not contain any of the allegations that would be necessary to plead an actionable implied certification of this compliance, namely (1) "submi[ssion of] a claim

---

[9]  The preamble language implementing 42 C.F.R. § 435 further explains why an SOC patient spending SOC funds could not be considered a Medi-Cal beneficiary: "Ordinarily, a participating provider may charge an eligible individual no more than the Medicaid rate.  However, these charges need not be adjusted since the charges were incurred at the private payment rate and since the ***charges were part of expenses needed to qualify the individual for Medicaid under the spenddown***.  Otherwise, the adjustment could result in the individual no longer being eligible for Medicaid during the month. … [D]uring the period prior to the determination of Medicaid eligibility, the provider could be viewed as only accepting the patient as a private payment patient." 59 Fed. Reg. 1662 (Jan. 12, 1994) (emphasis added).

[10]  Though the Complaint alleges that "overcharges were ultimately borne by the patients, as well as the Medicare and Medi-Cal programs," ¶ 3, the idea that an individual has less money to spend for other private pay items does not make a false claim.  Indeed, as the Complaint acknowledges, even if SOC patients were charged lower rates for specialty mattress rentals, that alleged "savings" would not necessarily benefit Medi-Cal because SOC patients could and presumably would spend this money "on other uncovered, but necessary medical costs."  ¶ 39.  For this same reason, the Complaint cannot plausibly allege that the government sustained any damage "***because of*** the act," 31 U.S.C. § 3729(a) (emphasis added).

for payment that makes ***specific representations*** about the goods or services provided, but knowingly fails to disclose the defendant's noncompliance with a statutory, regulatory, or contractual requirement" and that "the omission renders those representations misleading"; (2) that Defendants "knowingly violated a requirement that the defendant[s] know[] is material"; and (3) materiality to the Medi-Cal payment decision. *Universal Health Servs. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 1995-96 (2016) (emphasis added).

### 2. The Ambiguity of the Medi-Cal "Low Price Rules" Undermines Scienter

Relator alleges that Defendants violated Medi-Cal's so-called "low price rules"[11] in charging differential rates to SOC patients. But this alleged violation cannot support an FCA claim because, even assuming such a violation were found to exist, the regulations in question are ambiguous, and a defendant "relying on a good faith interpretation of a regulation is not subject to liability, not because his or her interpretation was correct or 'reasonable' but because the good faith nature of his or her action forecloses the possibility that the scienter requirement is met." *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 464 (9th Cir. 1999).

The Medi-Cal "low price rules" are codified as follows:

> No provider shall bill or submit a claim for reimbursement for the rendering of health care services to a Medi-Cal beneficiary in any amount greater or higher than the usual fee charged by the provider to the general public for the same service.

Cal. Code Regs. tit. 22, § 51480(a).

> No provider shall charge for any service or any article more than would have been charged for the same service or article to other purchasers of comparable services or articles under comparable circumstances.

Cal. Code Regs. tit. 22, § 51501(a).

These Medi-Cal regulations do not explicitly or implicitly apply to SOC transactions, which, as explained above, are private transactions between patient and provider that do not implicate Medi-Cal funds, and which are ***not*** a provider bill or claim to Medi-Cal.

---

[11] The Complaint refers to these regulations as "low price rules," ¶ 46, but they are more commonly referred to collectively as the "discriminatory billing provisions."

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

13

DEFENDANTS DMS' & JOERNS' MOTION
TO DISMISS BRIEF 1:17-CV-01757-LJO-SAB

In the face of this ambiguity, neither an appellate court nor DHCS has provided any clear, interpretative, public guidance that the Medi-Cal "low price rules" apply to SOC transactions.[12] *See United States ex rel. Krawitt v. Infosys Techs. Ltd., Inc.*, 372 F. Supp. 3d 1078, 1090 (N.D. Cal. 2019) (dismissing FCA allegations as to compliance with ambiguous immigration laws where complaint failed to allege "guidance from the courts of appeal or relevant agency that might have warned [the defendant] away from the view it took" (quoting *United States ex rel. Purcell*, 807 F.3d at 289)).[13] Defendants' and Relator's "differences in interpretations are not sufficient for False Claims Act liability to attach." *United States ex rel. Hendow*, 461 F.3d at 1174.

