Mark Hardiman (SBN 136602)
Katherine A. Bowles (SBN 287426)
**NELSON HARDIMAN LLP**
1100 Glendon Avenue, 14th Floor
Los Angeles, CA 90024
Telephone:   (310) 203-2800
Facsimile:   (310) 203-2727
Email:   mhardiman@nelsonhardiman.com
           kbowles@nelsonhardiman.com

Attorneys for Defendant
Cambridge Healthcare Services

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO COURTHOUSE

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF CALIFORNIA, ex rel. THOMAS TURNER,<br><br>         Plaintiffs,<br><br>     v.<br><br>DYNAMIC MEDICAL SYSTEMS LLC; JOERNS HEALTHCARE LLC; COVENANT CARE CALIFORNIA LLC; MARINER HEALTH CARE MANAGEMENT COMPANY; PLUM HEALTHCARE GROUP LLC; and CAMBRIDGE HEALTHCARE SERVICES,<br><br>         Defendants. | CASE NO.:  17–CV–01757–LJO–SAB<br><br>Judge:  Hon. Lawrence J. O'Neill<br><br>**DEFENDANT CAMBRIDGE HEALTHCARE SERVICES' NOTICE OF MOTION AND MOTION TO DISMISS RELATOR'S FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULES OF PROCEDURE 12(b)(6) AND 9(b); MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF MARK S. HARDIMAN**<br><br>Date:       March 18, 2020<br>Time:       8:30 a.m.<br>Courtroom:  4<br><br>Action Filed: February 21, 2018<br>Trial Date:   None Set |

**TO THE HONORABLE COURT AND ALL PARTIES AND THEIR**

**COUNSEL OF RECORD**:

    **PLEASE TAKE NOTICE** that on March 18, 2020, at 8:30 a.m., or as soon

thereafter as the matter shall be heard, before the Honorable Hon. Lawrence J.

O'Neill, United States District Judge, in Courtroom 4 of the Robert E. Coyle United

States Courthouse, 2500 Tulare Street, Seventh Floor, Fresno, California, 93721,

1    Defendant Cambridge Healthcare Services, by and through its attorneys of record,

2    will and hereby does move the Court for an order dismissing the First Amended

3    Complaint ("FAC") of Relator Thomas Turner ("Relator") alleging violations of the

4    federal False Claims Act, 31 U.S.C. §§ 3729-3733, and the California False Claims

5    Act, Cal. Gov't Code §§ 12650-12656, for failure to state a claim and to allege fraud

6    with sufficient particularity pursuant to Federal Rules of Procedure Rule 12(b)(6)

7    and 9(b).

8        This motion is based on the accompanying memorandum of points and

9    authorities and declaration of Mark S. Hardiman ("Hardiman Decl."), the files and

10   records in this case, upon such matters as the Court may take judicial notice, and on

11   such further evidence and argument as may be presented at any hearing of this

12   motion.  This motion is made following discussions by counsel for the parties, which

13   took place via telephone on November 27, 2019.  *See* Hardiman Decl. ¶ 2.

14   Dated:  January 29, 2020                    Respectfully submitted,

15                                               NELSON HARDIMAN LLP

16

17                                               By: */s/ M.S. Hardiman*
                                                     Mark S. Hardiman

18

19                                               Attorneys for Defendant
                                                 Cambridge Healthcare Services

20

21

22

23

24

25

26

27

28

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

2

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................. 1

II.    STATEMENT OF FACTS AS ALLEGED ................................................. 1

III.   LEGAL STANDARD ........................................................................ 4

IV.    ARGUMENT ................................................................................. 6

       A.   RELATOR'S FAC FAILS TO STATE AN FCA CLAIM
            AGAINST CHS BASED ON VIOLATIONS OF THE AKS
            OR THE MEDI-CAL ANTI-DISCRIMINATORY BILLING
            RULE…………………………………………………………6

            1.   No Valid FCA Cause of Action Based On CHS's
                 Alleged AKS Violations ............................................. 8

            2.   No Valid FCA Cause of Action Based On Dynamic's
                 Alleged Violation of the Medi-Cal Anti-Discriminatory
                 Billing Rules ......................................................... 14

       B.   RELATOR'S FAC FAILS TO STATE A CA-FCA CLAIM
            AGAINST CHS BASED ON VIOLATIONS OF THE AKS
            OR THE MEDI-CAL ANTI-DISCRIMINATORY BILLING
            RULE…………………………………………………………18

V.     CONCLUSION .............................................................................. 19

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

3

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................................. 5

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................................. 5

*Dorsey v. Portfolio Equities, Inc.,*
  540 F.3d 333 (5th Cir. 2008) ................................................................................ 7

*Epstein v. Wash. Energy Co.,*
  83 F.3d 1136 (9th Cir. 1996) ................................................................................ 5

*Gonzalez v. Fresenius Medical Care North America,*
  689 F.3d 470 (5th Cir. 2012) ................................................................................ 7

*Hericks v. Lincare Inc.,*
  2014 WL 1225660 (E.D. Pa. Mar. 25, 2014) ................................................. 5, 12

*Neubronner v. Milken,*
  6 F.3d 666 (9th Cir. 1993) .................................................................................... 6

*Resnick v. Hayes,*
  213 F.3d 443 (9th Cir. 2000) ................................................................................ 5

*Swartz v. KPMG LLP,*
  476 F.3d 756 (9th Cir. 2007) .............................................................................. 13

*Tuchman v. DSC Communications Corp.,*
  14 F.3d 1061 (5th Cir. 2003) ................................................................................ 8

*U.S. ex rel. DeCarlo v. Kiewit/AFC Enters., Inc.,*
  937 F. Supp. 1039 (S.D.N.Y. 1996) ................................................................... 12

*U.S. ex rel. Dennis v. Health Management Associates, Inc.,*
  2013 WL 146048 (M.D. Tenn. 2013) ............................................................ 14, 18

*U.S. ex rel. Dooley v. Metic Transplantation Lab, Inc.,*
  2016 WL 9819559 (C.D. Cal. June 6, 2016) ...................................................... 13

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

4

*U.S. ex rel. Dresser v. Qualium Corp.,*
  2016 WL 3880763 (N.D. Cal. July 18, 2016) ...................................................17

*U.S. ex rel. Farmer v. City of Houston,*
  523 F.3d 333 (5th Cir. 2008) ....................................................................7

*U.S. ex rel. Hendow v. Univ. of Phoenix,*
  461 F.3d 1166 (9th Cir. 2006) ...................................................................8

*U.S. ex rel. Lacy v. New Horizons, Inc.,*
  2008 WL 441564 (W.D. Okl. Sept. 25, 2008) ...........................................14, 18

