**BARNES & THORNBURG LLP**
Eric J. Beste (CSBN 226089)
Eric.Beste@btlaw.com
655 West Broadway, Suite 900
San Diego, California  92101
Telephone: (619) 321-5015
Facsimile:  (310) 284-3894

Attorney for Defendant
PLUM HEALTHCARE GROUP LLC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA - FRESNO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF CALIFORNIA *ex rel.* THOMAS TURNER,<br><br>                    Plaintiffs,<br>v.<br><br>DYNAMIC MEDICAL SYSTEMS, LLC,  *et al.*,<br><br>                    Defendants. | Case No.  1:17-CV-01757-LJO-SAB<br><br>**PLUM HEALTHCARE GROUP LLC'S NOTICE OF MOTION, MOTION TO DISMISS, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:    March 18, 2020<br>Time:    8:30 AM<br>Ctrm.:   4 (7th Floor)<br>Judge:   Hon. Lawrence J. O'Neill |

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
SAN DIEGO

1

## **TABLE OF CONTENTS**

2

**Page**

3  I.    STATEMENT OF FACTS ................................................................. 1

4      A.    Background ......................................................................... 1

5      B.    Allegations in FAC ............................................................ 4

       C.    Statement of the case ......................................................... 5

6  II.   LEGAL DISCUSSION ................................................................... 6

7      A.    Prior audits and appeals involving the same issues precludes
             Relator from bringing the FAC. ....................................... 6

8            1.    Public disclosure bars ............................................ 6

9            2.    Pricing differences were publicly disclosed long ago. ............... 7

10           3.    Relator is not an "original source" ..................... 9

       B.    Ambiguity and missing elements doom the FAC. .............. 10

11           1.    Pleading requirements for False Claims Act and CFCA .......... 10

12           2.    FAC fails to allege who/what/where/when of alleged scheme . 12

13     C.    FAC fails to allege essential elements. ............................... 14

   III.  CONCLUSION .............................................................................. 18

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
SAN DIEGO

ii

*DEFENDANT PLUM'S MOTION TO DISMISS*
*Case No. 17CV1757-LJO-SAB*

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5

*A-1 Ambulance Serv., Inc. v. California,*
    202 F.3d 1238 (9th Cir. 2000) ................................................................................7

6

7

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .............................................................................................18

8

*Bly-Magee v. California,*
    236 F.3d 1014 (9th Cir. 2001) ..............................................................................11

9

10

*United States ex rel. Bly-Magee v. Premo,*
    470 F.3d 914 (9th Cir. 2006) ..................................................................................9

11

12

*Bruton v. Gerber Products Co.,*
    961 F.Supp.2d 1062 (N.D. Cal. 2013) ..................................................................11

13

14

*United States ex rel. Cafasso v. General Dynamics C4 Systems, Inc.,*
    637 F.3d 1047 (9th Cir. 2011) ..............................................................................12

15

16

*United States ex rel. Campie v. Gilead Scis., Inc.,*
    862 F.3d 890 (9th Cir. 2017) ................................................................................15

17

18

*Chavez v. United States,*
    683 F.3d 1102 (9th Cir. 2012) ..............................................................................12

19

20

*United States ex rel. Devlin v. State of Cal.,*
    84 F.3d 358 (9th Cir. 1996) ....................................................................................7

21

22

*Godecke v. Kinetic Concepts, Inc.,*
    937 F.3d 1201 (9th Cir. 2019) .........................................................................11, 12

23

24

*Hagood v. Sonoma Cty. Water Agency,*
    81 F.3d 1465 (9th Cir. 1996) ................................................................................10

25

26

*United States ex rel. Hartpence v. Kinetic Concepts, Inc.,*
    No. CV081885GHKAGRX, 2016 WL 8919455 (C.D. Cal. Nov. 16,
    2016) .......................................................................................................................9

27

28

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
SAN DIEGO

iii

*DEFENDANT PLUM'S MOTION TO DISMISS*
*Case No. 17CV1757-LJO-SAB*

*United States ex rel. Hendow v. Univ. of Phoenix*,
   461 F.3d 1166 (9th Cir. 2006) ........................................................................ 15

*United States ex rel. Hopper v. Anton*,
   91 F.3d 1261 (9th Cir. 1996) .......................................................................... 17

*Johnson v. Rank*,
   Case No. No. C-84-5979-SC, 1984 WL 48801 (N.D. Cal. Dec. 7,
   1984) ................................................................................................................. 4

*United States v. Kitsap Physicians Serv.*, 314 F.3d 995 (9th Cir. 2002) ................ 15

*Moore v. Kayport Package Exp., Inc.*,
   885 F.2d 531 (9th Cir. 1989) .......................................................................... 14

*United States ex rel. Osheroff v. Humana Inc.*,
   776 F.3d 805 (11th Cir. 2015) .......................................................................... 7

*Rinaldi Convalescent Hosp. v. Dep't of Health Servs.*,
   62 Cal. App. 4th 373 (1998) ............................................................................. 4

*San Lazaro Ass'n, Inc. v. Connell*,
   286 F.3d 1088 (9th Cir. 2002) .......................................................................... 3

*Shalala v. Illinois Council on Long Term Care, Inc.*,
   529 U.S. 1 (2000) ............................................................................................. 2

*State of California v. Pac. Bell Tel. Co.*,
   48 Cal. Rptr. 3d 427 (Cal. Ct. App. 2006) ...................................................... 7

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) .................................................................... 11, 14

*United States v. Somnia, Inc.*,
   Case No. 1:15CV00433-DAD-EPG, 2018 WL 684765 (E.D. Cal.
   Feb. 2, 2018) .................................................................................................. 11

