JUSTIN T. BERGER (SBN 250346)
jberger@cpmlegal.com
SARVENAZ "NAZY" J. FAHIMI (SBN 226148)
sfahimi@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Attorneys for Relator*

**IN THE UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA AND THE STATE OF CALIFORNIA** *ex rel.* **THOMAS TURNER,** | CASE NO. 1:17-cv-01757-LJO-SAB |
| Plaintiffs, | **RELATOR'S OPPOSITION TO DYNAMIC MEDICAL SYSTEMS, LLC AND JOERNS HEALTHCARE, LLC'S MOTION TO DISMISS** |
| v. | |
| **DYNAMIC MEDICAL SYSTEMS LLC,; JOERNS HEALTHCARE LLC.; COVENANT CARE CALIFORNIA LLC; MARINER HEALTH CARE MANAGEMENT COMPANY; PLUM HEALTHCARE GROUP LLC; and CAMBRIDGE HEALTHCARE SERVICES,** | |
| Defendants. | |

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**RELATOR'S OPPOSITION TO DYNAMIC MEDICAL SYSTEMS, LLC AND JOERNS HEALTHCARE, LLC'S MOTION TO DISMISS; Case No. 1:17-cv-01757-LJO-SAB**

# TABLE OF CONTENTS

Page No.

I.   INTRODUCTION ................................................................................................. 1

II.  LEGAL STANDARD .......................................................................................... 2

    A.   The False Claims Act and California False Claims Act must be interpreted liberally and construed broadly.......................................................................... 2

    B.   The Ninth Circuit applies a flexible pleading standard for False Claims Act complaints under Rule 12 and Rule 9............................................................. 3

    C.   Violations of the AKS give rise to False Claims Act violations. ................... 4

III. ARGUMENT ...................................................................................................... 5

    A.   The scheme, including the resulting overcharges to Medi-Cal, is explained with the requisite specificity. ..................................................................... 5

    B.   Misuse of the SOC program results in overpayments by Medi-Cal.............. 7

    C.   The Medi-Cal low price rules are unambiguous, and Defendants' *scienter* cannot be adjudicated on a motion to dismiss. ........................................... 10

    D.   All of the SNFs' charges to Medi-Cal are false because the SNFs are engaged in a kickback scheme with the mattress company Defendants....................... 12

    E.   The FAC alleges materiality, as anti-kickback violations and overcharges are always material. ...................................................................................... 15

    F.   The FAC adequately alleges Reverse False Claims. ................................... 16

    G.   The FAC sufficiently alleges a conspiracy. ................................................. 16

    H.   The Public Disclosure Bar of the CFCA does not apply. ............................ 17

        1.   The Public Disclosure Bar under the CFCA is narrowly construed. ................ 18

        2.   Defendants have not shown an applicable public disclosure........................... 20

            a.   The audit of Defendant Plum was not "publicly disclosed" prior to the filing of this action. ......................................................... 20

            b.   The Legacy audit related to a nursing home chain that is not the subject of this case, and Defendants have not shown that it was public. ................................................................................. 20

        3.   Turner is an Original Source.......................................................................... 24

IV.  CONCLUSION.................................................................................................. 25

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**RELATOR'S OPPOSITION TO DYNAMIC MEDICAL SYSTEMS, LLC AND JOERNS HEALTHCARE, LLC'S MOTION TO DISMISS; Case No. 1:17-cv-01757-LJO-SAB**    i

# **TABLE OF AUTHORITIES**

Page No(s).

**Cases**

*Amphastar Pharmaceuticals Inc. v. Aventis Pharma SA*
  856 F.3d 696 (9th Cir. 2017) ...............................................................................23

*Ashcroft v. Iqbal*
  556 U.S. 672 (2009)..................................................................................................3

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007)..................................................................................................3

*City of Hawthorne ex rel. Wohlner*
  (2003) 109 Cal.App.4th .........................................................................................19

*City of Pomona v. Superior Court*
  (2001) 89 Cal.App.4th 793 ...............................................................................2, 21

*Ebeid v. Lungwitz*
  616 F.3d 993 (9th Cir. 2010) ...............................................................................3, 7

*Gilbrook v. City of Westminster*
  177 F.3d 839 (9th Cir. 1999) .................................................................................17

*Hanlester Network v. Shalala*
  51 F.3d 1390 (9th Cir. 1995) .................................................................................14

in *Calva v. Impac Secured Assets Corp.*
  No. SACV161983JVSJCGX, 2018 WL 6016152 (C.D. Cal. June 12, 2018) ...................23

*In re Automotive Parts Antitrust Litigation*
  2014 WL 840272 (E.D. Mich. 2014) .........................................................................3

*In re GlenFed Inc. Securities Litigation*
  42 F.3d 1541 (9th Cir. 1994) ...............................................................................3, 10

*Malhotra v. Steinberg*
  (9th Cir. 2014) 770 F.3d 853 .................................................................................18

*Moyo v. Gomez*
  32 F. 3d 1382 (9th Cir. 1994) ...................................................................................3

*Peel v. Brooksamerica Mortgage Corp.*
  788 F. Supp. 2d 1149 (C.D. Cal. 2011) ....................................................................3

*People v. Duz-Mor Diagnostic Lab., Inc.*
  68 Cal. App. 4th 654, 80 Cal. Rptr. 2d 419 (1998) ...................................................12

*Physicians & Surgeons*
  6 Cal. App. 4th 968, 8 Cal. Rptr. 2d 565 (Cal. Ct. App. 1992) ........................................11

*Rex Trailer Co. v. United States*
  350 U.S. 148, 153, n. 5, 76 S.Ct. 219, 222, n. 5, 100 L.Ed. 149 (1956)....................15

*San Francisco Unified School District ex rel. Contreras v. Laidlaw Transit, Inc.*
  (2010) 182 Cal.App.4th 438 .....................................................................................3

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

*Sharp Coronado Hosp. v. Bonta*
  No. C045021, 2004 WL 1880132, at \*6 (Cal. Ct. App. Aug. 24, 2004) ........................................11

*Starr v. Baca*
  652 F.3d 1202 (9th Cir. 2011) ........................................................................................................3

*State ex rel. Bartlett v. Miller*
  (2016) 243 Cal.App.4th 1398 ......................................................................................................19

*State of California ex rel. Standard Elevator Co., Inc. v. West Bay Builders, Inc.*
  197 Cal. App. 4th 963 (Cal. Ct. App. 2011) ..............................................................................23

*U.S. ex rel. Anita Silingo v. WellPoint, Inc.*
  904 F.3d 667 (9th Cir. 2018) ......................................................................................................15

*U.S. ex rel. Drakeford v. Tuomey*
  792 F.3d 364 (4th Cir. 2015) ......................................................................................................15

*U.S. ex rel. Hagood v. Sonoma Cty. Water Agency*
  929 F.2d 1416 (9th Cir. 1991) ....................................................................................................14

*U.S. ex rel. Hooper v. Lockheed Martin Corp.*
  688 F.3d 1037 (9th Cir. 2012) ......................................................................................................2

*U.S. ex rel. Wood v. Allergan, Inc.*
  246 F. Supp. 3d 772 (S.D.N.Y. 2017) ........................................................................................15

*United States ex rel. Alfred Aflatooni v. Kitsap Physicians Services*
  163 F.3d 516 (9th Cir. 1998) ......................................................................................................21

*United States ex rel. Banigan v. Organon USA Inc.*
  No. CV 07-12153-RWZ, 2016 WL 10704126, at \*5 (D. Mass. Aug. 23, 2016) .......................13

*United States ex rel. Compton v. Midwest Specialties, Inc.*
  142 F.3d 296 (6th Cir. 1989) ........................................................................................................2

*United States ex rel. Durcholz v. FKW Inc.*
  189 F.3d 542 n.3 (7th Cir. 1999) ................................................................................................17

*United States ex rel. Foundation Aiding the Elderly v. Horizon West Inc.*
  (9th Cir. 2001) 265 F.3d 1011  (amended by 2001 U.S. App. LEXIS 27363) ...........................22

*United States ex rel. Galmines v. Novartis Pharm. Corp.*
  88 F. Supp. 3d 447 (E.D. Pa. 2015) ...........................................................................................23

*United States ex rel. Hartpence v. Kinetic Concepts, Inc.*
  No. CV081885GHKAGRX 2016 WL 8919455, at \*9-10 (C.D. Cal. Nov. 16, 2016) ..................24

*United States ex rel. Hendow v. Univ. of Phoenix*
  (9th Cir. 2006) 461 F.3d 1166 ....................................................................................................16

*United States ex rel. Jamison v. McKesson Corp.*
  649 F.3d 322 (5th Cir. 2011) ......................................................................................................20

*United States ex rel. Mateski v. Raytheon, Co.*
  816 F.3d 565 (9th Cir. 2016) ......................................................................................................22

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**RELATOR'S OPPOSITION TO DYNAMIC MEDICAL SYSTEMS, LLC AND JOERNS**      iii
**HEALTHCARE, LLC'S MOTION TO DISMISS; Case No. 1:17-cv-01757-LJO-SAB**

