**MORGAN, LEWIS & BOCKIUS LLP**
Scott A. Memmott, *pro hac vice*
scott.memmott@morganlewis.com
Howard J. Young, *pro hac vice*
howard.young@morganlewis.com
Kayla Stachniak Kaplan, *pro hac vice*
kayla.kaplan@morganlewis.com
Jonelle Saunders, *pro hac vice*
jonelle.saunders@morganlewis.com
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
Tel:     +1.202.739.3000
Fax:    +1.202.739.3001

**MORGAN, LEWIS & BOCKIUS LLP**
Brian M. Jazaeri, Bar No. 221144
brian.jazaeri@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA  90071-3132
Tel:     +1.213.612.2500
Fax:    +1.213.612.2501

*Attorneys for Defendants*
*Dynamic Medical Systems, LLC and*
*Joerns Healthcare, LLC*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES EX REL. TURNER**, *et al.*, | Case No. 1:17-CV-01757-NONE-SAB |
| Plaintiffs, | **REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS THE FIRST AMENDED COMPLAINT BY DEFENDANTS DYNAMIC MEDICAL SYSTEMS, LLC AND JOERNS HEALTHCARE, LLC** |
| v. | |
| **DYNAMIC MEDICAL SYSTEMS, LLC**, *et al.*, | Date:     N/A |
| Defendants. | Time:     N/A |
| | Ctrm.:    N/A |
| | Judge:    None |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS DMS' & JOERNS' MOTION TO
DISMISS REPLY 1:17-CV-01757-NONE-SAB

# **TABLE OF CONTENTS**

**Page**

Table of Authorities .................................................................................................... ii

Introduction ................................................................................................................ 1

Argument .................................................................................................................... 2

    A.    The Complaint's Rule 9(b) Deficiencies Warrant Dismissal................................. 2

    B.    The Complaint Does Not and Cannot State a Claim for "Low Price
        Rules" Violations ........................................................................................... 3

        1.    No Government Money Is Involved in SOC Transactions ........................ 3

        2.    Scienter Cannot Plausibly Be Alleged Based on Ambiguous "Low
                Price Rules".............................................................................................. 6

    C.    The Complaint Does Not and Cannot State a Claim Based on Alleged
        Kickbacks .................................................................................................... 9

    D.    The Reverse False Claim Allegations Are Redundant......................................... 12

    E.    The Complaint Fails to Allege a Conspiracy ..................................................... 12

    F.    Past Public Disclosures Bar the CFCA Claims................................................... 13

Conclusion ................................................................................................................. 15

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

i

DEFENDANTS DMS' & JOERNS' MOTION TO
DISMISS REPLY 1:17-CV-01757-NONE-SAB

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Allison Engine Co. v. United States ex rel. Sanders,*
   553 U.S. 662 (2008) ............................................................................................4

*City of Pomona v. Superior Court,*
   89 Cal. App. 4th 793 (Cal. Ct. App. 2001) ........................................................4

*Fabbrini v. City of Dunsmuir,*
   544 F. Supp. 2d 1044 (E.D. Cal. 2008)...............................................................5

*Gonzalez v. Planned Parenthood of Los Angeles,*
   759 F.3d 1112 (9th Cir. 2014)..............................................................................8

*Knudsen v. Sprint Commc'ns Co.,*
   No. C13-04476 CRB, 2016 WL 4548924 (N.D. Cal. Sept. 1, 2016)..............11, 12

*People v. Duz-Mor Diagnostic Lab., Inc.,*
   80 Cal. Rptr. 2d 419 (Cal. Ct. App. 1998) .........................................................7

*Physicians & Surgeons Labs., Inc. v. Dep't of Health Servs.,*
   8 Cal. Rptr. 2d 565 (Cal. Ct. App. 1992) ...........................................................7

*Safeco Ins. Co. of Am. v. Burr,*
   551 U.S. 47 (2007) ...............................................................................................8

*Seal 1 v. Seal A,*
   255 F.3d 1154 (9th Cir. 2001).............................................................................13

*Sharp Coronado Hosp. v. Bonta,*
   No. C045021, 2004 WL 1880132 (Cal. Ct. App. Aug. 24, 2004) ...................7, 8

*State ex rel. Standard Elevator Co. v. W. Bay Builders, Inc.,*
   130 Cal. Rptr. 3d 99 (Cal. Ct. App. 2011) ........................................................14

*State v. Pac. Bell Tel. Co.,*
   48 Cal. Rptr. 3d 427 (Cal. Ct. App. 2006) ........................................................15

*United States ex rel. Aflatooni v. Kitsap Physicians Services,*
   163 F.3d 516 (9th Cir. 1998)...............................................................................14

*United States ex rel. Biddle v. Board of Trs.,*
   161 F.3d 533 (9th Cir. 1998)...............................................................................13

*United States ex rel. Durcholz v. FKW Inc.,*
   189 F.3d 542 (7th Cir. 1999)...............................................................................12

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS DMS' & JOERNS' MOTION TO
DISMISS REPLY 1:17-CV-01757-NONE-SAB

*United States ex rel. Forcier v. Computer Scis. Corp.*,
No. 12 CIV. 1750 (DAB), 2017 WL 3616665 (S.D.N.Y. Aug. 10, 2017) ................................6

*United States ex rel. Gough v. Eastwestproto, Inc.*,
No. CV 14-465 DMG (SHX), 2018 WL 6929332 (C.D. Cal. Oct. 24, 2018) ....................9, 12

*United States ex rel. Hartpence v. Kinetic Concepts, Inc.*,
No. CV 08-1885-GHK(AGRx), 2016 WL 8919455 (C.D. Cal. Nov. 16, 2016) ....................14

*United States ex rel. Hastings v. Wells Fargo Bank, NA, Inc.*,
656 F. App'x 328 (9th Cir. 2016) ........................................................................................15

*United States ex rel. Integra Med Analytics LLC v. Providence Health & Servs.*,
No. CV 17-1694 PSG (SSX), 2019 WL 3282619 (C.D. Cal. July 16, 2019) ........................12

*United States ex. rel. Jacobs v. CDS, P.A.*,
No. 4:14-CV-00301-BLW, 2015 WL 5698395 (D. Idaho Sept. 28, 2015) ..........................10

