1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**XAVIER BECERRA**
Attorney General of California
VINCENT DICARLO
Supervising Deputy Attorney General
JENNIFER S. GREGORY, State Bar No. 228593
Deputy Attorney General
 2329 Gateway Oaks Drive, Suite 200
 Sacramento, CA 95833
 Telephone: (916) 621-1823
 Fax: (916) 274-2929
 E-mail: Jennifer.Gregory@doj.ca.gov

*Attorneys for Plaintiff State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **THE UNITED STATES OF AMERICA and THE STATE OF CALIFORNIA, ex rel. THOMAS TURNER,**<br><br>Plaintiffs,<br><br>**v.**<br><br>**DYNAMIC MEDICAL SYSTEMS LLC; JOERNS HEALTHCARE LLC; COVENANT CARE CALIFORNIA LLC; MARINER HEALTH CARE MANAGEMENT COMPANY; PLUM HEALTHCARE GROUP LLC; and CAMBRIDGE HEALTHCARE SERVICES,**<br><br>Defendants. | 1:17 CV 01757 LJO SAB<br><br>**THE STATE OF CALIFORNIA'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE NOTICE OPPOSING DISMISSAL ON THE BASIS OF THE PUBLIC DISCLOSURE BAR**<br><br>Date:     August 4, 2020<br>Time:     10:30 a.m.<br>Courtroom: 4 (7th Floor)<br>Judge:   None/Unassigned |

**INTRODUCTION**

Federal courts are clear on their interpretation of the "unless opposed" provision of the federal False Claims Act, a provision that the California False Claims Act copies verbatim. Every single court to consider the issue has found it to mean what it plainly says: the Government can override a defendant's attempt to dismiss a case on public disclosure grounds. There is not a single court, state or federal, that has adopted Defendants' position here. Accordingly, the State of California ("State") respectfully requests that the Court deny Defendants' Motion to Strike.

**STATUTORY BACKGROUND**

Federal and state False Claims Acts are the primary vehicle used by the Government to recover money lost due to fraud. Enacted in 1863, the federal False Claims Act (31 U.S.C. §§ 3729-3733) ("FCA") "was originally aimed principally at stopping the massive frauds perpetrated" against the Government. *United States v. Bornstein*, 423 U.S. 303, 309 (1976). "The Act contained a *qui tam* provision allowing private persons to sue as relators representing the Government's interests, and it rewarded relators who prevailed in their suits with a bounty" from the monies recovered for the Government. *See Minnesota Ass'n of Nurse Anesthetists v. Allina Healthcare System Corp.,* 276 F.3d 1032, 1041 (8th Cir. 2002).

As originally passed, the FCA included no limitations on who could act as a *qui tam* plaintiff. *See United States ex rel. Marcus v. Hess*, 317 U.S. 537, 545-48 (1943) (explaining that the original FCA could allow an individual to base an FCA suit on a public facing Government indictment). In fact, the 1863 statute did not require that the relator even have "first-hand knowledge" of the fraudulent conduct, and permitted the relator to bring suit based on publicly available information. *People ex rel. Allstate Ins. Co. v. Weitzman,* 107 Cal. App. 4th 534, 553 (Cal. Ct. App. 2003) (citing Act of March 2, 1863, ch. 67, 12 Stat. 696 and law review articles discussing *qui tam* actions involving the states and federal healthcare programs).

In 1943, Congress addressed the perceived problem of "parasitical" relators with an amendment providing that "[t]he court shall have no jurisdiction to proceed … whenever it shall be made to appear that such suit was based upon evidence or information in the possession of the United States… at the time such suit was brought." 57 Stat. 608, codified at 31 U.S.C. 232(C);

1  *see United States v. Pittman*, 151 F.2d 851, 854 (5th Cir. 1945), cert. denied, 328 U.S. 843

2  (1946); *United States v. Rippetoe*, 178 F.2d 735, 736 (4th Cir. 1949). Problematically, though, the

3  "jurisdictional" language in the 1943 amendment meant that relator lawsuits based on information

4  known to the Government were subject to automatic dismissal, even if the Government was not

5  itself acting on the information in its possession, and even if the information had come originally

6  from the relator. This effectively gutted the FCA and dried up *qui tam* litigation. *See, e.g., Pettis*

7  *ex rel. United States v. Morrison-Knudsen Co*., 577 F.2d 668, 672-73 (9th Cir. 1978); H. Rep. No.

