**MORGAN, LEWIS & BOCKIUS LLP**
Scott A. Memmott, *pro hac vice*
scott.memmott@morganlewis.com
Howard J. Young, *pro hac vice*
howard.young@morganlewis.com
Kayla Stachniak Kaplan, *pro hac vice*
kayla.kaplan@morganlewis.com
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
Tel:    +1.202.739.3000
Fax:    +1.202.739.3001

Brian M. Jazaeri, State Bar No. 221144
brian.jazaeri@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA  90071-3132
Tel:    +1.213.612.2500
Fax:    +1.213.612.2501

*Attorneys for Defendants Dynamic Medical Systems, LLC and Joerns Healthcare, LLC*

**BARNES & THORNBURG, LLP**
Eric J. Beste, State Bar No. 226089
Eric.Beste@btlaw.com
655 West Broadway, Suite 1300
San Diego, CA 92101
Tel:    +1.619.321.5015
Fax:    +1.310.284.3894

*Attorneys for Defendant Plum Healthcare Group LLC*

**HOOPER, LUNDY & BOOKMAN, P.C.**
Scott J. Kiepen, State Bar No. 175504
skiepen@health-law.com
Katrina A. Pagonis, State Bar No. 262890
kpagonis@health-law.com
Stephanie A. Gross, State Bar No. 307728
sgross@health-law.com
101 Montgomery Street, 11th Floor
San Francisco, CA 94104
Tel:    +1.415.875.8500
Fax:    +1.415.986.2157

Andrew H. Struve, State Bar No. 200803
astruve@health-law.com
Joseph R. Lamagna, State Bar No. 246850
jlamagna@health-law.com
101 W. Broadway, Suite 1200
San Diego, CA 92101-3890
Tel:    +1.619.744.7300

1

Fax: +1.619.230.0987

Bridget A. Gordon, State Bar No. CA 287098
bgordon@health-law.com
1875 Century Park East, Suite 1600
Los Angeles, CA 90067
Tel: +1.310.551.8111
Fax: +1.310.551.8181

*Attorneys for Defendants Covenant Care California,
LLC and Mariner Health Care Management Company*

**NELSON HARDIMAN LLP**
Mark Hardiman, State Bare No. 136602
mhardiman@nelsonhardiman.com
Katherine A. Bowles, State Bar No. 287426
kbowles@nelsonhardiman.com
1100 Glendon Avenue, 14th Floor
Los Angeles, CA 90024
Tel: +1.310.203.2800
Fax: +1.310.203.2727

*Attorneys for Defendant
Cambridge Healthcare Services*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES EX REL. TURNER**, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**DYNAMIC MEDICAL SYSTEMS, LLC**, *et al.*,<br><br>Defendants. | Case No. 1:17-CV-01757-NONE-SAB<br><br>**BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR CONTINUANCE OF SCHEDULING CONFERENCE**<br><br>Date: December 1, 2020<br>Time: 10:30 AM<br>Ctrm.: 9<br>Magistrate Judge: Stanley A. Boone |

Defendants Dynamic Medical Systems, LLC, Joerns Healthcare, LLC, Plum Healthcare Group LLC, Covenant Care California, LLC, Mariner Health Care Management Company, and Cambridge Healthcare Services (collectively, "Defendants"), by and through their attorneys, respectfully submit this brief in support of their Motion for Continuance of Scheduling Conference, pursuant to Federal Rule of Civil Procedure 26(f)(1), which also will have the effect of extending the Court-ordered stay of discovery (Dkt. 89), until after the Court issues an order resolving Defendants' Motions to Dismiss the First Amended Complaint of Relator Thomas Turner ("Relator").

## BACKGROUND

Defendants are a mixed group of durable medical equipment suppliers, entities providing support to skilled nursing facilities pursuant to contract, and operators of skilled nursing facilities whose patients utilize therapeutic support surfaces for wound care and prevention. Relator's First Amended Complaint (the "Complaint," Dkt. 7) alleges that Defendants are liable under the federal False Claims Act ("FCA") and the California False Claims Act ("CFCA") for perpetrating a "swapping" scheme in violation of the Anti-Kickback Statute with respect to the provision of support surfaces to different categories of patients and for engaging in "differential billing practices" for these patient categories in violation of discriminatory billing provisions of Medi-Cal, the California State Medicaid program.

