**MORGAN, LEWIS & BOCKIUS LLP**
Scott A. Memmott, *pro hac vice*
scott.memmott@morganlewis.com
Howard J. Young, *pro hac vice*
howard.young@morganlewis.com
Kayla Stachniak Kaplan, *pro hac vice*
kayla.kaplan@morganlewis.com
Jonathan P. York, *pro hac vice*
jonathan.york@morganlewis.com
Michelle M. Arra, State Bar No. 329566
michelle.arra@morganlewis.com
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Tel:   +1.202.739.3000
Fax:   +1.202.739.3001

*Attorneys for Defendants Dynamic Medical Systems, LLC and Joerns Healthcare, LLC*

**BARNES & THORNBURG, LLP**
Eric J. Beste, State Bar No. 226089
Eric.Beste@btlaw.com
655 West Broadway, Suite 1300
San Diego, CA 92101
Tel:   +1.619.321.5015
Fax:   +1.310.284.3894

*Attorneys for Defendant Plum Healthcare Group LLC*

**HOOPER, LUNDY & BOOKMAN, P.C.**
Scott J. Kiepen, State Bar No. 175504
skiepen@health-law.com
Katrina A. Pagonis, State Bar No. 262890
kpagonis@health-law.com
Stephanie A. Gross, State Bar No. 307728
sgross@health-law.com
101 Montgomery Street, 11th Floor
San Francisco, CA 94104
Tel:   +1.415.875.8500
Fax:   +1.415.986.2157

Joseph R. Lamagna, State Bar No. 246850
jlamagna@health-law.com
101 W. Broadway, Suite 1200
San Diego, CA 92101-3890
Tel:   +1.619.744.7300
Fax:   +1.619.230.0987

Bridget A. Gordon, State Bar No. 287098
bgordon@health-law.com
1875 Century Park East, Suite 1600
Los Angeles, CA 90067
Tel:   +1.310.551.8111
Fax:   +1.310.551.8181

*Attorneys for Defendants Covenant Care California, LLC and Mariner Health Care Management Company*

**NELSON HARDIMAN LLP**
Mark Hardiman, State Bar No. 136602
mhardiman@nelsonhardiman.com
1100 Glendon Avenue, 14th Floor
Los Angeles, CA 90024
Tel:   +1.310.203.2800
Fax:   +1.310.203.2727

*Attorneys for Defendant
Cambridge Healthcare Services*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES EX REL. TURNER**, *et al.*,<br><br>                    Plaintiffs,<br><br>        v.<br><br>**DYNAMIC MEDICAL SYSTEMS, LLC**, *et al.*,<br><br>                    Defendants. | Case No. 1:17-CV-01757-JLT-SAB<br><br>**BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR CONTINUANCE OF SCHEDULING CONFERENCE**<br><br>Date:            February 21, 2023<br>Time:            3:00 PM<br>Ctrm.:           9<br>Magistrate Judge: Stanley A. Boone |

Defendants Dynamic Medical Systems, LLC, Joerns Healthcare, LLC, Plum Healthcare Group LLC, Covenant Care California, LLC, Mariner Health Care Management Company, and Cambridge Healthcare Services (collectively, "Defendants"), by and through their attorneys, respectfully submit this brief in support of their Motion for Continuance of Scheduling Conference, pursuant to Federal Rule of Civil Procedure 26(f)(1), which also will have the effect of extending the Court-ordered stay of discovery under Federal Rule of Civil Procedure 26(c)(1) (Dkts. 89, 115, 120, 124, 132, 164, 167), until after the Court issues an order resolving Defendants' Motions to Dismiss the Second Amended Complaint of Relator Thomas Turner ("Relator").

## INTRODUCTION

Defendants are a mixed group of durable medical equipment suppliers, entities providing support to skilled nursing facilities pursuant to contract, and operators of skilled nursing facilities whose patients utilize therapeutic support surfaces for wound care and prevention. Relator's Second Amended Complaint (the "SAC," Dkt. 141) alleges that Defendants are liable under the federal False Claims Act ("FCA") and the California False Claims Act ("CFCA") for perpetrating a "swapping" scheme in violation of the Anti-Kickback Statute with respect to the provision of support surfaces to different categories of patients and for engaging in "differential billing practices" for these patient categories in supposed violation of discriminatory billing provisions of Medi-Cal, the California State Medicaid program.

