1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                         ----oo0oo----

11

12   UNITED STATES OF AMERICA AND THE        No. 1:17-cv-01757 WBS SAB
     STATE OF CALIFORNIA ex rel.
13   THOMAS TURNER,

14              Plaintiffs,                   MEMORANDUM AND ORDER RE:
                                             DEFENDANTS' MOTION TO DISMISS
15        v.

16   DYNAMIC MEDICAL SYSTEMS, LLC;
     JOERNS HEALTHCARE LLC; COVENANT
17   CARE CALIFORNIA LLC; MARINER
     HEALTH CARE MANAGEMENT COMPANY;
18   PLUM HEALTHCARE GROUP LLC; and
     CAMBRIDGE HEALTHCARE SERVICES,
19
                Defendants.
20

21                         ----oo0oo----

22

23        Relator Thomas Turner brings this qui tam action

     against Covenant Care California, LLC ("Covenant"), Mariner

     Health Care Management Company ("Mariner"), Plum Healthcare Group

     LLC ("Plum"), and Cambridge Healthcare Services ("Cambridge"),

     who manage skilled nursing facilities (collectively the "SNFs");

     and Dynamic Medical Systems LLC and Joerns Healthcare LLC, who

                                    1

1    lease mattresses and bed frames to companies that manage skilled

2    nursing facilities (collectively "Dynamic"[1]).  (See generally

3    Second Am. Compl. (Docket No. 141) ("SAC").)  Relator asserts

4    various claims under the federal and California False Claims Acts

5    ("FCA" and "CFCA," respectively).  The court now considers

6    defendants' motions to dismiss relator's Second Amended

7    Complaint.[2]  (Mots. (Docket Nos. 142, 144-46).)

8    I.   Procedural Background

9         Due to the long history of this case and its recent

10   assignment to the undersigned, the court briefly recites the

11   procedural background in relevant part.  Relator filed his First

12   Amended Complaint ("FAC") in March 2018.  (Docket No. 7.)  The

13   FAC asserted four violations the FCA (presenting false claims;

14   making or using false records or statements; retaining proceeds

15   not entitled to keep; and conspiracy) (Claims 1-4, respectively),

16   and four violations of the CFCA (presenting false claims; making

17   or using false records or statements; (in the alternative)

18   inadvertently submitting false claims; and conspiracy) (Claims 5-

19   8, respectively).  (See generally FAC.)

20        Defendants then filed parallel motions to dismiss the

21   FAC.  (Docket Nos. 59, 60, 64, 67.)  In January 2022, an order by

22   Judge Drozd dismissed Claims 1, 2, 4, 5, 6, and 8 of the FAC,

23

24        [1]   Joerns, like Dynamic, is in the business of leasing
     mattresses to skilled nursing facilities.  Joerns acquired
25   Dynamic in 2015.  (SAC ¶ 10-11.)  For the purpose of this motion,
     they will be treated in common.
26

27        [2]   Relator incorrectly labels his Second Amended Complaint
     "First Amended Complaint."
28

                                    2

1   which are based on false certification, Anti-Kickback Statute,

2   and conspiracy theories, with leave to amend for failure to plead

3   with particularity a false or fraudulent claim under Federal Rule

4   of Civil Procedure 9(b) ("Rule 9(b)").  (Order (Docket No. 135).)

5   The order also dismissed Claims 3 and 7 without further leave to

6   amend on the ground that they are based on an untenable reverse

7   false claim theory.  (Id.)

8        Relator then filed his Second Amended Complaint, which

9   re-pleads the six claims based on false certification, Anti-

10  Kickback Statute, and conspiracy theories that were previously

11  dismissed with leave to amend.  (SAC Claims 1-5, 7.)  The SAC

12  also re-pleads the CFCA inadvertent submissions claim (i.e.,

13  Claim 7, which is now re-numbered Claim 6 in the SAC).

14       Defendants then filed their second set of motions to

15  dismiss.  (Mots.)  Thereafter, the case was transferred to the

16  undersigned.  (Docket No. 174.)