California state courts also have recognized other ambiguity in the Medi-Cal "low price rules": "[I]t is unclear whether that limitation entitles Medi-Cal to pay the lowest rate offered to any single individual or group of people." *Sharp Coronado Hosp. v. Bonta*, No. C045021, 2004 WL 1880132, at *6 (Cal. Ct. App. Aug. 24, 2004) (noting that "[e]ven DHS's own auditors differed in their definition of" the term "general public"). And, beyond failing to define "general public," the regulations do not define "usual fee" or "comparable circumstances." The Complaint nowhere

---

[12]   The DHCS audits and administrative law judge decisions from the DHCS Office of Administrative Hearings and Appeals, discussed below with respect to public disclosure, are not "guidance" that could have warned Defendants away from their objectively reasonable interpretation. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70 n.19 (2007) (agency letter that indicated it was "not binding on the Commission" was not sufficient to warn defendant away). DHCS itself has noted that administrative decisions are "non-precedential" and "not binding sources of authority." Exh. H (DHCS Reply Brief, *In re Legacy Post-Acute Rehab.*, No. NF13-1211-820J-MS (DHCS Office of Admin. Hearings & Appeals July 29, 2015)), at 7. *See also Kisor v. Wilkie*, 139 S. Ct. 2400, 2416-18 (2019) (confirming that, for any deference to be due to an agency interpretation, the "interpretation must be one actually made by the agency …. it must be the agency's 'authoritative' or 'official position,' … [a]nd a court may not defer to a new interpretation, whether or not introduced in litigation, that creates 'unfair surprise' to regulated parties"); *United States ex rel. Purcell v. MWI Corp.*, 807 F.3d 281, 287 (D.C. Cir. 2015) (explaining need for "[s]trict enforcement of the FCA's knowledge requirement," citing *Satellite Broad. Co. v. F.C.C.*, 824 F.2d 1, 3-4 (D.C. Cir. 1987) ("[I]f the Commission had interpreted its rules as did petitioner we similarly would have been obliged to defer to that interpretation because it, at minimum, is also reasonable. There is the rub. The Commission through its regulatory power cannot, in effect, punish a member of the regulated class for reasonably interpreting Commission rules. Otherwise the practice of administrative law would come to resemble 'Russian Roulette.'")).

[13]   For this reason, the Complaint allegations that "SNF customers … expressed concerns about the differential billing practices" are insufficient to allege scienter where ambiguous regulations are involved. *See United States ex rel. Krawitt*, 372 F. Supp. 3d at 1090 (employee warning not enough to allege scienter because it is "not the authoritative source on statutory and regulatory interpretation … that the United States Supreme Court in *Safeco* contemplated").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

14

DEFENDANTS DMS' & JOERNS' MOTION
TO DISMISS BRIEF 1:17-CV-01757-LJO-SAB

alleges that the SOC rate was not the "usual fee" or that the SOC patients were not themselves the "general public." To the contrary, the Complaint alleges that "patients in the SOC segment are charged a 'retail' price," ¶ 33, which could be interpreted as synonymous with a usual and customary price charged to the public. To the extent the Complaint separately alleges (without any particularity) that there is some direct billing to Medi-Cal that also violates the "low price rules," ¶ 46, the Complaint admits that the Medi-Cal price is below "retail." ¶ 33.

The Complaint hinges on the allegation that the rates charged to SOC patients and to facilities are different. ¶ 33. But, the interpretation that the fee charged to facilities with "preferred provider agreements" is **not** the "usual fee" charged to the general public or a "comparable circumstance" to Medi-Cal or to an individual SOC patient is reasonable. DMS' and Joerns' facility customers negotiate certain purchase or utilization commitments, whereas Medi-Cal (a fee-for-service payor) and individuals do not. In *Physicians and Surgeons Laboratories, Inc. v. Department of Health Services*, the California Court of Appeal, Second District, determined that a laboratory's use of a "provider-type" fee schedule violated the discriminatory billing provisions. 8 Cal. Rptr. 2d 565 (Cal. Ct. App. 1992). The court distinguished this practice, however, from the laboratory's **negotiated** contract with a state hospital pursuant to which charges were discounted to indigent patients, finding that the discounted fees pursuant to the state hospital contract were not part of the "usual" fees charged to the "general public." *Id*. at 576-77. The court thus rejected the idea that "any time [a service provider] charged a lower fee, it would be required to charge Medi-Cal that same lower fee." *Id.*