*U.S. ex rel. Lee v. Corinthian Colleges,*
  655 F.3d 984 (9th Cir. 2011) ....................................................................7

*U.S. ex rel. Lee v. SmithKline Beecham, Inc.,*
  245 F.3d 1048 (9th Cir. 2001) ..................................................................13

*U.S. ex rel. Mastej v. Health Management Associates, Inc.,*
  869 F. Supp. 2d 1336 (M.D. Fla. 2012) ...............................................14, 18

*U.S. ex rel. Mei Ling v. City of Los Angeles,*
  2018 WL 3814498 (C.D. Cal. July 25, 2018) .................................................16

*U.S. ex rel. Nunnally v. W. Calcasieu Cameron Hosp.,*
  519 F. App'x 890 (5th Cir. 2013) .....................................................5, 6, 12, 13

*U.S. ex rel. Robinson v. Northrop Corp.,*
  149 F.R.D. 142 (N.D. Ill. 1993) ................................................................12

*U.S. ex rel. Shapiro v. Fairfax Discount Pharmacy,*
  2018 WL 6185956 (C.D. Cal. March 7, 2018) ...............................................13

*U.S. ex rel. Vallejo v. Investronica, Inc.,*
  2 F. Supp. 2d 330 (W.D.N.Y. 1998) .....................................................13, 18

*U.S. v. Bornstein,*
  423 U.S. 303 (1976) .................................................................................6

*U.S. v. Kiewit Pac. Co.,*
  41 F. Supp. 3d 796 (N.D. Cal. 2014) ...........................................................5

*U.S. v. Kitsap Physicians Service,*
  314 F.3d 995 (9th Cir. 2002) ...................................................................11

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14th Floor
LOS ANGELES, CALIFORNIA 90024

5

DEFENDANT CAMBRIDGE HEALTHCARE SERVICES'
MOTION TO DISMISS FAC

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

*U.S. v. Mackby,*
   261 F.3d 821 (9th Cir. 2001) ............................................................... 6

*U.S. v. Mousavi,*
   604 F.3d 1084 (9th Cir. 2010) ........................................................... 10

*U.S. v. Paramedics Plus LLC,*
   2017 WL 4812443 (E.D. Tex. Oct. 25, 2017) ..................................... 9

*U.S. v. Safran Group,*
   2017 WL 235197 (N.D. Cal. Jan. 19, 2017) ...................................... 13

*U.S. v. Scan Health Plan,*
   2017 WL 4564722 (C.D. Cal. October 5, 2017) ................................. 17

*U.S. v. Sequel Contractors, Inc.,*
   402 F. Supp. 2d 1142 (C.D. Cal. 2005) ............................................... 5

*U.S. v. Starks,*
   157 F.3d 833 (11th Cir. 1998) ........................................................... 10

*U.S. v. Vista Hospice Care,*
   2016 WL 3449833 (N.D. Texas June 20, 2016) ................................... 9

*United States ex rel. Ebeid v. Lungwitz,*
   616 F.3d 993 (9th Cir. 2010) ................................................. 6, 8, 11, 13

*United States v. Eli Lilly and Company, Inc.,*
   2018 WL 4026986 (E.D. Tex. July 25, 2018) ...................................... 9

*Universal Health Services v. U.S. ex rel. Escobar,*
   136 S. Ct. 1989 (2016) ................................................................. 8, 16

*Vess v. Giba-Ceigy Corp.,*
   317 F.3d 1097 (9th Cir. 2003) .......................................................... 5, 6

**California Cases**

*San Francisco Unified Sch. Dist. ex rel. Contreras v. Laidlaw Transit, Inc.,*
   182 Cal. App. 4th 438 (2010) ........................................................... 18

DEFENDANT CAMBRIDGE HEALTHCARE SERVICES'
MOTION TO DISMISS FAC

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

**Federal Statutes**

31 U.S.C.
    § 3729 ...................................................................................*passim*
    § 3730 ........................................................................................ 6

42 U.S.C.
    § 1320a-7b .............................................................................*passim*
    § 1395ff....................................................................................... 2
    § 1395kk-l .................................................................................. 2

**California Statutes**

Cal. Gov. Code
    § 12651 .................................................................................*passim*
    § 12652 ....................................................................................... 6

**Other Authorities**

22 C.C.R. § 51480 .................................................................... 3,14

22 C.C.R. § 51501 .................................................................... 3,14

Federal Rule of Civil Procedure 8 ......................................... 5, 16

Federal Rule of Procedure 9(b) ...........................................*passim*

Federal Rule of Procedure Rule 12(b)(6) ............................*passim*

DEFENDANT CAMBRIDGE HEALTHCARE SERVICES'
MOTION TO DISMISS FAC

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

By its instant motion, Defendant Cambridge Healthcare Services ("CHS") requests an order dismissing Relator's First Amended Complaint ("FAC") alleging violations of the federal False Claims Act, 31 U.S.C. §§ 3729-3733 ("FCA") and the California False Claims Act, Cal. Gov't Code §§ 12650-12656 ("CA-FCA") for failure to state a claim pursuant to Federal Rules of Procedure 12(b)(6) and 9(b).

Other than generic allegations regarding Dynamic Medical Systems LLC's ("Dynamic") alleged billing relationship with skilled nursing facility ("SNF") operators regarding mattress rental rates, the FAC contains one sentence alleging in conclusory fashion that CHS's SNFs had "discriminatory billing arrangements" with this supplier that allegedly resulted in false claims being submitted to the Medicare and Medi-Cal programs in violation of the FCA and CA-FCA.

However, as detailed below, the FAC is devoid of any factual allegations establishing the essential elements of an FCA or CA-FCA cause of action based on CHS's alleged receipt of kickbacks from Dynamic in the form of contracted "discounted" rates for providing mattress rentals to SNF residents or based on Dynamic's alleged violations of the Medi-Cal Anti-Discriminatory Billing Rule. In addition, the FAC fails to describe CHS's role in these alleged fraudulent billing schemes with the factual particularity mandated by Rule 9(b). Consequently, the FAC should be dismissed for failure to state a claim.

## II.   STATEMENT OF FACTS AS ALLEGED

From 2006 to the present, co-defendant Dynamic allegedly supplied specialty medical mattresses to CHS and other operators of SNFs[1] for residents covered by

---

[1] These SNF operators include co-defendants Covenant Care California, LLC, Mariner Health Care Management Company, and Plum Healthcare Group LLC. FAC, ¶¶ 13-15.