*Universal Health Servs., Inc. v. United States ex rel. Escobar
   ("Escobar")*, 136 S. Ct. 1989 (2016) ....................................................... 14, 16

*Vess v. Ciba–Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ........................................................................ 11

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
SAN DIEGO

*DEFENDANT PLUM'S MOTION TO DISMISS*
*Case No. 17CV1757-LJO-SAB*

*Williams v. Taco Bell,*
    Case No. 1:18CV01473-AWI-SAB, 2018 WL 6271790 (E.D. Cal.
    Nov. 30, 2018) .......................................................................................... 12

**Statutes**

31 U.S.C. § 3730(e)(4) ....................................................................................... 7

31 U.S.C. § 3730(e)(4)(B) ................................................................................. 8

42 U.S.C. § 1320a-7b(b) .................................................................................... 5

42 U.S.C. § 1395 *et seq.* .................................................................................... 2

42 U.S.C. § 1396 ................................................................................................ 3

Cal. Code Regs. tit. 22, § 50000 *et seq* ........................................................... 3

Cal. Gov't Code §§ 12652(d)(3) ............................................................... 7, 8, 9

Cal. Gov't Code §§ 12652(d)(3)(B) and (C) ..................................................... 8

Cal. Welf. & Inst. Code § 14063 ....................................................................... 3

Cal. Welf. & Inst. Code § 14105.395 ................................................................ 3

Cal. Welf. & Inst. Code § 14170 ....................................................................... 8

California False Claims Act, Cal. Gov. Code § 12651 ................................ *passim*

False Claims Act .......................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ............................................................................... 7, 12

Fed. R. Civ. P. 9(b) ......................................................................... 11, 12, 13, 14

Barnes &
Thornburg LLP
Attorneys At Law
San Diego

v

*DEFENDANT PLUM'S MOTION TO DISMISS*
*Case No. 17CV1757-LJO-SAB*

1

**INTRODUCTION**

2   Plaintiff-Relator THOMAS TURNER ("Relator") pursues this lawsuit

3 against several well-established nursing home providers and suppliers, despite the

4 fact that the United States of America and the State of California have decided not

5 to intervene. These governmental entities are entirely justified in declining to

6 intervene at this stage, as Relator's First Amended Complaint [ECF 7] (hereinafter

7 "FAC") suffers from numerous factual and legal defects that doom its viability.

8 Because Relator has not alleged the required elements under either the federal or

9 state False Claims Act, and his legal theories are inconsistent with the realities of

10 the Medicare and Medi-Cal programs, the FAC should be dismissed.  Moreover,

11 because the complex pricing issues described in the FAC were known to regulators

12 well before Relator filed his case, and have been largely resolved through

13 administrative audits and appeals, Relator should not be permitted to pursue his *qui*

14 *tam* bounty.  Rather, for the reasons stated herein, and for the reasons articulated in

15 the Motion to Dismiss filed by Defendants Dynamic Medical Systems LLC and

16 Joerns Healthcare LLC (collectively "DMS"),[1] this Court should dismiss the FAC

17 against Defendant Plum Healthcare Group LLC with prejudice.

18   **I.   STATEMENT OF FACTS**

19     **A.   Background**

20   DMS provides specialty mattresses to various medical facilities and patients,

21 including to patients in skilled nursing facilities ("SNFs") throughout the State of

22 California.  Relator previously served as Director of Key Accounts at DMS, where

23 he negotiated and set rental prices for the mattresses used to treat hundreds of

24 nursing home patients.  Among the many SNFs that Relator interacted with were

25 those affiliated with Plum Healthcare Group LLC ("Plum")—a privately-owned

26

27   ───────────────

[1] DMS' Motion to Dismiss [ECF 60-61].  Concurrently with the instant Motion
to Dismiss, Plum has moved to join DMS' motion. [ECF 65]

28

1   business that provides administrative and consulting support services to

2   independently licensed and operated SNFs in California, Nevada, and Arizona.

3           Nursing home patients typically have three ways to pay for the products and

4   services they need during their stay: personal funds, insurance benefits, and

5   government benefits.  Two primary federal programs exist for providing health care

6   benefits to nursing home patients: Medicare and Medicaid.  Medicare is

7   a federal medical insurance program for the elderly and disabled that is divided into

8   several components (e.g., Parts A, B, C, etc.).  *See* 42 U.S.C. § 1395 *et seq*.

9   "Medicare Act Part A provides payment to nursing homes which provide care

10  to Medicare beneficiaries after a stay in a hospital. To receive payment, a home

11  must enter into a provider agreement with the Secretary of HHS, and it must

12  comply with numerous statutory and regulatory requirements."  *Shalala v. Illinois*

13  *Council on Long Term Care, Inc.*, 529 U.S. 1, 6 (2000).

14          The second source of government benefits for nursing home patients is

15  Medicaid, which is a cooperative federal-state program that helps needy individuals

16  pay for covered medical services and products.  *See* 42 U.S.C. § 1396).  The

17  California Medicaid program is entitled Medi-Cal, and is administered by the

18  California Department of Health Care Services, or DHCS.  *See San Lazaro Ass'n,*

19  *Inc. v. Connell*, 286 F.3d 1088, 1093 (9th Cir. 2002); Cal. Welf. & Inst. Code

20  § 14063; Cal. Code Regs. tit. 22, § 50000 *et seq*.; *see also* FAC ¶¶ 17-18.