*United States ex rel. Vatan v. QTC Med. Servs., Inc.*
   721 F. App'x 662 (9th Cir. 2018) ...................................................................4

*United States ex rel. White v. Gentiva Health Services, Inc.*
   2014 WL 2893223, at *16 (E.D. Tenn. June 25, 2014) .....................................7

*United States ex. rel. Jacobs v. CDS, P.A.*
   No. 4:14-CV-00301-BLW, 2015 WL 5698395, at *4 (D. Idaho Sept. 28, 2015) ...........14

*United States v. Ctr. for Diagnostic Imaging, Inc.*
   787 F. Supp. 2d 1213 (W.D. Wash. 2011) .......................................................14

*United States v. Dynamics Research Corp.*
   2008 WL 886035, at *8 (D. Mass., March 31, 2008) ........................................2

*United States v. Jennings*
   160 F.3d 1006 (4th Cir. 1998) ............................................................14, 17

*United States v. Kats*
   871 F.2d 105 (9th Cir. 1989) ......................................................................14

*United States v. Kiewit Pacific Co.*
   41 F. Supp. 3d 796 (N.D. Cal. 2014) ............................................................25

*United States v. Neifert-White Co.*
   (1968) 390 U.S. 228 .....................................................................................2

*United States v. Rogan*
   517 F.3d 449 (7th Cir. 2008) ......................................................................15

*United States v. Strand*
   574 F.2d 993 (9th Cir. 1978) ......................................................................14

*Wool v. Tandem Computers, Inc.*
   818 F.2d 1433 (9th Cir. 1987) ......................................................................4

**Statutes**

31 U.S.C. § 3729(a) ...........................................................................................14

31 U.S.C. § 3730(e)(4) (1986) ...........................................................................19

31 U.S.C. § 3730(e)(4) (2010) ...........................................................................19

31 USC § 3729(b)(1 ..........................................................................................10

42 U.S.C. § 1320a-7b(b) .....................................................................................12

42 U.S.C. 1320a–7b(g) .......................................................................................15

42 U.S.C. 1320a-7k(d) ........................................................................................16

42 U.S.C.A. § 1320a-7b ..................................................................................4, 13

Cal. Code Regs. tit. 22, § 51044(a) ....................................................................20

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

Cal. Code Regs, tit 22, § 51480(a) .............................................................................. 9

Cal. Code Regs, tit 22, § 51501(a) .............................................................................. 9

Cal. Gov. Code § 12652(d)(3) ................................................................................... 18

Cal. Rules of Court, rule 8.1115 ................................................................................ 11

Gov. Code § 12655(c) .................................................................................................. 2

Restatement (Second) of Torts § 538 ........................................................................ 16

**Other Authorities**
James B. Helmer, Jr., *False Claims Act: Whistleblower Litigation* 399 (6th ed. 2013) ..................... 19

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**RELATOR'S OPPOSITION TO DYNAMIC MEDICAL SYSTEMS, LLC AND JOERNS HEALTHCARE, LLC'S MOTION TO DISMISS; Case No. 1:17-cv-01757-LJO-SAB**          v

# I.     INTRODUCTION

The primary arguments of Defendants Dynamic Medical Systems, LLC and Joerns Healthcare, LLC's are fundamentally at odds with each other.  On the one hand, they argue that their Share of Cost (SOC) scheme has no financial impact on Medi-Cal, and Relator therefore cannot establish that the scheme was "material" to Medi-Cal's decisions to pay the Defendants.  On the other hand, Defendants argue that Relator's complaint is subject to the "public disclosure bar" of the California False Claims Act (CFCA) because Medi-Cal had previously audited another nursing home chain *for the same Share of Cost scheme*, and successfully clawed back over two hundred thousand dollars in taxpayer money.  Defendants cannot have it both ways.  The audits in fact show that the Share of Cost scheme has a direct, pecuniary impact on Medi-Cal, and is undeniably material.  And at least one of those audits resulted in a final order from the California Department of Health Care Services, Office of Administrative Hearings and Audits, rejecting the same arguments that Defendants make here.  As the Administrative Law Judge in that case concluded:  "[P]aying Dynamic different rates for the rental of air mattresses based on whether the patient was a Medi-Cal beneficiary with a share of cost or not violates the discriminatory billing provisions of California and federal law."  Defendants' Request for Judicial Notice, Ex. L (Dkt. No. 62-14), at 12:4-6.

The audits do not, however, constitute public disclosures because:  (1) Medi-Cal's audit of Defendant Plum Healthcare was not public prior to the filing of this case; and (2) the other audit relied on by Defendants was of a nursing home chain (Legacy) that is not a Defendant in this case, and Defendants have provided no evidence that the Legacy audit was publicly disclosed prior to the filing of this case.

As to their remaining arguments, Defendants' brief engages in the same obfuscation of the SOC scheme that allowed it to flourish for so long without detection.  The interplay between Medi-Cal and SOC certainly takes effort to understand for those outside of the industry, and is unique to this healthcare niche.  Defendants, however, cannot hide behind that complexity, because the First Amended Complaint ("FAC") explains the scheme in plain language, with sufficient details and examples.  The FAC thus serves both purposes of Rule 9(b), to:  (1) "give adequate notice to an adverse party and enable that party to prepare a responsive pleading," and (2) "protect[] against false

1   or unsubstantiated charges" by "requiring some factual basis for the claims." *United States ex rel.*

2   *Swoben v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016).

3        The FAC describes the "who, what, when, where, and how" of two interrelated schemes: (1)

4   the SOC scheme; and (2) the swapping/low-price rule scheme. Those schemes result in violations of

5   the False Claims Act because they cause payments from Medi-Cal for services that are tainted by

6   material violations of the Anti-Kickback Laws and Medi-Cal low price rules.

7   **II.    LEGAL STANDARD**

8        **A.    The False Claims Act and California False Claims Act must be interpreted**

9             **liberally and construed broadly.**

10       Courts and Congress have repeatedly mandated that the False Claims Act (FCA) be

11  interpreted liberally. *See United States ex rel. Hooper v. Lockheed Martin Corp.*, 688 F.3d 1037,

12  1048 (9th Cir. 2012) ("[A]ccording to Congress the FCA should be broadly construed"). Indeed, the

13  Act "has as its core function the promotion of transparency and honesty amongst government

14  contractors." *United States v. Dynamics Research Corp.*, 2008 WL 886035, at *8 (D. Mass., March

15  31, 2008) (emphasis added). The goal of the FCA generally is to ensure integrity in government

16  contracting and the statutes embody "the maxim that [people] must turn square corners when they

17  deal with the Government." *United States ex rel. Compton v. Midwest Specialties, Inc.*, 142 F.3d

18  296, 302 (6th Cir. 1989).

19       Similarly, the California False Claims Act (CFCA) also must be "liberally construed and

20  applied to promote the public interest." Cal. Gov. Code § 12655(c). "[I]nasmuch as the False Claims

21  Act obviously is designed to prevent fraud on the public treasury, it plainly should be given the

22  broadest possible construction consistent with that purpose." *City of Pomona v. Superior Court*, 89

23  Cal. App. 4th 793, 801-02 (Cal. Ct. App. 2001) (internal quotations omitted). The CFCA "must be

24  construed broadly so as to give the widest possible coverage and effect to the prohibitions and

25  remedies it provides." *Id.* (citation omitted). The statute is "intended to reach all types of fraud,

26  without qualification, that might result in financial loss to the Government." *Id.* at 802, *citing United*

27  *States v. Neifert-White Co.*, 390 U.S. 228, 232 (1968). The CFCA "reaches beyond claims which

28  might be legally enforced, to all fraudulent attempts to cause the Government to pay out sums of

**LAW OFFICES**
Cotchett, Pitre &
McCarthy, LLP

**RELATOR'S OPPOSITION TO DYNAMIC MEDICAL SYSTEMS, LLC AND JOERNS HEALTHCARE, LLC'S MOTION TO DISMISS; Case No. 1:17-cv-01757-LJO-SAB**    2

money." *San Francisco Unified School District ex rel. Contreras v. Laidlaw Transit, Inc.*, 182 Cal.App.4th 438, 449 (Cal. Ct. App. 2010).

**B.** **The Ninth Circuit applies a flexible pleading standard for False Claims Act complaints under Rule 12 and Rule 9.**

"Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief." *Peel v. Brooksamerica Mortgage Corp.*, 788 F. Supp. 2d 1149, 1157 (C.D. Cal. 2011). A complaint need only allege "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), or allege sufficient facts to "raise a right to relief above the speculative level," *id.* at 555. The Court must accept as true all allegations of material facts alleged in the complaint, and must draw all inferences in the light most favorable to the non-moving party. *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 672, 678 (2009) (quoting *Twombly*). "If there are two alternative explanations, one advanced by defendant and the other advanced by Relator, both of which are plausible, Relator's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 2101 (2012). Accordingly, a relator "need not rule out all possible innocent explanations." *In re Automotive Parts Antitrust Litigation*, 2014 WL 840272 (E.D. Mich. 2014).