*United States ex rel. Kraft v. CalPortland Constr.*,
No. CV1604479JFWSSX, 2018 WL 6262877 (C.D. Cal. Mar. 9, 2018) ..............................11

*United States ex rel. Lee v. Corinthian Colleges*,
No. CV071984PSGMANX, 2013 WL 12114015 (C.D. Cal. Mar. 15, 2013) ........................14

*United States ex rel. Lewis v. California Inst. of Tech.*,
No. 218CV05964CASRAOX, 2019 WL 5595046 (C.D. Cal. Oct. 28, 2019) ........................6

*United States ex rel. Marion v. Heald Coll., LLC*,
No. 5:12-CV-02067-PSG, 2015 WL 4512843 (N.D. Cal. July 24, 2015) ..............................12

*United States ex rel. McGrath v. Microsemi Corp.*,
690 F. App'x 551 (9th Cir. 2017) ..........................................................................................8

*United States ex rel. Puhl v. Terumo BCT*,
No. CV178446PSGJPRX, 2019 WL 6954317 (C.D. Cal. Sept. 12, 2019) ..............................2

*United States ex rel. Rector v. Bon Secours Richmond Health Corp.*,
No. 3:11cv38, 2014 WL 1493568 (E.D. Va. Apr. 14, 2014) ..............................................10

*United States ex rel. Rose v. Stephens Inst.*,
909 F.3d 1012 (9th Cir. 2018) ............................................................................................ 6

*United States ex rel. Solis v. Millennium Pharm., Inc.*,
885 F.3d 623 (9th Cir. 2018) ..............................................................................................10

*United States ex rel. Wood v. Allergan, Inc.*,
246 F. Supp. 3d 772, 815-16 (S.D.N.Y. 2017) ....................................................................10

*United States v. Dynamics Research Corp.*,
No. CIVA 03CV11965-NG, 2008 WL 886035 (D. Mass. Mar. 31, 2008)..............................4

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

*United States v. McNinch*,
  356 U.S. 595 (1958) ..........................................................................................................5

*Universal Health Servs. v. United States ex rel. Escobar*,
  136 S. Ct. 1989 (2016) ..............................................................................................6, 11, 2

*Way v. JP Morgan Chase Bank, N.A.*,
  No. 216CV02244TLNKJN, 2018 WL 2117630 (E.D. Cal. May 8, 2018) ..........................5, 9

**STATUTES**

31 U.S.C. § 3729(b)(2)(A) .........................................................................................................4

42 U.S.C. § 1320a-7b(g) ..........................................................................................................10

Cal. Gov't Code § 12652(d)(3) ...........................................................................................13, 15

Cal. Welf. & Inst. Code § 14107.2 ............................................................................................9

**REGULATIONS**

Cal. Code Regs. tit. 22, § 51044(a) ..........................................................................................13

**RULES**

Fed. R. Civ. P. 9(b) ..........................................................................................................1, 2, 12

**OTHER AUTHORITIES**

59 Fed. Reg. 1662 (Jan. 12, 1994) ............................................................................................6

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

iv

Defendants Dynamic Medical Systems, LLC ("DMS") and Joerns Healthcare, LLC ("Joerns"), by and through their attorneys, respectfully submit this reply brief in support of their Motion to Dismiss the Complaint[1] of Relator Thomas Turner.[2]

## **INTRODUCTION**

As if to highlight the Complaint's scant allegations, Relator's Opposition (Dkt. 74) ("Opp.") attempts to gloss over the Complaint's extensive Rule 9(b) deficiencies with conclusions and platitudes wholly unsupported by details. Just repeating the refrain that the Complaint contains sufficient details to survive a Rule 9(b) challenge does not make it so. Indeed, the Opposition (a) is telling in that it ignores, rather than responds to, entire swaths of Defendants' arguments and (b) makes numerous assertions and "clarifications" that are nowhere pled in the Complaint. These new assertions – even if later allowed in some amended pleading (for which Relator makes an unsupported, one sentence pitch at the end of his Opposition) – cannot save Relator's action.

Several things are made clear through the confusion and lack of supporting detail in both the Complaint and Opposition: (1) Relator concedes that the averred overcharges in his alleged "low price rules" violations relate to higher mattress charges to private SOC patients, not in claims submitted to any government payor; (2) the "low price rules" themselves are full of ambiguity, as shown not just by the parties' conflicting interpretations, but also by the conflicting interpretations of DHCS auditors, administrative law judges ("ALJs") and the California courts; (3) the purported "swapping" scheme, based on the underlying "differential pricing" allegations, has not been linked and cannot plausibly be linked to any actual claim presented to the federal government for payment as required by the federal AKS; and (4) the entire bases of Relator's allegations already were disclosed publicly in not one, but two, prior DHCS audits and administrative hearings.

---

[1] Capitalized terms have the same meaning as defined in DMS' and Joerns' Brief in Support of their Motion to Dismiss (Dkt. 61) ("Brief" or "Br.").

[2] DMS and Joerns also join the arguments of Defendants Plum Healthcare Group LLC, Covenant Care California LLC, Mariner Health Care Management Company, and Cambridge Healthcare Services, to the extent applicable to the allegations against DMS and Joerns.

## ARGUMENT

### A.    The Complaint's Rule 9(b) Deficiencies Warrant Dismissal

Rather than addressing head-on the Complaint's complete failure to identify a claim actually submitted to the Government (or reliable indicia creating a strong inference thereof) with respect to either the "low price rules" or kickback allegations, Relator focuses on the separate (but equally fatal) principle that no government money is involved in private patient SOC transactions, which is not surprising given Relator is limited to the allegations in the Complaint, and the Complaint nowhere alleges a claim for payment was actually submitted to Medicare or Medi-Cal. Despite Relator's protestations to the contrary, without a claim, there can be no false claim. *See, e.g.*, *United States ex rel. Puhl v. Terumo BCT*, No. CV178446PSGJPRX, 2019 WL 6954317, at *3 (C.D. Cal. Sept. 12, 2019) (distinguishing *United States ex rel. Swoben v. United Healthcare Ins. Co.*, 848 F.3d 1161 (9th Cir. 2016), and dismissing complaint where "Relator fails to [provide particular details of a scheme paired with reliable indicia that together create a strong inference that false claims were actually submitted to Medicare] because rather than providing particular details of a scheme, he merely alleges that Defendants had an agreement and that they defrauded a private [payor]").