8  97, 111th Cong., 1st Sess. *3 (2009) (noting that, after the 1943 amendment, fewer than 10 *qui*

9  *tam* cases were filed per year, nationwide).

10  　　To address this, in 1986 Congress revived the FCA with several amendments, including a

11  rewrite of the 1943 jurisdictional bar. The 1986 amendment recodified the public disclosure bar

12  into section 3730(e), which read in relevant part:

13  　　(4)(A) No court shall have jurisdiction over an action under this section based
      upon the public disclosure of allegations or transactions in a criminal, civil, or

14  　　administrative hearing, in a congressional, administrative, or Government
      Accounting Office report, hearing, audit, or investigation, or from the news media,

15  　　unless … the person bringing the action is an original source of the information.

16

17  　　Around the same time, and in order to supplement Governmental efforts to identify and

18  prosecute fraudulent claims made against state and local Government entities, in 1987 California

19  became the first state to adopt its own false claims statute involving a *qui tam* component, the

20  California False Claims Act ("CFCA"), Cal. Gov't Code section 12650, *et seq.*, which was

21  patterned closely after the federal statute. The CFCA mirrored the public disclosure bar in the

22  1986 amendment to the Federal FCA. *See* Sen. Rules Com., Off. of Sen. Floor Analyses, 3d

23  reading Analysis of Assem. Bill No. 1441 (1987–1988 Reg. Sess.) as amended Sept. 8, 1987, p.

24  5; *Rothschild v. Tyco Int'l, Inc.,* 83 Cal. App. 4th 488, 494 (Cal. Ct. App. 2000); *City of Pomona*

25  *v. Superior Court,* 89 Cal. App. 4th 793, 800–805 (Cal. Ct. App. 2001). Like the federal statute,

26  the CFCA was designed to limit the availability of *qui tam* actions so as to protect against

27  "opportunistic" or "parasitic" actions. *See Rothschild v. Tyco Internat'l, Inc., supra,* 83 Cal. App.

28  4th at 499. While the CFCA also provides a share of the recovery to the *qui tam* plaintiff (Cal.

**THE STATE OF CALIFORNIA'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE NOTICE**
**OPPOSING DISMISSAL ON THE BASIS OF THE PUBLIC DISCLOSURE BAR**

1  Gov't Code § 12652(g)(2)-(3)), that share is merely a means to an end. The *primary* purpose of

2  the CFCA's *qui tam* provisions is to encourage private whistleblowers to come forward to report

3  fraud to the Government and, where the Government declines to assume control of the litigation,

4  to pursue recovery on the Government's behalf. *See Laraway v. Sutro & Co., Inc.,* 96 Cal. App.

5  4th 266, 274 (Cal. Ct. App. 2002); *State of California ex rel. McCann ("McCann") v. Bank of*

6  *America, N.A.,* 191 Cal. App. 4th 897, 907 (Cal. Ct. App. 2011); *LeVine v. Weis,* 68 Cal. App. 4th

7  758, 765 (Cal. Ct. App. 1998).

8         Despite the improvement achieved with the 1986 amendment, Congress ultimately

9  determined that too many valuable *qui tam* cases were still being dismissed under the public

10  disclosure bar, and in the late 2000s began attempts to further modify the bar. *See* S. Rep. No.