Each Defendant filed a Motion to Dismiss the Complaint in its entirety under Federal Rules of Civil Procedure 9(b) and 12(b)(6) on January 29, 2020, and those motions were fully briefed as of April 8, 2020.[1]  See Dkts. 59; 60; 64; 67; 80; 81; 82; 83.  Among other grounds, Defendants argue that the Complaint fails to allege a single claim for reimbursement to Medicare or Medi-Cal, as required by the FCA and CFCA, and otherwise fails to plead the necessary elements to state an FCA or CFCA claim with the plausibility and particularity required under Rules 8(a) and 9(b).

---

[1]  In June 2020, Relator served an additional defendant, Invacare Corporation ("Invacare"), and Invacare filed a motion to dismiss on September 28, 2020.  Dkt. 108.  However, Relator subsequently voluntarily dismissed Invacare from the case, and this Court administratively dismissed Invacare's motion as moot.  *See* Dkt. 110.

Granting the Motions to Dismiss on any of these grounds would dispose of the litigation in its entirety, and even a partial grant would significantly alter the scope of the action and corresponding discovery.

Defendants also argue for dismissal of the CFCA claims because the allegations in the Complaint previously were discovered by and known to the State of California as the result of routine Medi-Cal audits, which were publicly disclosed in administrative hearings prior to the filing of the Complaint.  More than seven weeks after the Motions to Dismiss were fully briefed, on May 28, 2020, the State of California filed a Notice Opposing Dismissal on the Basis of the Public Disclosure Bar only as to the CFCA claims and only as to that single ground for dismissal.  On July 7, 2020, Defendants filed a Motion to Strike the State of California's Notice as procedurally and constitutionally improper, and that motion was fully briefed as of July 28, 2020.  *See* Dkts. 95; 95-1; 99.  Like the Motions to Dismiss, the Motion to Strike also remains pending.

After the Court twice continued the date for the mandatory Scheduling Conference as a result of party stipulations based on the forthcoming or pending Motions to Dismiss, Defendants moved for a third continuance and for a stay of discovery also based on the pendency of the Motions to Dismiss.  The Court granted Defendants' motion on June 5, 2020, ordering that "[d]iscovery in this action is STAYED until the Court holds a scheduling conference," and confirming the Scheduling Conference then set for September 1, 2020.  Dkt. 89, at 9.  On July 30, 2020, the Court *sua sponte* continued the Scheduling Conference to its current date of December 1, 2020, due in part to the still-pending Motions to Dismiss.  Dkt. 101, at 1.

The Motions to Dismiss remain pending, and the same reasoning that the Court applied in granting Defendants' earlier motion for a continuance and to stay discovery remains applicable.  In particular, the parties will not be able to conduct a realistic or efficient Rule 26(f) conference, file an accurate Joint Scheduling Report, or engage in a worthwhile Scheduling Conference until those dispositive motions are decided.

In addition, because the Court already ordered that discovery is stayed until after the Court holds a scheduling conference, a continuance of the Scheduling Conference also will have the effect

of continuing the length of the discovery stay.  Good cause continues to exist under Federal Rule of Civil Procedure 26(c)(1) for the Court's temporary stay of discovery to remain in place while the Motions to Dismiss remain undecided.  In particular, (1) the Motions to Dismiss are potentially dispositive of the entire action, and no discovery is necessary for the Court to rule on the motions; (2) the FCA requires that a relator satisfy Rule 9(b) before proceeding with discovery, which Relator has not done; (3) judicial economy is served by deciding the pending dispositive motions first; and (4) given the continuing impact of the novel coronavirus (COVID-19), permitting discovery to proceed on claims that likely will be dismissed or significantly curtailed would be unduly burdensome to and severely prejudice Defendants, all of which operate, supply, or provide support to skilled nursing facilities, the component of the healthcare delivery system that has been one of the most severely impacted by the pandemic.