Each remaining Defendant[1] filed a Motion to Dismiss the SAC in its entirety under Federal Rules of Civil Procedure 9(b) and 12(b)(6) on May 9, 2022, and those Motions were fully briefed as of June 30, 2022. *See* Dkts. 142; 144; 145; 146; 157; 158; 159; 160. Defendants argue that – even after this Court dismissed Relator's previous complaint for failing to plead claims under the FCA and CFCA with the necessary particularity – the SAC still fails to plead the "who," "when," and "how" of the alleged fraud as required by Rule 9(b), including failing to identify a single representative false certification or false claim for payment to Medicare or Medi-Cal or to plead reliable indicia leading to a strong inference that such certifications or claims were submitted.

---

[1] Relator voluntarily dismissed an additional defendant, Invacare Corporation, from the case in October 2020. *See* Dkt. 110.

Granting the Motions to Dismiss would dispose of the litigation in its entirety, and even a partial grant (*e.g.*, as to certain of the claims or one of the two schemes) would significantly alter the scope of the action and corresponding discovery.  Or, in this Court's words, "even if the action is not fully dismissed, a partial grant of their motions would nevertheless result in an order requiring [Relator] to file an amended complaint and likely alter the scope of discovery." Dkt. 164, at 8:22–24.

Defendants previously moved to continue the Scheduling Conference and for a stay of discovery based on the pendency of these Motions to Dismiss, which the Court twice granted on August 15, 2022 and December 2, 2022.  Dkt. 164, at 9:22–25; Dkt. 167, at 9:19–10:2.  The same reasoning that the Court applied in finding cause good to stay discovery and grant those continuances – that the underlying Motions to Dismiss, "if successful," "would be fully dispositive," Dkt. 164, at 7:15–16; Dkt. 167, at 7:27,  that those "motions can be decided without the discovery sought by Plaintiffs," Dkt. 164, at 8:9–10; Dkt. 167, at 8:14–15, and that allowing discovery at this time "will result in undue burden and expense to the parties" and "a waste of judicial resources on the already overburdened caseload in this District," Dkt. 164, at 8:19–22; Dkt. 167, at 8:21–24 – continues to apply as the posture of the case remains unchanged and the Motions to Dismiss remain pending.

Accordingly, Defendants now move the Court for a continuance of the February 21, 2023 Scheduling Conference and associated deadlines and for a continued stay of discovery.

## BACKGROUND

The Court previously has considered numerous motions by Defendants to continue scheduling conference dates and maintain the stay of discovery as a result of pending motions to dismiss, with the Court each time finding good cause and granting those motions.[2]  In particular, while Defendants' motions to dismiss Relator's First Amended Complaint were pending, the Court five times granted motions to continue and ordered discovery stayed until a scheduling conference

---

[2] Defendants acknowledge the "Court's general practice of monitoring scheduling conferences for readiness, and continuing such conferences *sua sponte* when there are motions pending that make scheduling conferences unproductive."  Dkt. 162, at 2 n.1.  In an effort to avoid unnecessary motions practice while still protecting their litigation position, Defendants thus have waited to file this Motion until the last day that complies with the 28-day period for civil motions under the Local Rules prior to the February 21 scheduling conference date.  *See generally* Dkt. 85.

was held. *See* Dkt. 89, at 9:24–25; Dkt. 115, at 3:24–27, 4:5–6; Dkt. 120, at 4:8–11; Dkt. 124; Dkt. 132. During this period, the Court also twice *sua sponte* continued the Scheduling Conference due to these same pending motions to dismiss. *See* Dkt. 101; Dkt. 121.