17  II.  Discussion[3]

18       The court previously dismissed the FAC because relator

19  failed to plead with particularity a false statement or

20  fraudulent course of conduct -- specifically, who made a false

21  claim or certification, when, and how.  (Order.)  Dismissal of

22  the FAC was pursuant to the "reliable indicia" pleading standard

23  that the Ninth Circuit adopted in Ebeid ex rel. United States v.

24  Lungwitz, 616 F.3d 993, 998-99 (2010) (Rule 9(b) satisfied with

25  "particular details of a scheme to submit false claims paired

26  _____

27       [3]    Except where further discussion is merited, the court
    does not revisit the applicable legal standards already set forth
    in the previous Order.

28

3

1  with reliable indicia that lead to a strong inference that claims

2  were actually submitted").  The court now examines, under this

3  standard, only whether relator's new allegations cure this defect

4  by pleading the who, when, and how of a false claim with the

5  particularity required by Rule 9(b).[4]

6      A.   <u>Who Submitted a False Claim</u> (Claims 1, 2, 4, 5)

7         The SAC pleads several new names of various officers

8  and employees associated with defendants, along with their job

9  descriptions.  (<u>See, e.g.</u>, SAC ¶¶ 59-72.)  It further alleges

10  that various of these now-identified individuals, among other

11  things, "spearheaded the discriminatory billing practices,"

12  "implemented [the fraudulent program]," "carried out the scheme,"

13  were "instructed to search-out all SOC and Medi-Cal business in

14  order to increase profits," were "one of the drivers of

15  differential billing," or were "tasked with invoicing as many SOC

16  patients as possible to increase profits."  (<u>Id.</u>)  However, these

17  new allegations still fail to allege the "who" with requisite

18  particularity.

19         In the FAC, relator alleged that Robert Husband and

20  Laura Bailey, employees at Dynamic, corresponded about engaging

21  in a fraudulent scheme to get "rid of competition" and push "the

22  share of cost program."  (Order at 35.)  This failed to allege

23  that Husband and Bailey "were engaging in discriminatory billing

24  _____

25      [4]   Dynamic also requests that the court take judicial
   notice of seven state and federal administrative documents in

26  support of their motion to dismiss the SAC.  (Docket No. 143.)
   The court need not rely on these documents in order to address

27  the issues presented in defendants' motions to dismiss.
   Accordingly, the court will deny Dynamic's request to take

28  judicial notice of the documents.  (Docket No. 143.)

1  on any comparable 'service or article' in violation of Medi-Cal's

2  low-price rules, nor d[id] any of relator's allegations show that

3  Husband and Bailey falsely certified or caused to be certified a

4  claim for payment to the government."  (Id. at 36).

5        The new allegations against the newly identified

6  individuals are deficient for the same reasons.  While the

7  allegations implicate these individuals in the supposed

8  underlying fraudulent scheme, they too fail to address the

9  relevant question pursuant to an FCA claim: Who made false

10  statements or omissions?  See United States ex rel. Cafasso v.

11  Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir. 2011)

12  (FCA attaches liability only "to the claim for payment," not the

13  "underlying fraudulent activity").  The closest thing to an

14  answer that relator offers is an allegation that "[b]ills were

15  submitted by Dynamic [] by various personnel in their billing

16  departments,"  SAC ¶ 42, but this still fails to "at a minimum

17  identify [who] by title and/or job responsibility" submitted

18  false claims or certifications.  See United States ex rel.

19  Modglin v. DJO Glob. Inc., 114 F. Supp. 3d 993, 1016 (C.D. Cal.

20  2015), aff'd 678 F. App'x 594 (9th Cir. 2017).  Accordingly, the

21  court will dismiss Claims 1, 2, 4, and 5 on this basis.

22     B.   When a False Claim was Submitted (Claims 1, 2, 4, 5)

23        The SAC's new allegations on when a false claim was

24  submitted still establish only general stretches of time, despite

25  the court's prior admonition that Rule 9(b) requires more.