This is consistent with other California appellate court decisions where discounts to private-pay patients were not determined to violate the "low price rules." *See Sharp*, 2004 WL 1880132, at *3-4 (applying collateral estoppel to uphold finding that provider discounting skilled nursing facility services for self-paying patients did not violate §§ 51501 and 51480); *People v. Duz-Mor Diagnostic Lab., Inc.*, 80 Cal. Rptr. 2d 419, 426-27 (Cal. Ct. App. 1998) (upholding finding that clinical laboratory provider discounts to private-pay patients, negotiated by physicians and HMOs, were not the "charge to the general public" and thus did not violate § 51480).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

15

DEFENDANTS DMS' & JOERNS' MOTION
TO DISMISS BRIEF 1:17-CV-01757-LJO-SAB

The FCA's scienter requirement is "rigorous." *Escobar*, 136 S.Ct. at 2002. "To take advantage of a disputed legal question ... is to be neither deliberately ignorant nor recklessly disregardful." *United States ex rel. Hagood v. Sonoma Cnty. Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991). Thus, in the face of the ambiguity of the Medi-Cal "low price rules," the Complaint cannot plausibly allege that Defendants acted with the requisite scienter to state an FCA claim by entering into preferred provider agreements with lower pricing, which resulted in a different rate being charged to those facilities and to SOC patients or to Medi-Cal. *See Safeco*, 551 U.S. at 70 n.20 ("Where, as here, the statutory text and relevant court and agency guidance allow for more than one reasonable interpretation, it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing or reckless violator."); *United States ex rel. McGrath v. Microsemi Corp.*, 690 F. App'x 551, 552 (9th Cir. 2017) ("[T]he complaint cannot plead facts sufficient to support an inference that Microsemi knew it had failed to comply with [regulations] at the time of the representation because Microsemi's good faith interpretation of the term … at that time was reasonable."); *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115-16 (9th Cir. 2014) (state's acknowledgement that, *inter alia*, no specific definition of "at cost" was contained in the billing manual and that it had been ambiguously applied "fatally undercut [relator's] allegations of knowing falsity to the point where he cannot state a plausible claim under the FCA"); *United States v. Zatica*, 244 F. App'x 799, 801 (9th Cir. 2007) (finding that any promises made by defendant regarding provisions "could not have been made with the requisite scienter" where provisions were ambiguous and defendant "adopted one of two reasonable interpretations").

### 3. Discounts Alone Are Not Illegal Kickbacks

In addition to the insufficient allegations regarding violations of the "low price rules," Relator attempts to plead a "swapping" theory, alleging that Defendants "offered deep discounts … to certain patient segments" in order to induce the referral of and thus "overcharge[] patients who were responsible for an SOC." ¶ 31. Even if federal money was somehow implicated in this alleged SOC swapping scheme (it is not), the AKS only is implicated "if any ***direct or indirect link*** exists between a price offered by a supplier or provider to a nursing facility for items or services

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

16

DEFENDANTS DMS' & JOERNS' MOTION
TO DISMISS BRIEF 1:17-CV-01757-LJO-SAB

that the nursing facility pays for out-of-pocket and referrals of Federal business for which the supplier or provider can bill a Federal health care program." HHS OIG Supplemental Compliance Program Guidance for Nursing Homes, 73 Fed. Reg. 56,832, 56,844 (Sept. 30, 2008) (emphasis added). *See also* 42 U.S.C. § 1320a-7b(b)(2)(A) (covering only direct or indirect offers "to induce" a person "to refer").