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

1

the Medicare and Medi-Cal programs.  FAC, ¶¶ 10, 16, 42.[2]

Under the Medicare program, a federally funded health care program providing health insurance coverage to people who are aged 65 and over or who have certain physical disabilities, SNFs are paid a fixed daily ("per diem") rate for providing skilled nursing services for Medicare beneficiaries.  FAC, ¶¶ 19, 23.[3] Similarly, under the Medi-Cal program, California's implementation of the Medicaid program, a joint federal-state health care program through which the federal government provides financial assistance to states furnishing medical services to qualified indigent persons, SNFs are generally paid a fixed ("capitated") monthly sum for providing skilled nursing services to Medi-Cal beneficiaries.  *Id.*, ¶¶ 17-18, 24.  Under both programs, SNFs often contract with and pay outside providers to furnish the necessary nursing services and equipment, including specialty mattresses.  *Id.*, ¶ 48.

While the Medi-Cal program allegedly pays the full capitated monthly rate to SNFs for certain Medi-Cal beneficiaries, other beneficiaries are required to pay a Share of Cost ("SOC") based on their income.  FAC, ¶¶ 25-26.  In those cases, the SNFs collect the SOC from the beneficiaries and bill Medi-Cal for the balance of the monthly capitated rate.  *Id.*, ¶¶ 25, 29.  However, the Medi-Cal program also allegedly allows beneficiaries to spend their SOC on necessary medical services and

---

[2] According to Relator, Dynamic's "mattresses prevent and treat wounds and ulcers, reduce soft tissue distortion, and promote blood flow."  FAC ¶ 10.  Dynamic was allegedly acquired by co-defendant Invacare Corporation in 2011 and then sold to co-defendant Joerns Healthcare, LLC ("Joerns"), another supplier of SNF specialty mattresses, in July 2015.  *Id.*, ¶¶ 11-12.

[3] The Medicare program is administered by the U.S. Department of Health & Human Services through its agency, the Center for Medicare and Medicaid Services ("CMS").  CMS in turn contracts with private organizations to act as Medicare Administrative Contractors ("MACs") to review and process Medicare claims submitted by SNFs for treatment of Medicare beneficiaries.  42 U.S.C. §§ 1395ff(a)(l), 1395kk-l(a)(3)-(4)).

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

supplies, including specialty mattresses, that are not covered by the Medi-Cal program. *Id.*, ¶¶ 27-28. In those cases, the Medi-Cal program requires the SNFs to reduce the SOC collected from the beneficiaries by the amount spent on non-covered services and supplies and then bill the program for the balance of the monthly capitated rate. *Id.*, ¶ 29-30.

According to the FAC, Dynamic allegedly charged different rental rates for its specialty mattresses depending on who was paying the bill. Specifically, the supplier would allegedly bill a daily rental rate of (1) $18.76 to Medi-Cal in the few cases where the mattress was covered due to the nature of the beneficiary's wounds; (2) between $3 and $9 to patients covered by Medi-Cal with no SOC, Medicare, or private insurance (known as the "facility segment" of patients); and (3) a "retail" price of $23 to Medi-Cal patients paying for the non-covered mattresses from their SOC. FAC, ¶ 33. Thus, in a hypothetical case where a Medi-Cal beneficiary's $1,000 SOC for a monthly Medi-Cal payment of $5,000 was reduced to $310 by the $690 spent for a $23 per day non-covered mattress, the Medi-Cal program would allegedly pay $600 more to the SNF than it would have paid if the beneficiary had only paid the $3 daily rental rate charged by Dynamic for "facility segment" patients. *Id.*, ¶¶ 36-40.

Relator further alleges that Dynamic's discounted contract rental rates for the SNFs' "facility segment" patients were kickbacks to induce the SNFs to refer all their Medicare and Medi-Cal mattress rental business to the supplier in violation of the federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b ("AKS"), and that Dynamic's Medi-Cal claims charging a daily rental rate of $18.76 higher than its discounted contract rental rate of $3 to $9 violated the Medi-Cal Anti-Discriminatory Billing Rule, Title 22, California Code of Regulations ("CCR") §§ 51480(a), 51501. FAC, ¶¶ 31-32, 45-47.

The only specific allegation about CHS's involvement with Dynamic's alleged differential Medi-Cal billing scheme is that CHS "manages 37 SNFs [in

3

NELSON HARDIMAN LLP
1100 Glendan Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

Northern and Southern California] and entered into discriminatory billing agreements with Dynamic." FAC, ¶¶ 16, 52.  In addition, the FAC alleges that CHS "contacted Dynamic and Joerns in 2017 requesting that their SOC rates be set so that they were equal to their facility rates." *Id*., ¶ 52.

Based on these allegations, the FAC charges that, between 2006 and the present, CHS and the co-defendants knowingly (1) caused false claims and records to be presented to the Medicare and Medi-Cal programs in violation of the FCA, 31 U.S.C. § 3729(a)(1)(A) (First Cause of Action); (2) caused false statements material to Medicare and Medi-Cal false claims to be made and used, in violation of the FCA, 31 U.S.C. § 3729(a)(1)(B) (Second Cause of Action); (3) retained and concealed Medicare and Medi-Cal overpayments, in violation of the FCA, 31 U.S.C. § 3729(a)(1)(G) (Third Cause of Action); (4) conspired with each other to violate the FCA, in violation of the FCA, 31 U.S.C. § 3729(a)(1)(C) (Fourth Cause of Action); (5) caused false claims to be presented to the Medi-Cal program, in violation of the CA-FCA, Cal. Gov. Code § 12651(a)(1) (Fifth Cause of Action);(6) caused false statements to be made to obtain payment for such false Medi-Cal claims, in violation of the CA-FCA, Cal. Gov. Code § 12651(a)(2) (Sixth Cause of Action); (7) alternatively, were the inadvertent beneficiaries of false Medi-Cal claims, but failed to disclose such false claims after discovering them, in violation of the CA-FCA, Cal. Gov. Code § 12651(a)(8) (Seventh Cause of Action); and (8) conspired with each other to violate the CA-FCA, in violation of Cal. Gov. Code § 12651(a)(3) (Eighth Cause of Action).  FAC, ¶¶ 55-90.[4]

## III.   LEGAL STANDARD

A complaint will survive a motion to dismiss pursuant to Rule 12(b)(6) if it

---

[4] The original complaint was filed on December 28, 2017 and the FAC was filed on March 20, 2018.  *See* Clerk's Record ("CR") 1, 7.  On or about September 4, 2019, the United States and the State of California notified the Court that they were declining to intervene in Relator's action at this time.  CR 16.