21          While generous, Medi-Cal does not pay for all medical care prescribed by a

22  doctor or included in a nursing home patient's plan of care.  For example, Medi-Cal

23  will pay for certain specialty mattresses needed to treat "severe pressure sores

24  (decubitus ulcers) or a documented history of recurrent pressure sores."  Medi-Cal

25  Provider Manual, Durable Medical Equipment (DME): Therapeutic Anti-Decubitus

26

27

28

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
SAN DIEGO

2

*DEFENDANT PLUM'S MOTION TO DISMISS*
*Case No. 17CV1757-LJO-SAB*

Mattresses and Bed Products, October 2019.[2]  However, there are occasions when a doctor prescribes a specialty mattress as medically necessary, but Medi-Cal will not cover the cost because the patient's condition does not meet the agency's criteria.

In instances where beneficiaries pay for medically necessary but non-covered services or products with their own funds, DHCS is prohibited from counting those payments in the "share of cost" that beneficiaries must contribute towards their care.  One court has explained the interplay between a patient's "share of cost" and medically necessary treatments this way:

> In calculating the amount of a Medi–Cal beneficiary's "share of cost," federal law requires the beneficiary be allowed to deduct from her income the expense incurred for "[n]ecessary medical or remedial care recognized under State law but not covered under the State's Medicaid plan, subject to reasonable limits the agency may establish on amounts of these expenses." The purpose of this rule is to prevent the share of cost from consuming all of the beneficiary's income, leaving her with no means to pay for necessary medical expenses not covered by Medi–Cal. Thus, when a Medi–Cal beneficiary residing in an SNF requires a service or supply which is medically necessary but not covered by Medi–Cal, the SNF may obtain and provide that service or supply and credit the expense toward the beneficiary's share of cost.

*Rinaldi Convalescent Hosp. v. Dep't of Health Servs.*, 62 Cal. App. 4th 373, 376 (1998) (citing and quoting 42 C.F.R. § 435.832(c)(4)(ii), which provides that Medicaid agencies must deduct from a beneficiary's income calculations any amounts for "[n]ecessary medical or remedial care recognized under State law but not covered under the State's Medicaid plan, subject to reasonable limits the agency may establish on amounts of these expenses"); *see also Johnson v. Rank*, Case No. No. C-84-5979-SC, 1984 WL 48801 (N.D. Cal. Dec. 7, 1984).

Operating in this complex regulatory background, SNFs permit patients to choose their own provider of durable medical equipment, and make their own

---

[2] The California Welfare and Institutions Code authorizes DHCS to establish guidelines, which are published in medical provider manuals, such as the Medi-Cal Provider Manual. Cal. Welf. & Inst. Code § 14105.395. The provisions in the Medi-Cal Provider Manual have the force of regulations and "shall prevail over any inconsistent provisions in CCR sections relating to DME." Medi-Cal Provider Manual, Durable Medical Equipment (DME): An Overview, October 2019.

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
SAN DIEGO

3

*DEFENDANT PLUM'S MOTION TO DISMISS
Case No. 17CV1757-LJO-SAB*

1   decision as to whether to rent medically necessary products and services.  If a

2   patient chooses to rent a particular piece of medical equipment, he or she may also

3   decide to apply their "share of cost" (or SOC) funds towards that charge.

4       **B.    Allegations in FAC**

5       Relator alleges that by offering different prices to different patients

6   throughout the State, DMS effectively offered "kickbacks" to SNFs as an

7   inducement for the referral of "higher paying business" to DMS. FAC ¶ 2.[3]  Among

8   the SNFs allegedly involved in this activity were some affiliated with Plum, which

9   Relator alleges somehow turned these "discounts" into "profits."  *Id.*  Relator then

10   alleges that DMS "overcharged other patients who were responsible for a Share of

11   Cost (SOC) of the SNF care."  FAC ¶ 3.  Without much elucidation, Relator jumps

12   to the conclusion that such "overcharges were ultimately borne by the patients, as

13   well as Medicare and Medi-Cal programs," and that such activity somehow violated

14   the federal Anti-Kickback statute and "Medi-Cal's low price rules." Id. ¶¶ 3-4.  As

15   for Plum, Relator contends that this well-established and respected member of the

16   nursing home community "entered into discriminatory billing agreements" with

17   DMS, and thereby agreed to this scheme.  FAC ¶ 16.

18       Although Relator alleges that DMS sought to induce SNFs to refer almost all

19   of their patients to DMS in exchange for mattress rentals, FAC ¶¶ 31-32. he does

20   not allege that DMS actually paid any remuneration (or offered any discounts) to

21   the SNFs.  Rather, the FAC alleges a convoluted series of transactions between

22   various entities and patients, and argues that they essentially constituted the

23   payment of unlawful remuneration.  FAC ¶¶ 33-40 (alleging that the interplay

24   between "facility segment rates" and "capitated rates" and other factors led SNFs to

25   financially benefit by allowing DMS to supply mattresses to their patients).  Relator

26   _____

27       [3] Notably, Relator does not allege that this "higher paying business" had
    anything to do with Medi-Cal, and only claims in conclusory fashion that the
28   practices he complains of led to unspecified "Medicare business."  FAC ¶ 47.

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
SAN DIEGO

4

*DEFENDANT PLUM'S MOTION TO DISMISS
Case No. 17CV1757-LJO-SAB*

1    does not allege who at DMS offered these different pricing levels,[4] who at the SNFs

2    agreed to these prices, how the transactions were processed, or when these

3    agreements or transactions took place.  Nor does the FAC allege that this pricing

4    differential was undertaken by anyone with the intent to defraud. Instead, Relator

5    makes the unspecified allegation that "Defendants and their agents have been aware

6    for years of the aforementioned false billing practice and knowingly permitted such

7    wrongful practices to continue."  FAC ¶ 43.