Rule 9 on its face does not apply to the scienter requirement of the false claims act. *See* Rule 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally"); *see also In re GlenFed Inc. Securities Litigation*, 42 F.3d 1541, 1547 (9th Cir. 1994) (*en banc*) ("We conclude that plaintiffs may aver scienter generally, just as the rule states — that is, simply by saying that scienter existed").

With respect to FCA complaints, in *Ebeid v. Lungwitz*, 616 F.3d 993 (9th Cir. 2010), the Ninth Circuit rejected a stringent pleading standard under Rule 9(b) and stated:

> We do not embrace the district court's categorical approach that would, as a matter of course, require a relator to identify representative examples of false claims to support every allegation . . . . [I]t is sufficient to allege

---

**RELATOR'S OPPOSITION TO DYNAMIC MEDICAL SYSTEMS, LLC AND JOERNS HEALTHCARE, LLC'S MOTION TO DISMISS; Case No. 1:17-cv-01757-LJO-SAB** 3

> "particular details of a scheme to submit false claims paired with reliable
> indicia that lead to a strong inference that claims were actually submitted."

*Ebeid*, 616 F.3d at 998-99. Moreover, "the requirements of Rule 9(b) relax 'as to matters peculiarly within the opposing party's knowledge.'" *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987) (quoting case); *see also United States ex rel. Vatan v. QTC Med. Servs., Inc*., 721 F. App'x 662, 663–64 (9th Cir. 2018) ("The district court's requirement to the contrary would vitiate the False Claims Act, by excluding many whistle-blowers who—as here—allege insider knowledge of wrongdoing that few others would be positioned to reveal and solely lack access to the corporate documents outlining the precise nature of the company's obligations.").

The Ninth Circuit further elaborated the proper standard by which to measure a False Claims Act complaint in *United States ex rel. Swoben v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016): "[p]erhaps the most basic consideration for a federal court in making a judgment as to the sufficiency of a pleading for purposes of Rule 9(b) ... is the determination of how much detail is necessary to give adequate notice to an adverse party and enable that party to prepare a responsive pleading." Moreover, "[b]y requiring some factual basis for the claims, the rule protects against false or unsubstantiated charges." *Id.* "Because this standard 'does not require absolute particularity or a recital of the evidence,' [], a complaint need not allege 'a precise time frame,' 'describe in detail a single specific transaction' or identify the 'precise method' used to carry out the fraud, []. The complaint also need not 'identify representative examples of false claims to support every allegation.'" *Id.* (citations omitted).

### C. Violations of the AKS give rise to False Claims Act violations.

Claims to Medicare or Medicaid that are tainted by violations of the federal Anti-Kickback Statute (AKS) and state corollaries give rise to False Claims Act liability. Congress explicitly confirmed in 2010 that claims tainted by AKS violations are false under the FCA: "In addition to the penalties provided for in this section or section 1320a-7a of this title, a claim that includes items or services resulting from a violation of this section constitutes a false or fraudulent claim for purposes of [the federal False Claims Act]." 42 U.S.C.A. § 1320a-7b.

/ / /

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

III.    ARGUMENT

A.    **The scheme, including the resulting overcharges to Medi-Cal, is explained with the requisite specificity.[1]**

Defendants argue that the FAC's description of the scheme does not meet the standards of Rule 9(b).  To the contrary, the allegations of the FAC meet, and exceed, the level of specificity required in the Ninth Circuit, as they describe "with particularity the circumstances constituting fraud," which entails alleging "the who, what, when, where, and how of the misconduct charged." *United States ex rel. Swoben v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (quoting *Ebeid v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)).

***The "what":***  As explained in the FAC, Dynamic and Joerns offered deep discounts on specialty mattress rental rates to certain patient segments in order to induce SNFs to use their products.  ¶ 31.  At the same time, Dynamic and Joerns overcharged patients who were responsible for an SOC.  *Id.*  The overcharges were borne by the patients and government payers, as opposed to the SNFs.  *Id.*

In return for the discounts offered by Dynamic and Joerns, SNFs would refer 90 to 100 percent of their patients to Dynamic and Joerns.  ¶ 32.

More specifically, Dynamic and Joerns charge three different mattress rental rates.  ¶ 33.  First, the stated and published rate billed *directly* to Medi-Cal is $18.76 per day.  *Id.*  Dynamic and Joerns only bill Medi-Cal directly for a small portion of patients with qualifying wounds that require specialty mattresses and equipment.  *Id.*  Second, patients with private insurance, Medicare, and patients with Medi-Cal and no SOC are charged a discounted price of between $3 and $6 per day.  *Id.*  These patients are known in the industry as the "facility" segment, because the SNF facilities are billed for the charges, which the facilities in turn pay out of the monthly per patient funds they receive from private insurance, Medicare, and Medi-Cal.  *Id.*; *see also id.* at ¶ 22-24.  Third, patients in the SOC segment are charged a "retail" price of up to $23 per day.  *Id.* ¶ 34.

Because SNFs are paid a capitated rate for Medi-Cal patients in the facility segment, the SNFs can pocket the savings from the discounted prices offered by Dynamic and Joerns.  ¶ 34.

_____

[1] To avoid redundancy, the core allegations of the operative First Amended Complaint are summarized in this first section of the Argument, and not also in a stand-alone section.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

On the other hand, patients and the government bear the cost of the overcharges to SOC patients. ¶ 35.

Consider, for example, a patient, who lives in a SNF that is reimbursed $5,000 per month by Medi-Cal. ¶ 36. If that patient is in the facility segment, and is not responsible for any SOC, Dynamic and Joerns may charge $3 per day. *Id.* Medi-Cal pays a capitated rate of $5,000 per month for the patient's care. *Id.* The SNF pays $90 ($3 per day times 30 days) of the $5,000 for the specialty mattress rental, and has $4,910 left over for the remainder of the patient's care. *Id.* Ultimately, the government pays the SNF $5,000 per month for this patient's care. *Id.*

If the patient has an SOC of $1,000 and is charged the same amount as the facility segment for the specialty mattress, the patient pays $90 out of her SOC for the specialty mattress and, assuming there are no other uncovered costs, the remainder of the SOC ($910) goes to the SNF for the rest of her covered care. ¶ 37. Medi-Cal is then responsible for the remaining $4,090 of the SNF's $5,000 monthly charges. *Id.*

But under Defendants' scheme, SOC patients are charged an inflated rate of up to $23 per day. ¶ 38. Thus, the same patient would pay about $690 of her monthly SOC for the specialty mattress, and have only $310 left over to satisfy her SOC obligation. *Id.* Medi-Cal is responsible for the remaining $4,690 of the SNF's $5,000 monthly charges. *Id.*

In this example above, Medi-Cal thus pays an additional $600 per patient per month due to Defendants' differential billing. ¶ 39. Moreover, each SOC patient must pay an additional $600 out of their SOC for a specialty mattress, meaning they have $600 less to spend on other uncovered, but necessary medical costs. *Id.* The FAC provides a chart at paragraph 40 summarizing this example, demonstrating how Medi-Cal is ultimately overcharged under Defendants' scheme.

***The "how":*** Every month, SNFs participating in the scheme provide Dynamic and Joerns with a list of their patients, and the payors that are responsible for those patients. ¶ 41. This information is conveyed in a form known as the "Share of Cost Acknowledgement letter." *Id.* Using this list, Dynamic and Joerns differentiate between patients who are responsible for a SOC and those that are not, and charge those patient populations different prices. *Id.*

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**RELATOR'S OPPOSITION TO DYNAMIC MEDICAL SYSTEMS, LLC AND JOERNS HEALTHCARE, LLC'S MOTION TO DISMISS; Case No. 1:17-cv-01757-LJO-SAB**   6

1    **The "when":** Dynamic has carried out this scheme since at least 2006, when it acquired

2    Relator's company. ¶ 42. Dynamic continued the scheme after it was acquired by Invacare in 2011,

3    as well as after Joerns acquired Dynamic from Invacare. *Id.* Joerns perpetrated an identical scheme

4    before it acquired Dynamic. *Id.*

5        **The "who":** Dynamic and Joerns' argument that the FAC "impermissibly lumps" them

6    together is absurd. As the Ninth Circuit recently held in *United States ex rel. Swoben v. United*

7    *Healthcare Insurance Co.*, "[t]here is no flaw in a pleading . . . where collective allegations are used

8    to describe the actions of multiple defendants who are alleged to have engaged in precisely the same

9    conduct." 848 F.3d 1161, 1184 (9th Cir. 2016)). This rule has particular force when the fraudulent

10   scheme is carried out within a common organizational structure. *See United States ex rel. White v.*

11   *Gentiva Health Services, Inc.*, 2014 WL 2893223, at *16 (E.D. Tenn. June 25, 2014)).

12       As alleged in the FAC, Joerns acquired Dynamic in or around July 2015. Moreover,

13   subsequent to the filing of the FAC, Joerns fully absorbed Dynamic into its own operations.