In addition to its inability to address the Complaint's total failure to allege a "claim" for payment, the Opposition fails to overcome any of the other numerous Rule 9(b) deficiencies identified by DMS and Joerns. For example, Relator (1) focuses on the same bare-bones outline of its scheme in the Complaint but offers no response – not even the promise that it could offer an amendment to supply details – to its failure to specify the "what" and "how" in terms of the particular types or groups of specialty mattresses allegedly involved, the different individual prices and price differentials associated with the numerous various types of mattresses, which particular government program beneficiaries were involved, how many patients were involved (let alone who they were), and at which particular skilled nursing facilities, *see* Br. at 6-7; (2) does not address any of the case law cited by DMS and Joerns establishing that vague spans of years, such as those set forth in the Complaint, are insufficient to plead "when" with particularity, *see* Br. at 8-9;

(3) selectively picks and chooses which of DMS' and Joerns' "who" arguments to address,[3] thereby completely ignoring the Complaint's failure to specify which particular individuals at Defendants were involved in the conduct that allegedly gave rise to the purportedly false claims, *see* Br. 7-8; and (4) does not even mention the Complaint's failure to plead "where" with specificity, *see* Br. at 9.

**B.  The Complaint Does Not and Cannot State a Claim for "Low Price Rules" Violations**

**1.  No Government Money Is Involved in SOC Transactions**

Just like the Complaint, the Opposition simply asserts in a conclusory way that "patients and the government bear the cost of the overcharges to SOC patients," Opp. at 6, without connecting in any plausible way ***how*** these alleged overcharges actually are borne by the Government. Instead, Relator refers to the same implausible hypothetical presented in the Complaint about an SOC patient who pays for a specialty mattress using private trust account funds and has "no other uncovered costs." Opp. at 6; ¶¶ 36-39. This hypothetical – which Relator nowhere asserts is an actual example of something that happened at any of the SNFs in question – is based on an incredible assumption that SOC patients had not spent the balance of the funds in their trust accounts on other medical expenses. *See* Br. at 12 n.10. The entire purpose of the *Johnson v. Rank* settlement is to ensure that SOC patients are allowed to spend their SOC funds on medically necessary items that are not covered by Medi-Cal while not otherwise being hemmed in by what those funds could or could not be spent on. *See* Br. at 4. SOC patients are required, by law, to be allowed to deplete their entire SOC account.

Moreover, Relator's hypothetical only highlights that there is no false claim alleged – the charges for mattresses by DMS and Joerns are to the SOC patients themselves, not to the Government. The SOC is based on patient income (as reduced by *Johnson v. Rank* spending), and

---

[3]  Relator's attempts to assert that he does not need to separate out conduct by DMS versus Joerns because "Joerns fully absorbed Dynamic into its own operations" around 2015, Opp. at 7, does not provide the requisite particularity. First, DMS and Joerns have separate corporate identities that must be respected in the FCA context. *See* Br. at 8 n.5. Moreover, Relator's argument creates even more confusion – does the Opposition assertion that Covenant and Mariner contracted with Joerns mean that the allegations only extend to the years 2015 and forward for Joerns/Covenant/Mariner and not to prior years? This does not provide adequate notice to enable DMS and Joerns to prepare a responsive pleading.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

3

DEFENDANTS DMS' & JOERNS' MOTION TO
DISMISS REPLY 1:17-CV-01757-NONE-SAB

SOC patients do not become eligible for Medi-Cal funding each month until they have spent down their SOC or else contributed it as a "deductible." *See* Br. at 11-12. The eventual capitated rate received by the SNFs from Medi-Cal for patients who have exhausted their SOC is thus several steps removed – *e.g.*, by income fluctuations, changes in household size, spending on other medical care – from the payment that DMS and Joerns receive from an SOC patient's trust fund. In other words, Relator's hypothetical vastly oversimplifies and ignores these other factors that may influence the timing, occurrence, and amount of any Medi-Cal capitated payments to a SNF.

Relator's entire case boils down to the idea that there is some "interplay between the SOC program and government funds," Opp. at 7. But the FCA, which is not an all-purpose antifraud statute, does not provide for liability based on an "interplay." It requires a "claim."[4] And a claim is just that – a "request or demand ... for money or property" that is presented either to the Government or to a grantee if the money has been provided by or will be reimbursed by the Government. 31 U.S.C. § 3729(b)(2)(A). Nothing in the definition of a claim describes the SOC program or how SOC patients pay for mattresses.

For this same reason, it is irrelevant that Medi-Cal twice audited provider compliance with the "low price rules" in the SOC context. Beyond the fact that any determinations arising out of these audits are non-precedential, as discussed further below, a DHCS decision to audit cannot transform a regulatory or contractual violation into FCA liability. The State is empowered to audit and enforce all manner of things that do not meet the requirements of the FCA with its attendant threat of treble damages. *Cf. Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662, 672 (2008) ("Recognizing a cause of action under the FCA for fraud directed at private entities would threaten to transform the FCA into an all-purpose antifraud statute."). As the Supreme Court has stated often, the FCA's provisions, including its limitation to "claims," "must be carefully

---

[4] Relator cites to several cases to establish the purportedly "broad" purposes of the FCA and CFCA, arguing that they should be read liberally, Opp. at 2-3, but even these citations underscore the fundamental limiting principle of the FCA and CFCA – a claim on **government** money. *See, e.g.*, *United States v. Dynamics Research Corp.*, No. CIVA 03CV11965-NG, 2008 WL 886035, at *9 (D. Mass. Mar. 31, 2008) ("[T]he FCA has been used to ferret out all types of fraud *resulting in claims for government funds*." (emphasis added)); *City of Pomona v. Superior Court*, 89 Cal. App. 4th 793, 801-02 (Cal. Ct. App. 2001) ("prevent[ing] fraud *on the public treasury*" and "fraud ... that might result *in financial loss to the Government*" (emphases added)).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

4

DEFENDANTS DMS' & JOERNS' MOTION TO
DISMISS REPLY 1:17-CV-01757-NONE-SAB

1 restricted, not only to their literal terms but to the evident purpose of Congress in using those terms."