11  507, 110th Cong., 2d Sess. *22 & n. 80 (2008) (referring to *Rockwell Int'l Corp. v. United States*,

12  549 U.S. 457 (2007), as "[u]sing the public disclosure bar to deny a reward to a *qui tam* relator

13  despite the objections of the United States."). In 2009, the Senate Committee on the Judiciary

14  observed that "in virtually all FCA cases" that the Government declined to pursue, defendants

15  sought to dismiss on "public disclosure grounds." *See* H.Rep. No. 97, 111th Cong., 1st Sess. *24

16  (2009). "The result of these interpretations has been significant litigation, delays in settling FCA

17  cases with clear violations of law, and, regrettably, the dismissal and presumptive barring of

18  meritorious claims brought by *qui tam* relators. These decisions have created a chilling effect on

19  relators coming forward with claims…" S. Rep. No. 507, 110th Cong., 2d Sess. *22 & n. 80

20  (2008).

21         Starting in 2007, Congress held multiple hearings regarding recommended changes to the

22  public disclosure bar, including: H.R. 4854, the "False Claims Act Correction Act of 2007"; S.

23  2041, the "False Claims Corrections Act of 2007"; S. 2041, the "False Claims Corrections Act of

24  2008" (*see* S. Rep. No. 507, 110th Cong., 2d Sess. *15 (2008)); and H.R. 1788, the "False Claims

25  Correction Act of 2009." These bills proposed to prohibit defendants entirely from filing any

26  motions based on the public disclosure bar, allowing only the Government to file such motions.

27  *See* H. Rep. No. 97, 111th Cong., 1st Sess. *14 (2009), section by section analysis of section 3(d)

28  of H.R. 1788 (2009); S. Rep. No. 507, 110th Cong., 2d Sess. *22, section by section analysis of

section 4(b) of S. 2041. The committee analyses of these bills explain that the Government is the "best source for determining whether a relator has provided meaningful, new information to the Government." S. Rep. No. 507, *supra* at *24. "Only the Government" has a real "interest in ensuring that its resources are not squandered on litigation that does no more than duplicate a fraud matter already under investigation." *Id.* These bills also proposed to eliminate the jurisdictional nature of the public disclosure bar. *Id.* ("The provision converts the public disclosure bar from a jurisdictional bar that may be invoked by either the defendant or the Government, to a basis for a motion to dismiss that may only be filed by the Government.")

These stand-alone bills were not themselves enacted, but in 2010 Congress included many of the same proposed changes in the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, Title X, section 10104(j)2), 124 Stat. 901 (Mar. 23, 2010). Specifically, the 2010 amendments removed the phrase "No court shall have *jurisdiction* over an action under this section" (emphasis added), and substituted the following:

> (4)(A) The court shall dismiss an action or claim under this section, *unless opposed by the Government*, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—
>
> (i)     in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
>
> (ii)    (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
>
> (iii)   (iii) from the news media,
>
> unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

U.S.C. § 3730(e)(4)(A) (emphasis added). These changes were passed effective March 23, 2010. *See* 155 Cong. Rec. S13490-02 (Dec. 19, 2009); 156 Cong. Rec. H1891-01 (Mar. 21, 2010).

Having enacted the CFCA to mirror federal law, and given certain federal funding incentives for states to match federal law, in 2013 California amended its false claims statute in

**THE STATE OF CALIFORNIA'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE NOTICE OPPOSING DISMISSAL ON THE BASIS OF THE PUBLIC DISCLOSURE BAR**

parallel fashion[1], removing the phrase "no court shall have jurisdiction," and substituting the following:

> (3)(A) The court shall dismiss an action or claim under this section, *unless opposed by the Attorney General or prosecuting authority of a political subdivision*, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed in any of the following:
>
> (i)   A criminal, civil, or administrative hearing in which the state or prosecuting authority of a political subdivision or their agents are a party.
>
> (ii)  A report, hearing, audit, or investigation of the Legislature, the state, or governing body of a political subdivision.
>
> (iii) The news media.
>
> (B) Subparagraph (A) shall not apply if the action is brought by the Attorney General or prosecuting authority of a political subdivision, or the person bringing the action is an original source of the information.

Cal. Gov't Code § 12652(d)(3) (emphasis added).