Accordingly, Defendants now move the Court for a continuance of the December 1, 2020 Scheduling Conference and associated deadlines.

## ARGUMENT

**A.     The Scheduling Conference Should Be Continued Because There Are Pending Motions to Dismiss**

In its previous Order continuing the Scheduling Conference, this Court noted its "normal practice to issue such continuances due to pending motions to dismiss." Dkt. 89, at 2.  Likewise, the Court's Scheduling Order recognizes that a pending motion to dismiss is a circumstance that may require adjustment of scheduling conference deadlines:

> [T]he Court is aware that in some situations the case is not procedurally in the posture for the Scheduling Conference to be held on the date initially set. Such situations include, but are not limited to, those … where there is a pending motion to dismiss.  If the circumstances in this action are such that it would serve the purpose of conserving the resources of the parties and the court to continue the Scheduling Conference, it is the parties' responsibility to so inform the Court prior to the date on which the Joint Scheduling Report is due.

Dkt. 21, at 7 (dates as amended by Dkt. 53).  That circumstance continues to be present here: Defendants all have filed Motions to Dismiss, which are fully briefed and remain pending a decision

of the Court. Indeed, the Court has continued the mandatory Scheduling Conference on four occasions – either in response to stipulated motions filed by the parties, in response to a motion by Defendants, or *sua sponte* – based on this recognition of the impact of the pendency of the Motions to Dismiss. *See* Dkts. 45; 53; 89; 101.

Because each of the Motions to Dismiss presents multiple grounds for dismissing the action in its entirety, a decision is likely to significantly alter the scope of the action even if it does not fully dismiss it.[2] It would waste both party and judicial resources now to require a Rule 26(f) conference on a discovery plan, to require the parties to file a Joint Scheduling Report, and to conduct the Scheduling Conference when the scope of discovery will be affected by a decision on the Motions to Dismiss. Continuing the Scheduling Conference date – and the associated deadlines for the parties to conduct a Rule 26(f) conference and file a Joint Scheduling Report – will conserve the resources of the Court and the parties and greatly increase the utility and accuracy of a later-filed Joint Scheduling Report.

**B.     The Court-Ordered Stay of Discovery Should Remain in Place**

In ordering discovery stayed until the Court holds a scheduling conference, the Court already determined that good cause exists to delay the commencement of discovery until "the posture of the case is ready," *i.e.*, after a decision on the pending Motions to Dismiss. Dkt. 89, at 8. Because the Motions to Dismiss remain pending, all of the grounds on which the Court based its previous order remain applicable, and the Court's order staying discovery should remain in place. A continued stay of discovery is supported both by the purpose of the FCA and the Federal Rules of Civil Procedure and also by the goals of judicial efficiency and avoiding prejudice to Defendants.

---

[2] Due to the numerous independent grounds for dismissal of both the FCA and CFCA claims in the Motions to Dismiss beyond the public disclosure bar to the CFCA claims, the State of California's Notice Opposing Dismissal only as to public disclosure would not impact the reach of the Motions to Dismiss, even if Defendants' Motion to Strike were denied.

### 1. The Court Already Found That Defendants' Motions to Dismiss Meet the Two-Prong Test for a Stay of Discovery

Federal Rule of Civil Procedure 26(c)(1) permits the Court, "for good cause, [to] issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Good cause exists to continue the Court-ordered temporary stay of discovery while the Motions to Dismiss are pending. Although the existence of a pending motion to dismiss does not provide an automatic basis upon which to stay discovery, the Ninth Circuit has affirmed that district courts have "wide discretion in controlling discovery" and in granting stays pending resolution of potentially dispositive motions. *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988) (affirming stay pending resolution of a motion for summary judgment). *See also Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) (observing that Rule 26(c) confers "broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required"); *Wenger v. Monroe*, 282 F.3d 1068, 1077 (9th Cir. 2002) (affirming stay pending resolution of a motion to dismiss).