On January 24, 2022, the Court issued an order granting in part and denying in part Defendants' motions to dismiss Relator's First Amended Complaint, dismissing six of the eight claims without prejudice and the other two claims with prejudice. *See generally* Dkt. 135. Thereafter, the parties stipulated to one additional continuance of the scheduling conference date, and Relator filed the SAC on March 21, 2022, repleading certain of the dismissed claims. Dkts. 138, 141. Defendants all filed Motions to Dismiss the SAC in its entirety on May 9, 2022. Dkts. 142; 144; 145; 146. With the filing of replies, those motions were fully briefed as of June 30, 2022. Dkts. 157; 158; 159; 160.

On July 26, 2022, Defendants moved for a continuance of the scheduling conference then-set for August 23, 2022, and for a continued stay of discovery based on the pendency of these Motions to Dismiss the SAC. *See* Dkt. 161. The Court granted this motion on August 15, 2022, ordering that "[d]iscovery in this action continues to be STAYED until the Court holds a scheduling conference," and continuing the conference to December 15, 2022. Dkt. 164, at 9:22–25. On November 17, 2022, Defendants moved for a continuance of the December 15 scheduling conference date and for a continued stay of discovery based on the continued pendency of the Motions to Dismiss the SAC. *See* Dkt. 166. The Court likewise granted this motion on December 2, 2022, ordering that "[d]iscovery in this action continues to be STAYED until the Court holds a scheduling conference," and continuing the conference to the current date of February 21, 2023. Dkt. 167, at 9:22–25. Defendants' Motions to Dismiss the SAC remain pending as of the date of this Motion, and the Court indicated in October 2022 that "it may be six or more months [*i.e.*, April 2023] until the motion(s) in this matter is resolved." Dkt. 165 (10/12/22 Minute Order).

# ARGUMENT

### A. The Scheduling Conference Should Be Continued Because Motions to Dismiss the Second Amended Complaint Are Pending

In one of its previous Orders continuing the Scheduling Conference, this Court noted its "normal practice to issue such continuances due to pending motions to dismiss." Dkt. 89, at 2:28. Likewise, the Court's Scheduling Order recognizes that a pending motion to dismiss is a circumstance that may require adjustment of scheduling conference deadlines:

> [T]he Court is aware that in some situations the case is not procedurally in the posture for the Scheduling Conference to be held on the date initially set. Such situations include, but are not limited to, those … where there is a pending motion to dismiss. If the circumstances in this action are such that it would serve the purpose of conserving the resources of the parties and the court to continue the Scheduling Conference, it is the parties' responsibility to so inform the Court prior to the date on which the Joint Scheduling Report is due.

Dkt. 21, at 7:1–11 (dates as amended by Dkt. 53). That circumstance continues to be present here: Defendants all have filed Motions to Dismiss the SAC, which are fully briefed and pending a decision of the Court. Indeed, the Court has continued the mandatory Scheduling Conference in this action on twelve prior occasions – either in response to stipulated motions filed by the parties, in response to motions by Defendants, or *sua sponte* – based on this recognition of the impact of the pendency of motions to dismiss. *See* Dkts. 45; 53; 89; 101; 115; 120; 121; 124; 132; 138; 164; 167.

Although the length of the combined continuances has been raised previously by Relator in opposition, this Court has noted that this delay does not amount to countervailing prejudice, including because "this delay is partly due to all parties' various stipulated requests to extend deadlines, including [Relator's]" and "also due to the judicial emergency that exists in this district, as the parties were advised in the February 2, 2020 Standing Order in Light of Ongoing Judicial Emergency in the Eastern District of California (ECF No. 68-1) and on numerous occasions thereafter." Dkt. 167, at 9:5–8; *see also* Dkt. 115, at 3:12–18; Dkt. 120, at 3:20–27; Dkt. 164, at 9:4–7. Furthermore, the length of the stay does not alter the interests of judicial economy and

efficiency that continue to support a continuance in this case while the Motions to Dismiss are pending.