26  (Order at 38-39.)  See, e.g., SAC ¶ 57 (quid pro quo in contract

27  provisions "[u]ntil at least 2018"); id. ¶ 59 ("Dynamic has

28  carried out this scheme since at least 2006"); id. ¶ 60 (data

1   showing that "in 2011 Dynamic/Invacare was clearly continuing to

2   charge different rates for SOC patients . . . ."). Cf. Ryan v.

3   Microsoft Corp., 147 F. Supp. 3d 868, 888 (N.D. Cal. 2015)

4   (allegations that fraudulent conduct occurred "in 2011 and 2012"

5   and "in approximately 2008" were insufficient under Rule 9(b)).

6       Relator attempts to cure this defect by alleging that

7   false claims and certifications were submitted "every month"

8   during the relevant time periods, thereby "taint[ing] every

9   single one of their claims to Medicare and Medi-Cal."  (SAC ¶ 5.)

10      However, this still is not enough to allege "when" with

11  sufficient precision.  For one, the supposed timeframe of the

12  "business relationship" between the SNFs and Dynamic, during

13  which false claims and certifications were allegedly submitted

14  every month, remains unspecified.  (Id.)

15      But even assuming a precise stretch of time for the

16  alleged scheme, averments of "each" or "every" alleged

17  occurrence, without more, fail to provide defendants sufficient

18  notice about specific alleged misconduct to investigate and

19  against which to prepare a defense.  See Godecke v. Kinetic

20  Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019) (fraud needs

21  to be pled with particularity to allow defendant to defend

22  against charge).  In Knudsen v. Sprint Comm'ns Co., the relator

23  similarly alleged a fraudulent scheme where the defendants

24  submitted false claims every month during a 105-month contractual

25  period.  No. C13-04476 CRB, 2016 WL 4548924, at *9 (N.D. Cal.

26  Sept. 1, 2016).  The Knudsen court found that the basis of that

27  allegation, which was an audit that the relator conducted on 3

28  months' worth of services postdating the contractual period at

1   issue, failed to provide any specific details about any of the
2   105 allegedly false claims.  Id.  Here, relator fails to plead
3   any particular basis at all for his allegation that the entire
4   set of claims, submitted monthly over a course of years, was
5   fraudulent.  Relator is not required to present a representative
6   example of a false claim, but he still must allege "particular
7   details of a fraudulent scheme to submit false claims" that
8   credit allegations of routinized fraud.  Ebeid ex rel. U.S. v.
9   Lungwitz, 616 F.3d 993, 998-99 (9th Cir. 2010) (emphasis added).

10          As another attempted remedy, relator attaches provider
11  agreements between Dynamic and various skilled nursing
12  facilities.  (SAC  Exs. A-C.)  While these contracts contain
13  specific execution dates, they fail to further identify when the
14  allegedly fraudulent rates and terms contained within the
15  contracts were actually charged, or when such charges were
16  allegedly submitted to the government as a false claim or
17  certification.  See Eferton DMCC v. Asia-Glob. Renewable Energy
18  Corp., No. CV 15-9295-R, 2016 WL 5886900, at *1 (C.D. Cal. Apr.
19  22, 2016) ("Mere general allegations of a multi-month period of
20  various contracts and agreements does not suffice for Rule
21  9(b).").  Accordingly, the court will dismiss Claims 1, 2, 4, and
22  5 on this basis.

23          C.   How a False Claim was Submitted (Claims 1, 2, 4, 5)
24               1.   Dynamic
25          The SAC also fails to sufficiently establish how
26  Dynamic submitted false claims and certifications to the
27  government.  Dynamic uses Form CMS-1500 to bill Medi-Cal directly
28  for "qualifying wound" or "direct bill" patients.  (SAC ¶ 41.)

7

1   This form requires Dynamic to certify that the submission

2   complies with all applicable federal and state laws, including

3   (1) Medi-Cal's low-price rules, and (2) the Anti-Kickback

4   Statute.  (Id. ¶ 41.)  The SAC alleges that all of Dynamic's CMS-

5   1500 submissions violate both.  (Id. ¶ 42.)