Relator's entire allegation of a kickback violation is based on an alleged offer of "discounts," but simply offering different prices or discounts is not sufficient to trigger AKS liability. *See* Exh. J (HHS OIG, Advisory Opinion No. 99-3) (no AKS violation where therapeutic mattress distributor offered discounts for extended use of powered mattresses and discounted bundled payments if SNFs added non-powered mattresses for patients who no longer needed powered mattresses). *See also United States ex rel. Dan Abrams Co. v. Medtronic, Inc.*, No. LACV1501212JAKASX, 2018 WL 5266863, at *8 (C.D. Cal. June 7, 2018) (dismissing AKS claims after finding allegations that defendants provided rebates to hospitals that purchased certain devices and that defendants knowingly caused claims to be submitted as a result were conclusory and "failed to allege a clear link between any alleged inducements and the false claims, any specific inducement, which products physicians were allegedly induced to purchase, or when and where any device was used as a result of a kick-back").

The Complaint contains no allegation of any particular SOC patient who actually was referred to DMS or Joerns after or because a facility discount had been put in place. Moreover, an SOC patient is using private funds, not government funds. Thus, Relator has not pled the requisite "connection between the alleged kickback scheme and actual false claims submitted to the government." *United States ex rel. Gough*, 2018 WL 6929332, at *5. "A kickback does not morph into a false claim unless a particular patient is exposed to an illegal recommendation or referral and a provider submits a claim for reimbursement pertaining to that patient." *United States ex rel. Greenfield v. Medco Health Sols., Inc.*, 880 F.3d 89, 100 (3d Cir. 2018). *See United States ex rel. Solis*, 885 F.3d at 629 (affirming dismissal of kickback claims where, even assuming that efforts to make drug ***available*** to be used or prescribed could establish a scheme, complaint "provides no other details linking the alleged scheme to any claim submitted to a federal healthcare program").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

17

DEFENDANTS DMS' & JOERNS' MOTION
TO DISMISS BRIEF 1:17-CV-01757-LJO-SAB

Moreover, the Complaint cannot plausibly allege a link between discount and referral because the supposed "scheme" does not make sense. The Complaint alleges that Defendants offered discounts to facilities in order to induce referral of SOC business, but clinical need must be established in order to warrant a specialty mattress payable with SOC funds. A patient cannot utilize SOC funds for a support surface without both a documented medical need and incorporation of that support surface into the plan of care.[14] An allegation of discounts being offered to facilities could not alone increase the number of patients in medical need of a support surface, and there is no allegation that anything was offered to physicians to write fraudulent prescriptions for support surfaces or to improperly include support surfaces in plans of care. *See United States v. Ctr. for Diagnostic Imaging, Inc.*, 787 F. Supp. 2d 1213, 1222 (W.D. Wash. 2011) ("[The complaint's] theories are undermined by the fact that plaintiffs do not allege that the referring physicians were even aware that CDI was not charging for the MRAs. … Without such knowledge, there is no inducement for referrals. Therefore, the allegations are insufficient to state a claim."), *amended on reconsideration in part on other grounds*, No. C05-0058RSL, 2011 WL 13353774 (W.D. Wash. Apr. 25, 2011). Nor does the Complaint in any way explain how SOC patients would be referred under such a scheme.[15] The AKS allegations simply cannot support FCA liability.

### 4. The Complaint Does Not Allege Materiality

FCA liability extends only to material violations, and that "materiality standard is demanding." *Escobar*, 136 S. Ct. at 2003. A statutory or regulatory violation is not material simply because the government could refuse payment based on it. *Id.* at 2004. Despite this rigorous standard, the Complaint only repeats the word "material" in quoting the language of the FCA verbatim and thrice quotes the "natural tendency" definition of materiality in the FCA, but without any supporting allegations. *E.g.*, ¶¶ 61, 66, 75, 79, 80. This conclusory cut-and-paste does meet the rigorous standard of *Escobar*. *See United States ex rel. Kraft v. CalPortland Constr.*, No.

---

[14] Likewise, Medi-Cal direct reimbursement is only available for **documented** Stage III and IV pressure wounds.