DEFENDANT CAMBRIDGE HEALTHCARE SERVICES'
MOTION TO DISMISS FAC

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14th Floor
LOS ANGELES, CALIFORNIA 90024

1    contains "sufficient factual matter, accepted as true, to state a claim to relief that is

2    plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

3    *Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible under

4    Rule 8 when the plaintiff pleads facts that allow the court to "draw the reasonable

5    inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

6    678.  When considering a motion to dismiss, this Court must accept as true all

7    allegations of material fact and must construe those facts in the light most favorable

8    to the plaintiff. *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000); *Epstein v.*

9    *Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). However, conclusory

10   allegations or allegations that are no more than a statement of a legal conclusion "are

11   not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. *Id*. At 679.  In other

12   words, Relators must support their claim with more than a formulaic recitation of

13   the elements, labels and conclusions, and naked assertions of fact.  *Id*. at 678.

14   Instead, Relators must allege sufficient facts such that a court has "plausible grounds

15   to infer" that their claims rise "above the speculative level." *Twombly*, 550 U.S. at

16   555-56.

17         Since Relator's FAC is brought under the FCA and CA-FCA, it must also

18   fulfill the requirements of Rule 9(b).  *See Cafasso, U.S. ex rel.v. General Dynamics*

19   *C4 Systems, Inc.*, 637 F.3d 1047, 1054 (9th Cir. 2011); *Vess v. Giba-Ceigy Corp.*,

20   317 F.3d 1097, 1103 (9th Cir. 2003) (Rule 9(b) applies to state-law causes of action);

21   *see U.S. ex rel. Nunnally v. W. Calcasieu Cameron Hosp.*, 519 F. App'x 890, 894

22   (5th Cir. 2013) (Rule 9(b) applies to FCA claims based on alleged kickbacks);

23   *Hericks v. Lincare Inc.*, 2014 WL 1225660, at *12 (E.D. Pa. Mar. 25, 2014) (same);

24   *U.S. v. Kiewit Pac. Co.*, 41 F. Supp. 3d 796, 810 (N.D. Cal. 2014) (Rule 9(b) applies

25   to CA-FCA claims); *U.S. v. Sequel Contractors, Inc.*, 402 F. Supp. 2d 1142, 1152

26   (C.D. Cal. 2005) (same).  Rule 9(b) requires that the details constituting the alleged

27   fraud must "give defendants notice of the particular misconduct which is alleged to

28   constitute the fraud charged so that they can defend against the charge and not just

deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993).  This requires that the particular facts supporting a fraud cause of action include the "who, what, when, where and how" of the misconduct charged, as well as "what is false or misleading about a statement and why it is false." *United States ex rel. Ebeid v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (citing *Vess*, 317 F.3d at 1106).[5]  A dismissal for failure to plead fraud with particularity pursuant to Rule 9(b) is treated the same as a Rule 12(b)(6) dismissal for failure to state a claim. *Vess*, 317 F.3d at 1107.

## IV.   ARGUMENT

### A.   RELATOR'S FAC FAILS TO STATE AN FCA CLAIM AGAINST CHS BASED ON VIOLATIONS OF THE AKS OR THE MEDI-CAL ANTI-DISCRIMINATORY BILLING RULE

The federal FCA is designed to punish and deter fraud against the federal government. *See U.S. v. Bornstein*, 423 U.S. 303, 309 & n.5 (1976). To establish FCA liability for presenting false claims, a relator must allege (1) a false or fraudulent claim, (2) which was presented, or caused to be presented, by the defendant to the United States for payment or approval, (3) with knowledge that the claim was false. *See* 31 U.S.C. § 3729(a)(1)(A); *U.S. v. Mackby*, 261 F.3d 821, 826 (9th Cir. 2001).[6] To establish a valid FCA claim for making false statements, a

---

[5] Rule 9(b)'s "heightened pleading standard for fraud claims supplies defendants with the information they need to prepare responses, prevents discovery intended as a mere fishing expedition, and protects the defendants' reputations from baseless allegations." *Nunnally*, 519 F. App'x at 892 n.2.

[6] Relator's FAC is brought under FCA and CA-FCA provisions that permit a private litigant to bring a *qui tam* action on behalf of the federal or California government against anyone who submits a false claim to either government or to commercial insurers. *See* 31 U.S.C. §§ 3730(b); Cal. Gov. Code § 12652(c).  The federal or California government may intervene in the action, but if they choose not to do so, the relator bringing the action may proceed on his own. *See* 31 U.S.C. § 3730(b)(2); Cal. Gov. Code § 12652(f).

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

relator must allege that (1) there was a false statement, (2) made knowingly, (3) that was material, and (4) that caused the government to pay out money or to forfeit moneys due (i.e., that involved a claim). 31 U.S.C. § 3729(a)(1)(B); *Gonzalez v. Fresenius Medical Care North America*, 689 F.3d 470, 475 (5th Cir. 2012). In order to state a valid FCA "reverse false claim" for retaining overpayments, a relators must allege that defendants either (1) knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay money to the government or (2) knowingly made or used a false statement material to an obligation to pay money to the government. 31 U.S.C. § 3729(a)(1)(G). To state an FCA conspiracy cause of action, a relator must show "(1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim allowed or paid by [the Government] and (2) at least one act performed in furtherance of that agreement." *U.S. ex rel. Farmer v. City of Houston*, 523 F.3d 333, 343 (5th Cir. 2008).

Under the FCA, a person acts "knowingly" when that person (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b). Although no proof of specific intent to defraud is required to establish knowledge, the Ninth Circuit has explained that under the FCA's "scienter requirement, 'innocent mistakes, mere negligent misrepresentations and differences in interpretations' will not suffice to create liability." *U.S. ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 996 (9th Cir. 2011) (quoting *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006)). While the intent element of the FCA may therefore be alleged generally, *id.*, "simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b)." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (quoting *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir.1994)). Instead, a relator "must set forth specific facts supporting an inference of fraud," including facts showing a defendant's motive or at least "identifying circumstances that indicate conscious behavior on the part of

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

7

the defendant...." *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 2003).