8        Although Relator does not point to a single false statement to Medi-Cal or

9    Medicare, he does allege in conclusory fashion that because DMS charged different

10   prices for mattress, it paid an unlawful remuneration under the Anti-Kickback

11   statute, 42 U.S.C. § 1320a-7b(b).  FAC ¶ 44.  Relator also contends that this billing

12   practice violated California "low price rules" regarding amounts that may be billed

13   to Medi-Cal.  FAC ¶¶ 45-46 (citing Cal. Code. Regs. tit. 22, §§ 51480(a), 51501).

14   The only specific transactions related to Plum contained in the FAC relate to one

15   contract from 2015, and one from 2012.  FAC ¶¶ 48(a), (d). Relator also maintains

16   that unspecified persons at Plum "expressed concerns about [DMS'] discriminatory

17   billing."  FAC ¶ 53.  Throughout each of the causes of action Relator continues this

18   pattern of ambiguity, as none of them specify a date, person involved, claim

19   allegedly submitted, or false statement allegedly made to Medicare or Medi-Cal.

20   FAC ¶¶ 55-90.

21       **C.    Statement of the case**

22       On December 28, 2017, Relator filed the original Complaint, under seal,

23   alleging violations of the federal False Claims Act, 31 U.S.C. § 3729, and the

24   California False Claims Act ("CFCA"), Cal. Gov. Code § 12651. [ECF 1]  On

25   March 20, 2018, Relator filed the FAC, adding as a defendant Invacare Corporation

26

27       [4] This lack of specificity is noteworthy, given Relator's previous position as the
28   Director of Key Accounts at DMS, a position he held for many years.

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
SAN DIEGO

5

*DEFENDANT PLUM'S MOTION TO DISMISS*
*Case No. 17CV1757-LJO-SAB*

(which acquired defendant DMS in 2011, and later sold the company to defendant Joerns). [ECF 7][5] On September 4, 2019, after investigating Relator's claims for more than 18 months, the United States of America and the State of California stated that as of that date, they would not be intervening in the action.  [ECF 16] Notwithstanding this lack of enthusiasm from the government, Relator has continued to pursue the action under the *qui tam* provisions in federal and state law. This motion follows.

## II.    LEGAL DISCUSSION

### A.    Prior audits and appeals involving the same issues precludes Relator from bringing the FAC.

Far from "blowing the whistle" on allegedly improper activity, Relator's allegations are more accurately described as "yesterday's news."  This is because DMS' practice of charging different customers different prices has been the subject of DHCS audits and appeals for **years**.  Because Relator has not pled facts sufficient to overcome the public disclosure bar contained in the federal False Claims Act and CFCA—indeed, the FAC itself evidences the fact that DHCS long ago raised these precise issues—the entire FAC should be dismissed.  At a minimum, based on the undisputed facts presented in Plum's concurrently filed Request for Judicial Notice [ECF 66] (hereinafter "RJN"), the Fifth through Eighth Causes of Action in the FAC must be dismissed.

#### 1.    Public disclosure bars

Both the federal False Claims Act and the CFCA prohibit a relator from bringing an action based upon "substantially the same allegations or transactions" that have been publicly disclosed unless the relator is "an original source of the information."  31 U.S.C. § 3730(e)(4); Cal. Gov't Code §§ 12652(d)(3); *See A-1 Ambulance Serv., Inc. v. California*, 202 F.3d 1238, 1243 (9th Cir. 2000); *State of*

---

[5] To date, the docket does not reflect that Relator has ever served Invacare.

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
SAN DIEGO

6

*DEFENDANT PLUM'S MOTION TO DISMISS*
*Case No. 17CV1757-LJO-SAB*

1  *California v. Pac. Bell Tel. Co.*, 48 Cal. Rptr. 3d 427, 432 (Cal. Ct. App. 2006), as

2  modified (Sept. 12, 2006).  The public disclosure bar is designed to discourage suits

3  by "opportunistic plaintiffs who have no significant information to contribute of

4  their own."  *United States ex rel. Devlin v. State of Cal.*, 84 F.3d 358, 362 (9th Cir.

5  1996).  Where a relator fails to overcome the public disclosure bar, his complaint

6  must be dismissed under Fed. R. Civ. P. 12(b)(6). *See United States ex rel. Osheroff*

7  *v. Humana Inc.*, 776 F.3d 805, 815 (11th Cir. 2015) (dismissing *qui tam* action

8  under Rule 12(b)(6) because relator's complaint did not materially add to public

9  disclosures of an illegal kickback scheme).

10  The CFCA provides, in pertinent part:

11  (A) The court shall dismiss an action or claim under this section, unless
opposed by the Attorney General or prosecuting authority of a political

12  subdivision, if substantially the same allegations or transactions as
alleged in the action or claim were publicly disclosed in . . . [a] criminal,

13  civil, or administrative hearing in which the state or prosecuting
authority of a political subdivision or their agents are a party. . . .