14   Accordingly, Joerns is responsible for its own conduct and that of Dynamic. Furthermore, the FAC

15   specifies which SNF Defendant was contracted with which company: Covenant and Mariner with

16   Joerns, ¶¶ 12-13, and Plum and Cambridge with Dynamic, ¶¶ 15-16.

17       These details far exceed the pleading standard for FCA cases in the Ninth Circuit. *See United*

18   *States ex rel. Swoben v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (quoting

19   *Ebeid v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010)). Relator need only allege "particular details of

20   a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims

21   were actually submitted." *Ebeid*, 616 F.3d at 998-99. Relator has done so here.

22       **B.    Misuse of the SOC program results in overpayments by Medi-Cal.**

23       Dynamic and Joerns next argue that there can be no cognizable FCA or CFCA claims because

24   government funds are not "used to pay for the SOC program on which the allegations center."

25   MP&A at 9:26-28. This argument turns on feigned ignorance of the interplay between the SOC

26   program and government funds. As detailed in the FAC and summarized above, Defendants'

27   overbilling of SOC patients results in massive overpayment by the Medi-Cal program—which is

28   jointly funded with federal and state taxpayer money.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**RELATOR'S OPPOSITION TO DYNAMIC MEDICAL SYSTEMS, LLC AND JOERNS
HEALTHCARE, LLC'S MOTION TO DISMISS; Case No. 1:17-cv-01757-LJO-SAB**    7

Dynamic and Joerns cite—and conveniently attach to the RJN in support of their motion—the Medi-Cal manual that spells out their false claims. *See* Defs.' Ex. F. As the Medi-Cal manual describes, in their monthly per-patient bills to Medi-Cal, the SNF Defendants were required to "subtract from [their] monthly Medi-Cal rate the amount billed to the recipient [(i.e., an SOC patient)] and bill Medi-Cal for the remainder." *Id.* at 3. In other words, as described above, the more the patient has remaining of his or her SOC, the less Medi-Cal is billed. When an SOC patient is overcharged for mattress rental, he or she has less to pay the SNF, and the resulting bill to Medi-Cal is higher.

| Determining How Much to Bill Medi-Cal | To determine how much to bill Medi-Cal, subtract from a facility's monthly Medi-Cal rate the amount billed to the recipient and bill Medi-Cal for the remainder. (See the following "SOC Field on Claim." See the *Payment Request for Long Term Care [25-1] Completion* section in this manual for detailed instructions on completing the 25-1 form.) |
| --- | --- |

The form that the SNF fills out to bill Medi-Cal this monthly rate—less the SOC remainder—is also reproduced in Exhibit F to Defendants' brief. And it requires the SNF to certify that the charges submitted are "true, accurate, and complete." *Id.* at 6.

Another chapter of the Medi-Cal manual, entitled "Payment Request for Long Term Care (25-1) Completion," contains additional instructions to SNFs for filling out the monthly billing form. *See* Relator's Request for Judicial Notice, Ex. 1. It also emphasizes that the SNF must deduct the amount that it receives from the patient's SOC remainder, and emphasizes that SOC remainder may only be reduced by the amount "that qualifies under Medi-Cal rules to reduce the patient's SOC liability." *Id.* at 10. In other words, the patient's SOC cannot be *improperly* spent in order to reduce the remainder. When SNFs fill out their Payment Request for Long Term Care forms each month, they are explicitly certifying that the charges input on the form on true, accurate, and complete. If they are including in the SOC remainder calculation amounts that should not be included, then the forms are <u>false</u>.

Finally, and most importantly, the California Department of Health Care Services (DHCS), Office of Administrative Hearings and Appeals, has already considered and rejected the argument that the Medi-Cal low price rules do not apply to the Share of Cost program. Specifically, in the

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**RELATOR'S OPPOSITION TO DYNAMIC MEDICAL SYSTEMS, LLC AND JOERNS HEALTHCARE, LLC'S MOTION TO DISMISS; Case No. 1:17-cv-01757-LJO-SAB**    8

administrative appeal entitled *In re Legacy Post-Acute Rehab*, the administrative law judge

determined that the Medi-Cal low price rules apply to an SOC scheme of the same type alleged here.[2]

*See* Defs.' Ex. L.

In the *Legacy* audit, DHCS contended that the SNF's SOC scheme violated two of Medi-Cal's

low price rules, California Code of Regulations, title 22, section 51480(a):

> (a) No provider shall bill or submit a claim for reimbursement for the
> rendering of health care services to a Medi-Cal beneficiary in any amount
> greater or higher than the usual fee charged by the provider to the general
> public for the same service.

And title 22, section 51501(a):

> (a) Notwithstanding any other provisions of these regulations, no provider
> shall charge for any service or any article more than would have been
> charged for the same service or article to other purchasers of comparable
> services or articles under comparable circumstances.

*See* Defs.' Ex. L at 10:1-13.

As they do here, the SNF contended that "the discriminatory billing provisions do not apply to

SOC funds as a matter of law and assert[ed] that it has not violated any law . . ." *Id.* at 10:21-23. The

ALJ rejected the argument, emphasizing DHCS's "obligation to ensure the availability of patients'

SOC funds for necessary medical care that is not covered by Medi-Cal." *Id.* at 10:25-27. Further, the

SNF did "not present any law which refutes the Department's interpretation of the discriminatory

billing provision as applying to all information included in the cost report [submitted by the SNF to

Medi-Cal], including charges for items actually provided by subcontractors." *Id.* at 10:27-11:3.

In conclusion, the ALJ found: "[P]aying Dynamic different rates for the rental of air

mattresses based on whether the patient was a Medi-Cal beneficiary with a share of cost or not

violates the discriminatory billing provisions of California and federal law." *Id.* at 12:4-6.

Defendants' attempts to second-guess the findings of DHCS and the Administrative Office of

Hearings and Appeals—the administrative agency tasked by the federal and state government with

administering the Medi-Cal program—should be rejected.

///

---

[2] Notably, the SNF at issue in *In re Legacy* was represented by the same counsel—Hooper, Lundy &
Bookman—that represent Defendants Covenant Care and Mariners in this case.

**C.** **The Medi-Cal low price rules are unambiguous, and Defendants' *scienter* cannot be adjudicated on a motion to dismiss.**

Continuing their attempts to relitigate the issues raised before the ALJ, Defendants also argue that the Medi-Cal low price rules are ambiguous, and they therefore could not have acted with the requisite *scienter*. Their argument is, at best, premature.

In the Ninth Circuit (and most circuits), scienter can be pleaded generally, even for claims subject to Rule 9(b). *See* Rule 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally"); *see also In re GlenFed Inc. Securities Litigation*, 42 F.3d 1541, 1547 (9th Cir. 1994) (*en banc*) ("We conclude that plaintiffs may aver scienter generally, just as the rule states—that is, simply by saying that scienter existed"). Accordingly, the FAC sufficiently alleges that: "Defendants and their agents have been aware for years of the aforementioned false billing practice and knowingly permitted such wrongful practices to continue." FAC ¶ 43.

In any event, even if *scienter* needed to be pleaded with specificity, Relator has done so here. For example, the FAC describes an internal e-mail which demonstrates that the core purpose behind Dynamic and Joerns' exclusive contracts with SNFs, obtained through low pricing, was to "get[] rid of the competition" and capture the higher revenue SOC patients. ¶ 49. Furthermore, the FAC alleges, with details, that in 2017, multiple SNFs expressed their concerns with the legality of Dynamic and Joerns' differential pricing model. ¶¶ 50-54. At a very minimum, therefore, by 2017 Dynamic and Joerns had actual knowledge, or acted in reckless disregard, that their conduct was illegal. *See* 31 USC § 3729(b)(1) ("knowing" violations of the FCA include actual knowledge or acting in "reckless disregard of the truth or falsity of the information.").

Ultimately, Defendants' *scienter* argument devolves back into an assertion that the Medi-Cal low price rules do not apply to their SOC scheme. But both the plain language of the low-price rules, and case law interpreting them, are to the contrary.

For example, section 51408(a) limits any bills or claims "for the rendering of health care services to a Medi-Cal beneficiary," regardless of who the bill or claim is submitted to. Accordingly, the fact that Defendants bill the SOC trust accounts of their Medi-Cal patients, rather than Medi-Cal directly, does not absolve them of responsibility to comply with the low-price rule.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**RELATOR'S OPPOSITION TO DYNAMIC MEDICAL SYSTEMS, LLC AND JOERNS HEALTHCARE, LLC'S MOTION TO DISMISS; Case No. 1:17-cv-01757-LJO-SAB** 10

As to their argument regarding the ambiguity of section 51408's limitation of "usual fee" charged "to the general public," and section 51501's limitation of "other purchasers of comparable services or articles under comparable circumstances," the very cases Defendants rely on disprove their point. In *Physicians & Surgeons*, 6 Cal. App. 4th 968, 8 Cal. Rptr. 2d 565 (Cal. Ct. App. 1992), the California Court of Appeals applied several of the Medi-Cal low price rules, including the one at issue in this case, Section 51480 (along with variations thereof that apply only to clinical laboratories). Defendants cite *Physicians & Surgeons*, but not its central holding. As pertinent here, the Court of Appeal found that the Medi-Cal low price rules were violated where "a substantial proportion of respondent's business" received prices that were lower than what the respondent billed to Medi-Cal. *Id.* at 989. As Defendants cannot deny, the "facility" segment of the SNF population, for which the SNFs receive discounted pricing, is <u>always</u> not only a "substantial proportion" of the SNFs' population, but the largest.