2 *United States v. McNinch*, 356 U.S. 595, 598 (1958).

3     In addition to the extensive citations in Defendants' opening Brief to Medi-Cal regulations,

4 manuals, and instructions confirming that SOC patients, not the Government, pay charges to their

5 SOCs, Br. at 11-12, Relator's Exhibit 1 further showcases the lack of any government involvement

6 in the SOC transaction. In particular, these instructions explain that the SOC amount is billed ***to***

7 ***the patient*** and not to Medi-Cal:

8         PATIENT LIABILITY/MEDICARE DEDUCT. Enter the
recipient's net Share of Cost (SOC) liability. ***The recipient's net***
9 ***SOC liability is the amount billed to the recipient.*** The recipient's
net SOC liability is determined by subtracting from the recipient's
10 original SOC (listed on the Medi-Cal eligibility verification system)
***the amount expended by the recipient*** that qualifies under Medi-Cal
11 rules to reduce the patient's SOC liability.

12         For continuing recipients, such qualifying expenditures will
generally be those for necessary medical or remedial services or
13 items "not covered" by Medi-Cal. ... The PATIENT LIABILITY
(SOC) amount is deducted from the amount billed to Medi-Cal.

14 Opp. Exh. 1, at 10 (emphases added). Indeed, Relator concedes that "Defendants bill the SOC trust

15 accounts of their Medi-Cal patients, rather than Medi-Cal directly." Opp. at 10.

16     In a final attempt to overcome this lack of a claim with respect to charges to SOC patients,

17 Relator advances the idea that SNFs have "to certify that the charges submitted are 'true, accurate,

18 and complete'" on Payment Requests for Long Term Care for their capitated monthly rates. Opp.

19 at 8 (citing Br. Exh. F). This Payment Request changes nothing, however, about who pays for a

20 mattress under the SOC regime – the patient pays. Nor is there any allegation about this Payment

21 Request certification anywhere in the Complaint, much less an allegation that the SNFs did not

22 accurately list either the facility's monthly Medi-Cal rate or the "patient liability" amount on this

23 form. *See Way v. JP Morgan Chase Bank, N.A.*, No. 216CV02244TLNKJN, 2018 WL 2117630,

24 at *9 (E.D. Cal. May 8, 2018) ("Plaintiffs cannot amend their [complaint] in opposition to a motion

25 to dismiss."); *Fabbrini v. City of Dunsmuir*, 544 F. Supp. 2d 1044, 1050 (E.D. Cal. 2008)

26 ("Plaintiff's statements in his opposition brief cannot amend the Complaint under Rule 15.").

27     At most, ***if it had actually been pled***, this certification would amount to an attempt to plead

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

5

DEFENDANTS DMS' & JOERNS' MOTION TO
DISMISS REPLY 1:17-CV-01757-NONE-SAB

an implied false certification – where Defendants submitted factually accurate claims but then failed to comply with some ancillary regulatory requirement (*e.g.*, the "low price rules"). However, in addition to the rigorous elements of materiality and scienter addressed below, *Escobar* requires both (1) a "specific representation about the goods or services provided" and one that (2) is rendered "misleading in context" by the failure to disclose the regulatory noncompliance. *See Universal Health Servs. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2000-01 (2016); *United States ex rel. Rose v. Stephens Inst.*, 909 F.3d 1012, 1018 (9th Cir. 2018) ("Relators must satisfy *Escobar*'s two conditions to prove falsity[.]"). The Complaint pleads nothing to support either requirement, nor could it. *See, e.g.*, *United States ex rel. Lewis v. California Inst. of Tech.*, No. 218CV05964CASRAOX, 2019 WL 5595046, at *8 (C.D. Cal. Oct. 28, 2019) (finding that relator failed to plead falsity sufficient to satisfy *Escobar* and *Rose* where he only alleged "the funding conditions, the violations of those conditions, and continued requests for funding"); *United States ex rel. Forcier v. Computer Scis. Corp.*, No. 12 CIV. 1750 (DAB), 2017 WL 3616665, at *13 (S.D.N.Y. Aug. 10, 2017) ("Even assuming that these could be considered 'specific representations,' however, it is hard to see how Defendant's failure to disclose its incentive-based fee structure 'render[ed] [these] representations misleading with respect to the goods or services provided.' Defendant's compensation arrangement with the City had nothing to do with the services provided, and the rates of such services and existence/nonexistence of private insurance coverage are not the type of representations that would lead a reasonable person to conclude *anything* about its compensation arrangement—much less that it was on a fixed-fee basis." (emphasis in original) (quoting *Escobar*, 136 S. Ct. at 2001)).

**2.    Scienter Cannot Plausibly Be Alleged Based on Ambiguous "Low Price Rules"**

Relator argues that the "plain language" of the "low price rules" demonstrates their applicability to SOC patients, Opp. at 10, but this assertion rests on the language that § 51480(a) applies to "rendering … services to a Medi-Cal beneficiary." First, Relator ignores both (a) the opening language of the provision that restricts the "low price rules" to "provider ... bill[ing] or submi[tting] a claim for reimbursement," which does not occur in private SOC transactions that are paid from SOC patient trust fund accounts, not from Medi-Cal funds, and (b) the tying of the

"greater or higher" amount test to the "usual fee charged … to the general public," which reasonably could include SOC patients as opposed to the "facility segment" with volume discounts in preferred provider agreements. Second, SOC patients are, by definition, not "Medi-Cal beneficiaries" until after their SOC is paid, including any charges for medically necessary, non-covered services and products under *Johnson v. Rank*. *See, e.g.*, 59 Fed. Reg. 1659-01, at 1662 (Jan. 12, 1994) (describing income deduction for necessary care not covered by State Medicaid plan as "part of expenses ***needed to qualify*** the individual for Medicaid" (emphasis added)). Moreover, Relator's assertion that there is any "plain language" in § 51480(a) is wholly undermined by California courts' recognition that the "low price rules" are inherently ambiguous. *See* Br. at 14-15 (citing, *e.g.*, *Physicians & Surgeons Labs., Inc. v. Dep't of Health Servs.*, 8 Cal. Rptr. 2d 565, 577 (Cal. Ct. App. 1992) ("There is some ambiguity in the terminology of these regulations [including §§ 51480 and 51501].")).