## ARGUMENT

### A.   The Plain Language of the CFCA Permits the State to Block Dismissal on Public Disclosure Grounds.

The plain language of CFCA's public disclosure bar provision makes it clear that the lack of an opposition by the Attorney General is one of the necessary elements of the bar: "The court shall dismiss an action or claim under this section, *unless opposed by the Attorney General or prosecuting authority of a political subdivision*…." It is axiomatic that, where the plain language of a statute is clear, no further inquiry is required to determine its intent. *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997) (court's inquiry must cease if statutory language is unambiguous and statutory scheme is coherent and consistent). Therefore, where, as here, the Attorney General has objected, the public disclosure bar cannot apply.

---

[1] The CFCA amendment's language simply reflected the changes necessary to mirror the structure and substance of federal law in order to maintain funding pursuant to the Deficit Reduction Act. *See* S. Rules Comm., Assemb. B. No. 1196, 2009-10 Sess., at 2, 8 (Ca. 2009).

**THE STATE OF CALIFORNIA'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE NOTICE OPPOSING DISMISSAL ON THE BASIS OF THE PUBLIC DISCLOSURE BAR**

1

2

**B.     The Legislative History Likewise Confirms the CFCA Permits the State to Block Dismissal on Public Disclosure Grounds.**

3

4

Even if further inquiry were in order, the legislative history described above confirms the

5

proper understanding of the statute: absence of opposition from the Attorney General is a

6

condition of dismissal on public disclosure grounds. For many years, Congress expressed

7

concerns that unduly broad interpretations of the public disclosure bar were causing meritorious

8

cases to be dismissed, and were discouraging *qui tam* plaintiffs from bringing new cases, even

9

when they served the purpose of the False Claims Act to recover money wrongfully obtained

10

from the Government. Because only the Government has a real "interest in ensuring that its

11

resources are not squandered on litigation that does no more than duplicate a fraud matter already

12

under investigation," Congress understandably made the absence of an opposition by the

13

Government a necessary element of dismissal on grounds of public disclosure. *See* H. Rep. No.

14

97, 111th Cong., 1st Sess. *14 (2009), section by section analysis of section 3(d) of H.R. 1788

15

(2009); S. Rep. No. 507, 110th Cong., 2d Sess. *22, section by section analysis of section 4(b) of

S. 2041.

16

**C.     Every Court to Consider the Public Disclosure Bar Provision[2] Has Found That it Enables the Government to Block Dismissal on Public Disclosure Grounds.**

17

18

In the decade following the 2010 federal amendment, the United States Department of

19

Justice ("USDOJ") has invoked its authority to oppose application of the public disclosure bar

20

provision of the federal FCA on many occasions. In every single case, the courts have treated

21

USDOJ's opposition as a block, indeed have frequently described as a "veto." *See Hamilton v.*

22

*Yavapai Cmty. Coll. Dist.*, No. CV-12-08193-PCT-GMS, 2018 WL 1784692, at *2 n.2 (D. Ariz.

23

Apr. 13, 2018) ("The public disclosure bar, does not apply here, however, because the

24

Government objects to its application."); *United States ex rel. May v. Purdue Pharma L.P.*, 737

25

F.3d 908, 917–918 (4th Cir. 2013) ("2010 amendments deprive [a defendant] of the previously

26

27

28

[2] Because the CFCA was patterned after, and so closely resembles its federal counterpart, federal decisions are persuasive authority in interpreting the California statute. *Rothschild v. Tyco Int'l, Inc., supra,* 83 Cal.App.4th at 494; *Laraway v. Sutro & Co., Inc.*, *supra*, 96 Cal.App.4th at 274–75.