In evaluating whether good cause exists to stay discovery pending a dispositive motion, the Ninth Circuit has not established a clear standard for evaluation, but district courts in California often apply a two-pronged test: (1) whether the motion is "potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed;" and (2) "whether the pending dispositive motion can be decided absent discovery." *Hall v. Tilton*, No. C 07-3233 RMW (PR), 2010 WL 539679, at *2 (N.D. Cal. Feb. 9, 2010) (granting stay of discovery until disposition of motion to dismiss); *see also Espineli v. Toyota Motor Sales, U.S.A., Inc.*, No. 17CV00698KJMCKD, 2019 WL 3080808, at *1-2 (E.D. Cal. July 15, 2019).[3] The Court previously found "that based on the current pending motions to dismiss and no indication that discovery is needed to adjudicate the motions to dismiss, Defendants have established both prongs

---

[3] Although the *Espineli* court allowed some limited discovery in the form of initial disclosures, this Court distinguished *Espineli* from the present case because the motion to dismiss had not yet been filed and because the plaintiffs had argued that they planned to conduct discovery relevant to the motion to dismiss. *See* Dkt. 89, at 7 (distinguishing *Espineli*).

of the test and … a stay of discovery and continuance of the scheduling conference is appropriate." Dkt. 89, at 7.  These circumstances have not changed.

With respect to the first prong of the test, Defendants filed Motions to Dismiss that, if granted, would be dispositive of the entire Complaint on the grounds that it fails to plead fraud with particularity under Rule 9(b) and that it fails to state a claim under Rule 12(b)(6).  *See* Dkts. 59; 60; 64; 67.  Defendants' Motions to Dismiss on these grounds are well founded.  The claim itself is the *sine qua non* of an FCA violation.  *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).  Among many other arguments as to the lack of particularity in the Complaint and as discussed at length in Defendants' briefing in support of the Motions to Dismiss, Relator's Complaint fails to allege a single false claim or false statement in support of a claim for reimbursement that was submitted or caused to be submitted by any of Defendants to Medicare or Medi-Cal.  *See, e.g.*, Dkts. 59-1, at 15-20; 61, at 5-6; 64, at 11-12; 67, at 14-15; 80, at 14-15; 82, at 2; 83, at 6-7.  Relator's inability to allege a single false claim is no surprise as his assertions are based on the Share of Cost program and payments made **by patients** for **non-covered** services before they became eligible for Medi-Cal.  *See, e.g.*, Dkts. 59-1, at 17, 19; 61, at 10-13; 64, at 15-16; 67, at 16; 80, at 10-14; 81, at 11; 82, at 3-6; 83, at 6.  The discriminatory billing provisions that Relator alleges were violated also cannot support the necessary element of scienter because they are, at the very least, impermissibly ambiguous with respect to their applicability to the Share of Cost program.  *See, e.g.*, Dkts. 61, at 13-16; 67, at 16-17; 82, at 6-9.

Defendants also moved to dismiss the CFCA claims based on the public disclosure bar because the same Share of Cost allegations Relator now makes already were the subject of routine Medi-Cal audits and administrative hearings that were conducted by the State of California before the Complaint was filed.  *See, e.g.*, Dkts. 61, at 20-25; 67, at 6-10; 81, at 2-8; 82, at 13-15.  Under the CFCA, "[t]he court shall dismiss an action … if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed," unless Relator is the original source of the information.  Cal. Gov't Code § 12652(d)(3).  Although the State of California has since filed a Notice Opposing Dismissal on the Basis of the Public Disclosure Bar, that Notice –

of the test and … a stay of discovery and continuance of the scheduling conference is appropriate." Dkt. 89, at 7.  These circumstances have not changed.