Because the Motions to Dismiss present grounds for dismissing the SAC in its entirety, a decision is likely to significantly alter the scope of the action – including the information to be provided in a Joint Scheduling Report, initial disclosures, and written discovery – even if it does not fully dismiss the suit.  For example, Defendants raise multiple Rule 9(b) deficiencies in the SAC as to each of the two schemes and seven causes of action Relator alleges.  Accordingly, as this Court previously found, "even if the action is not fully dismissed, a partial grant of [Defendants'] motions would nevertheless result in an order requiring Plaintiffs to file an amended complaint and likely alter the scope of discovery[.]" Dkt. 164, at 8:22–24.  It would waste both party and judicial resources now to require a Rule 26(f) conference on a discovery plan, to require the parties to file a Joint Scheduling Report, and to conduct the Scheduling Conference when the scope of discovery will be affected by a decision on the Motions to Dismiss.  Continuing the Scheduling Conference date – and the associated deadlines for the parties to conduct a Rule 26(f) conference and file a Joint Scheduling Report – will conserve the resources of the Court and the parties and greatly increase the utility and accuracy of a later-filed Joint Scheduling Report.

**B.     The Court-Ordered Stay of Discovery Should Remain in Place**

In ordering discovery stayed until the Court holds a Scheduling Conference, the Court previously determined that good cause exists to delay the commencement of discovery until "the posture of the case is ready," *i.e.*, "until such time as the pending motions have been resolved and answers have been filed in this action." Dkt. 89, at 8:23–28; Dkt. 115, at 3:24–27; Dkt. 120, at 4:2–11; *see also* Dkt. 124, at 2:14–22; Dkt. 132, at 2:19–25.  Moreover, maintaining the stay of discovery is supported both by the purpose of the FCA and the Federal Rules of Civil Procedure and by the goals of judicial efficiency and avoiding prejudice to Defendants.

   **1.     The Court Previously Found That Defendants' Motions to Dismiss Meet the Two-Prong Test for a Discovery Stay**

Federal Rule of Civil Procedure 26(c)(1) permits the Court, "for good cause, [to] issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or

expense." Although the existence of a pending motion to dismiss does not provide an automatic basis upon which to stay discovery, the Ninth Circuit has affirmed that district courts have "wide discretion in controlling discovery" and in granting stays pending resolution of potentially dispositive motions. *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988) (affirming stay pending resolution of a motion for summary judgment). *See also Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) (observing that Rule 26(c) confers "broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required"); *Wenger v. Monroe*, 282 F.3d 1068, 1077 (9th Cir. 2002) (affirming stay pending resolution of a motion to dismiss).

The Ninth Circuit has not established a clear standard for evaluating whether good cause exists to stay discovery pending a dispositive motion, but district courts in California often apply a two-pronged test: (1) whether the motion is "potentially dispositive of the entire case, or at least dispositive on the issue at which discovery is directed"; and (2) "whether the pending dispositive motion can be decided absent discovery." *Hall v. Tilton*, No. C 07-3233 RMW (PR), 2010 WL 539679, at *2 (N.D. Cal. Feb. 9, 2010) (granting stay of discovery until disposition of motion to dismiss); *see also Espineli v. Toyota Motor Sales, U.S.A., Inc.*, No. 17CV00698KJMCKD, 2019 WL 3080808, at *1–2 (E.D. Cal. July 15, 2019).[3] The Court previously found both prongs of this test satisfied with respect to the pending Motions to Dismiss the SAC because "the underlying motions, if successful, would be fully dispositive of Plaintiffs' claims," Dkt. 164, at 7:15–16, and "Defendants' motions can be decided without the discovery sought by Plaintiffs[,]" *id.* at 8:9–10. *See also* Dkt. 167, at 7:27, 8:14–15. These circumstances have not changed.

With respect to the first prong of the test, Defendants filed Rule 12(b)(6) Motions to Dismiss that, if granted, would be dispositive of the entire SAC on the grounds that it fails to plead fraud with the requisite particularity under Rule 9(b). *See* Dkts. 142; 144; 145; 146. Defendants' Motions to Dismiss on these grounds are well founded. In its Order granting in part Defendants' first

---

[3] Although the *Espineli* court allowed some limited discovery in the form of initial disclosures, this Court previously distinguished *Espineli* as a case where the motion to dismiss had not yet been filed and where the plaintiffs had argued that they planned to conduct discovery relevant to the motion to dismiss. *See* Dkt. 89, at 6:7–7:28 (distinguishing *Espineli*).