6                    (a)  Violation of Medi-Cal Low-Price Rules

7              Medi-Cal's low-price rules prohibit a provider from

8   submitting a reimbursement request for a service that costs more

9   than the "usual fee" charged to the "general public" for that

10  service.  (Id. ¶ 77.)  Construing the SAC in the light most

11  favorable to relator, Dynamic charges Medi-Cal the "usual fee,"

12  which is $18.76 per day per patient, for specialty mattresses.

13  (Id. ¶ 41; see also Order at 33 n.41.)  At the same time, Dynamic

14  allegedly charges skilled nursing facilities "a massively

15  discounted price of between $3 and $6 per day" for "facility"

16  patients whose entire cost of care is covered by the state.  (Id.

17  ¶ 43.)  These discounts for the facility segment allegedly render

18  every submission of Form CMS-1500 false because the discounted

19  price falls far below the "usual fee" of $18.76.  (Id. ¶ 78.)

20             However, relator fails to further allege any reliable

21  indicia supporting the inference that the "massively discounted"

22  fees charged to the facility segment are the right comparator for

23  the "usual fees" charged to Medi-Cal.  Put another way, the SAC

24  fails to answer three questions: (1) For what product or service

25  does Dynamic charge Medi-Cal $18.76 per day? (2) For what product

26  or service does Dynamic charge the skilled nursing facilities $3

27

28

1   to $6 per day? and (3) Are these products or services the same?[5]

2   See United States v. Chang, No. CV-13-3772-DMG-MRWx, 2017 WL

3   10544289, at *14-15 (C.D. Cal. July 25, 2017) (failure to specify

4   whether "usual fee" charged to "general public" prevented

5   doctor's office from charging uninsured population less pursuant

6   to Medi-Cal low-price rules); Physicians and Surgeons Labs., Inc.

7   v. Dep't of Health Servs., 6 Cal. App. 4th 968, 990 (2d Dist.

8   1992) (finding laboratory's negotiated contract with discounted

9   fees were not part of the "usual" fees charged to the "general

10  public" and rejecting idea that "any time [a service provider]

11  charged a lower fee, it would be required to charge Medi-Cal that

12  same lower fee"); People v. Duz-Mor Diagnostic Lab., Inc., 68

13  Cal. App. 4th 654, 665-66 (2d Dist. 1998) (clinical laboratory

14  provider discounts to private-pay patients, negotiated by

15  physicians and HMOs, were not "charge to the general public" and

16  thus did not violate low-price rules).

17          Relator's own allegations suggest that he requires the

18  assistance of discovery to provide them: "[Dynamic is] in

19  possession of detailed billing and reimbursement records that

20  will easily identify each and every claim they submitted to Medi-

21  Cal for 'qualifying wound' patients, including the identity of

22  the patient, the date of service, the date the bill was

23  submitted, the amount of the charge, and the amount reimbursed."

24  SAC ¶ 42.  But this puts the cart before the horse.  The FCA and

25

26          [5]    The provider contracts that relator attaches to the SAC
     further muddies this issue.  Each contract contains a price list,
27   which sets forth a grid of different prices based on the specific
     type and feature set of mattress and duration of the rental
28   period.  (SAC Exs. A-C.)

                                    9

1  Rule 9(b) "encourage insiders to disclose information necessary

2  to prevent fraud on the government." Ebeid, 616 F.3d at 999.

3  They further require relators to "come to court with a claim in

4  hand or with sufficiently detailed circumstantial evidence to

5  establish that the defendant actually submitted a false claim."

6  United States ex rel. Aflatooni v. Kitsap Physicians Serv., 314

7  F.3d 995, 1002 (9th Cir. 2002).

8          Because relator fails to bring this information to

9  court at the pleading stage, he fails to sufficiently allege a

10  violation of Medi-Cal's low-price rules.