[15] Indeed, a particular individual's status as an SOC patient could fluctuate month-to-month, depending on the particular assets held by that patient. There is nothing the facility or Defendants could do to directly influence an individual's assets.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

CV1604479JFWSSX, 2018 WL 6262877, at *5 (C.D. Cal. Mar. 9, 2018) ("[C]onclusory allegations that Defendants' conduct caused the government to pay 'inflated prices' and was 'material,' … are insufficient to allege materiality under the False Claims Act in light of *[Escobar]*." (internal quotations omitted)); *Knudsen v. Sprint Commc'ns Co.*, No. C13-04476 CRB, 2016 WL 4548924, at *13 (N.D. Cal. Sept. 1, 2016) (finding that "single, conclusory paragraph seem[ing] to allege that because there were regulations requiring [certain matching price reductions], those terms were per se material to the government's decision to contract with Defendants" was insufficient to plead materiality).

### 5. The Reverse False Claim Allegations Are Redundant

The Complaint's allegation of a reverse false claim simply makes a conclusory assertion, without further explanation, that "Defendants received far more money from the Medicaid and Medicare programs than they were entitled … and avoided their obligation to return the excess money." ¶ 67. Although the Complaint is a mystery as to the reverse false claim allegations, to the extent that it purports to allege that Defendants' differential billing resulted in an overpayment, the allegation is redundant and thus insufficient to state a reverse false claim. *See United States v. Kinetic Concepts, Inc.*, No. CV0801885BROAGRX, 2017 WL 2713730, at *13 (C.D. Cal. Mar. 6, 2017) (where plaintiff alleges a reverse false claim "by claiming that the defendant fraudulently overcharged the government and then failed to repay the government, courts have consistently dismissed the claim as redundant of false statement and presentment claims").

### 6. No Elements of Conspiracy Have Been Alleged

The Complaint "does not plausibly demonstrate that false claims actually were submitted to the government, as explained, and absent evidence of a false claim, Relator[] cannot demonstrate that the defendants conspired to submit false claims to the government or that the government suffered damage." *United States ex rel. Gough*, 2018 WL 6929332, at *7. Moreover, the Complaint fails to plead any of the requisite elements of a conspiracy with particularity. Instead, the Complaint only makes conclusory statements that "Defendants conspired with each other and various other SNFs," ¶ 70, but does not plead any facts to support this conclusory statement such as when this agreement was made or which particular defendants and SNFs were involved in the

DEFENDANTS DMS' & JOERNS' MOTION
TO DISMISS BRIEF 1:17-CV-01757-LJO-SAB

agreement, any acts beyond the agreement – such as referrals made – in furtherance of the conspiracy, or the requisite intent. *See United States ex rel. Marion v. Heald Coll., LLC*, No. 5:12-CV-02067-PSG, 2015 WL 4512843, at *4 (N.D. Cal. July 24, 2015) (finding that conspiracy claim did not satisfy Rule 9(b) where "[t]here are no factual allegations about the time, place or specific language used by the defendants to form their agreement").

## C.     The CFCA Claims Are Impermissibly Based on Public Disclosures

Beyond failing to state a plausible claim with the requisite particularity, Relator's claims under the CFCA are barred because they are based upon allegations that already have been publicly disclosed prior to the Complaint's filing. Public policy only seeks to encourage those with "original sources" of information regarding fraud on the government to come forward. In an effort to prevent abuses of the *qui tam* provisions, both the federal FCA and the CFCA prohibit a relator from bringing an action based upon "substantially the same allegations or transactions" that have been publicly disclosed unless the relator is "an original source of the information." The CFCA mandates dismissal in these circumstances:

(A) The court shall dismiss an action or claim under this section, unless opposed by the Attorney General or prosecuting authority of a political subdivision, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed in any of the following:

(i) A criminal, civil, or administrative hearing in which the state or prosecuting authority of a political subdivision or their agents are a party.

(ii) A report, hearing, audit, or investigation of the Legislature, the state, or governing body of a political subdivision.

(iii) The news media.

(B) Subparagraph (A) shall not apply if the action is brought by the Attorney General or prosecuting authority of a political subdivision, or the person bringing the action is an original source of the information.