>    1.   No Valid FCA Cause of Action Based On CHS's Alleged AKS Violations

A claim can be "false" within the meaning of the FCA under a variety of theories.[7]  Since at least 2010, a violation of the federal AKS can form the basis of an FCA violation because any Medicare or Medi-Cal claim that includes services delivered in violation of the AKS constitutes a "false" claim within the meaning of the FCA.  *See* 42 U.S.C. § 1320a-7b(g) (2010).  Under the AKS, it is illegal to knowingly and willfully solicit or receive "remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind" in return for either (a) "referring an individual to a person for the furnishing or arranging for the furnishing of any item or service" or (b) "purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part

---

[7] Most simply, a claim is facially or factually false if "the claim for payment is itself literally false or fraudulent." *Hendow*, 461 F.3d at 1170.  Alternatively, a claim can be "false" under an express certification theory if (1) the defendant knowingly makes a false certification or statement of compliance with a government regulation, (2) that is "material to the government's decision to pay out moneys to the claimant" and (3) the claim asks for government payment.  *Id*. at 1171-1173.  Finally, under an implied certification theory, a claim can be a "false" misrepresentation (1) if the claim "does not merely request payment, but also makes specific representations about the goods or services provided," (2) "the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths," and (3) these misrepresentations are material to the government's payment decision. *Universal Health Services v. U.S. ex rel. Escobar*, 136 S. Ct. 1989, 2001-2002 (2016).  The Ninth Circuit has held that the implied certification theory is "based on the notion that the act of submitting a claim for reimbursement itself implies compliance with governing federal rules that are a precondition to payment." *Ebeid*, 616 F.3d at 996 (quoting *Mikes v. Straus*, 274 F.3d 687, 699 (2d Cir. 2001)).

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

DEFENDANT CAMBRIDGE HEALTHCARE SERVICES'
MOTION TO DISMISS FAC

1   under a Federal health care program." 42 U.S.C. § 1320a-7b(b)(1).[8]

2   When an FCA claim is based on an AKS violation, a relator must plead his

3   FCA claim "with particularity, including each element of the alleged AKS

4   violations." *Health Choice Alliance, LLC, on behalf of United States v. Eli Lilly and*

5   *Company, Inc.*, 2018 WL 4026986, at \*37 (E.D. Tex. July 25, 2018); *U.S. v.*

6   *Paramedics Plus LLC*, 2017 WL 4812443, at \*4 (E.D. Tex. Oct. 25, 2017)

7   ("elements of the AKS violation must also be pleaded with particularity under Rule

8   9(b), because they are brought as a FCA claim.")  In addition, an "FCA claim

9   dependent on the AKS needs to meet all of the other elements of an FCA claim."

10   *U.S. v. Vista Hospice Care*, 2016 WL 3449833, at \*25 (N.D. Texas June 20, 2016)

11   (citing *Nunnally*, 519 Fed. Appx. at 894–95 and *U.S. ex rel. Hartwig v. Medtronic,*

12   *Inc.*, 2014 WL 1324339, at \*12 (S.D. Miss. Mar. 31, 2014)).

13   In this case, while far from clear, the FAC appears to allege that false

14   Medicare or Medi-Cal claims were submitted as the result of Dynamic's alleged

15   kickbacks to CHS in the form of the contracted "discounted" mattress rental rates

16   for CHS's "facility segment" patients in exchange for CHS's referral of all mattress

17   rental business to Dynamic, including for Medicare patients and Medi-Cal patients

18   with or without a SOC.  However, the FAC fails to state a valid FCA claim

19   predicated on CHS's alleged receipt of kickbacks because it does not allege the

20   essential elements of an AKS violation resulting in Medicare or Medi-Cal false

21   claims nor describe CHS's alleged involvement in any AKS violations with the

22   "who, what, when, where and how" particularity required by Rule 9(b).

23   *a.      No Illegal Remuneration Alleged*

24   First, Relator's FAC fails to allege any facts establishing that the discounted

---

[8] The AKS includes various "safe harbor" provisions that exclude certain types of payments from being considered illegal remuneration. *See* 42 U.S.C. § 1320a-7b(b)(3).

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

DEFENDANT CAMBRIDGE HEALTHCARE SERVICES'
MOTION TO DISMISS FAC

rental rates that Dynamic allegedly agreed to contractually accept from CHS for mattress rentals were "kickbacks" intended to induce CHS to refer Medicare or Medi-Cal patients to Dynamic as opposed to agreed-upon compensation for providing mattress rental services that CHS SNFs were required by the Medicare and the Medi-Cal programs to provide in exchange for the per diem or capitated rate paid by these programs for skilled nursing services.  There is no allegation that such "discounted" rates were not fair market value or were below Dynamic's cost of providing the services.  Relator's allegation that Dynamic charged a higher rate when billing Medi-Cal directly or billing Medi-Cal patients with a SOC does not rationally support an inference that the lower contracted "discounted" rates were a kickback and is also conceptually at odds with Relator's separate allegation that those same "discounted" rates were Dynamic's true charge to the public and that its other higher billing rates therefore violated the Medi-Cal Anti-Discriminatory Billing Rule.  Absent any factual allegations that Dynamic's "discounted" rates were not fair market value for the mattress rental services that it allegedly agreed to provide to CHS SNFs, the FAC fails to sufficiently allege CHS's receipt of any illegal remuneration, and its causes of action predicated on alleged AKS violations must be dismissed.

### b.  No AKS Scienter Alleged

Second, the FAC does not contain even a general and conclusory allegation that CHS "knowingly and willfully" violated the AKS and fails to identify any specific facts indicating that CHS at least knew that its contracted discounted rates for Dynamic's mattress rentals were unlawful.  *See* 42 U.S.C. § 1320a-7b(h); *U.S. v. Starks*, 157 F.3d 833, 838 (11th Cir. 1998) (AKS did not require knowledge that arrangement for patient referrals violated the statute, but did require knowledge that conduct was unlawful); *U.S. v. Mousavi*, 604 F.3d 1084, 1092-1093 (9th Cir. 2010) (in order to establish "willful" violation of criminal statute, government must prove "'defendant acted with knowledge that his conduct was unlawful'").  Since CHS's

10

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

1    "willful" conduct is an essential element of an AKS violation, the FAC's failure to

2    allege that CHS acted with the requisite scienter requires all the FCA causes of

3    actions predicated on AKS violations to be dismissed for failure to state a claim.

4                    *c.*    *No "False" Claims Alleged*

5           Third, the FAC fails to identify any false Medicare or Medi-Cal claims

6    allegedly resulting from CHS's receipt of kickbacks from Dynamic in the form of

7    "discounted" mattress rental rates. The FCA is not a catchall anti-fraud provision,

8    but expressly "attaches liability, not to the underlying fraudulent activity or to the

9    government's wrongful payment, but to the claim for payment." *Cafasso*, 637 F.3d

10   at 1055 (quoting *U.S. v. Rivera*, 55 F.3d 703, 709 (1st Cir. 1995)). Evidence of an

11   actual false claim is "the *sine qua non* of a False Claims Act violation." *U.S. v. Kitsap*

12   *Physicians Service*, 314 F.3d 995, 1002 (9th Cir. 2002) (quoting *U.S. ex rel. Clausen*

13   *v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1312 (2002)). Relator is

14   obliged to "come to court with a claim in hand or with sufficiently detailed

15   circumstantial evidence to establish that the defendant actually submitted a false

16   claim." *Kitsap Physicians Serv.*, 314 F.3d at 1002. While Rule 9(b) can be satisfied

17   without detailed allegations regarding the false claims, such as the exact dollar

18   amounts, billing numbers, or dates, in such case the complaint still must allege

19   "particular details of a scheme to submit false claims paired with reliable indicia that

20   lead to a strong inference that claims were actually submitted." *Ebeid,* 616 F.3d. at

21   998-999 (quoting *U.S. ex rel. Grubbs v. Ravikumar Kanneganti*, 565 F.3d 180, 190

22   (5th Cir. 2009)).