14

15  Cal. Gov't Code § 12652(d)(3).  This language largely mirrors the provisions of the

16  False Claims Act.  31 U.S.C. § 3730(e)(4)(A). If Relator cannot overcome the

17  public disclosure bar, he may only continue with this case if he can prove he is the

18  "original source" of the information—that is, he must have "voluntarily disclosed to

19  the state or political subdivision the information on which allegations or

20  transactions in a claim are based" **before** the public disclosure event, or show that

21  his knowledge was "independent of, and materially adds to, the publicly disclosed

22  allegations or transactions, and [he] has voluntarily provided the information to the

23  state or political subdivision before filing an action under this section."  Cal. Gov't

24  Code §§ 12652(d)(3)(B) and (C); 31 U.S.C. § 3730(e)(4)(B).

25  **2.    Pricing differences were publicly disclosed long ago.**

26  Here, Relator's "low price rules" and "swapping" allegations are practically

27  identical to ones brought by Medi-Cal authorities well before the filing of the FAC

28  on December 28, 2017.  For example, by early 2016, a dozen SNFs affiliated with

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
SAN DIEGO

7

*DEFENDANT PLUM'S MOTION TO DISMISS*
*Case No. 17CV1757-LJO-SAB*

1   Plum underwent DHCS rate setting audits[6] for what the agency alleged were

2   "discriminatory billing" practices of charging different rates for specialty mattresses

3   depending on a patient's SOC.  RJN, Exhibits 1-2.  These audit reports cited the

4   exact same provisions of the Medi-Cal regulations upon which Relator relies,[7] and

5   questioned the same DMS provider agreements and rental rates that animate the

6   FAC. California forwarded these audit reports to Plum in April and May 2017, and

7   by June 2017, Plum had appealed the audits to the DHCS Office of Administrative

8   Hearings and Appeals.  RJN, Exhibit 1 at 2-4 (transmitting Plum's statement of

9   disputed issues, request for formal hearing, and request to consolidate appeals).

10   Throughout 2017, Plum vigorously disputed these audit findings, which were based

11   on the same SOC-related theories advanced by Relator:

12       [T]he Department contends Providers received Medi-Cal overpayments
         due to discriminatory billing practices. Providers dispute the
13       Department's findings and contend the audit adjustments were not
         correctly made. Providers did not receive Medi-Cal overpayments in the
14       amounts listed due to **discriminatory billing practices**. The
         discriminatory billing provisions relied on by the Department do not
15       apply to **SOC transactions**. Providers contend that, at all times relevant
         to the appeal, they complied with the applicable laws, including but not
16       limited to 42 CFR § 413.20 and 413.24; CMS Pub. 15-1, Sections 2300,
         2304, and 2409; and California Code of Regulations, **Title 22, 51480(a)**
17       **and 51501**.

18   RJN, Exhibit 1 at 3, Exhibit 2 at 4 (emphasis added).

19       Removing any doubt as to the issues involved, both DHCS and Plum

20   submitted scores of documents to support their positions.  For its part, DHCS relied

21   on "source documentation [such] as Share of Cost (SOC) Working Paper, Lowest

22   Rate Vendor Invoices, Provider's Response to Mattress Rate Comparison Schedule,

23   Vendor Invoices & 6114 Forms for Mattresses, and Prior Year's Discriminatory

24   Billing Working Paper."  RJN, Exhibit 2 at 3.  Similarly, facilities affiliated with

---

[6]   DHCS audits are made under the authority of Cal. Welf. & Inst. Code § 14170
by the Audits and Investigation Section of the Financial Audits Branch.

[7]   Compare FAC ¶¶ 45-46 (citing Cal. Code Regs. tit. 22, §§ 51480 and 51501)
with RJN, Exhibit 1 at 9, 13, 17, 21, 25, 29, 33, 37, 41, 45, 49, 53 (same).

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
SAN DIEGO

8

*DEFENDANT PLUM'S MOTION TO DISMISS*
*Case No. 17CV1757-LJO-SAB*

1   Plum relied upon documents "identifying the lowest rate charged in the facility
2   among all payor types . . . invoices from its mattress supplier, [DMS], as well as
3   Providers' agreements with [DMS]." *Id.* at 4.

4         As both the state administrative hearings and the underlying audits qualify as
5   public disclosures, Relator's later CFCA claims based on substantially the same
6   allegations are barred.  *See* Cal. Gov't Code § 12652(d)(3) (listing administrative
7   hearings and audits); *United States ex rel. Bly-Magee v. Premo*, 470 F.3d 914, 918-
8   19 (9th Cir. 2006) ("[S]tate and local administrative hearings can qualify as sources
9   of public disclosure ….  Medicaid audits prepared by a state agency are public
10  disclosures within the meaning of the Act."); *United States ex rel. Hartpence v.*
11  *Kinetic Concepts, Inc.*, No. CV081885GHKAGRX, 2016 WL 8919455, at *6 n.6
12  (C.D. Cal. Nov. 16, 2016) ("ALJ decision is a qualifying public disclosure because
13  it was issued following an 'administrative hearing.'" (internal quotations omitted)).
14  Moreover, the publicly disclosed materials in these audits related to the precise
15  issue raised in the FAC, further hampering Relator's ability to overcome the public
16  disclosure bar.  *See Hagood v. Sonoma Cty. Water Agency*, 81 F.3d 1465, 1474 (9th
17  Cir. 1996) ("[D]ocuments filed with an agency or court during administrative
18  proceedings or civil litigation are considered publicly disclosed.").

19        Given DHCS's extensive discussion of allegedly "discriminatory pricing" in
20  these audits and appeals, there can be no question that well before December 2017,
21  the government was fully aware of all the issues raised in the FAC.

22        **3.     Relator is not an "original source"**

23        Relator cannot demonstrate that he meets the "original source" test.  Not only
24  does the FAC makes no allegation of pre-filing disclosure to the government, but it
25  contains no information other than was disclosed in the prior DHCS audits and
26  appeals.  As explained below, Relator does not even identify the "who, what, when,
27  where, or how" of the alleged scheme with the requisite particularity.  Because
28  Relator has failed to meet the "original source" exception to the public disclosure

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
SAN DIEGO

9

*DEFENDANT PLUM'S MOTION TO DISMISS*
*Case No. 17CV1757-LJO-SAB*

1    bar, all of the claims should be dismissed.  At a minimum, all of the state law claims

2    under the CFCA should not be precluded from going forward.