Instead of *Physicians & Surgeons*, Defendants cite an unpublished California appellate decision—*Sharp Coronado Hosp. v. Bonta*, No. C045021, 2004 WL 1880132, at *6 (Cal. Ct. App. Aug. 24, 2004)—which is entirely unreliable, as California state courts do not even allow citation to such unpublished opinions. *See* Cal. Rules of Court, rule 8.1115. But even if the Court were to consider *Sharp Coronado*, it does not help Defendants. In *Sharp Coronado*, DHCS audited a nursing home and found it in violation of Section 51480 because it gave a 20% discount to uninsured patients who paid for services up front; i.e., a prompt-pay discount. *2. The Court of Appeals reversed under the doctrine of collateral estoppel, because DHS had already litigated, and lost, the same issue in parallel case in state court, and chose not to appeal. *3-*4. In its discussion, the court noted that it was unclear whether the small population of uninsured patients who paid for services in advance could be considered the "general public" for purposes of Section 51480. *Id.* at *7. There is no such conundrum here, because as Defendants do not deny, it is the vast majority of patients for which the SNFs received discounted pricing.

Defendants also cite *People v. Duz-Mor Diagnostic Lab., Inc.*, 68 Cal. App. 4th 654, 663, 80 Cal. Rptr. 2d 419 (1998), as modified (Dec. 24, 1998). *Duz-Mor*, however, was also based on findings of fact that differ substantially from the facts alleged in the complaint in this case. Most

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

1    critically, the court in *Duz-Mor* found that DHCS had failed to specify which of the provider's many

2    prices constituted its "usual charge" for purposes of 51408. *See id.* at 663 (the provider contended

3    that "the discounts varied and the number of patients who received discounted prices was small"); *id.*

4    at 665 (DHCS failed to "specify which of the variety of discounts constitute the usual fee"). Notably,

5    *Duz-Mor* left untouched the holding and analysis of *Physicians & Surgeons*.

6          Ultimately, *Physicans & Surgeons*, *Sharp Coronado*, and *Duz-Mor* establish that the Medi-

7    Cal low price rules are not unconstitutionally vague, and can be effectively applied by the courts to

8    different factual scenarios. Whether the discounts provided by Dynamic and Joerns in this case

9    ultimately constitute their "usual charge" is a question of fact that cannot be finally resolved at this

10   stage. So too, Defendants' *scienter* is ultimately a question for the jury. Those factual disputes,

11   however, do not equate to ambiguity that precludes, as a matter of law, a finding of false claims act

12   violations.

13         **D.**     **All of the SNFs' charges to Medi-Cal are false because the SNFs are engaged in a**

14                   **kickback scheme with the mattress company Defendants.**

15         Even putting the Medi-Cal low price rules aside, Defendants' scheme would remain unlawful

16   under the FCA and CFCA because it involves illegal kickbacks. *See* FAC ¶ 57 ("Defendants

17   knowingly submitted false claims for Medicare and Medicaid business that was obtained by means

18   of, and as a result of illegal kickbacks.").

19         The federal Anti-Kickback Statute prohibits any person or entity from making or accepting

20   "remuneration" to induce or reward any person for referring, recommending, or arranging for the

21   purchase of any item or service for which payment may be made under a federally-funded health care

22   program. 42 U.S.C. § 1320a-7b(b). The statute ascribes liability to both sides of an impermissible

23   kickback relationship.

24         Similarly, California Welfare and Institutions Code section 14107.2 prohibits the offer or

25   payment of "any remuneration, including, but not restricted to, any kickback, bribe, or rebate ... to

26   refer any individual to a person for the furnishing or arranging for furnishing of any service," or "to

27   purchase, lease, order or arrange for or recommend the purchasing, leasing or ordering of any goods,

28   facility, service or merchandise for which payment may be made, in whole or in part," by Medi–Cal.

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

1   Defendants' scheme violates both of these laws.  Accordingly, any and all claims for payment

2   by Defendants to Medi-Cal and Medicare are tainted, and violate the False Claims Act.  *See* 42

3   U.S.C.A. § 1320a-7b ("In addition to the penalties provided for in this section or section 1320a-7a of

4   this title, a claim that includes items or services resulting from a violation of this section constitutes a

5   false or fraudulent claim for purposes of [the federal False Claims Act]."); *United States ex rel.*

6   *Banigan v. Organon USA Inc.*, No. CV 07-12153-RWZ, 2016 WL 10704126, at *5 (D. Mass. Aug.

7   23, 2016) ("By enshrining their distaste for kickbacks in statutes and provider agreements, these

8   states have made plain their unwillingness to pay kick-back tainted claims.").

9          In response to these straightforward allegations, Defendants again attempt to muddy the

10  waters by focusing on the SOC program.  They again fail.  The scheme is simple:  Joerns and

11  Dynamic rent beds to the SNFs for a discounted price of between $3 and $6 per day.  FAC ¶ 33.  That

12  is the remuneration.  In exchange (the *quid pro quo*), the SNFs allow Joerns and Dynamic to also

13  provide beds for Medi-Cal "qualifying wounds" patients.  *Id.*  For those patients, Joerns and Dynamic

14  bill Medi-Cal directly, at a much higher rate of $18.76 per day.  *Id.*  Also in exchange, the SNFs

15  allow Joerns and Dynamic to also provide beds for Medi-Cal patients who have SOC.  *Id.*  For those

16  patients, Joerns and Dynamic bill at a much higher rate of up to $23.00 per day.  *Id.*

17         This *qui pro quo* falls squarely within the plain language of the anti-kickback laws.  Both

18  federal and state law apply to any services or merchandise referrals that "may be made, in whole or in

19  part," from Medi-Cal funds.  The "qualifying wound" Medi-Cal patients undisputedly fall within that

20  definition.  Indeed, Joerns and Dynamic do not address this category of patients at all.

21         And as much as they attempt to confuse the issue, the mattress rentals for Medi-Cal SOC

22  patients also qualify as services for which payments "may be made, in whole or in part," from Medi-

23  Cal funds.  As explained in the FAC, every dollar that Defendants improperly charge to a Medi-Cal

24  SOC patient is an additional dollar that Medi-Cal will end up paying.  It is a direct, one-to-one

25  relationship.  Accordingly, Medi-Cal pays for the mattress rentals, for SOC patients in addition to

26  "qualifying wound" patients.

27         Defendants' final argument on the kickback issue is that there is no violation because it is

28  only the SNFs, not the ordering physicians, who receive the kickback.  Defendants are wrong on the

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**RELATOR'S OPPOSITION TO DYNAMIC MEDICAL SYSTEMS, LLC AND JOERNS**     13
**HEALTHCARE, LLC'S MOTION TO DISMISS; Case No. 1:17-cv-01757-LJO-SAB**

facts and the law:  In exchange for discounts, the SNFs agree that when a mattress is necessary, they will order the mattress from Joerns/Dynamic.  That is an unlawful *quid pro quo*.  Moreover, from a legal perspective, Plaintiffs are not required to show that the *quid pro quo* actually resulted in an increase in ordering, or that the kickback must be received by physicians.  Instead, it only need be shown that *one purpose* of the arrangement was an intent to induce referrals of Medicare or Medi-Cal patients.  *United States v. Kats*, 871 F.2d 105, 108 (9th Cir. 1989); *United States ex. rel. Jacobs v. CDS, P.A.*, No. 4:14-CV-00301-BLW, 2015 WL 5698395, at *4 (D. Idaho Sept. 28, 2015); *United States v. Ctr. for Diagnostic Imaging, Inc.*, 787 F. Supp. 2d 1213, 1218 (W.D. Wash. 2011).  The requisite scienter required "to induce" another, is simply "an intent to exercise influence over the reason or judgment of another in an effort to cause the referral of program-related business." *Hanlester Network v. Shalala*, 51 F.3d 1390, 1398 (9th Cir. 1995)[3]; *see also United States v. Strand*, 574 F.2d 993 (9th Cir. 1978) (finding that evidence of "a promise, contract or agreement" is not required in order to establish the requisite intent; *United States v. Jennings*, 160 F.3d 1006, 1014 (4th Cir. 1998) ("Direct evidence of intent is unnecessary, however. . . . [T]he government is not required to prove an expressed intention (or agreement) to engage in a *quid pro quo*.  Such an intent may be established by circumstantial evidence.") (citing cases).

Though such allegations are not necessary at this stage, the FAC is replete with allegations—and specific evidence—that the parties structure the SOC program with the goal and purpose of ensuring that all of the SNF Defendants' bed rentals went to Dynamic and Joerns.[4]  *See* FAC ¶¶ 31-32; 41; 49.