This is not, as Relator characterizes it, an argument about whether a regulation is "unconstitutionally vague," Opp. at 12; instead, it is an argument about a regulation being ambiguous such that it defeats scienter under the FCA. *See* Br. at 13-14, 16. In other words, just because a court interprets a regulation – which is precisely the court's function – does not make the regulation ***un***ambiguous. Moreover, although the three California state cases cited by DMS and Joerns did not opine on the particular inapplicability of the "low price rules" to SOC transactions because they involved different factual scenarios than presented here, they did address aspects of the "low price rules" that further support the reasonableness of DMS' and Joern's interpretation. *See Sharp Coronado Hosp. v. Bonta*, No. C045021, 2004 WL 1880132, at *3, 6 (Cal. Ct. App. Aug. 24, 2004) (noting that "it is unclear whether [§§ 51480(a) and 51501(a)] entitle[] Medi-Cal to pay the lowest rate offered to any single individual or group of people" and finding collateral estoppel barred any DHCS challenge to earlier decision that "offering a discount for pre-payment does not amount to a different price for the same service in violation of [§ 51480(a)]" because a discounted fee cannot be considered a "usual fee"); *People v. Duz-Mor Diagnostic Lab., Inc.*, 80 Cal. Rptr. 2d 419, 427 (Cal. Ct. App. 1998) (upholding finding that various discounts given to private-pay patients were not the "usual fee charged … to the general public" under § 51480(a)); *Physicians &*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

7

DEFENDANTS DMS' & JOERNS' MOTION TO
DISMISS REPLY 1:17-CV-01757-NONE-SAB

1 *Surgeons Labs., Inc.*, 8 Cal. Rptr. 2d at 577-78 (finding, in the context of lab test billing, that
2 charges to provider-type clients were "usual charges" but that charges to a state hospital pursuant
3 to a negotiated contract were not "usual charges," and noting that it is ***not*** the case that "any time
4 [a provider] charged a lower fee, it would be required to charge Medi-Cal that same lower fee").

5       Relator's argument that the DHCS Office of Administrative Appeals "already considered
6 and rejected the argument that the Medi-Cal low price rules do not apply to the Share of Cost
7 program," Opp. at 8, does nothing to change this ambiguity or the reasonableness of DMS' and
8 Joerns' interpretation.[5] DHCS itself has confirmed that ALJ decisions are "non-precedential" and
9 "not binding sources of authority," Br. Exh. H (DHCS Reply Brief), at 7 – a far cry from the type
10 of "guidance" that could have warned Defendants away from their objectively reasonable
11 interpretation. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 70 n.19 (2007). Indeed, in the
12 context of the ambiguous "low price rules," California state courts have even recognized that
13 "DHS's own auditors differed in their definition of" the terms. *Sharp Coronado Hosp.*, 2004 WL
14 1880132, at *6.

15       Finally, scienter is not "ultimately a question for the jury," as Relator contends, Opp. at 12.
16 Instead, the Ninth Circuit repeatedly has dismissed FCA cases where, as here, an ambiguous
17 provision and concomitant reasonable interpretation undermine any attempt to state a plausible
18 claim.[6] *See, e.g.*, *United States ex rel. McGrath v. Microsemi Corp.*, 690 F. App'x 551, 552 (9th
19 Cir. 2017) ("[T]he complaint cannot plead facts sufficient to support an inference that Microsemi
20 knew it had failed to comply with [regulations] at the time of the representation because
21 Microsemi's good faith interpretation of the term … at that time was reasonable."); *Gonzalez v.*
22 *Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115-16 (9th Cir. 2014) (state's
23 acknowledgement that, *inter alia*, no specific definition of "at cost" was contained in the billing

---

[5] The *Legacy* ALJ also erred in its conclusion, but it is not necessary for the Court to make that determination at this juncture because, regardless, DMS and Joerns could not have possessed the requisite scienter under the FCA while reasonably interpreting the ambiguous "low price rules."

[6] Relator implausibly appears to misunderstand DMS' and Joerns' argument. DMS and Joerns are not averring that scienter cannot be alleged generally rather than with particularity. Instead, Relator can never plausibly allege scienter, even generally, in the face of DMS' and Joerns' reasonable interpretation of the ambiguous "low price rules."

manual and that it had been ambiguously applied "fatally undercut [relator's] allegations of

knowing falsity to the point where he cannot state a plausible claim under the FCA").

**C.**     **The Complaint Does Not and Cannot State a Claim Based on Alleged Kickbacks**

Relator's kickback allegations fare no better than those regarding the "low price rules." First, in an apparent attempt to deflect attention away from the weakness of his SOC claims, Relator avers that supposed direct bills by DMS and Joerns to Medi-Cal rescue his kickback claims from dismissal.[7]  In so doing, Relator wrongly asserts that Defendants "do not address this category of ["qualifying wound"] patients at all," Opp. at 13.  Despite the fact that the Complaint's "kickback allegations" with respect to direct bill Medi-Cal patients consist of one unilluminating paragraph – ¶ 33[8] – Defendants nevertheless addressed and argued that Relator's FCA allegations based on violations of the AKS fail with respect to both SOC and Medi-Cal patients.  *See, e.g.*, Br. at 18 n.14.

Second, after returning to his implausible argument and incorrect statement that "Medi-Cal pays for mattress rentals, for SOC patients in addition to 'qualifying wound' patients," Opp. at 13, Relator's Opposition again falls short by asserting that Relator need not show that the ordering physicians received kickbacks or that there was an "increase in ordering." Opp. at 13-14.  Relator's assertions completely misconstrue Defendants' arguments related to his theory of AKS liability, which are not about scienter or damages, but rather are about the requirement that an AKS violation only creates FCA liability when it is linked to a claim for government payment.  *See United States ex rel. Gough v. Eastwestproto, Inc.*, No. CV 14-465 DMG (SHX), 2018 WL 6929332, at *5 (C.D. Cal. Oct. 24, 2018) ("Generally, the AKS does not require proof of a *quid pro quo*, or that any payment or referral was made.  When a violation of the AKS forms the basis of an FCA claim, however, the claimant ***must establish a connection*** between the alleged kickback scheme and

---

[7]     Relator raises Cal. Welf. & Inst. Code § 14107.2 for the first time in the Opposition.  The Complaint does not allege a violation of this code provision and refers only to the "Federal Anti-Kickback Law."  *See, e.g.*, ¶ 20.  Relator cannot amend the Complaint through his Opposition brief. *See Way*, 2018 WL 2117630, at *9.