**THE STATE OF CALIFORNIA'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE NOTICE OPPOSING DISMISSAL ON THE BASIS OF THE PUBLIC DISCLOSURE BAR**

1    available jurisdictional defense and replace it with a non-jurisdictional defense that is triggered by

2    a substantially narrower range of public disclosures and is, even then, subject to veto by the

3    government"); *United States v. Select Medical Corp.*, 211 F. Supp. 3d 1132 (S.D. Ind. 2016)

4    ("*Select Medical I*") ("Having determined that the government's right to veto dismissal under 31

5    U.S.C. § 3730(e)(4)(A) passes constitutional muster, the government's exercise of that right

6    means the court's analysis under the public-disclosure bar ends here."); *United States v. Select*

7    *Med. Corp*., No. 3:12-cv-00051-RLY-DML, 2017 WL 468276, at *1–2, *4 (S.D. Ind. Feb. 3,

8    2017) ("*Select Medical II*") (collecting cases) ("[O]nce the government objects, the court does not

9    even address the issue."); *Desjardins v. Tree of Life Behavioral Servs.*, 2016 U.S. Dist. LEXIS

10    193444, at *2 (E.D. Pa. Sept. 19, 2016) ("Because the amended public disclosure bar applies to

11    the claims that Defendants seek to bar, and the Government "opposes dismissal," [the court] will

12    deny Defendants' motion."), citing *United States ex rel. Moore & Co., P.A. v. Majestic Blue*

13    *Fisheries, LLC*, 812 F.3d 294, 297 (3rd Cir. 2016); *United States ex rel. Griffith v. Conn.*, 117 F.

14    Supp. 3d 961, 988 n.1 (E.D. Ky. 2015) ("For post-March 23, 2010, claims, the United States

15    exercised its authority under the amended FCA to prevent dismissal of relators' claims under the

16    public-disclosure bar."); *United States ex rel. Berntsen v. Prime Healthcare Servs., Inc.*, No. 11-

17    CV-8214 PJW, 2014 WL 12480026, at *2 (C.D. Cal. Nov. 20, 2014) (declining to analyze the

18    original source exception as moot, reasoning that "where the Government indicates that it

19    supports the relator's action, it would be illogical for the Court to conclude that the relator's

20    action was parasitic," "and the Government's position comports more closely with both the

21    existing authority on this issue and the likely statutory intent"); *United States ex rel. Baker v.*

22    *Community Health Sys., Inc.*, No. 05-279-WJ/ACT, 2014 WL 10212574, at *25 (D.N.M. May 16,

23    2014) ("Under this post-amendment provision, the Government's opposition precludes

24    application of the public disclosure bar as to claims for payment made after March 23, 2010.");

25    *United States ex rel. Szymoniak v. Am. Home Mortg. Serv., Inc.*, No. 0:10–cv–01465–JFA, 2014

26    WL 1910845, at *2 (D.S.C. May 12, 2014) ("Because the United States has opposed dismissal on

27    public disclosure grounds for claims submitted after March 22, 2010, the only issue currently

28    before the court with regard to the public disclosure bar is if allegedly false claims submitted to

**THE STATE OF CALIFORNIA'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE NOTICE OPPOSING DISMISSAL ON THE BASIS OF THE PUBLIC DISCLOSURE BAR**

the United States prior to [the amendment of the bar], should be dismissed"); *United States ex rel. Scutellaro v. Capitol Supply, Inc.*, No. 10-1094 (BAH), 2017 WL 1422364, at *12 (D.D.C. April 19, 2017) ("[T]he [2010] amendments afforded the government veto power over dismissal of an FCA suit on public disclosure bar grounds."), citing *Select Medical II, supra*, 2017 WL 468276, *4.