With respect to the first prong of the test, Defendants filed Motions to Dismiss that, if granted, would be dispositive of the entire Complaint on the grounds that it fails to plead fraud with particularity under Rule 9(b) and that it fails to state a claim under Rule 12(b)(6).  *See* Dkts. 59; 60; 64; 67.  Defendants' Motions to Dismiss on these grounds are well founded.  The claim itself is the *sine qua non* of an FCA violation.  *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).  Among many other arguments as to the lack of particularity in the Complaint and as discussed at length in Defendants' briefing in support of the Motions to Dismiss, Relator's Complaint fails to allege a single false claim or false statement in support of a claim for reimbursement that was submitted or caused to be submitted by any of Defendants to Medicare or Medi-Cal.  *See, e.g.*, Dkts. 59-1, at 15-20; 61, at 5-6; 64, at 11-12; 67, at 14-15; 80, at 14-15; 82, at 2; 83, at 6-7.  Relator's inability to allege a single false claim is no surprise as his assertions are based on the Share of Cost program and payments made **by patients** for **non-covered** services before they became eligible for Medi-Cal.  *See, e.g.*, Dkts. 59-1, at 17, 19; 61, at 10-13; 64, at 15-16; 67, at 16; 80, at 10-14; 81, at 11; 82, at 3-6; 83, at 6.  The discriminatory billing provisions that Relator alleges were violated also cannot support the necessary element of scienter because they are, at the very least, impermissibly ambiguous with respect to their applicability to the Share of Cost program.  *See, e.g.*, Dkts. 61, at 13-16; 67, at 16-17; 82, at 6-9.

Defendants also moved to dismiss the CFCA claims based on the public disclosure bar because the same Share of Cost allegations Relator now makes already were the subject of routine Medi-Cal audits and administrative hearings that were conducted by the State of California before the Complaint was filed.  *See, e.g.*, Dkts. 61, at 20-25; 67, at 6-10; 81, at 2-8; 82, at 13-15.  Under the CFCA, "[t]he court shall dismiss an action … if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed," unless Relator is the original source of the information.  Cal. Gov't Code § 12652(d)(3).  Although the State of California has since filed a Notice Opposing Dismissal on the Basis of the Public Disclosure Bar, that Notice –

even if valid – would not affect the other fully dispositive and well-founded grounds for dismissal outlined in the preceding paragraph.  Moreover, Defendants have filed a Motion to Strike the State of California's Notice as both procedurally and constitutionally infirm in a matter of first impression under the CFCA.  *See* Dkts. 95-1; 99.

Defendants' Motions to Dismiss also continue to meet the second prong of the test as the Court need only look to the facts in the four corners of the Complaint, taking them as true to the extent well-pleaded, and to any judicially noticed documents in order to determine whether the allegations are pled with sufficient particularity to state a plausible claim to relief.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Discovery also is not necessary in order for the Court to decide Defendants' Motion to Strike, as it is based strictly on the plain language of the CFCA and the application of constitutional principles.  Accordingly, the same circumstances continue to exist which led the Court previously to find that Defendants have established both prongs of the test and to order discovery stayed.

### 2. FCA Actions Must Satisfy Rule 9(b) Before Discovery Is Permitted

In granting the stay of discovery, this Court found the particular FCA context of this case relevant and persuasive:

> California district courts have found that it is proper in FCA cases where a motion to dismiss for failure to plead fraud with particularity is pending to stay discovery until the court has had the opportunity to decide whether the complaint satisfies the heightened pleading requirements of Rule 9(b).

Dkt. 89, at 8 (quoting *United States ex rel. Modglin v. DJO Glob. Inc.*, No. CV1207152MMMJCGX, 2014 WL 12564275, at *2-3 (C.D. Cal. Feb. 20, 2014)).  With Defendants' Motions to Dismiss, including for failure to plead fraud with particularity under Rule 9(b), still pending, the Court's prior reasoning continues to apply.

As highlighted by *Modglin*, a decision on potentially dispositive motions in the **absence** of additional discovery is of particular importance in the FCA context, where the "[t]he heightened pleading standard of Rule 9(b) governs," *Cafasso*, 637 F.3d at 1054, and *qui tam* relators as "'insiders privy to a fraud on the government' should have adequate knowledge of the wrongdoing

at issue" to "be able to comply with Rule 9(b)" without additional discovery. *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting *Wang v. FMC Corp.*, 975 F.2d 1412, 1419 (9th Cir. 1992)). Because of the importance and primacy of Rule 9(b) in FCA cases, motions to dismiss pursuant to Rule 9(b) thus sufficiently state good cause for a stay of discovery.