motions to dismiss, the Court found that Relator had not pled the first element of a false or fraudulent claim under Rule 9(b) because the First Amended Complaint lacked specificity as to the "who," "when," and "how." Dkt. 135. Although Relator was permitted an opportunity to re-plead certain of the causes of action in the SAC in an attempt to meet the requirements of Rule 9(b), he still has failed to do so in any greater detail than the original allegations in the First Amended Complaint that was dismissed. As discussed at length in Defendants' briefing in support of the Motions to Dismiss, the SAC adds nothing to further particularize the "when" of the alleged fraud, inserts only conclusory assertions about a list of individual names in a deficient attempt to meet the "who" of the fraud, and comes nowhere close to providing the "how" of either alleged scheme that the Court previously found lacking. *See, e.g.*, Dkt. 142-1; Dkt. 144; Dkt. 145-1; Dkt. 146. In particular on the "how," the SAC still fails to provide a single representative example of a false certification or false claim for payment or even reliable indicia that lead to a strong inference that such certifications or claims were submitted. The claim itself is the *sine qua non* of an FCA violation, *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011), and the SAC cannot survive without pleading it with particularity. *See, e.g.*, Dkt. 142-1; Dkt. 145-1. Accordingly, "[b]ased on its limited 'peek' at the merits" of Defendants' Motions to Dismiss the SAC, Dkt. 164, at 7:15–16; Dkt. 167, at 7:20–21, the Court already has determined that Defendants raise a "colorable argument that, despite multiple iterations of the complaint, Plaintiffs continue to fail to satisfy the pleading standards and this may result in dismissal of the action in its entirety[,]" Dkt. 164, at 7:26–8:1; Dkt. 167, at 8:3–5.

Defendants' Motions to Dismiss the SAC also continue to meet the second prong of the test as the Court need only look to the allegations in the four corners of the SAC, taking them as true to the extent well-pleaded, and to any judicially noticed documents in order to decide, absent discovery, whether the allegations are pled with sufficient particularity to state a plausible claim to relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *See also* Dkt. 167, at 8:14–15 ("Defendants' motions [to dismiss] can be decided without the discovery sought by Plaintiffs."). The same circumstances continue to exist that led

the Court previously to find that Defendants have established both prongs of the test for good cause and to order discovery stayed while these Motions to Dismiss the SAC are pending.

### 2. FCA Actions Must Satisfy Rule 9(b) Before Discovery Is Permitted

In originally granting the stay of discovery, this Court highlighted the importance of the particular FCA context of this case:

> California district courts have found that it is proper in FCA cases where a motion to dismiss for failure to plead fraud with particularity is pending to stay discovery until the court has had the opportunity to decide whether the complaint satisfies the heightened pleading requirements of Rule 9(b).

Dkt. 89, at 8:11–19 (quoting *United States ex rel. Modglin v. DJO Glob. Inc.*, No. CV1207152MMMJCGX, 2014 WL 12564275, at *2–3 (C.D. Cal. Feb. 20, 2014)). Defendants' Motions to Dismiss the SAC are based on Relator's continued failure to plead fraud with particularity under Rule 9(b) – even after an opportunity for re-pleading and clear instruction from this Court – and thus sufficiently state good cause for a continued stay of discovery while they are pending.

As highlighted by *Modglin*, a decision on potentially dispositive motions in the **absence** of additional discovery is of particular importance in the FCA context where the "[t]he heightened pleading standard of Rule 9(b) governs," *Cafasso*, 637 F.3d at 1054, and *qui tam* relators as "'insiders privy to a fraud on the government' should have adequate knowledge of the wrongdoing at issue" to "be able to comply with Rule 9(b)" without additional discovery, *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting *Wang v. FMC Corp.*, 975 F.2d 1412, 1419 (9th Cir. 1992)). As the Ninth Circuit explained in *Bly-Magee*, among the central purposes of Rule 9(b) is "***to deter the filing of complaints as a pretext for the discovery of unknown wrongs***, to protect defendants from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." 236 F.3d at 1018 (emphasis added). In other words, "[a]llowing Plaintiffs to conduct discovery in order to comport with [the] heightened pleading requirement applicable to fraud-based claims is directly contrary to the purpose of Rule 9(b);

namely, that plaintiffs show that there is some substance to their claim of fraud before subjecting a defendant to the rigors of the discovery process." *Periguerra v. Meridas Capital, Inc.*, No. C 09-4748 SBA, 2010 WL 395932, at *5 (N.D. Cal. Feb. 1, 2010) (citing *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996)).