11                    (b)  Violation of Anti-Kickback Statute

12          Relator also alleges a direct link between the

13  purported differential pricing scheme between Dynamic and SNFs,

14  on the one hand, and SNFs' referral of qualifying wound patients

15  to Dynamic, on the other hand.  In support, the SAC alleges that

16  "the quid pro quo is reflected and memorialized in the

17  contractual agreements between [SNFs] and [Dynamic]."  (SAC ¶

18  53.)  Relator points in particular to certain preferred vendor or

19  exclusivity contract terms within that require SNFs to source all

20  or most of their supplies from Dynamic.  (Id. ¶¶ 53-56.)  These

21  contract terms allegedly form the kickback to Dynamic in exchange

22  for Dynamic's participation in SNFs' discriminatory billing

23  scheme.  (Id.)

24          However, the contract terms do not suggest a quid pro

25  quo even viewed in a light most favorable to relator.  First, the

26  one "exclusivity" agreement that relator identifies (id. Ex. A

27  (Dynamic-Plum contract)) acknowledges the skilled nursing

28  facilities' right to choose alternative providers as provided by

1  law.  (Id. ¶ 54.)  Second, simply offering lower prices or
2  bulk/loyalty discounts in exchange for volume of business is not
3  enough to support an Anti-Kickback Statute violation.[6]  See
4  United States ex rel. Dan Abrams Co. v. Medtronic, Inc., No. LA
5  CV15-01212 JAK ASX, 2018 WL 5266863, at *8 (C.D. Cal. June 7,
6  2018) (dismissing Anti-Kickback Statute claims after finding
7  allegations that defendants provided rebates to hospitals that
8  purchased certain devices and that defendants knowingly caused
9  claims to be submitted as a result were conclusory and "failed to
10 allege a clear link between any alleged inducements and the false
11 claims, any specific inducement, which products physicians were
12 allegedly induced to purchase, or when and where any device was
13 used as a result of a kick-back").  The SAC fails to allege any
14 reliable indicia of a fraudulent scheme that Dynamic's alleged
15 participation in a discriminatory billing scheme was
16 consideration for or inducement of these agreements.

17       Without more, the SAC fails to allege how defendants'
18 agreements amounted to an illegal kickback scheme that, in turn,
19 caused Dynamic's Form CMS-1500 submissions to become false
20 certifications.  Accordingly, the court will dismiss Claims 1, 2,
21 4, and 5 against Dynamic on this basis.

22              2.   Skilled Nursing Facilities

23       SNFs bill Medicare Part A and Medi-Cal using Forms CMS-
24 1450 and 1500.  (SAC ¶¶ 29-30.)  Relator alleges that SNFs submit
25 a consolidated bill, meaning that other entities also treating
26

27       [6]   Lowered prices may generally help support alleged
   violations of Medi-Cal's low-price rules, but not in this case as
28 discussed above.  See supra.

1   patients bill their services to SNFs.  SNFs then include those

2   charges along with their own charges in a unified bill that they

3   then submit to the government.  (Id.)

4         The SAC alleges no additional details on what goes on

5   the forms, how that information is organized on the forms so that

6   any mistakes or fraud relating to specialty mattress prices can

7   be detected, or what further conditions and certifications that

8   the forms require.  It also fails to allege that any information

9   that SNFs transmitted to the government was in fact fraudulent,

10  either intrinsically (i.e., submitting false dollar amounts) or

11  by failing to comply with certain requirements as provided by the

12  forms.  As a result, the SAC fails to allege, either directly or

13  circumstantially, how any Form CMS-1450 or 1500 submitted by SNFs

14  was a false claim, either by falsely certifying to the government

15  that specialty mattresses were being charged for in a manner

16  consistent with all applicable laws and regulations, or by

17  directly submitting false information.  Accordingly, the court

18  will dismiss Claims 1, 2, 4, and 5 against SNFs on this basis.