(C) For purposes of subparagraph (B), "original source" means an individual who either:

(i) Prior to a public disclosure under subparagraph (A), has voluntarily disclosed to the state or political subdivision the information on which allegations or transactions in a claim are based.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

> (ii) Has knowledge that is independent of, and materially adds to, the publicly disclosed allegations or transactions, and has voluntarily provided the information to the state or political subdivision before filing an action under this section.

Cal. Gov't Code § 12652(d)(3). This language largely mirrors the federal FCA. 31 U.S.C. § 3730(e)(4).[16] Under the CFCA, this Court must analyze: (1) whether there has been a prior public disclosure of allegations substantially similar to the Medi-Cal "low price rules" and "swapping" allegations in the Complaint, and (2) if there has been a public disclosure, whether Relator is an original source. *See A-1 Ambulance Serv., Inc. v. California*, 202 F.3d 1238, 1243 (9th Cir. 2000); *State v. Pac. Bell Tel. Co.*, 48 Cal. Rptr. 3d 427, 432 (Cal. Ct. App. 2006), *as modified* (Sept. 12, 2006). This analysis reveals that Relator is not a genuine whistleblower but instead has brought this lawsuit based on information already publicly disclosed in state Medi-Cal audits and administrative hearings of SNF specialty mattress billing practices.

**1. The Complaint Allegations Are Substantially the Same as Those Disclosed in Medi-Cal Audits and Administrative Hearings**

Relator originally filed his Complaint on December 28, 2017. Over two years prior to this filing, on October 9, 2015, the DHCS Office of Administrative Appeals and Hearings issued a final decision regarding an audit of "discriminatory billing" by Legacy Post-Acute Rehabilitation Center ("Legacy") for charging different rates for specialty mattresses under a contract with DMS "based on whether the patient had a Medi-Cal share of cost or not." Exh. L (Final Decision, *In re Legacy Post-Acute Rehab.*, No. NF13-1211-820J-MS (DHCS Office of Admin. Hearings & Appeals Oct. 9, 2015)), at 4; *see also* Exh. M (Provider's Petition for Reconsideration, *In re Legacy Post-Acute*

---

[16] Prior to March 23, 2010, this public disclosure bar was jurisdictional under the federal FCA, and the CFCA likewise used jurisdictional language prior to amendments effective on January 1, 2013. *See Prather v. AT&T, Inc.*, 847 F.3d 1097, 1103 (9th Cir. 2017) ("[P]rior to the 2010 Amendments [to the federal FCA], a district court lacked jurisdiction to hear a case that was barred by the public disclosure provision. After the 2010 Amendments, a court could assert jurisdiction over the relator's complaint and entertain public disclosure as a defense."). *See also* 2012 Cal. Stat., Ch. 647, Sec. 3 (Assembly Bill 2492) (amending "[n]o court shall have jurisdiction" language). As discussed in Note 6 *supra*, to the extent the Complaint attempts to plead claims prior to December 28, 2011, those claims are barred by the statute of limitations. But, even if they were not, this Court would lack jurisdiction over any claims prior to March 23, 2010 under both the federal FCA's and CFCA's jurisdictional public disclosure bars. The CFCA's bar also strips this Court of jurisdiction for any claims made between March 24, 2010 and January 1, 2013.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

*Rehab.*, No. NF13-1211-820J-MS (DHCS Office of Admin. Hearings & Appeals Oct. 23, 2015)).[17] The final decision cited Cal. Code Regs. tit. 22, §§ 51480 and 51501, quoted the Legacy-DMS provider agreement, and noted that Legacy "agreed to exclusively use" DMS for mattress rentals, including for SOC patients. Exh. L (Final Decision), at 6. The original audit finding that was upheld was made in a final report on April 24, 2013, over four-and-a-half years before Relator's original Complaint. *Id.* at 5. Both the state administrative hearing decision and the underlying audit qualify as public disclosures, barring Relator's later CFCA claims based on substantially the same allegations. *See* Cal. Gov't Code § 12652(d)(3) (listing administrative hearings and audits); *United States ex rel. Bly-Magee v. Premo*, 470 F.3d 914, 918 (9th Cir. 2006) ("[S]tate and local administrative hearings can qualify as sources of public disclosure …. Medicaid audits prepared by a state agency are public disclosures within the meaning of the Act."); *United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, No. CV081885GHKAGRX, 2016 WL 8919455, at *6 n.6 (C.D. Cal. Nov. 16, 2016) ("ALJ decision is a qualifying public disclosure because it was issued following an 'administrative hearing.'" (internal quotations omitted)).