23          In this case, the FAC does not identify a single Medicare or Medi-Cal claim

24   that was false based on CHS's alleged receipt of kickbacks from Dynamic, whether

25   by date, patient name, provider, service provided, or otherwise. Further, the FAC

26   does not explain how a CHS SNF's payment of the discounted rates to Dynamic for

27   mattress rentals caused any CHS SNF claims to be false. Nor does Relator include

28   any factual allegations establishing that Dynamic ever submitted a claim directly to

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

DEFENDANT CAMBRIDGE HEALTHCARE SERVICES'
MOTION TO DISMISS FAC

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

1   Medicare or Medi-Cal for a mattress rental provided to a CHS SNF resident.  The

2   FAC's unsupported assumption that false claims resulted from CHS's alleged receipt

3   of kickbacks is insufficient to establish FCA liability.  *Nunnally,* 519 Fed. Appx. at

4   894 (FCA action properly dismissed where complaint did "not identify a single claim

5   submitted ... for services rendered pursuant to an illegal referral, let alone one for

6   which [the defendant] expressly certified its compliance with federal law"); *Hericks*,

7   2014 WL 1225660, at *1, 7 (dismissing FCA claim where relator sufficiently alleged

8   that defendants provided remuneration to specific physicians who referred patients,

9   but did "not connect these referrals to any claims made to Medicare").

10                    *d.    Fraud Not Alleged With Factual Particularity*

11          Finally, Relator's FCA causes of action based on CHS's alleged AKS

12   violations also fail to state a valid claim with the "who, what, when, where and how"

13   particularity required by Rule 9(b).  In addition to not identifying any specific

14   Medicare or Medi-Cal claims or related statements that were false, Relator also fails

15   to identify any CHS SNF that actually had a "discriminatory billing arrangement"

16   with Dynamic, whether by SNF name or by the date and terms of any such

17   arrangement.[9]  The FAC also fails to identify any CHS officer, manager, or

18   employee who had any knowledge or involvement with CHS's alleged AKS

19   violations and the resulting submission of false claims.  *See U.S. ex rel. DeCarlo v.*

20   *Kiewit/AFC Enters., Inc.*, 937 F. Supp. 1039, 1050-1051 (S.D.N.Y. 1996) (FCA

21   complaint deficient under Rule 9(b) where relator only referred to corporate

22   defendant and did not identify any specific employees who may have been involved

23   in submitting false claims); *U.S. ex rel. Robinson v. Northrop Corp.*, 149 F.R.D. 142,

24   145 (N.D. Ill. 1993) (same). The FAC's generic allegations regarding Dynamic's

25   alleged billing arrangements with all SNF operators do not satisfy the Rule 9(b)

26

27   ───────────────

28   [9] While the FAC does include specific examples of such alleged SNF billing
     arrangements, *see* FAC, ¶ 48, none of these examples involve CHS SNFs.

1   requirement that CHS's particular role in the alleged submission of false claims be

2   established with factual particularity.  *See e.g.*, *Swartz v. KPMG LLP*, 476 F.3d 756,

3   764–765 (9th Cir. 2007) ("In the context of a fraud suit involving multiple

4   defendants, a plaintiff must, at a minimum identify the role of each defendant in the

5   alleged fraudulent scheme"); *U.S. ex rel. Shapiro v. Fairfax Discount Pharmacy*,

6   2018 WL 6185956, at *3 (C.D. Cal. March 7, 2018) (under Rule 9(b), dismissing

7   FCA complaint that lumped multiple defendants together and failed to inform each

8   defendant separately of the allegations surrounding his alleged participation in the

9   fraud); *U.S. v. Safran Group*, 2017 WL 235197, at *9  (N.D. Cal. Jan. 19, 2017)

10  (same).

11        In sum, Relator's "vague description of a 'kickback arrangement' does not

12  provide enough 'particular' information to satisfy the purposes of Rule 9(b), and is

13  likewise insufficient to provide reliable indicia to permit a strong inference of a

14  kickback scheme" involving Medicare or Medi-Cal patients.  *U.S. ex rel. Dooley v.*

15  *Metic Transplantation Lab, Inc.*, 2016 WL 9819559, at *4 (C.D. Cal. June 6, 2016);

16  *Nunnally*, 519 F. App'x at 894 (dismissing Relators' FCA kickback claims based on

17  "sweeping and conclusory allegations…without a shred of detail or particularity.")

18  Put more simply, Relator has failed to plead the essential elements and factual details

19  of the alleged kickbacks sufficient "to give [CHS] notice of the particular

20  misconduct which is alleged to constitute the fraud charged so that [it] can defend

21  against the charge and not just deny that [it has] done anything wrong."  *U.S. ex rel.*

22  *Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051-1052 (9th Cir. 2001); *Ebeid*,

23  616 F.3d at 999.

24        As a result, Relator's First, Second, Third and Fourth FCA causes of action

25  against CHS for causing false claims to be submitted and false statements to be made

26  to the Medicare or Medi-Cal programs, retaining Medicare and Medi-Cal

27  overpayments, and conspiring to do so, based on AKS violations that are not

28  sufficiently pleaded must be dismissed pursuant to Rules 12(b)(6) and 9(b).  *See U.S.*

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

13

1  *ex rel. Vallejo v. Investronica, Inc.*, 2 F. Supp. 2d 330, 337 (W.D.N.Y. 1998)

2  (dismissing FCA false statement claim against corporations where relator failed to

3  allege dates of statements or identify the individuals responsible for making the

4  statements, other than to describe them as employees of the defendants); *U.S. ex rel.*

5  *Dennis v. Health Management Associates, Inc.*, 2013 WL 146048, at *18 (M.D.

6  Tenn. 2013) (dismissing FCA "reverse false claim" cause of action where complaint

7  only included boiler-plate statutory language and failed to identify any obligation

8  owed to government or any false statement made to avoid such obligation, who made

9  such statement, when it was made, where it was made, or its contents); *U.S. ex rel.*

10  *Mastej v. Health Management Associates, Inc.*, 869 F. Supp. 2d 1336, 1347 (M.D.