3         **B.      Ambiguity and missing elements doom the FAC.**

4         In addition to its failure to overcome the statutory bars outlined above, the

5    FAC should also be dismissed because of its woeful lack of specificity.  Relator has

6    had two years to provide the required specificity, and despite playing an integral

7    role in the transactions of which he now complains, all he can muster is conclusory

8    allegations.  And even these vague allegations fail to satisfy the minimal elements

9    necessary for the False Claims Act or CFCA.  The FAC should be dismissed.

10        **1.      Pleading requirements for False Claims Act and CFCA**

11        ''Claims sounding in fraud or mistake are subject to the heightened pleading

12   requirements of Federal Rule of Civil Procedure 9(b)," *Bruton v. Gerber Products*

13   *Co.*, 961 F.Supp.2d 1062, 1076 (N.D. Cal. 2013), which requires a party to ''state

14   with particularity the circumstances constituting fraud or mistake.'' Fed. R. Civ. P.

15   9(b).  "Rule 9(b) serves not only to give notice to defendants of the specific

16   fraudulent conduct against which they must defend, but also to deter the filing of

17   complaints as a pretext for the discovery of unknown wrongs, to protect defendants

18   from the harm that comes from being subject to fraud charges, and to prohibit

19   plaintiffs from unilaterally imposing upon the court, the parties and society

20   enormous social and economic costs absent some factual basis." *Bly-Magee v.*

21   *California*, 236 F.3d 1014, 1018 (9th Cir. 2001) (quotations and alterations

22   omitted).  Rule 9(b) requires a plaintiff to plead fraud claims with ''more specificity

23   including an account of the time, place, and specific content of the false

24   representations as well as the identities of the parties to the misrepresentations.''

25   *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal punctuation and

26   citations omitted).

27        "Under Rule 9(b), the circumstances constituting the alleged fraud must

28   be specific enough to give each defendant notice of its particular misconduct so that

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
SAN DIEGO

10

*DEFENDANT PLUM'S MOTION TO DISMISS*
*Case No. 17CV1757-LJO-SAB*

1   the defendant can defend against the charge instead of merely denying that it did

2   anything wrong." *United States v. Somnia, Inc.*, Case No. 1:15CV00433-DAD-

3   EPG, 2018 WL 684765, at *4 (E.D. Cal. Feb. 2, 2018) (citing *Kearns v. Ford*

4   *Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009)).  In other words, "[t]he party must

5   allege the 'who, what, when, where, and how' of the misconduct."  *Godecke v.*

6   *Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019).

7           "When an entire complaint, or an entire claim within a complaint, is

8   grounded in fraud and its allegations fail to satisfy the heightened pleading

9   requirements of Rule 9(b), a district court may dismiss the complaint or claim."

10  *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003); *see, e.g.,*

11  *Williams v. Taco Bell,* No. 1:18CV01473-AWI-SAB, 2018 WL 6271790, at *3

12  (E.D. Cal. Nov. 30, 2018)  (dismissing fraud complaint that was "devoid of any

13  factual allegations as to who made the representation, when it was made, what the

14  representation was, how Plaintiff relied on it, or what damage was sustained due to

15  the misrepresentation").

16          Even if a complaint meets the requirements of Rule 9(b), it may still be

17  subject to dismissal under Fed. R. Civ. P. 12(b)(6) if it is "based on the lack of a

18  cognizable legal theory or the absence of sufficient facts alleged under a cognizable

19  legal theory."  *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir.

20  2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

21  1990)).  While ordinarily a court must accept a complaint's allegations as true for

22  purposes of a motion to dismiss, "a court discounts conclusory statements, which

23  are not entitled to the presumption of truth, before determining whether a claim is

24  plausible."  *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citing

25  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also United States ex rel. Cafasso*

26  *v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047 (9th Cir. 2011) (finding

27  relator failed to state a claim for relief under the FCA because the complaint alleged

28

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
SAN DIEGO

11          *DEFENDANT PLUM'S MOTION TO DISMISS*
                  *Case No. 17CV1757-LJO-SAB*

1  only a general type of fraudulent conduct, and no particular circumstances of

2  discrete fraudulent statements in the form of a false claim).

3          **2.      FAC fails to allege who/what/where/when of alleged**

4                   **scheme**

5          Instead of meeting the specificity requirements of Rule 9(b), the FAC simply

6  uses conclusory allegations to lump all of the defendants together into what Relator

7  claims was a "swapping arrangement to defraud Medicare and Medi-Cal."

8  FAC ¶ 31.  Unidentified persons at DMS allegedly "offered deep discounts on

9  specialty mattresses to certain patient segments," and then "overcharged patients

10 who were responsible for an SOC." *Id.*  The FAC does not identify the particular

11 "patient segments" that allegedly received a good price, nor does it identify any

12 patients who were allegedly "overcharged."  *Id.*  Similarly, the FAC fails to

13 identify the specific SNFs that allegedly "would refer 90 to 100 percent of their

14 patients" to DMS, or any employees or agents of these SNFs who purportedly did

15 the referring.  FAC ¶ 32.