/ / /

/ / /

---

[3] *Hanlester* also included a requirement of "specific intent," which Congress subsequently confirmed was *not* required under the AKS.

[4] Moreover, liability under the FCA and IFPA does not require actual damages be proven—let alone pleaded.  *See U.S. ex rel. Hagood v. Sonoma Cty. Water Agency*, 929 F.2d 1416, 1421 (9th Cir. 1991) ("A civil penalty of between $5,000 and $10,000, and the costs of the civil action, are also recoverable under the statute, 31 U.S.C. § 3729(a).  No damages need be shown in order to recover the penalty.  *See Rex Trailer Co. v. United States*, 350 U.S. 148, 153, n. 5, 76 S.Ct. 219, 222, n. 5, 100 L.Ed. 149 (1956).").  Whether Defendants' kickback scheme ultimately caused actual damages, and how those damages are to be calculated, are not questions that need be addressed at the pleading stage.

E.      **The FAC alleges materiality, as anti-kickback violations and overcharges are always material.**

Citing *Universal Health Servs. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 1995-96 (2016), Defendants next argue that the FAC fails to allege materiality.  The materiality requirement described in *Escobar*, however, only applies to "implied certification" cases.  This is not an implied certification case—indeed, it is not a "false certification" case at all, because "certification" is not required to establish liability when the defendant has engaged in an illegal kickback scheme.

Both "express" and "implied" certification are merely ways to establish a "legally" false claim.  *See, e.g.*, *U.S. ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 675 (9th Cir. 2018) ("There are two cognizable theories of liability for legally false claims: express false certification and implied false certification.").  In 2010, Congress amended the Anti-Kickback Statute to state expressly that claims that arise from its violation constitute false claims under the FCA.  *See* 42 U.S.C. 1320a–7b(g) ("[A] claim that includes items or services resulting from a violation of [the Anti-Kickback Statute] constitutes a false or fraudulent claim for purposes of [the FCA.]").  In other words, claims resulting from violation of the AKS constitute "legally" false claims.  As such, a Relator need not allege "certification" to establish a claim under the FCA when the defendant is alleged to have violated the AKS.  *See, e.g.*, *U.S. ex rel. Wood v. Allergan, Inc.*, 246 F. Supp. 3d 772, 812–13 (S.D.N.Y. 2017) (the express language of the AKS "makes plain" that claims premised on an underlying violation of the AKS are "clearly legally sufficient" false claims under the FCA); *see also United States v. Rogan*, 517 F.3d 449, 452–53 (7th Cir. 2008) (all claims submitted by defendant were false because they were acquired by kickback); *see also U.S. ex rel. Drakeford v. Tuomey*, 792 F.3d 364, 386 (4th Cir. 2015) (defendant was "knowingly asking the government to pay an amount that, by law, it could not pay" for claims tainted by violation of analogous Stark Law).

Here, the FAC adequately describes Defendants' violation of the AKS and how that violation caused Defendants to submit false claims to the government.  This is all that is required to establish a violation of the FCA in a kickback case.

Similarly, low-price rule violations create false claims without any separate showing of "materiality."  The amount paid by the government is always material.  If the government is charged

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

more than it is supposed to, that charge is, by definition, material to its decision to pay that amount. *See United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1170 (9th Cir. 2006) ("In an archetypal *qui tam* False Claims action, such as where a private company overcharges under a government contract, the claim for payment is itself literally false or fraudulent."). Where there is an overcharge — i.e., the defendant is alleged to have charged a higher amount than allowed under a contract, law, or regulation — there is no additional misrepresentation or certification required under the FCA or CFCA. If a company knows it is supposed to charge the government $10, and instead charges $12, that is a false claim, with or without an independent certification. It is that simple.

In any event, the materiality standard of *Escobar* is easily met here. It held that materiality can be satisfied by showing either: (1) "a reasonable man would attach importance to [the misrepresented information] in determining his choice of action in the transaction; or (2) "the defendant knew or had reason to know that the recipient of the representation attaches importance to the specific matter 'in determining his choice of action,' even though a reasonable person would not." *Escobar*, 136 S. Ct. at 2002-03 (quoting the Restatement (Second) of Torts § 538, at 80). Given the Congressional mandate reflected in the Anti-Kickback Statute, and the actions of DHCS in enforcing the low-price rules since at least 1992 (the time of *Physicans & Surgeons*), there can be no dispute that Medi-Cal attaches importance to both AKS violations and low-price rule violations.

## F. The FAC adequately alleges Reverse False Claims.

Under the FCA and the Patient Protection and Affordable Care Act ("PPACA"), Defendants had an obligation to repay the Government within 60 days of receipt of payment by the Government for claims submitted by the SNF Defendants that were tainted by illegal kickbacks or that were inflated. *See* 42 U.S.C. 1320a-7k(d). As such, the FAC states a viable claim against Defendants for their violation of section 3729(a)(1)(G).

## G. The FAC sufficiently alleges a conspiracy.

Joerns and Dynamic next argue that the FAC "fails to plead any of the requisite elements of a conspiracy with particularity." MP&A at 19:19:24-25. There is no such particularity requirement to allege a conspiracy under the FCA. Instead, general civil conspiracy principles apply to FCA conspiracy claims. *See United States ex rel. Durcholz v. FKW Inc.*, 189 F.3d 542, 545 n.3 (7th Cir.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**RELATOR'S OPPOSITION TO DYNAMIC MEDICAL SYSTEMS, LLC AND JOERNS HEALTHCARE, LLC'S MOTION TO DISMISS; Case No. 1:17-cv-01757-LJO-SAB** 16

1  1999). "To prove a civil conspiracy, the plaintiff must show that the conspiring parties 'reached a

2  unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful

3  arrangement.'" *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999) (quoting *Vieux v.*

4  *East Bay Reg'l Park Dist.,* 906 F.2d 1330, 1343 (9th Cir. 1990)). "A defendant's knowledge of and

5  participation in a conspiracy may be *inferred* from circumstantial evidence and from evidence of the

6  defendant's actions." *Id*. at 856-57 (emphasis added).

7         Most kickback schemes are, by definition, conspiracies.  The anti-kickback statutes do not

8  require both sides of a kickback to be complicit; a vendor could theoretically violate the statute by

9  offering remuneration, without the recipient realizing it is receiving remuneration.  However, in

10 practice, in most kickback schemes, both sides of the *quid pro quo* are knowing and willing

11 participants—i.e., are engaged in a conspiracy.

12        This case is no different.  The FAC alleges that Joerns and Dynamic offered discounts as a

13 remuneration, and that the SNFs knowingly received the remuneration, and in return, directed all of

14 their bed rental business to Joerns and Dynamic.  The FAC alleges that Defendants even reduced

15 their illegal agreement to writing in many cases (although the case law does not require a written or

16 explicit agreement).  *See United States v. Jennings*, 160 F.3d 1006, 1014 (4th Cir. 1998).

17        These facts present strong circumstantial evidence that the Defendants "reached a unity of

18 purpose or a common design and understanding" to pay and receive kickbacks for their own financial

19 gain.  This is all that is required in the Ninth Circuit to establish a conspiracy at the pleading stage.

20 *See e.g., Gilbrook*, *supra*, 177 F.3d at 856-857.

21        **H.**    **The Public Disclosure Bar of the CFCA does not apply.**

22        Defendants DMS and Joerns argue the CFCA public disclosure bar (but not the public

23 disclosure bar of the FCA) applies to this case.  The public disclosure bar is a two-step inquiry:  (1)

24 was there an applicable public disclosure; and, if there was, (2) does the "original source" exception

25 apply?  As discussed in the following sections, Dynamic and Joerns fail to establish an applicable

26 public disclosure.  And even if they could, Relator qualifies under the original source exception.

27 / / /

28 / / /

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**RELATOR'S OPPOSITION TO DYNAMIC MEDICAL SYSTEMS, LLC AND JOERNS
HEALTHCARE, LLC'S MOTION TO DISMISS; Case No. 1:17-cv-01757-LJO-SAB**   17

**1.      The Public Disclosure Bar under the CFCA is narrowly construed.**

As to the first step in the inquiry, California Government Code Section 12652, subdivision (d)(3)(A) provides:

> (A) The court shall dismiss an action or claim under this section, unless opposed by the Attorney General or prosecuting authority of a political subdivision, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed in any of the following:
>
> > (i)      A criminal, civil, or administrative hearing in which the state or prosecuting authority of a political subdivision or their agents are a party.
> > (ii)     A report, hearing, audit, or investigation of the Legislature, the state, or governing body of a political subdivision.
> > (iii)    The news media.

The public disclosure bar is thus triggered only if Defendants establish three things:  (1) the disclosure occurred through one of the channels enumerated in the statute; (2) the disclosure was "public"; and (3) the Qui Tam Plaintiffs' action is "substantially the same" as the allegations or transactions publicly disclosed.  (*Id.*; *see also Malhotra v. Steinberg* (9th Cir. 2014) 770 F.3d 853, 858.)