[8]     Paragraph 33 simply states that DMS and Joerns "charge three different mattress rental rates" and lists the rates.  It is only the Opposition that assigns the labels of "remuneration" and "*quid pro quo*" to the various parts of this pricing structure.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

9

DEFENDANTS DMS' & JOERNS' MOTION TO
DISMISS REPLY 1:17-CV-01757-NONE-SAB

actual false claims submitted to the government." (emphasis added) (internal citations omitted)). Relator must plead this *link* between an AKS violation and an actual claim, which the Complaint fails to do and the Opposition does not even attempt to address.[9]

**D.      The Complaint Fails to Meet the Demanding Requirement to Allege Materiality**

Relator attempts to avoid any obligation to allege materiality by asserting that this is not a certification case at all, let alone an implied certification case, because certification is not required to establish liability when a defendant has engaged in an illegal kickback scheme. Opp. at 15. This AKS argument is incorrect, as Relator's own case citations explain. *See, e.g.*, *United States ex rel. Wood v. Allergan, Inc.*, 246 F. Supp. 3d 772, 815-16 (S.D.N.Y. 2017) (noting that an AKS violation falls under the umbrella of an FCA implied certification), *rev'd on other grounds*, 899 F.3d 163 (2d Cir. 2018); *United States ex rel. Jacobs v. CDS, P.A.*, No. 4:14-CV-00301-BLW, 2015 WL 5698395, at *8 (D. Idaho Sept. 28, 2015) (describing AKS violation theory as an "FCA theory of fraud [that] is grounded in express or implied certification").[10]

---

[9]      DMS and Joerns also explained that any attempt by Relator to allege a link would not be plausible because discounts alone are not sufficient to trigger AKS liability.  An agreement that DMS or Joerns would be the preferred provider for specialty mattresses in a particular SNF means only that the DMS/Joerns mattresses would be available *if* specialty mattresses were later prescribed by a physician to prevent or address pressure wounds, and nothing more, not to mention *if* a claim for payment ever was submitted to the Government.  *See United States ex rel. Solis v. Millennium Pharm., Inc.*, 885 F.3d 623, 629 (9th Cir. 2018) ("Nor has [relator] provided reliable indicia supporting a strong inference that such claims were submitted.  For example, [relator] does not allege that being 'on formulary' meant such claims would be submitted, or even that being on formulary meant Avelox would be prescribed.  Being 'on formulary' merely means the drug is *available* to be used or prescribed." (emphasis in original)); *United States ex rel. Rector v. Bon Secours Richmond Health Corp.*, No. 3:11cv38, 2014 WL 1493568, at *9 (E.D. Va. Apr. 14, 2014) ("Relator's claim [of unsubstantiated or unsupported medical diagnoses resulting from alleged AKS violations] does not involve an integrated scheme in which presentment of a claim for payment was a necessary result because the patients could have paid for the relevant prescriptions and procedures themselves.  In effect, Relator is missing the final link in the chain of causation." (internal citation omitted)).  Moreover, as argued in the Brief at 18, the need for a specialty mattress must be documented in the plan of care and the mattress must be prescribed by an attending physician in order for a SOC patient to use private funds to pay for it.  Absent kickbacks to attending physicians that cause them to risk their medical licenses by documenting fabricated medical necessity (which has not been and cannot be alleged), the fact that mattresses must be prescribed based on medical necessity makes it impossible for Relator to plead that alleged inducements *to the SNF* caused improper referrals in violation of the AKS.  As such, he cannot plausibly allege details of a scheme paired with reliable indicia that create a strong inference that false claims were actually submitted to Medi-Cal or Medicare.

[10]      Relator goes on to argue that AKS violations are *per se* material based on the amended language of the AKS.  Relator's non-specific allegations purportedly stretch back to "at least 2006," ¶ 42, but the amended language was effective March 23, 2010.  Although the FCA statute of limitations

DEFENDANTS DMS' & JOERNS' MOTION TO
DISMISS REPLY 1:17-CV-01757-NONE-SAB

In addition, Relator's attempt to argue that violations of the "low price rules," which are codified in the California regulations, result in factual falsity (and therefore that a separate showing of materiality under the FCA is not required) is similarly unavailing. Even if a claim for government payment was alleged, which it is not, Relator does not anywhere in the Complaint aver that anything submitted by a SNF to Medicare is factually false. The fact that the "low price rules" have to do with "prices" does not change the requirement to plead (and later prove) materiality.[11]

The Supreme Court has explained that "statutory, regulatory, and contractual requirements are not automatically material, even if they are labeled conditions of payment," and no "single fact or occurrence" is determinative of materiality. *Escobar*, 126 S. Ct. at 2001 (citation omitted). Although Relator asserts that materiality could "easily" be met, the Complaint does not actually allege this "rigorous" and "demanding" element, and Relator has not offered any proposed amendment to do so. *Escobar*, 136 S. Ct. at 2002-03. As the Northern District of California explained in rejecting exactly the same argument made by Relator here:

> The United States … argues that materiality is easily met because a price reduction clause dictates how much the government pays, which has a natural tendency to affect the government's decision to pay a claim. Although the government might be correct that a PRC violation is material to the government's decision to pay, the issue here is the adequacy of [relator's] pleading. The Supreme Court recently concluded that materiality is not too fact intensive an issue upon which courts may base an FCA dismissal. The Court further stated that the standard for pleading materiality is "rigorous" and that FCA plaintiffs must "plead their claims with plausibility and particularity under Federal Rules of Civil Procedure 8 and 9(b) by, for instance, pleading facts to support allegations of materiality." Thus, the government is incorrect in its assertion that this is an "easy"

bars any of Relator's claims prior to December 28, 2011, *see* Br. at 8 n.6 – something else the Opposition ignores and thereby concedes – such claims also would not be subject to Relator's argument regarding *per se* materiality for AKS violations. This "*per se* material" argument itself is questionable. Satisfaction of the falsity element of the FCA says nothing about satisfaction of the separate materiality element. *Wood*, on which Relator relies, Opp. at 15, evaluated whether the relator actually pled facts that would support a finding of materiality. 246 F. Supp. 3d at 818 n.29.