In addition, several federal courts have addressed the "unless opposed" amendment in the context of addressing the changes in the law as described above, that is, determining whether or not the public disclosure bar is jurisdictional, or determining whether the amendments were retroactive. In that context too, the federal courts – including Courts of Appeal – have uniformly treated the amendment as giving the Government "veto" power to "block" application of the public disclosure bar. *See United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, *supra*, 812 F.3d 294 at (3rd Cir. 2016) ("Finally, if a court holds that a relator's claim is publicly disclosed, the amended bar nonetheless permits the government to oppose the court's dismissal of the action, an option that effectively dispels any notion that the bar is still jurisdictional."); *United States ex rel. May v. Purdue Pharma L.P.*, *supra*, 737 F.3d at 917 ("Indeed, it is difficult to understand how the amended public-disclosure bar could be jurisdictional when the Government has the ability to veto a dismissal under that section."); *id.* at 918 ("The 2010 amendments deprive Purdue of the previously available jurisdictional defense and replace it with a non-jurisdictional defense that is triggered by a substantially narrower range of public disclosures and is, even then, subject to veto by the Government."); *United States ex rel. Scutellaro v. Capitol Supply, Inc.*, *supra*, 2017 WL 1422364, at *12 ("[T]he [2010] amendments afforded the Government veto power over dismissal of an FCA suit on public disclosure bar grounds."); *United States ex rel. Hagerty v. Cyberonics, Inc.*, 95 F.Supp.3d 240, 256 (D. Mass. 2015) ("The new public-disclosure bar appears to be non-jurisdictional because it confers on the Government the power to prevent the dismissal of an FCA claim that would otherwise fall within the public-disclosure bar."); *United States ex rel. Winkelman v. CVS Caremark Corp.*, 118 F.Supp.3d 412, 421 (D. Mass. 2015); *United States v. Smith & Nephew, Inc.*, 749 F. Supp. 2d 773, 781 (W.D. Tenn. 2010) ("Moreover, the amendment adds that the bar does not apply if the

1   Government opposes dismissal of the action.").

2       Defendants do not cite a single case that reaches a contrary conclusion because none exist,

3   and argue little more than that the numerous and unanimous reported cases were all "wrongly

4   decided."

5       **D.    Defendants' Interpretation of the Plain Language is Strained and Incorrect.**

6       Defendants argue that the filing of an opposition by the Government "modifies the 'shall'

7   of the public disclosure bar into a 'may' dismiss." Defs.' Br. at 10:8-9. Defendants cite no

8   authority or legislative history in support of this novel interpretation. Such an interpretation is

9   contrary to the plain meaning of the statute, the legislative intent to tailor the public disclosure bar

10  narrowly to protect against opportunistic or parasitic suits, and every reported decision on the

11  question. As one court pointedly observed in the federal context, Defendants' argument "would

12  require the court to read into [the "unless opposed" provision] an additional provision instructing

13  the court, in the event of a Government opposition, to consider all arguments and decide in its

14  discretion whether to dismiss the action." *Select Medical I, supra*, 211 F. Supp. 3d at 1150. No

15  such provision is there, and the court should not create one.

16      Defendants' reliance on *United Farm Workers Nat'l Union v. Int'l Bhd. of Teamsters*, 87

17  Cal. App. 3d 225, 228 (Ct. App. 1978), is also misplaced. Defendants appear to argue that the

18  case reflects "what the phrasing 'must' dismiss 'unless opposed' means in the context of state

19  procedural statutes." Defs.' Br. at 10:13-14. However, *United Farm Workers* simply stands for

20  the proposition that the statute at issue (Cal. Code Civ. Pro § 583(a), repealed in 1984) placed no

21  restrictions on the exercise of the trial court's discretion to dismiss a case for want of prosecution

22  unless opposed by an adequate showing of diligence or excuse for delay. 87 Cal. App. 3d at 237-

23  238. There, unlike here, the statute being applied did *not* include the language "unless opposed."

24  Rather, the court just happened to use "unless opposed" language in the course of discussing an

25  adequate showing of "good cause" under the statute at issue there. *Id*. at 234-238. Likewise, the

26  other authorities relied upon by Defendants, *Woolfson v. Pers. Travel Serv., Inc.*, 479 P.2d 646

27  (Cal. 1971) and *Oskooi v. Fountain Valley Reg'l Hosp.*, 42 Cal. App. 4th 233, also did not

28  consider the kind of dispositive language that is found in the CFCA, which established and

governs the public disclosure bar.

**E.**  **California's Ability to Block Dismissal Does Not Implicate Separation of Powers.**

Defendants' final argument is that California's opposition would violate California's Separation of Power clause. Similar arguments have already been rejected in the context of the federal FCA. *See, e.g., Select Medical I, supra*, 211 F. Supp. 3d at 1151; *see also Select Medical II, supra*, 2017 WL 468276, at *2 ("The court further found that the government's opposition did not violate the separation of powers between the executive and judicial branches of government, did not delegate legislative power to the executive branch, and did not offend the Fifth Amendment's Due Process Clause.").