As the Ninth Circuit explained in *Bly-Magee*, among the central purposes of Rule 9(b) is "**to deter the filing of complaints as a pretext for the discovery of unknown wrongs**, to protect defendants from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." 236 F.3d at 1018 (emphasis added). In other words, "[a]llowing Plaintiffs to conduct discovery in order to comport with [the] heightened pleading requirement applicable to fraud-based claims is directly contrary to the purpose of Rule 9(b); namely, that plaintiffs show that there is some substance to their claim of fraud before subjecting a defendant to the rigors of the discovery process." *Periguerra v. Meridas Capital, Inc.*, No. C 09-4748 SBA, 2010 WL 395932, at *5 (N.D. Cal. Feb. 1, 2010) (citing *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996)).

Like the *Modglin* court and this Court, other California district courts likewise have stayed discovery in FCA cases on these grounds. *See, e.g.*, *East Bay Municipal Utility District v. Balfour Beatty Infrastructure, Inc.*, No. 13–cv–02032–WHO, 2013 WL 6698897, at *9-10 (N.D. Cal. Dec. 19, 2013) (ordering stay because "Qui Tam Plaintiffs are not entitled to take further discovery until they file a complaint that complies with Rule 9(b)"); *State of California ex rel. Mueller v. Walgreen Corp.*, 175 F.R.D. 638, 639 (N.D. Cal. 1997) ("As with other claims alleging fraudulent conduct, a claim for relief under the California False Claims Act requires that the plaintiff, prior to filing his claim, possess a reasonable belief based upon articulable facts that a wrong has occurred. The claim itself cannot be used as a means for discovering that wrong."); *see also United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359 (11th Cir. 2006) (Rule 9(b)'s requirement "is a nullity if Plaintiff gets a ticket to the discovery process without identifying a single claim."); *United States v. Safeway, Inc.*, No. 11-cv-3406, 2016 WL 3906571, at *1 (C.D. Ill. July 14, 2016) (granting stay

of discovery on the basis that it "w[ould] reduce the burden of litigation by ensuring that [relator] has met his obligation to plead with particularity before the Court and the parties commence the discovery process").

### 3. A Stay of Discovery Promotes the Purposes of Rule 12(b)(6) and Judicial Economy

Although the Court already has recognized that "this action has been subject to multiple extensions … and that memories do indeed fade through delayed discovery, the reasons for postponing discovery for the pending motions to dismiss remain in the face of such facts, and do not override the interest of allowing such dispositive motions to be adjudicated given they are ripe for decision." Dkt. 89, at 4. That interest is the same today as when the Court issued this analysis. In particular, "[t]he purpose of F.R.Civ.P. 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery." *Rutman Wine Co. v. E & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987). The Ninth Circuit has held that, while a potentially dispositive Rule 12(b)(6) motion is pending, discovery is only appropriate where the motion itself raises factual issues requiring discovery. *See e.g.*, *Wagh v. Metris Direct, Inc*. 363 F.3d 821, 829 (9th Cir. 2003); *Jarvis v. Regan*, 833 F.2d 149, 155 (9th Cir. 1987), *overruled on other grounds by Odom v. Microsoft Corp*., 486 F.3d 541, 551 (9th Cir. 2007) (*en banc*).

Beyond multiple extensions and possibly fading memories – which the Court previously found do not override the interest of a stay – Relator cannot point to any prejudice in the stay continuing while the Motions to Dismiss are pending. Nothing has transpired in the case in the almost five months since the Court ordered discovery stayed that has created any grounds to reconsider that Order. Moreover, as a counterbalance to any concerns that evidence will somehow grow stale or witnesses become unavailable, the Government already conducted an extensive year-and-a-half long investigation, including witness interviews and an extensive document production from Defendants Dynamic Medical Systems, LLC and Joerns Healthcare, LLC, prior to the seal being lifted (and then declined to intervene based on that record). *See* Dkt. 16.

If Defendants' Motions to Dismiss are granted, the Court may dispense with the suit altogether, and any discovery prior to the ruling will have been for nothing.  Even if Defendants' Motions to Dismiss are granted only with respect to certain claims, the scope of discovery likely will change dramatically.  Leaving the stay of discovery in place while the Motions to Dismiss are pending continues to accomplish the overarching goal of the Federal Rules: "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. *See Rutman Wine Co.*, 829 F.2d at 738 ("It is sounder practice to determine whether there is any reasonable likelihood that plaintiffs can construct a claim before forcing the parties to undergo the expense of discovery.").