Like the *Modglin* court and this Court, other California district courts likewise have stayed discovery in FCA cases on these grounds. *See, e.g.*, *E. Bay Mun. Util. Dist. v. Balfour Beatty Infrastructure, Inc.*, No. 13-cv-02032-WHO, 2013 WL 6698897, at *9–10 (N.D. Cal. Dec. 19, 2013) (ordering stay because "Qui Tam Plaintiffs are not entitled to take further discovery until they file a complaint that complies with Rule 9(b)"); *California ex rel. Mueller v. Walgreen Corp.*, 175 F.R.D. 638, 639 (N.D. Cal. 1997) ("As with other claims alleging fraudulent conduct, a claim for relief under the California False Claims Act requires that the plaintiff, prior to filing his claim, possess a reasonable belief based upon articulable facts that a wrong has occurred. The claim itself cannot be used as a means for discovering that wrong."); *see also United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1359 (11th Cir. 2006) (Rule 9(b)'s requirement "is a nullity if Plaintiff gets a ticket to the discovery process without identifying a single claim."); *United States v. Safeway, Inc.*, No. 11-cv-3406, 2016 WL 3906571, at *1 (C.D. Ill. July 14, 2016) (granting stay of discovery on the basis that it "w[ould] reduce the burden of litigation by ensuring that [relator] has met his obligation to plead with particularity before the Court and the parties commence the discovery process").

### 3. A Stay of Discovery Promotes Rule 12(b)(6)'s Purposes and Judicial Economy

The Court previously recognized that, although "this action has been subject to multiple extensions … and that memories do indeed fade through delayed discovery, the reasons for postponing discovery for the pending motions to dismiss remain in the face of such facts, and do not override the interest of allowing such dispositive motions to be adjudicated given they are ripe for decision." Dkt. 89, at 4:7–11. That interest is the same today as when the Court issued this analysis. In particular, "[t]he purpose of F.R.Civ.P. 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery." *Rutman Wine Co.*

*v. E & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987). The Ninth Circuit has held that, while a potentially dispositive Rule 12(b)(6) motion is pending, discovery is only appropriate where the motion itself raises factual issues requiring discovery. *See e.g.*, *Wagh v. Metris Direct, Inc*. 363 F.3d 821, 829 (9th Cir. 2003), *overruled on other grounds by Odom v. Microsoft Corp*., 486 F.3d 541, 551 (9th Cir. 2007) (*en banc*); *Jarvis v. Regan*, 833 F.2d 149, 155 (9th Cir. 1987).

Beyond generic concerns about delay – which the Court previously found do not override the interests of a stay to allow for adjudication of pending dispositive motions – Relator cannot point to any prejudice that would be caused by continuing the stay at this juncture. Moreover, as a counterbalance to any concerns that evidence will somehow grow stale or witnesses become unavailable, the Government already conducted an extensive year-and-a-half long investigation, including witness interviews and a thorough document production from Defendants Dynamic Medical Systems, LLC and Joerns Healthcare, LLC, prior to the seal being lifted (and then declined to intervene based on that record). *See* Dkt. 16.

Nothing has transpired in this case in the two-and-a-half years since the Court ordered discovery stayed that has changed the grounds on which the Court relied in any way that should cause the Court to reconsider that order, Dkt. 89, or the Court's subsequent orders reaffirming the stay, Dkts. 115, 120, 124, 132, 164, 167. And, as this Court recently reaffirmed, even limited discovery would be inefficient and burdensome in these circumstances:

> [A]llowing the discovery proposed by Plaintiff [in the form of initial disclosures, written discovery, and one 30(b)(6) deposition on data/systems/organization] will result in undue burden and expense to the parties[,] and the likelihood of discovery disputes due to the unsettled nature of the pleadings would result in a waste of judicial resources on the already overburdened caseload in this District.