19        D.   Conspiracy (Claims 3, 7)

20        Allegations about the contracts between Dynamic and the

21  SNFs form the core of relator's renewed attempt to plead

22  conspiracy.  (Id. ¶¶ 52-57, 104, 122.)  However, combined with

23  the failure to plead a false claim as outlined above, nothing

24  about these contracts plausibly demonstrate any "meeting of the

25  minds in an unlawful arrangement" required to establish a civil

26  conspiracy.  Gilbrook v. City of Westminster, 177 F.3d 839, 856

27  (9th Cir. 1999).  The contracts in fact tend to do the opposite.

28  Accordingly, the court will dismiss Claims 3 and 7.

1          E.    Motion to Strike (Claim 6)

2                Defendants move to strike Claim 6 on the ground that

3    the court's previous order dismissed an identically-worded claim

4    with prejudice.  (Mots.)  Relator argues that this was in error

5    because the order mistakenly characterized Claim 6 as advancing a

6    reverse false claim theory, a theory that the order found to be

7    untenable even with amendment.  (Docket Nos. 151-54.)

8                Whether or not the court grants this request is

9    irrelevant, as the SAC pleads Claim 6 with the same lack of

10   particularity that afflicts all its other claims.  Claim 6

11   invokes Cal. Gov. Code § 12651(a)(8), which provides that "a

12   beneficiary of a claim who subsequently discovers the falsity of

13   the claim, and fails to disclose the false claim to the state or

14   the political subdivision within a reasonable time after

15   discovery of the false claim[,] is liable under the California

16   FCA."  United States v. Safran Grp., S.A., No. 15-cv-746-LHK,

17   2017 WL 235197, at *5 (N.D. Cal. Jan. 19, 2017) (internal

18   quotation omitted).  "[W]ith the exception of scienter and the

19   timing of a defendant's discovery of the false claim," which are

20   not at issue here, "the elements of a claim under § 12651 (a)(8)

21   are identical to the other federal and California FCA

22   provisions."  United States v. Sutter Health, No. 14-CV-04100-

23   KAW, 2021 WL 9182522, at *22 (N.D. Cal. Mar. 17, 2021).

24               The analysis disposing of relator's other claims

25   applies with equal force to Claim 6.  Relator fails to allege

26   with the required particularity who discovered the falsity of any

27   claim or statement, how he discovered and then subsequently

28   failed to disclose it, and when.  Claim 6 is therefore

1  insufficient for the same reasons.  Accordingly, the court will

2  deny the motion to strike and dismiss Claim 6.

3     F.   Leave to Amend

4        Leave to amend a pleading is generally freely granted

5  and is within the discretion of the court.  See Fed. R. Civ. P.

6  15(a); Foman v. Davis, 371 U.S. 178, 182 (1962); DCD Programs,

7  Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987).  However,

8  this "liberality does not apply when amendment would be futile."

9  Ebner v. Fresh, Inc., 838 F.3d 958, 968 (9th Cir. 2016).

10       The SAC is relator's third attempt to sufficiently

11  plead claims under the FCA and CFCA.  Relator has failed to

12  remedy any of the FAC's defects identified in the court's

13  previous order.  For example, relator has been afforded countless

14  opportunities to answer the basic question of whether the

15  government and skilled nursing facilities were charged different

16  prices for the same product.  Relator's repeated inability to

17  answer that question with any specific examples, either in his

18  pleadings or at oral argument, is telling.  In addition,

19  relator's suggestion that billing and reimbursement records in

20  Dynamic's possession would salvage his claims, SAC ¶ 42, and his

21  attachment of assorted provider agreements but no other documents

22  which might indicate the submission of any false claim, compel

23  the conclusion that a fourth attempt would be futile.  The court

24  will therefore dismiss relator's SAC in its entirety without

25  leave to amend.

26       IT IS THEREFORE ORDERED that the Second Amended

27  Complaint (Docket No. 141) be, and hereby is, DISMISSED WITH

28

14

1    PREJUDICE.[7]

2    Dated:   October 17, 2023

WILLIAM B. SHUBB
3    UNITED STATES DISTRICT JUDGE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27    _____

[7]    Dynamic's request for judicial notice (Docket No. 143) is
28    DENIED as moot.

15