Similarly, on April 28, 2017 and May 10, 2017, over seven months before Relator's original Complaint, DHCS issued final audit reports regarding "discriminatory billing" based on provider agreements between DMS and Plum, one of the other defendants in this action, for rates charged to SOC patients for specialty mattresses. Exh. N (Notification of Appeal Acceptance, *In re Garden City Healthcare Ctr.*, No. NF17-1215-1099H-RD (DHCS Office of Admin. Hearings & Appeals Jul. 11, 2017)). Plum requested a formal hearing, and both Plum and DHCS submitted materials related to the audit findings to the Office of Administrative Hearing and Appeals in connection with this request, constituting public disclosures.[18] *See Hagood v. Sonoma Cnty. Water Agency*,

---

[17] Such administrative decisions and the filings submitted in connection with the audit hearings are appropriate subjects of judicial notice. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). *See also* concurrently filed Request for Judicial Notice.

[18] For example, on September 1, 2017, nearly four months before the original complaint was filed, DHCS submitted its Appeal Position Statement. Exh. O (DHCS Appeal Position Statement, *In re Garden City Healthcare Ctr.*, No. NF17-1215-1099H-RD (DHCS Office of Admin. Hearings & Appeals Sept. 1, 2017)), at 86 (noting audit review of DMS invoices to Plum for mattress rentals to SOC and non-SOC patients). *See also* Exh. P (Provider's Pre-Informal Hearing Position

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

22

DEFENDANTS DMS' & JOERNS' MOTION
TO DISMISS BRIEF 1:17-CV-01757-LJO-SAB

81 F.3d 1465, 1474 n.13 (9th Cir. 1996) ("[D]ocuments filed with an agency or court during administrative proceedings or civil litigation are considered publicly disclosed.").

The Legacy and Plum audits and hearings publicly disclosed that DMS, through contracts with SNFs, was charging SOC patients different rates than the facilities and that these discounts were in DMS agreements that required referrals of all patient needs. These public facts are substantially the same as the Complaint's allegations of Medi-Cal "low price rules" violations and "swapping." Despite Relator's employment as the DMS Director of Key Accounts, his allegations bring nothing new or distinct outside of the audit allegations already in the public domain for over four years.

For example, Relator points to the rates in a provider agreement between Redlands Healthcare Center and DMS, ¶ 48(e), but these same provider rates were at issue in the DHCS audit of Plum. *See* Exh. N (Notification of Appeal Acceptance, *In re Garden City Healthcare Ctr.*), at 24-27. *See, e.g.*, *United States ex rel. Calva v. Impac Secured Assets Corp.*, No. SACV161983JVSJCGX, 2018 WL 6016152, at *5 (C.D. Cal. June 12, 2018) (dismissing *qui tam* complaint where "two of the same specific trusts identified in the [prior public disclosure] are also at issue here"). In fact, DHCS's administrative record in the Legacy and Plum audit appeals provide significantly more details than those found in Relator's Complaint. *See, e.g.*, Exh. O (DHCS Appeal Position Statement, *In re Garden City Healthcare Ctr.*), at 100 (noting DHCS review of Redlands-DMS provider agreement and invoices); *id.* at 92 (listing patient names and rates charged); Exh. K (Appellant's Post-Hearing Brief, *In re Legacy Post-Acute Rehab.*), at 12-13 (quoting hearing testimony describing how SOC trust fund accounts operate in SNFs).

Although the Complaint refers to SNF operators beyond Legacy and Plum, merely expanding the number of parties implicated in the same alleged discriminatory billing scheme is insufficient to defeat substantial similarity under the public disclosure bar. *See State ex rel. Standard Elevator Co. v. W. Bay Builders, Inc.*, 130 Cal. Rptr. 3d 99, 110 (Cal. Ct. App. 2011) ("When pleading its CFCA action, Standard has simply expanded the number of subcontractors

Statement, *In re Garden City Healthcare Ctr.*, No. NF17-1215-1099H-RD (DHCS Office of Admin. Hearings & Appeals Sept. 18, 2017)), at 17-30.