11  Fla. 2012) (FCA conspiracy claim dismissed where relator failed to describe, in

12  specific detail, an act furthering object of conspiracy); *U.S. ex rel. Lacy v. New*

13  *Horizons, Inc.*, 2008 WL 441564, at *6 (W.D. Okl. Sept. 25, 2008) (dismissing FCA

14  conspiracy claim that did not "specify the who, what, when, where, and how of any

15  conspiracy").

16    2.    No Valid FCA Cause of Action Based On Dynamic's
           Alleged Violation of the Medi-Cal Anti-Discriminatory
17         Billing Rule

18        Under the Medi-Cal program, 22 C.C.R. § 51480(a) provides that "[n]o

19  provider shall bill or submit a claim for reimbursement for the rendering of health

20  care services to a Medi-Cal beneficiary in any amount greater or higher than the

21  usual fee charged by the provider to the general public for the same service." 22

22  C.C.R. § 51480(a).  Similarly, 22 C.C.R. § 51501(a) provides that "no provider shall

23  charge for any service or any article more than would have been charged for the

24  same service or article to other purchasers of comparable services or articles under

25  comparable circumstances."  22 C.C.R. § 51501(a).

26        While Relator's shotgun pleading makes it unclear whether he is alleging that

27  Dynamic's alleged violations of the Medi-Cal Anti-Discriminatory Billing Rule

28

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

1  resulted in CHS's violations of either the FCA, the CA-FCA, or both, the FAC's

2  allegations regarding this theory of liability fail to state a valid claim under either

3  statute and again do not describe CHS's involvement with such violations with the

4  factual particularity required by Rule 9(b).

5           *a.*    *Dynamic "Usual Fee to General Public" Not Alleged*

6        First, the FAC contains no factual allegations establishing that Dynamic's

7  alleged contracted daily rental rates of $3 to $9 with CHS SNFs constitute "the usual

8  fee charged by the provider to the general public" or are comparable to the higher

9  rental rates allegedly billed by Dynamic directly to Medi-Cal for mattress rentals or

10  billed to Medi-Cal beneficiaries with a SOC.  In particular, the FAC does not

11  establish that Dynamic's allegedly higher daily charge of $18.76 in its direct Medi-

12  Cal claims for mattress rentals was not its usual charge to the public or what it

13  charged for mattress rentals in a non-contracted arrangement.  Absent such factual

14  allegations, the FAC fails to establish that Dynamic's direct Medi-Cal claims for

15  mattress rentals violated the Medi-Cal Anti-Discriminatory Billing Rule, and all

16  FCA causes of action predicated on such violations must be dismissed.

17           *b.*    *No "False" Claims Alleged*

18        Second, Dynamic's alleged daily $23 daily rental charge to Medi-Cal

19  beneficiaries for non-covered mattress rentals does not violate the Medi-Cal Anti-

20  Discriminatory Billing Rule because there is no allegation that CHS or Dynamic

21  ever submitted a claim to Medi-Cal for this higher rate.  While the FAC alleges that

22  under the Medi-Cal program's SOC reimbursement methodology, the higher rate

23  charged by Dynamic to Medi-Cal beneficiaries for non-covered mattresses resulted

24  in Medi-Cal paying a higher portion of the SNF's reimbursement for skilled nursing

25  services, the Medi-Cal program allegedly required CHS SNFs to reduce a Medi-Cal

26  beneficiary's SOC by the amount paid by the beneficiary for the non-covered

27  mattress rentals and there was therefore nothing false about the SNFs' claims to

28  Medi-Cal for covered skilled nursing services that complied with this SOC

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

15

DEFENDANT CAMBRIDGE HEALTHCARE SERVICES'
MOTION TO DISMISS FAC

reimbursement methodology. Similarly, Dynamic's bill to the Medi-Cal beneficiaries with a SOC for non-covered mattress rentals does not create any FCA liability because no claim was ever allegedly submitted to Medi-Cal for such services and the FAC identifies no law or regulation barring Dynamic from charging Medi-Cal beneficiaries for non-covered services at higher rates than for covered services. Put another way, even if Dynamic was somehow "gaming" the Medi-Cal reimbursement system by excessively charging Medi-Cal beneficiaries for non-covered mattress rentals, this conduct does not create FCA liability absent any actual claim to Medi-Cal for such non-covered services, and all the FCA claims predicated on Dynamic's charges for these non-covered services should be dismissed.

### c.   Materiality of Billing Rule Violation Not Alleged

Third, under the FCA's "demanding" materiality standard, it is not sufficient for a relator to simply allege that the government "designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment" or "would have the option to decline to pay if it knew of the defendant's noncompliance." *Escobar*, 136 S. Ct at 2003. Instead, a relator must allege facts indicating "either that the government would not have paid the claims at issue if it had known of the alleged noncompliance or that it has not paid claims in similar cases of noncompliance." *U.S. ex rel. Mei Ling v. City of Los Angeles*, 2018 WL 3814498, at *16 (C.D. Cal. July 25, 2018); *Escobar*, 136 S. Ct. at 2004 n.6 ("False Claims Act plaintiffs must also plead their claims with plausibility and particularity under Federal Rules of Civil Procedure 8 and 9(b) by, for instance, pleading facts to support allegations of materiality.")

In this case, the FAC fails to allege any facts establishing that Dynamic's alleged violations of the Medi-Cal Anti-Discriminatory Billing Rule were material to Medi-Cal's payment of CHS SNF claims. On the contrary, the FAC suggests that Medi-Cal paid SNF claims even though it must have known that Dynamic's charges to Medi-Cal beneficiaries for non-covered mattress rentals that the SNFs deducted

NELSON HARDIMAN LLP
1100 Glendan Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

DEFENDANT CAMBRIDGE HEALTHCARE SERVICES'
MOTION TO DISMISS FAC

from the SOC were higher than Dynamic's charges in its Medi-Cal claims for such rentals.  As such, Relator's FCA causes of action based on violations of this Rule fail to adequately allege materiality and must be dismissed.  See *U.S. v. Scan Health Plan*, 2017 WL 4564722, at *6 (C.D. Cal. October 5, 2017) (dismissing FCA complaint containing only conclusory allegations of materiality); *U.S. ex rel. Dresser v. Qualium Corp.*, 2016 WL 3880763, at *6 (N.D. Cal. July 18, 2016) (dismissing FCA complaint alleging that government would not have paid defendants' claims, but not explaining why).

### d.    CHS's "Knowing" Involvement Not Alleged

Fourth, the FAC is silent with respect to any facts establishing that CHS, as opposed to Dynamic, has any FCA liability for Dynamic's alleged violations of the Medi-Cal Anti-Discriminatory Billing Rule.  There are no alleged facts indicating that CHS caused Dynamic to submit any direct claims to Medi-Cal for mattress rentals or had any knowledge of or involvement with such Dynamic claims.  Nor does the FAC allege any facts indicating that CHS had any involvement with or control over the $23 daily rate allegedly charged by Dynamic to Medi-Cal beneficiaries with a SOC for non-covered mattress rentals.  On the contrary, the FAC alleges that, in 2017, CHS objected to Dynamic's higher charge to Medi-Cal beneficiaries with a SOC and requested that such charge be equal to the contracted rate paid by CHS SNFs for mattress rentals furnished by Dynamic to the "facility segment" patients.  *See* FAC, ¶ 52.  Further, as noted above, the FAC fails to allege that CHS SNFs' alleged claims to Medi-Cal for beneficiaries with a SOC which complied with the SOC reimbursement methodology for non-covered mattress rentals were in any way false.

### e.    Fraud Not Alleged With Factual Particularity

Finally, as with Relator's FCA claims based on alleged AKS violations, CHS's alleged role in causing false claims to be submitted in violation of the Medi-Cal Anti-Discriminatory Billing Rule is not described with the factual particularity

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

17

required by Rule 9(b). The FAC does not specifically identify a single Medi-Cal beneficiary with a SOC at any CHS SNF who was actually charged the $23 daily rate by Dynamic for non-covered mattress rentals or any Medi-Cal claim by a CHS SNF for such a beneficiary. Nor does Relator identify any CHS officer, manager or employee with knowledge of Dynamic's alleged violations of this Medi-Cal billing rule. Instead, once again, the FAC simply makes generic allegations about Dynamic's billing arrangements with SNF operators that are patently insufficient under Rule 9(b) because they do not separately inform CHS of the factual allegations surrounding its own alleged participation in the supposed billing fraud.

Accordingly, Relator's First, Second, Third and Fourth FCA causes of action against CHS based on Dynamic's alleged violations of the Medi-Cal Anti-Discriminatory Billing Rule must also be dismissed pursuant to Rule 12(b)(6) because the FAC does not allege the essential elements of an FCA cause of action and also fails to describe CHS's role in such billing rule violations with the particularity required by Rule 9(b). *See U.S. ex rel. Vallejo*, 2 F. Supp. 2d at 337; *U.S. ex rel. Dennis*, 2013 WL 146048, at *18; *U.S. ex rel. Mastej*, 869 F. Supp. 2d at 1347; *U.S. ex rel. Lacy*, 2008 WL 441564, at *6.

### B.   RELATOR'S FAC FAILS TO STATE A CA-FCA CLAIM AGAINST CHS BASED ON VIOLATIONS OF THE AKS OR THE MEDI-CAL ANTI-DISCRIMINATORY BILLING RULE

Under the CA-FCA, it is a civil violation to knowingly present or cause to be presented false claims for payment to the Medi-Cal program, to make false statements to obtain payment for such false claims, or to conspire to do so. *See* Cal. Gov't Code § 12651. Because the CA-FCA closely resembles the federal FCA, California courts look to federal FCA authorities to interpret the CA-FCA. *San Francisco Unified Sch. Dist. ex rel. Contreras v. Laidlaw Transit, Inc.*, 182 Cal. App. 4th 438, 446 (2010).

In this case, the FAC's Fifth, Sixth and Eighth Causes of Action for causing

NELSON HARDIMAN LLP
1100 Glendan Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

1   false claims and statements to be presented and made to Medi-Cal and conspiring to

2   do so fail to state a valid CA-FCA claim and must be dismissed pursuant to Rules

3   12(b)(6) and 9(b) for the same reasons as Relator's FCA causes of action.

4     Relator's alternative Seventh Cause of Action alleging that CHS was the

5   beneficiary of the "inadvertent" submission of false claims to Medi-Cal but failed to

6   timely disclose such false claims after discovering them also fails to state a valid

7   claim.  As discussed above, Relator fails to allege any facts establishing that any

8   SNF claim for a Medi-Cal beneficiary with a SOC who was charged by Dynamic

9   for non-covered mattress rentals was in any way false when the Medi-Cal program

10  required the SNF to reduce the beneficiary's SOC by the amount paid by the

11  beneficiary for non-covered mattress rentals.  In addition, the Seventh Cause of

12  Action violates Rule 9(b) because the FAC fails to include any factual allegations

13  specifically identifying any false Medi-Cal claims or detailing when any CHS SNF

14  discovered them and failed to timely disclose them to the Medi-Cal program.

15  **V. CONCLUSION**

16    For the foregoing reasons, Relator's FAC should be dismissed for failure to

17  state a valid FCA or CA-FCA claim against CHS pursuant to Rules 12(b)(6) and

18  9(b).

19  Dated:  January 29, 2020   Respectfully submitted,

20            NELSON HARDIMAN LLP

21

22            By: */s/ M.S. Hardiman*

23             Mark S. Hardiman

24            Attorneys for Defendant

25            Cambridge Healthcare Services

26

27

28

*NELSON HARDIMAN LLP*
*1100 Glendon Avenue, 14ᵗʰ Floor*
*LOS ANGELES, CALIFORNIA 90024*

DEFENDANT CAMBRIDGE HEALTHCARE SERVICES'
MOTION TO DISMISS FAC

# DECLARATION OF MARK S. HARDIMAN

I, Mark S. Hardiman, declare as follows:

1.     I am an attorney at law, duly licensed to practice in the State of California. I am a partner of the law firm of Nelson Hardiman, LLP, counsel of record for Defendant Cambridge Healthcare Services ("CHS") in this action.

2.     On November 27, 2019, I spoke with counsel for Relator, Justin Berger, discussing CHS's intention to move to dismiss the First Amended Complaint ("FAC") against him, and the legal and factual basis for this intention.  The parties' counsel disagreed about the sufficiency of the FAC as to CHS, and we were unfortunately unable to reach a resolution which eliminates the necessity for a hearing.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Executed on January 29, 2019 at Los Angeles, California.

By: */s/ M.S. Hardiman*
Mark S. Hardiman, Declarant

NELSON HARDIMAN LLP
1100 Glendon Avenue, 14ᵗʰ Floor
LOS ANGELES, CALIFORNIA 90024

DEFENDANT CAMBRIDGE HEALTHCARE SERVICES'
MOTION TO DISMISS FAC