16         Although portions of the FAC provide slightly more insight into the Relator's

17 conception of the alleged scheme, the document nonetheless fails to provide the

18 essential allegations that Rule 9(b) requires.  For example, Relator claims that

19 unidentified persons at unspecified SNFs provided nameless employees at DMS

20 with "a list of their patients, and the payors that are responsible for those patients,"

21 FAC ¶ 41.  Despite this reference to a plethora of lists, Relator fails to include any

22 information about any particular list, such as: the SNF involved, the date provided,

23 the person who provided it, the person who received it, or any of the (allegedly

24 valuable) information on any particular list.  And Relator makes no attempt to put a

25

26

27

28

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
SAN DIEGO

12

*DEFENDANT PLUM'S MOTION TO DISMISS
Case No. 17CV1757-LJO-SAB*

1  time period on these alleged improprieties, other than to claim that such lists were

2  provided "since at least 2006."  FAC ¶ 42.[8]

3        Except for a few isolated instances, Relator does not even attempt to

4  distinguish the actions of the various defendants.  Instead, he simply alleges that

5  "Defendants" took actions, or were aware of certain facts.  *E.g.,* FAC ¶¶ 31

6  ("Defendants engaged in a swapping arrangement"), 43 ("Defendants and their

7  agents have been aware"), 56 ("Defendants knowingly caused to be presented false

8  claims"), 62 ("Defendants knowingly made, used, and/or caused to be made"), 67

9  ("Defendants received far more money from the Medicaid and Medicare programs

10  than they were entitled").  This is plainly impermissible.  "Rule 9(b) does not allow

11  a complaint to merely lump multiple defendants together but requires plaintiffs to

12  differentiate their allegations when suing more than one defendant . . . and inform

13  each defendant separately of the allegations surrounding his alleged participation in

14  the fraud."  *Swartz*, 476 F.3d at 764–65 (quotations and alterations omitted).  This

15  ambiguity leaves the SNFs to guess which of their facilities and employees

16  throughout the State of California are alleged to have played a role in Relator's

17  scheme.  *See Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir.

18  1989) (observing that Rule 9(b) requires "allegations [that] identif[y] the role of the

19  individual defendants in the alleged fraudulent scheme").

20        To the extent Relator makes allegations specific to Plum, these too are

21  woefully insufficient to allow Plum to defend itself.  Relator claims that "Plum

22  entered into discriminatory billing agreements" with DMS, FAC ¶ 15, but provides

23  almost no specificity regarding these agreements, or why they were allegedly

24  discriminatory.  The only example comes towards the end of the FAC, when

25  Relator alleges that "Dynamic's August 1, 2015 Provider Agreement with Queen

26

27        ────────────────
        [8] Given that the number of facilities affiliated with Plum today is much greater

28  than in 2006, this temporal ambiguity is particularly prejudicial to Plum.

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
SAN DIEGO

13

*DEFENDANT PLUM'S MOTION TO DISMISS
Case No. 17CV1757-LJO-SAB*

1   Ann's Lace Holdings, LLC dba Whitney Oaks Care Center, which is owned by
2   Plum, sets forth a daily rental rate for AirDyne Mattresses of $2.50 to $6.00."  FAC
3   ¶ 48(a).  Although Relator attempts to compare these prices with one price
4   allegedly charged to Medi-Cal and Medicare, FAC ¶ 48, he does not actually allege
5   that these two prices are for the same mattress, or that the higher prices were, in
6   fact, charged to beneficiaries at the Whitney Oaks Care Center (or any other facility
7   affiliated with Plum).

8           Moreover, Relator provides no specificity regarding the identity of the
9   persons at DMS and Plum who allegedly negotiated these agreements, how Plum
10  would have known about the different charges (given that the contract apparently
11  did not authorize differential pricing), and whether anyone at Plum took any steps
12  to further this differential pricing.  Instead, Relator is content to end his discussion
13  of Plum by alleging that the company "operates 64 SNFs in the State of California,
14  [and] also expressed concerns about Dynamic's discriminatory billing."  FAC ¶ 53.
15  Who expressed these concerns, what they were, and to whom they were allegedly
16  expressed is left a mystery.  While such prose may work to induce suspense in
17  fiction readers, it does not qualify as a well-pleaded complaint under False Claims
18  Act or CFCA.

19          **C.      FAC fails to allege essential elements.**

20          Apart from its ambiguity, the FAC also fails to allege numerous essential
21  elements of the False Claims Act and the CFCA.  To meet the heightened pleading
22  requirements for the False Claims Act and CFCA, Relator "must allege facts
23  demonstrating (1) a false statement or fraudulent course of conduct; (2) made with
24  scienter; (3) that was material; causing (4) the government to pay out money or
25  forfeit moneys due."  *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d
26  890, 902 (9th Cir. 2017) (citing *Universal Health Servs., Inc. v. United States ex
27  rel. Escobar*, 136 S. Ct. 1989, 2000–01 (2016) ("*Escobar*")).  Here, the FAC is
28  devoid of any allegations (1) that claims were, in fact, submitted to the United

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
SAN DIEGO

14

*DEFENDANT PLUM'S MOTION TO DISMISS
Case No. 17CV1757-LJO-SAB*

1  States or the State of California, (2) that any such claims were false or material, (3)

2  that any federal funds were involved in the purportedly suspect transactions, or (4)

3  that Plum or its agents took any actions in furtherance on the purported "scheme"

4  with the requisite intent.  Because each of these omissions precludes Relator from

5  obtaining the relief he purports to seek on behalf the federal and state governments,

6  these causes of action should be dismissed.

7      First, the FAC does not attempt to identify any claims actually submitted by

8  any of the Defendants to Medicare or Medi-Cal.  "[F]or a false statement or course

9  of action to be actionable under the false certification theory of false claims

10  liability, it is necessary that it involve an actual *claim,* which is to say, a call on the

11  government fisc."  *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d

12  1166, 1173 (9th Cir. 2006) (emphasis in original); *see also United States v. Kitsap*

13  *Physicians Serv.*, 314 F.3d 995, 1002 (9th Cir. 2002) (FCA claims require "*an*

14  *actual false claim* for payment being made to the Government") (emphasis in

15  original).  At best, Relator simply tracks the statutory language by maintaining that

16  all of the Defendants "knowingly caused to be presented false claims" to either the

17  United States or the State of California.  *E.g.* FAC ¶¶ 56, 62, 74, 78.  Alternatively,

18  Relator surmises that someone else may have submitted false claims, but that all of

19  the Defendants "subsequently discovered the falsity of the claims" or "subsequently

20  discovered they had engaged in discriminatory billing practices," and did not

21  promptly notify the government.  FAC ¶ 83-84.  Yet none of the transactions

22  referenced in the FAC were submitted to Medi-Cal or Medicare, and Relator

23  provides no factual predicate to connect these transactions to any claims actually

24  submitted.

25      Second, other than merely repeating the word "material" throughout the

26  FAC, Relator has not alleged facts sufficient to meet the rigorous test for pleading

27  materiality under the False Claims and CFCA.  As the Supreme Court has

28  explained:

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
SAN DIEGO

15

*DEFENDANT PLUM'S MOTION TO DISMISS
Case No. 17CV1757-LJO-SAB*

> The materiality standard is demanding. The False Claims Act is not "an all-purpose antifraud statute" or a vehicle for punishing garden-variety breaches of contract or regulatory violations. A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment. Nor is it sufficient for a finding of materiality that the Government would have the option to decline to pay if it knew of the defendant's noncompliance. Materiality, in addition, cannot be found where noncompliance is minor or insubstantial.

*Escobar*, 136 S. Ct. at 2003 (quoted in *United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 333 (9th Cir. 2017)).  To the extent that Relator intends to rely on a claim that certificates of compliance failed to disclose non-compliance with certain regulations, *see, e.g.* FAC ¶ 58, such omissions can only provide "a basis for liability if they render the defendant's representations misleading with respect to the goods or services provided." *Escobar*, 136 S. Ct. at 1999.  Here, Relator does not explain how private party transactions between DMS and nursing home patients could have rendered "misleading" some wholly separate transactions with Medi-Cal for covered goods and services. As no such connection is apparent from the FAC, these claims must be dismissed.

Third, the FAC provides no nexus between the allegedly suspect transaction and any federal or state funds.   As outlined elsewhere,[9] there no connection between private party transactions to pay for non-covered mattress rentals, and government money used to pay for separate, covered products or services.  Without such a link, a bald assertion that federal or state funds were lost is insufficient.

Fourth, given the ambiguity in the complex regulatory structure surrounding SOC transactions, the FAC fails to allege that any of Plum's agents or employees acted with requisite scienter.  "Innocent mistakes, mere negligent misrepresentations and differences in interpretations are not false certifications under the [False Claims] Act." *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1267 (9th Cir. 1996)

---

[9]   DMS' Memorandum in Support of Motion to Dismiss [ECF 61], at 11-13.

1  (quoted in *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174

2  (9th Cir. 2006)).  Here, Relator repeatedly asserts that unspecified Defendants acted

3  "knowingly," FAC ¶¶ 56-58, 61-63, but makes no effort to explain **what** these

4  persons actually knew when they took various actions.  Indeed, given that all of the

5  nursing homes faced with DHCS audits disputed the legal theories put forward by

6  the State (and adopted here by Relator),[10] it is unclear how Plum or any of the other

7  defendants could have "knowingly" acted to defraud anyone.

8          The closest Relator comes to meeting his burden on scienter is to allege that

9  unnamed persons "knowingly concealed or knowingly improperly avoided or

10  decreased an obligation," FAC ¶ 66.  Even here, however, Relator does not tie this

11  allegation to the circumstances of this case—that is, private rental agreements

12  between nursing home patients and durable medical equipment providers, paid for

13  with the patients' own funds and at their direction, fully disclosed to the

14  government.  Relator's bare allegation of scienter is no better than the claim rejected

15  by the Supreme Court in *Iqbal*, in which the plaintiff claimed that federal officials

16  "knew of, condoned, and willfully and maliciously agreed to subject [the plaintiff] to

17  harsh conditions of confinement as a matter of policy, solely on account of [his]

18  religion, race, and/or national origin and for no legitimate penological interest."

19  *Iqbal*, 556 U.S. at 680-81 (finding such allegations "conclusory and not entitled to

20  be assumed true").  The FAC should face a similar fate.

26  [10]  *See* RJN, Exhibit 1 at 3 ("Providers dispute the Department's findings and contend the audit adjustments were not correctly made. . . . Providers contend that, at all times relevant to the appeal, they complied with the applicable laws"), Exhibit 2 at 4 (same).

*DEFENDANT PLUM'S MOTION TO DISMISS*
*Case No. 17CV1757-LJO-SAB*

BARNES & THORNBURG LLP
ATTORNEYS AT LAW
SAN DIEGO

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## III.   CONCLUSION

Despite having filed his case years ago, Relator has put forth little more than a slew of vague and generalize allegations involving technical regulations that have been disputed in state audits and administrative appeals for years.  Relator has not met the rigorous standards for pleading civil fraud, and there is no reason to believe he will do so if given more time.  The FAC should be dismissed with prejudice.

Dated:        January 29, 2020                   Respectfully submitted,
                                                 BARNES & THORNBURG LLP


                                                 By: *s/ Eric J. Beste*
                                                     Eric J. Beste
                                                     Attorney for Defendant
                                                     PLUM HEALTHCARE GROUP LLC

BARNES &
THORNBURG LLP
ATTORNEYS AT LAW
SAN DIEGO

18

*DEFENDANT PLUM'S MOTION TO DISMISS*
*Case No. 17CV1757-LJO-SAB*