If Defendants establish all three factors, the second inquiry is whether the original source exception applies, as explained in the CFCA as follows:

> (B) Subparagraph (A) [the public disclosure bar] shall not apply if the action is brought by the Attorney General or prosecuting authority of a political subdivision, or the person bringing the action is an original source of the information.
>
> (C) For purposes of subparagraph (B), "original source" means an individual who either:
>
> > (i) Prior to a public disclosure under subparagraph (A), has voluntarily disclosed to the state or political subdivision the information on which allegations or transactions in a claim are based.
> >
> > (ii) Has knowledge that is independent of, and materially adds to, the publicly disclosed allegations or transactions, and has voluntarily provided the information to the state or political subdivision before filing an action under this section.

Cal. Gov. Code § 12652(d)(3).

There are thus two manners of qualifying as an original source:  (1) by disclosing to the government, prior to the public disclosure, the same information as is contained in the public

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**RELATOR'S OPPOSITION TO DYNAMIC MEDICAL SYSTEMS, LLC AND JOERNS HEALTHCARE, LLC'S MOTION TO DISMISS; Case No. 1:17-cv-01757-LJO-SAB**      18

1  disclosure; or (2) by disclosing to the government, after the public disclosure, but before filing the

2  action, new information that adds to the publicly disclosed information.

3          In 2010, the FCA was amended in an effort to correct "overly strict and skewed

4  interpretations" of the statute, including application of the public disclosure bar and original source

5  rules.  *See* James B. Helmer, Jr., *False Claims Act:  Whistleblower Litigation* 399 (6th ed. 2013).

6  The FCA bar is no longer jurisdictional and the language was narrowed to require the prior

7  disclosure to be "substantially the same as" the relator's claim, and the "original source" exception

8  to the bar was expanded.  *Compare* 31 U.S.C. § 3730(e)(4) (1986), with 31 U.S.C. § 3730(e)(4)

9  (2010).  The CFCA was amended shortly thereafter to follow suit.

10         Even before these amendments, the courts emphasized that just as the CFCA is to be

11 construed broadly to protect the public fisc, so too is the public disclosure bar to be applied

12 narrowly.  As described by the California Court of Appeal:

13             In determining whether the instant action is barred by the public disclosure
            bar, we are guided by certain controlling principles.  The California False Claims Act
14          is designed to supplement governmental efforts to identify and prosecute fraudulent
            claims made against state and local governmental entities by authorizing private
15          parties to bring suit on behalf of the government, with the ultimate purpose of
            protecting the public fisc.  (*American Contract Services v. Allied Mold & Die, Inc.,*
16          *supra*, 94 Cal.App.4th at 858.)  To that end, the Act is to be "construed broadly so as
            to give the widest possible coverage and effect to its prohibitions and remedies."
17          (*LeVine v. Weis, supra*, 90 Cal.App.4th at 210, italics added.)  The public disclosure
            jurisdictional bar, in turn, is designed to bar parasitic or opportunistic *qui tam* actions
18          by persons simply taking advantage of public information without contributing to or
            assisting in the exposure of the fraud.  (*Allstate, supra*, 107 Cal.App.4th at 564.)
19          **Therefore, the public disclosure bar should be applied only as necessary to**
            **preclude parasitic or opportunistic actions, but not so broadly as to undermine**
20          **the Legislature's intent that relators assist in the prevention, identification,**
            **investigation, and prosecution of false claims.**
21

22 *City of Hawthorne ex rel. Wohlner,* 109 Cal. App. 4th at 1683 (Cal. Ct. App. 2003) (emphasis added);

23 *see also State ex rel. Bartlett v. Miller* (2016) 243 Cal. App. 4th 1398, 1407 ("[The 'public disclosure

24 bar'] does not preclude qui tam lawsuits based on any public disclosure of the material information

25 concerning the alleged false claim.  Rather, to trigger the bar, the information must have been

26 publicly disclosed in one of the specific fora identified in the statute.").)

27 / / /

28 / / /

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**RELATOR'S OPPOSITION TO DYNAMIC MEDICAL SYSTEMS, LLC AND JOERNS    19
HEALTHCARE, LLC'S MOTION TO DISMISS; Case No. 1:17-cv-01757-LJO-SAB**

2. **Defendants have not shown an applicable public disclosure.**

    a. **The audit of Defendant Plum was not "publicly disclosed" prior to the filing of this action.**

The only audit of a Defendant in this action—Plum Healthcare Group, LLC—was not made public until after this case was filed (if at all).  Defendants' summary of the procedural history of the Plum audit (*In re Garden City Healthcare Center*) is flatly misleading.  They assert:  "Plum requested a formal hearing, and both Plum and DHCS submitted materials related to the audit findings to the Office of Administrative Hearing and Appeals in connection with this request, constituting public disclosures."  MP&A at 22:20-22.  But neither requesting a formal hearing, nor submitting materials to the OAHA, are public actions.  To the contrary, it is only *after* such a formal hearing that the matter may become part of the official public record.  *See* Cal. Code Regs. tit. 22, § 51044(a) (after the hearing, "[a] copy of the proposed decision, upon submission to the Director, shall be:  (1) Filed by the Department as a public record. . .")  And Defendants are conspicuously silent as to when the hearing in the Plum matter occurred; presumably because it was not held, if ever, until *after* this action was filed in December 2017.  Accordingly, the Plum audit does not qualify as a public disclosure under the CFCA.

    b. **The Legacy audit related to a nursing home chain that is not the subject of this case, and Defendants have not shown that it was public.**

Recognizing that the Plum audit was not public before this action was filed, Defendants attempt to rely an earlier audit of a SNF that is <u>not</u> a Defendant in this case—*In Re Legacy Post-Acute Rehab*.  However, although the *Legacy* audit was final prior to this lawsuit commencing, Defendants have not shown that it was publicly disclosed.  The evidence submitted by Defendants shows only that the audit record and the final decision of the ALJ were transmitted to the attorneys involved in the case.  *See, e.g.,* Defs.' RJN, Exs. L & M.  It is Defendants' burden to establish the elements of their affirmative defenses, including the existence of a public disclosure.  *See United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 327 (5th Cir. 2011) ("In regard to the . . .

1  public disclosure bar under the [False Claims Act]," the relator is not required "to prove a negative:

2  that there are no public disclosures of allegations or transactions upon which his action is based.").

3      Defendants do not describe, let alone provide evidence, of how the *In re Legacy* decision was

4  made public, nor does an internet or Westlaw search reveal is existence.  Accordingly, Defendants

5  have not met their burden of establishing the existence of a public disclosure.

6      Even if the *In re Legacy* decision had been made public prior to the filing of this matter, it

7  does not qualify as a public disclosure because it was directed at a SNF that is not a Defendant in this

8  case.  In most jurisdictions,[5] including the Ninth Circuit, the public disclosure bar only applies where

9  the allegations against the particular defendants named in a complaint have been previously

10 disclosed.  As stated in *United States ex rel. Alfred Aflatooni v. Kitsap Physicians Services*, 163 F.3d

11 516 (9th Cir. 1998):  "The public disclosure bar **cannot** be applied to the . . . Defendants unless the

12 evidence supports the district court's finding that **the allegations against those particular**

13 **defendants were disclosed in the news media**".  *Id.* at 523 (emphasis added).  This rule, according

14 to the Ninth Circuit, "is consistent with the purpose of the FCA.  The FCA is designed to reward

15 those individuals who provide the government with information regarding fraud which has not been

16 publicly disclosed."  *Id.*  Although the government may obtain information about a fraud committed

17 by some companies in an industry, "the government may still benefit from obtaining information

18 about separate allegations of wrongdoing against" others committing a similar fraud in the industry.

19 *Id.*  "The public disclosure bar should not be interpreted to prohibit" claims against defendants

20 "where there **has been no public disclosure of the allegations against these particular**

21 **defendants**".  *Id.* (emphasis added).

22 / / /

23 / / /

24 / / /

25 / / /

26 / / /

---

27 [5] Where there is no guidance from California courts on an issue, California courts interpreting the
   CFCA generally rely on FCA cases.  *See City of Pomona v. Superior Court*, 89 Cal. App. 4th 793,
28 802 (Cal. Ct. App. 2001).

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**RELATOR'S OPPOSITION TO DYNAMIC MEDICAL SYSTEMS, LLC AND JOERNS HEALTHCARE, LLC'S MOTION TO DISMISS; Case No. 1:17-cv-01757-LJO-SAB**    21

1    The Ninth Circuit reiterated the *Aflatooni* rule in *United States ex rel. Foundation Aiding the*

2    *Elderly v. Horizon West Inc.*, 265 F.3d 1011 (9th Cir. 2001) (amended by 2001 U.S. App. LEXIS

3    27363) ("*Foundation Aiding the Elderly*").  The *Foundation Aiding the Elderly* case is particularly

4    instructive here, as it too dealt with widespread Medicaid fraud in the nursing home industry.  In

5    *Foundation Aiding the Elderly*, the Ninth Circuit stated:

            Appellees also point to general allegations of fraud that were directed at the nursing
6           home industry in general.  But, as pointed out by Appellants, ***none of these
7           "disclosures" related to Horizon West or specifically to any of its facilities***.
            Therefore, *[these disclosures] do not trigger the jurisdictional bar*.  *See Cooper v.*
8           *Blue Cross & Blue Shield of Fla., Inc.*, 19 F.3d 562, 566 (11th Cir. 1994) ("The
            allegations of widespread . . . fraud made in sources in which BCBSF was not
9           specifically named or otherwise directly identified are ***insufficient*** to trigger the
            jurisdictional bar").

10

11   *Id.* at *9 n.5 (emphasis added).

12          Defendants argue that although Legacy is not a defendant in this case, the administrative

13   decision still constitutes a public disclosure because it discusses Dynamic—which rented the air

14   mattresses to Legacy.  The decision, however, makes no suggestion of a widespread practice of the

15   type alleged in this case.  Relator's FAC offers specific details of a widespread kickback scheme not

16   described in *In re Legacy*, including a swapping arrangement to defraud Medicare and Medi-Cal.  *See*

17   FAC ¶ 31.  Relator specifically alleges that Defendants DMS and Joerns offered kickbacks in the

18   form of kickbacks to the SNF Defendants in order to obtain and retain all of their business.  *See, e.g.,*

19   FAC ¶¶ 31-33.  Further, Relator alleges that every month, SNFs participating in the scheme provided

20   DMS and Joerns with a list of their patients and the corresponding payors.  *See* FAC ¶ 41.  As an

21   insider, Relator provides facts to support the purpose and intent behind the schemes by referencing

22   specific emails and other information that was not disclosed or considered in *In re Legacy*.  *See* FAC

23   ¶ 49.  Relator further alleges SNFs that voiced recent concerns about DMS and Joerns' business

24   practices.  *See* FAC ¶¶ 50-54.  Relator's allegations are based on his Director position working at

25   Joerns and DMS, and outline detailed schemes, including a kickback scheme.  These facts and

26   allegations were never part of the *In re Legacy* audit or hearing, and thus, are not "substantially

27   similar."  *See United States ex rel. Mateski v. Raytheon, Co*., 816 F.3d 565 (9th Cir. 2016).

28

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

The cases Defendants rely on in support of their argument are wholly distinguishable. For example, in *Calva v. Impac Secured Assets Corp.*, No. SACV161983JVSJCGX, 2018 WL 6016152 (C.D. Cal. June 12, 2018), the court dismissed Relator's claims of fraud for mortgage-backed trusts under the FCA's public disclosure bar, based on a prior federal complaint that involved the same trusts and identical allegations. *Id.* at *6 (citations omitted). Further, the relator had no first-hand knowledge of the scheme, but simply used his experience as an expert witness to build upon the prior federal case in filing the *qui tam* action. *Id.* at 5-7. Thus, unlike in this matter, there was a prior *public* disclosure, an identical scheme and parties, and an outsider with no new information.

Defendants' reliance upon *State of California ex rel. Standard Elevator Co., Inc. v. West Bay Builders, Inc.*, 197 Cal. App. 4th 963 (Cal. Ct. App. 2011) is also misplaced. First, *Standard* was dismissed on summary judgment, not a motion to dismiss. *See id.* at 968. Further, as in *Calva*, the prior disclosure was a publicly filed lawsuit, involving identical facts, claims, and parties. *See id.* at 976 ("[T]he information was disclosed in Standard's own cross-complaint against West Bay in prior litigation, other documents filed in that civil proceeding, trial testimony in open court, and documents filed on appeal.").

Similarly, *Amphastar Pharmaceuticals Inc. v. Aventis Pharma SA*, 856 F.3d 696 (9th Cir. 2017) involved a *qui tam* plaintiff that was itself previously involved in earlier patent infringement litigation with the same defendant. *Id.* at 703-04. The court noted that the nearly identical allegations were made several years prior regarding alleged misrepresentations, with "only [one] new allegation." *Id.* at 704. Lastly, *United States ex rel. Galmines v. Novartis Pharm. Corp.*, 88 F. Supp. 3d 447 (E.D. Pa. 2015) involved the exact same allegations covered in a prior public disclosure, but merely referenced a different time period. The relator's case did not provide any new facts, parties or allegations. *See id.*

In each of the cases relied upon by Defendants, there was clear evidence of a prior <u>public</u> disclosure, and an exact match of parties and theories. Here, in contrast, Defendants have not met their burden of establishing that the audits were publicly disclosed, and the allegations of the FAC are not sufficiently similar to the identified public disclosure. *See Rose v. Stephens Inst.*, No. 09-CV-5966-PJH, 2016 WL 2344225, at *5 (N.D. Cal. May 4, 2016), *aff'd sub nom. United States v.*

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**RELATOR'S OPPOSITION TO DYNAMIC MEDICAL SYSTEMS, LLC AND JOERNS HEALTHCARE, LLC'S MOTION TO DISMISS; Case No. 1:17-cv-01757-LJO-SAB**    23

*Stephens Inst.*, 901 F.3d 1124 (9th Cir. 2018), and *aff'd sub nom. United States Ex Rel. Rose v. Stephens Inst.*, 909 F.3d 1012 (9th Cir. 2018) ("If the *Mateski* disclosures – which were made not only about the same defendant, but about the same project – were not enough to t,rigger the bar, then the disclosures in this case do not come close to doing so."). Accordingly, the Court need not reach the original source inquiry.

### 3. Turner is an Original Source.

Even if Defendants could show a valid public disclosure, Relator would qualify as an "original source," as he has provided "knowledge that is independent of, and materially adds to the publicly disclosed allegations or transactions," pursuant to Government Code Section 12652, subdivision (d)(3)(C)(ii). Turner's knowledge derives from his employment as a sales Director for both Defendants Joerns and Dynamic. FAC ¶ 9. As a key employee, he has detailed inside knowledge of Defendants' conduct and the schemes. *See United States ex rel. Hartpence v. Kinetic Concepts, Inc.,* No. CV081885GHKAGRX 2016 WL 8919455, at *9-10 (C.D. Cal. Nov. 16, 2016) (citations omitted) (on remand, relator had direct and independent knowledge on the basis that he obtained the information directly from the defendant's employees about its conduct, not the publicly available information).

The information provided by Turner materially adds to the audits because it describes a widespread scheme spearheaded by Dynamic and Joerns, as opposed to isolated overcharges at one nursing home chain. Moreover, the FAC describes a kickback scheme that was not uncovered or disclosed in the audits. The FAC provides further material information about other aspects of the schemes that were not disclosed in the DHCS audits. FAC ¶¶ 31-43; 48-54. For example, multiple contracts, with multiple SNFs are specifically disclosed by Turner. *See* FAC ¶ 48.

Moreover, the FAC outlines insider company information, including emails from executives evidencing an entirely novel allegation—the kickback scheme—and how it was used by DMS and Joerns to capitalize on opportunities to gain more business. *See* FAC ¶ 49. Indeed, as a top employee, Turner was one of few individuals with access to this information, which certainly was not part of DHCS's audit findings or allegations. Defendants' invective confirms this, labeling Turner the "high-level-executive-turned-relator" in the introduction to their brief. MP&A at 1:17. Further,

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**RELATOR'S OPPOSITION TO DYNAMIC MEDICAL SYSTEMS, LLC AND JOERNS HEALTHCARE, LLC'S MOTION TO DISMISS; Case No. 1:17-cv-01757-LJO-SAB** 24

because of his work with the SNFs, Turner provides material information about complaints and certain SNFs' reluctance to work with DMS and Joerns. *See* FAC ¶¶ 50-54. Finally, Relator disclosed the scheme to the California Department of Justice prior to filing his Complaint, as required under the CFCA to qualify as an original source. *See* Relator's RJN, Ex. 2 (December 18, 2017 Pre-Filing Letter to the California DOJ).

Accordingly, Relator is an "original source" under the CFCA. In any event, at the pleading stage a relator does not need to *prove* that the bar does not apply. Rather, a relator need only allege the basis of their claims that they are an original source—i.e., allege the details of the scheme. *See, e.g., United States v. Kiewit Pacific Co.*, 41 F. Supp. 3d 796, 810 (N.D. Cal. 2014) (noting regular pleading standards apply to an original source inquiry). Relator has met that burden here, and Defendants' public disclosure bar argument should be rejected.

## IV. CONCLUSION

For the foregoing reasons, Relator respectfully requests that the Court deny Defendants' Motion to Dismiss, in its entirety. In the alternative, Relator requests leave to amend.

Dated: March 18, 2020                    **COTCHETT, PITRE & McCARTHY, LLP**

By:    */s/ Justin T. Berger*
       JUSTIN T. BERGER
       SARVENAZ "NAZY" J. FAHIMI

*Attorneys for Relator Thomas Turner*

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**RELATOR'S OPPOSITION TO DYNAMIC MEDICAL SYSTEMS, LLC AND JOERNS HEALTHCARE, LLC'S MOTION TO DISMISS; Case No. 1:17-cv-01757-LJO-SAB**    25