[11] Relator does not even attempt to address the Brief's case citations demonstrating that district courts in this Circuit correctly treat FCA allegations involving pricing behavior that arise out of federal or state regulations as false certification cases. *See United States ex rel. Kraft v. CalPortland Constr.*, No. CV1604479JFWSSX, 2018 WL 6262877, at *5 (C.D. Cal. Mar. 9, 2018) (dismissing complaint alleging price fixing based, *inter alia*, on failure to adequately plead materiality under *Escobar*); *Knudsen v. Sprint Commc'ns Co.*, No. C13-04476 CRB, 2016 WL 4548924, at *13 (N.D. Cal. Sept. 1, 2016) (dismissing complaint alleging violation of "best rate" regulation based, *inter alia*, on failure to adequately plead materiality under *Escobar*).

DEFENDANTS DMS' & JOERNS' MOTION TO DISMISS REPLY 1:17-CV-01757-NONE-SAB

standard—and [relator] does not meet it. His single, conclusory paragraph seems to allege that because there were regulations requiring the same price reductions given to BOA customers, those terms were *per se* material to the government's decision to contract with Defendants. The *Escobar* Court rejected a theory of materiality that any statutory, regulatory, or contractual violation is material just because it can result in the government's decision not to pay a claim. … [Relator's complaint] only point[s] to the regulations. This is not sufficient to meet the rigorous standard for pleading materiality.

*Knudsen*, 2016 WL 4548924, at *13 (internal citations omitted).

## E.     The Reverse False Claim Allegations Are Redundant

Relator effectively concedes the insufficiency of his reverse false claim allegations by failing even to attempt to address Defendants' argument that a reverse false claim allegation which is redundant of an affirmative false claim allegation is subject to dismissal on that basis alone.

## F.     The Complaint Fails to Allege a Conspiracy

Relator ignores the first and fundamental argument that is fatal to his conspiracy claim: that without a plausibly alleged false claim, there can be no plausibly alleged conspiracy. *See United States ex rel. Gough*, 2018 WL 6929332, at *7. Beyond that, Relator tries to avoid having to plead conspiracy elements with particularity, Opp. at 16, but he is wrong: "While the Ninth Circuit has not addressed this issue directly, other circuits agree that conspiracy claims under the FCA are subject to the heightened pleading requirements of Rule 9(b)." *United States ex rel. Marion v. Heald Coll., LLC*, No. 5:12-CV-02067-PSG, 2015 WL 4512843, at *4 (N.D. Cal. July 24, 2015) (citing *United States ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 45 (1st Cir. 2009); *United States ex rel. Marlar v. BWXT Y–12, L.L.C.*, 525 F.3d 439, 445 (6th Cir. 2008); *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005)).[12]

Relator points only to the provider agreements as evidencing the alleged conspiracy, but those agreements (beyond lacking particularity as to time and place) are not sufficient because they cannot plausibly demonstrate a "meeting of the minds in an unlawful arrangement" absent allegations that both sides have the intent to do something unlawful. *United States ex rel. Integra*

---

[12]   The case cited by Relator, which was a decision granting summary judgment in favor of the defendant, says nothing about the application of Rule 9(b) to pleading FCA conspiracy claims. *See United States ex rel. Durcholz v. FKW Inc.*, 189 F.3d 542, 546 (7th Cir. 1999) ("[N]o reasonable jury could infer a conspiracy from the meager evidence of an agreement produced by [relator].").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS DMS' & JOERNS' MOTION TO
DISMISS REPLY 1:17-CV-01757-NONE-SAB

*Med Analytics LLC v. Providence Health & Servs.*, No. CV 17-1694 PSG (SSX), 2019 WL 3282619, at *22 (C.D. Cal. July 16, 2019) (quoting *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999)). To the contrary, the allegations in the Complaint that SNFs "expressed concerns about the differential billing practices" and requested that they be "fix[ed]," ¶¶ 50-54, illustrates that there was no meeting of the minds and that the parties lacked the specific intent necessary for a conspiracy.

## G.     Prior Public Disclosures Bar the CFCA Claims

Relator's arguments against the application of the public disclosure bar are wholly without merit. First, the Complaint's allegations were publicly disclosed through the exact types of disclosures recognized by the CFCA as triggering the bar: "A criminal, civil, or ***administrative hearing*** … A report, ***hearing***, ***audit***, or investigation …." Cal. Gov't Code § 12652(d)(3) (emphases added). The information underlying the allegations was publicly disclosed not only in two DHCS final audit reports but also in two administrative hearings (with a corresponding administrative record) and one ALJ decision. Relator attempts to add additional requirements that an administrative hearing or audit also must be widely disseminated or readily accessible to any member of the public and must involve the defendants, but without providing any case law for these assertions. *See* Opp. at 20. Instead, Relator engineers these heightened requirements by pointing to language regarding the "official public record" based on the administrative procedure in Cal. Code Regs. tit. 22, § 51044(a). But neither the statutory language nor FCA and CFCA case law requires wide dissemination or that documents be part of some "official public record" so long as they fall under the enumerated fora in the public disclosure bar. *See, e.g.*, *Seal 1 v. Seal A*, 255 F.3d 1154, 1162 (9th Cir. 2001) (holding that disclosure to a single outsider constitutes a "public" disclosure).[13]

Second, Relator cannot credibly argue that the allegations in the audits and hearings – that

---

[13]  Even if Relator's imagined requirement were applicable, both the Legacy and Plum audits qualify as both progressed to hearings. Whether Relator relied on or saw the public disclosures is immaterial to a court's analysis – to the extent the public disclosures preceded the Complaint, the Complaint is "based upon" the public disclosures. *United States ex rel. Biddle v. Board of Trs.*, 161 F.3d 533, 540 (9th Cir. 1998). Moreover, the public disclosures were made by the State itself, which from a public policy perspective, is meant to be the beneficiary of Relator's disclosures.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

13

DEFENDANTS DMS' & JOERNS' MOTION TO
DISMISS REPLY 1:17-CV-01757-NONE-SAB

DMS entered into agreements with multiple SNFs that required referrals of all patient needs while charging SOC patients different rates but giving discounts to the facilities for the same products – differ in such a way (in fact, they are essentially identical) that the Government would not have been on notice of both the purported "low price rules" and "swapping" schemes alleged in the Complaint. Contrary to Relator's assertion, the public disclosure bar does not even require "an exact match of parties and theories" in order to meet the "substantially similar" standard. Opp. at 23. Rather, the audits/hearings must simply provide the Government with enough information on "precisely where to look for the improper payments," such that it can pursue an investigation if it so chooses. *United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, No. CV 08-1885-GHK(AGRx), 2016 WL 8919455, at *8 (C.D. Cal. Nov. 16, 2016). *See also State ex rel. Standard Elevator Co. v. W. Bay Builders, Inc.*, 130 Cal. Rptr. 3d 99, 110 (Cal. Ct. App. 2011) ("Although [relator] asserts violations of several separate provisions of the CFCA, all violations rest on the same material allegations.").

As a result, it is of no moment that Legacy, the subject of one of these DHCS audits, is not a defendant. Relator purports to allege a widespread scheme involving SNFs, "including the other Defendants in this action," ¶ 1, but not limited to them. Expanding the number and identity of alleged co-conspirators cannot defeat the public disclosure bar. *See Standard Elevator Co.*, 130 Cal. Rptr. 3d at 110. Indeed, where there is a narrow class of suspected wrongdoers (here, the SNFs with which DMS and Joerns contract) and the Government could readily identify similar conduct, allegations against one wrongdoer are sufficient to constitute a public disclosure with respect to the class. *See United States ex rel. Lee v. Corinthian Colleges*, No. CV071984PSGMANX, 2013 WL 12114015, at *6 (C.D. Cal. Mar. 15, 2013) (prior disclosures "need not specifically name the FCA defendant so long as the class of potential wrongdoers is sufficiently narrow that it can be tied to a relatively specific allegation of wrongdoing" (citing *United States ex rel. Harshman v. Alcan Electrical and Engineering, Inc.*, 197 F.3d 1014, 1018-19 (9th Cir. 1999)).[14] Nor is there a

---

[14] Relator's citation to *United States ex rel. Aflatooni v. Kitsap Physicians Services* in this respect is unavailing. In *Aflatooni*, the relator brought a *qui tam* action raising two different sets of allegations – submission of claims for services that were not medically necessary/not performed against one set of defendants and the alteration of billing records against another set of defendants – but only the first of these sets of allegations was publically disclosed. 163 F.3d 516, 519 & n.6

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

14

DEFENDANTS DMS' & JOERNS' MOTION TO
DISMISS REPLY 1:17-CV-01757-NONE-SAB

requirement under the FCA or CFCA that the public disclosures actually label the underlying facts as "fraud" or AKS violations in order to be substantially similar to the Complaint allegations. *See State v. Pac. Bell Tel. Co.*, 48 Cal. Rptr. 3d 427, 435 (Cal. Ct. App. 2006) ("[T]he fraud need not be explicitly alleged to constitute a public disclosure.").

Finally, the CFCA claims must be dismissed because Relator does not allege any "knowledge that is independent of, **and** materially adds to the publicly disclosed allegations or transactions." Cal. Gov't Code § 12652(d)(3)(C)(ii) (emphasis added). Relator's only argument for avoiding dismissal based on this second, necessary prong is that the Complaint allegations "materially add[] to the audits because [they] describe[] a widespread scheme spearheaded by Dynamic and Joerns, as opposed to isolated overcharges at one nursing home chain" and establish a "novel allegation – the kickback scheme." Opp. at 24. But as described above, the multiple DHCS audits and attendant hearings already publicly disclosed that the alleged conduct – which included the preferred provider agreements underlying the kickback allegations – extended to more than one SNF chain.[15] Well before the Complaint was filed, the State was "already in a position to vindicate society's interests," and Relator's "*qui tam* action [] serve[s] no purpose." *Pac. Bell Tel. Co.*, 48 Cal. Rptr. 3d at 431. This particularly is the case when the very audits that constitute the initial public disclosures were initiated by the State itself, and the administrative hearings and ALJ decision establishing further public disclosures resulted from the State litigating appeals of those very same audits.

## CONCLUSION

For all the foregoing reasons and those in their Brief in support of their Motion to Dismiss, DMS and Joerns request that the Court grant their Motion to Dismiss, in its entirety, with prejudice.

---

(9th Cir. 1998). Unlike here – where the facts underlying the "low price rules" and "swapping" allegations are interrelated and were together disclosed in the Legacy and Plum audits/hearings – in *Aflatooni*, the two sets of allegations were carefully broken down and distinct. *Id.* at 522-23.

[15] Nor can Relator's references to *a single* email sent *after* the Legacy ALJ decision (that does not say a thing about pricing, *see* Br. at 8 n.4) or to concerns from SNFs lodged *after* both of the publicly disclosed audits/hearings meet this prong. "Allegations do not materially add to public disclosures when they provide only background information and details relating to the alleged fraud—they must add value to what the government already knew." *United States ex rel. Hastings v. Wells Fargo Bank, NA, Inc.*, 656 F. App'x 328, 331-32 (9th Cir. 2016). Not only do the allegations about concerns expressed by SNFs add nothing to the alleged schemes, let alone anything material, they are evidence that in fact the allegations already were in the public realm.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

15

DEFENDANTS DMS' & JOERNS' MOTION TO
DISMISS REPLY 1:17-CV-01757-NONE-SAB

Dated:    April 8, 2020

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP


By  _/s/ Scott A. Memmott_
    Scott A. Memmott

*Attorneys for Defendants*
*Dynamic Medical Systems, LLC and*
*Joerns Healthcare, LLC*

Morgan, Lewis &
Bockius LLP
Attorneys at Law
Los Angeles

16

DEFENDANTS DMS' & JOERNS' MOTION TO
DISMISS REPLY 1:17-CV-01757-NONE-SAB