The reason the amended statute does not violate the separation of powers is that it does not give the Government the right to override an involuntary dismissal that is otherwise authorized by law; it simply provides the rule to be applied by the court in determining whether a dismissal is authorized. Here, as has been explained above, the rule of decision is that public disclosure is not grounds for dismissal if the Attorney General objects. A statute making mandatory dismissal contingent on whether the executive consents does not offend the separation of powers:

> "This built-in condition means that the court has no authority to dismiss a *qui tam* action on the basis of prior public disclosure, and therefore no power to share, when the government asserts its opposition to dismissal. Accordingly, the court finds no separation of powers problem here."

*Select Medical I*, *supra*, 211 F. Supp. 3d at 1151.

Defendants' constitutional attack relies on its own construction of the amended bar. They argue that because "unless opposed by the Government" modifies the preceding clause, "[t]he court shall dismiss," it follows that a Government opposition renders dismissal a matter of the court's discretion rather than an involuntary command (i.e., the court no longer must dismiss). Defs.' Br. 10:3-9. Under this construction, Defendants contend, the "unless opposed" language merely grants the Government an opportunity to file a substantive response in opposition to dismissal. The court would then weigh the arguments for and against dismissal and decide for itself whether enforcement of the bar is appropriate, thus avoiding the separation-of-powers issues

**THE STATE OF CALIFORNIA'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE NOTICE OPPOSING DISMISSAL ON THE BASIS OF THE PUBLIC DISCLOSURE BAR**

1   allegedly raised by the State's "block" or "veto."

2   However, the interpretation Defendants advance would "require the court to read into [the

3   public disclosure bar provision] an additional provision instructing the court, in the event of a

4   Government opposition, to consider all arguments and decide in its discretion whether to dismiss

5   the action. With respect to public disclosure, Congress expressed only one directive: courts must

6   dismiss *qui tam* claims based on public information, *unless* the Government objects or the relator

7   qualifies as an original source. (Citation omitted.) Anything else simply finds no support in the

8   statute." *Select Medical I*, 211 F.Supp.3d at 1150 (emphasis added). As the Court in *Select*

9   *Medical I*, *supra*, reasoned:

10      "Indeed, to require the Government's consent to dismissal under Rule 12(b)(6), for
        example, (citation), or pursuant to the court's inherent authority to remedy abuses
11      to the judicial process, (citation), would offend the separation of powers.
        [Defendant] extends this reasoning, without support, to conclude that Congress
12      cannot make mandatory dismissal under the public-disclosure bar contingent on
        whether the executive consents. But this view incorrectly presumes that the
13      Government veto overrides an involuntary dismissal. As explained above, a court
        must dismiss an action based on public information if the Government does not
14      object and the relator does not constitute an original source. (Citation.) This *built-
        in condition means that the court has no authority to dismiss a qui tam action on*
15      *the basis of prior public disclosure, and therefore no power to share, when the*
        *Government asserts its opposition to dismissal.* Accordingly, *the court finds no*
16      *separation of powers problem here*."

17

18   *Id*. at 1151 (emphasis added).

19   With no direct authority to support them, Defendants argue that the State's position here is

20   akin "to allowing the Government to usurp the court's consideration of valid grounds for

21   dismissal of a *qui tam* complaint, such as under Rules 9(b) and 12(b)(6)." Defs.' Br. at 13:6-7.

22   Unlike Rules 9(b) and 12(b)(6), however, which are designed to protect defendants and the

23   Courts from baseless suits, the public disclosure bar is designed to protect *the Government*. *See*

24   *United States v. Rippetoe*, *supra*, 178 F.2d at 736. It makes no sense for Defendants to ask the

25   Court to assess a whether a relator's *qui tam* lawsuit is parasitic to the State if the State has no

26   objection to the action.

27   "[B]ecause FCA actions are brought on behalf of the United States to recover money that

28   the government has paid as a result of fraudulent conduct, *United States ex rel. Yannacopoulos v.*

**THE STATE OF CALIFORNIA'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE NOTICE
OPPOSING DISMISSAL ON THE BASIS OF THE PUBLIC DISCLOSURE BAR**

1    *Gen. Dynamics*, 652 F.3d 818, 822 (7th Cir. 2011), and because Congress enacted the public

2    disclosure bar to "deter parasitic *qui tam* actions," *United States ex rel. Gear v. Emergency Med.*

3    *Ass'n of Ill., Inc.*, 436 F.3d 726, 728 (7th Cir. 2006), the government has the right to *block* a

4    defendant's attempt to have a meritorious case dismissed on public disclosure grounds. *United*

5    *States ex rel. Berntsen v. Prime Healthcare Servs., Inc.*, No. 11-CV-8214 PJW, 2014 WL

6    12480026, at *2 (C.D. Cal. Nov. 20, 2014) ("The authority that does exist ... seems to support the

7    Government's and Berntsen's position that dismissal on this [public disclosure] ground is

8    precluded in the face of the Government's opposition to the motion.")." *Select Medical II*, *supra*,

9    2017 WL 468276, at *4 (emphasis in original). "This right to block is not the same as a

10   government "veto" of a *court's* decision. Indeed, once the government objects, the court does not

11   even address the issue. Therefore, amended Section 3730(e)(4)(A) *does not offend the separation*

12   *of powers*." *Id.* (emphasis added).

13        Further, as stated by Congress, *"[o]nly the Government"* has a real *"interest in ensuring*

14   *that its resources are not squandered on litigation* that does no more than duplicate a fraud matter

15   already under investigation." S. Rep. No. 507, 110th Cong., 2d Sess. *20 (2008) (emphasis

16   added). It is the Attorney General, not the Defendants, who controls what *qui tam* cases brought

17   on behalf of the State are allowed to proceed on its behalf, and it is the Attorney General who is

18   in the exclusive position of determining what cases may be parasitic vis-à-vis the State.

19   Accordingly, the Government's opposition to a public disclosure bar dismissal does not "defeat

20   the courts' inherent power to resolve specific controversies between the parties." *Le Francois v.*

21   *Goel*, 112 P.3d 636, 642 (Cal. 2005), as modified (June 10, 2005). Rather, the Court's threshold

22   inquiry regarding application of the public disclosure bar simply ends upon Government

23   opposition.

24   / / /

25

26

27

28

**THE STATE OF CALIFORNIA'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE NOTICE
OPPOSING DISMISSAL ON THE BASIS OF THE PUBLIC DISCLOSURE BAR**

1

**CONCLUSION**[3]

2        Based on the foregoing, Defendants' Motion to Strike should be denied. Further,

3 Defendants' motions to dismiss should be denied to the extent they are based on the public

4 disclosure bar. The State takes no position on any of the other issues raised in Defendants'

5 motions to dismiss.

6 Dated: July 21, 2020                  Respectfully submitted,

7                                XAVIER BECERRA
                               Attorney General of California
8

9

                            /s/ Jennifer S. Gregory

10                              JENNIFER S. GREGORY
                             Deputy Attorney General
11                              *Attorneys for Plaintiff State of California*

12

13

14

15

16

17

18

19

20

21

22

23

24

---

25 [3] Throughout their brief, Defendants suggest, without citing any authority, that California's Notice of Opposition was untimely. The State may in fact raise its opposition to application of the public disclosure bar at any time up to and including the hearing on the motion to dismiss. *See United States ex rel. Baker v. Cmty. Health Sys., Inc.*, *supra*, 2014 WL 10212574, at *25. In any case, Defendants have had ample opportunity to raise their concerns by the present motion to strike, and suffered no prejudice on account of timing.

26

27

28

**THE STATE OF CALIFORNIA'S OPPOSITION TO DEFENDANTS' MOTION TO STRIKE NOTICE
OPPOSING DISMISSAL ON THE BASIS OF THE PUBLIC DISCLOSURE BAR**