### 4. The COVID-19 Pandemic Establishes Good Cause to Stay Discovery

Finally, the additional good cause supporting the Court's order staying discovery – the circumstances of the COVID-19 pandemic that severely limit Defendants' ability to conduct and respond to discovery – unfortunately remain to this day.  The financial burdens, resources, and time associated with responding to discovery – including verifying interrogatory responses and document production – is a substantial undertaking under the best of circumstances.  COVID-19 continues to be an unprecedented pandemic in both scale and scope.  Social distancing measures, including in workplaces, to further limit the spread of the virus remain in place and even have been heightened in recent weeks in certain locales.

Skilled nursing facilities continue to be particularly affected by COVID-19 given their communal layout and the higher-risk resident population that they serve.  At the corporate level, Defendants still are confronted with an ever-changing virus response landscape and with restricted access to their physical locations in order to stem the spread of the virus, all of which makes responding to discovery in the near-term extraordinarily difficult.  It remains unreasonable under these circumstances to expect Defendants, who are working on the front lines of the COVID-19 pandemic by either operating skilled nursing facilities, providing support to those facilities pursuant to contract, or supplying those facilities, to utilize their essential resources for discovery that ultimately may not even be relevant in light of the pending Motions to Dismiss.

Relator should not be able to use discovery to divert critical public health resources to attempt to substantiate claims that are not pleaded with particularity and already were publicly disclosed. As explained above, permitting discovery at this stage would be the functional equivalent of applying a relaxed Rule 9(b) standard as it would be difficult, if not impossible, to determine whether any amended pleadings by Relator were based on independent personal knowledge or, instead, on supplemental facts learned during what amounts to a discovery "fishing expedition."

Keeping the order staying discovery in place also continues to be in the interests of efficiency and judicial economy in this District, which still is experiencing a judicial emergency due to an insufficient number of District Judges. *See* Order, *In re Approval of the Judicial Emergency Declared in the Eastern District of California* (9th Cir. Judicial Council Apr. 16, 2020); Letter from Chief Judge Kimberly J. Mueller, United States District Court for the Eastern District of California, to Chief Judge Sidney R. Thomas, Judicial Council of the Ninth Circuit (Apr. 8, 2020), *available at* http://www.caed.uscourts.gov/caednew/assets/File/JudicialCouncil_EasternDistrictofCalifornia_3174Request.pdf (explaining that the COVID-19 pandemic has exacerbated the court's pre-existing emergency, despite the many steps the court has taken to manage the current judicial crisis since its onset). This Court's order staying discovery thus continues to provide for the orderly course of justice, avoid significant burden and associated expenses, and conserve essential judicial and public health resources.

## CONCLUSION

For all of these reasons, Defendants request that the Court grant their Motion for Continuance of Scheduling Conference, which will have the effect of continuing the stay of discovery pursuant to this Court's June 5, 2020 Order.

| | | |
|---|---|---|
| 1 | Dated: November 3, 2020 | Respectfully submitted, |
| 2 | | MORGAN, LEWIS & BOCKIUS LLP |

By  */s/ Scott A. Memmott*
    Scott A. Memmott

*Attorneys for Defendants
Dynamic Medical Systems, LLC and
Joerns Healthcare, LLC*


BARNES & THORNBURG, LLP


By  */s/ Eric J. Beste (authorized 11/02/20)*
    Eric J. Beste

*Attorneys for Defendant Plum Healthcare
Group LLC*


HOOPER, LUNDY & BOOKMAN, P.C.


By  */s/ Scott J. Kiepen (authorized 11/02/20)*
    Scott J. Kiepen

*Attorneys for Defendants Covenant Care
California, LLC and Mariner Health
Care Management Company*


NELSON HARDIMAN LLP


By */s/ Mark Hardiman (authorized 11/02/20)*
   Mark Hardiman

*Attorneys for Defendant
Cambridge Healthcare Services*