Dkt. 164, at 8:19–22; *see also* Dkt. 115, at 3:19–23; Dkt. 120, at 4:2–7; Dkt. 167, at 8:21–24.

If Defendants' Motions to Dismiss the SAC are granted, the Court may dispense with the suit altogether, and any discovery prior to the ruling will have been for nothing. *See generally* Dkt. 120, at 3:7–10 ("[T]he pending motions to dismiss could result in the dismissal of this action in its entirety and requiring the parties to incur the costs of written discovery and depositions should this

matter be dismissed would be a waste of the parties resources."); Dkt. 124, at 2:15–18 (same). And "even if the action is not fully dismissed, a partial grant of [Defendants'] motions would nevertheless result in an order requiring Plaintiffs to file an amended complaint and likely alter the scope of discovery[.]" Dkt. 167, at 8:24–26. Leaving the stay of discovery in place while the Motions to Dismiss are pending thus continues to accomplish the overarching goal of the Federal Rules: "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. *See Rutman Wine Co.*, 829 F.2d at 738 ("It is sounder practice to determine whether there is any reasonable likelihood that plaintiffs can construct a claim before forcing the parties to undergo the expense of discovery.").

### 4. The District's Judicial Emergency Further Establishes Good Cause to Stay Discovery

Keeping the order staying discovery in place also continues to be in the interests of efficiency and judicial economy in this District, which still is experiencing a judicial emergency due to an insufficient number of District Judges. *See* Dkt. 167, at 9:7–11 ("Further, the length of the delay in this action is also due to the judicial emergency that exists in this district, as the parties were advised in the February 2, 2020 Standing Order in Light of Ongoing Judicial Emergency in the Eastern District of California (ECF No. 68-1) and on numerous occasions thereafter."); Dkt. 164, at 9:5–9; Dkt. 115, at 3:12–14; Dkt. 120, at 3:20–23; *see also* Dkt. 165 (10/12/22 Minute Order) ("As a result of the judicial resource emergency described in this Court's standing order re judicial emergency, more than 100 motions remain under submission in the caseload recently re-assigned to the undersigned. Although the Court has begun the process of working through this significant backlog, it may be six or more months until the motion(s) in this matter is resolved.").

A stay of discovery continues to provide for the orderly course of justice, avoid significant burden and associated expenses, and conserve essential judicial resources rather than utilizing those resources for unnecessary disputes aimed at discovery that ultimately may not even be relevant in light of the pending Motions to Dismiss.

**CONCLUSION**

For all of these reasons, Defendants request that the Court grant their Motion for Continuance of Scheduling Conference, which will have the effect of continuing the stay of discovery pursuant to this Court's June 5, 2020, November 13, 2020, March 3, 2021, October 13, 2021, January 12, 2022, August 15, 2022, and December 2, 2022 Orders.

Dated:    January 24, 2023                                Respectfully submitted,

                                                          MORGAN, LEWIS & BOCKIUS LLP


                                                          By  */s/ Scott A. Memmott*
                                                              Scott A. Memmott
                                                              Kayla Stachniak Kaplan

                                                              *Attorneys for Defendants*
                                                              *Dynamic Medical Systems, LLC and*
                                                              *Joerns Healthcare, LLC*



                                                          BARNES & THORNBURG, LLP


                                                          By  */s/ Eric J. Beste (authorized 01/20/23)*
                                                              Eric J. Beste

                                                              *Attorneys for Defendant Plum Healthcare*
                                                              *Group LLC*



                                                          HOOPER, LUNDY & BOOKMAN, P.C.


                                                          By  */s/ Scott J. Kiepen (authorized 01/20/23)*
                                                              Scott J. Kiepen

                                                              *Attorneys for Defendants Covenant Care*
                                                              *California, LLC and Mariner Health*
                                                              *Care Management Company*

NELSON HARDIMAN LLP

By */s/ Mark Hardiman (authorized 01/19/23)*
   Mark Hardiman

*Attorneys for Defendant
Cambridge Healthcare Services*