West Bay is alleged to have improperly substituted in violation of the Public Contract Code. This minor variation does not detract from the critical fact that alleged Public Contract Code violations in West Bay's substitution of subcontractors on the Project were publicly disclosed."). *See also Amphastar Pharms. Inc. v. Aventis Pharma SA*, 856 F.3d 696, 704 (9th Cir. 2017) ("Nor does a disclosed allegation need to contain every specific detail to constitute a disclosure."). And any expansion of the time period covered by the Complaint allegations does not defeat substantial similarity because these allegations, by the Complaint's own admission, plead a continuation of the same alleged scheme, not something new or additional to what was already publicly disclosed in the Legacy and Plum audits. ¶ 42 ("Dynamic has carried out this scheme since at least 2006 …. Dynamic continued the scheme …. Joerns perpetrated an identical scheme …."). *See United States ex rel. Galmines v. Novartis Pharm. Corp.*, 88 F. Supp. 3d 447, 450 (E.D. Pa. 2015) (finding allegations "substantially similar, as they allege the same underlying scheme, but as applied to a new time period").

## 2. Relator Is Not an "Original Source"

Because Relator's claims are premised upon publicly disclosed information, they can only survive under a narrow exception where the relator is an "original source" of information. To qualify as an "original source," Relator must provide "knowledge that is independent of, ***and materially adds*** to the publicly disclosed allegations or transactions," in addition to a voluntary disclosure prior to filing the Complaint.[19] Cal. Gov't Code § 12652(d)(3)(C)(ii) (emphasis added). The Complaint contains no allegations that materially add to the information already disclosed in the Legacy and Plum audits, nor does Relator contest he made a voluntary disclosure prior to filing the Complaint. Instead, Relator relies on vague, conclusory, and wholly insufficient allegations. As explained above, Relator does not even identify any claims, nor does he allege the who, what, when, where, or how of the alleged scheme with the requisite particularity. Accordingly, Relator fails to plead or qualify for the "original source" exception.

---

[19] In the alternative, Relator could qualify as an original source if he had voluntarily disclosed information to the government prior to the public disclosures in the Legacy and Plum audits. The Complaint contains no support for such an idea.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

24

DEFENDANTS DMS' & JOERNS' MOTION
TO DISMISS BRIEF 1:17-CV-01757-LJO-SAB

In short, allegations regarding allegedly discriminatory billing and swapping through provider agreements between DMS and Joerns and SNFs that charge different rates to SOC patients have been in the public domain for years. The public disclosure bar is designed to discourage just this type "of opportunistic plaintiffs who have no significant information to contribute of their own." *United States ex rel. Devlin v. California*, 84 F.3d 358, 362 (9th Cir. 1996). The Court "shall dismiss" such an action. The federal FCA allegations also are subject to dismissal based on, among other things, the failure to plead any claims for federal money, as detailed above. The fact that the Complaint allegations center on state-specific aspects of the Medi-Cal program – its interaction with the SOC – which implicate no federal funds underscores the policy rationale for the public disclosure bar of the *qui tam* provisions here, which represent "an effort to strike a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits." *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 295 (2010). The Complaint offers nothing beyond a public pricing policy dispute already well known to the State of California. Relator has "rooted out" nothing beyond that and certainly nothing implicating federal interests. It would make no sense to allow the federal FCA claims to continue in these circumstances where the CFCA claims must be dismissed.

## CONCLUSION

For all the foregoing reasons, DMS and Joerns request that the Court grant their Motion to Dismiss, in its entirety, with prejudice.

Dated:    January 29, 2020                   Respectfully submitted,

                                             MORGAN, LEWIS & BOCKIUS LLP


                                             By  */s/ Scott A. Memmott*
                                                 Scott A. Memmott

                                             *Attorneys for Defendants*
                                             *Dynamic Medical Systems, LLC and*
                                             *Joerns Healthcare, LLC*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES